## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------

| | |
|---|---|
| EDWARD R. FLYNN, DOUGLAS J. ABBOTT, GENE E. DAISEY, and CATHERINE HOSICK, individually and on behalf of all others similarly situated, | :    Case No: 2:17-cv-4806-WB :<br>:    Class Action : |
|            Plaintiffs, | : |
|      v. | : |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | : |
|            Defendant. | : |

------------------------------------------------------------------------

## MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY AND IMPOSE SANCTIONS

**PARKER IBRAHIM & BERG LLP**
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Facsimile: (267) 908-9888

*Counsel for Defendant,*
Manufacturers and Traders Trust Company
a/k/a M&T Bank

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................iv

I.      PRELIMINARY STATEMENT .............................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................2

III.    LEGAL ARGUMENT ...........................................................................5

        A. M&T'S VALID OBJECTIONS SHOULD NOT BE DEEMED
           WAIVED ...................................................................................5

        B. M&T FULLY RESPONDED TO PLAINTIFFS'
           INTERROGATORIES. ..................................................................7

           1.  Interrogatory No. 1. ..............................................................7
           2.  Interrogatory No. 2..............................................................8
           3.  Interrogatory No. 3..............................................................9
           4.  Interrogatory No. 4..............................................................10
           5.  Interrogatory No. 5..............................................................11
           6.  Interrogatory No. 6..............................................................11
           7.  Interrogatory No. 7..............................................................12
           8.  Interrogatory No. 8..............................................................12
           9.  Interrogatory No. 9..............................................................12
           10. Interrogatory No. 10............................................................13
           11. Interrogatory No. 11............................................................13
           12. Interrogatory No. 12............................................................14
           13. Interrogatory No. 13............................................................14

        C. M&T FULLY RESPONDED TO PLAINTIFFS' DOCUMENT
           REQUESTS .................................................................................15

           1.  Requests No. 1-5...................................................................15
           2.  Request No. 6.......................................................................15
           3.  Request No. 7.......................................................................17
           4.  Request No. 8.......................................................................18
           5.  Request No. 9.......................................................................18
           6.  Request No. 10.....................................................................18
           7.  Request No. 11.....................................................................19
           8.  Request No. 12.....................................................................19

                i.    Earlier versions of Policies and Procedures- (a-m)...............20
                ii.   "Excel logs"- (n) ......................................................20
                iii.  Templates and/or Exemplars- (o) and (x) .............................20
                iv.   "Agent Covered Fees Excel Spreadsheet"- (p) and (s).........20
                v.    "Sold Expense Screen"- (q) ...........................................20
                vi.   Agreements with Third Party Vendors/Affiliates- (r)..........20

i

        vii.   "Redemption Specialist Notes"- (t) .......................................21

      viii.   Unredacted copies of Bates 0009734 and 000979- (u).........21

        ix.   Legible copies of Produced Documents- (v)-(w).................21

         x.   Copies of all versions of "State requirements"- (y) .............21

        xi.   Quality Review Forms- 6(z) ..................................................21

       xii.   All versions of the "Storage Fee Page"- 6(aa) ....................22

    9.  Request No. 13.............................................................................22

   10. Request No. 14.............................................................................23

   11. Request No. 15.............................................................................23

   12. Request No. 16.............................................................................24

   13. Request No. 17.............................................................................24

  D.  M&T'S PRIVILEGE LOG IS PROPER AND SUFFICENT ....................24

  E.  PLAINTIFFS'DEMAND FOR ACCESS TO ALEX WILSHAW AND
      KENNETH FRIES IS UNJUSTIFIED ......................................................27

  F.  PLAINTIFFS' REQUEST FOR SANCTIONS SHOULD BE DENIED ....29

IV.    CONCLUSION.................................................................................................30

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Bala City Line, LLC v. Ohio Sec. Ins. Co.*
   No. 16-CV-4249, 2017 WL 3443218 (E.D. Pa. Aug. 9, 2017) ................................................ 23

*Carlin v. DairyAmerica, Inc.*,
   No. 109CV00430AWIEPG, 2017 WL 4410107 (E.D. Cal. Oct. 4, 2017) ............................... 8

*Colson v. Cableview Commc'ns of Jacksonville, Inc.*
   No. 3:09-CV-850-J-34JRK, 2010 WL 11507875 (M.D. Fla. Apr. 12, 2010) ........................... 8

*Feurerer v. Adamar of New Jersey, Inc.*,
   No. CIV.A. 83-5931, 1985 WL 2781 (E.D. Pa.. Sept. 19, 1985), *aff'd sub nom. Feuerer v.
   Adamar of New Jersey, Inc.*, 800F.2d 1132 (3d Cir. 1986) ...................................................... 11

*Grider v. Keystone Health Plan Cent., Inc.*
   580 F.3d 119 (3d Cir. 2009) ..................................................................................................... 26

*Haring v. Eckerd Corp.*
   No. CIV.A. 01-3988, 2002 WL 32348343 (E.D. Pa. May 16, 2002) ........................................ 6

*Harris v. PV Holding Corp.*
   No. CIV.A. 09-1568, 2009 WL 2600415 (E.D. Pa. Aug. 20, 2009) ......................................... 6

*Hauk v. LVNV Funding. LLC*
   749 F. Supp. 2d 358 (D. Md. 2010) ........................................................................................... 9

*In re Huertas v. U.S. Dept. of Educ.*
   408 Fed.Appx. 639, 2010 WL 5065224 (3d Cir.2010) ............................................................ 30

*Knutson v. Blue Cross & Blue Shield of Minn.*
   254 F.R.D. 553 (D. Minn. 2008) ............................................................................................ 8, 9

*Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*
   No. CIV.A. 09-6435 FLW, 2011 WL 1466369 (D.N.J. Apr. 18, 2011) ................................... 22

*Murphy v. Allen Co., Inc.*
   No. 5:09-CV-69-JBC, 2011 WL 13193320 (E.D. Ky. Jan. 7, 2011), *objections overruled*,
   No. CV 09-69-JBC, 2011 WL 13196154 (E.D. Ky. May 12, 2011) ........................................ 26

*N. Penn Transfer, Inc. v. Victaulic Co. of Am.*
   859 F. Supp. 154 (E.D. Pa. 1994) ........................................................................................... 30

*Parks, LLC v. Tyson Foods, Inc.*
No. 5:15-CV-00946, 2015 WL 5042918 (E.D. Pa. Aug. 26, 2015) ........................................ 23

*Robert Billet Promotions, Inc. v. IMI Cornelius, Inc.*
No. CIV. A. 95-1376, 1998 WL 150957 (E.D. Pa. Mar. 30, 1998)........................................ 30

*Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*
No. c 06-3219 JW (RS) 2009 WL 5114077 (N.D. Cal. 2009) ................................. 26

*Sayyed v. Wolpoff & Abramson*
485 F.3d 226 (4th Cir. 2007) ......................................................................................... 9

*Scaturro v. Warren & Sweat Mfg. Co.*
160 F.R.D. 44 (M.D. Pa. 1995)...................................................................................... 6

*Shenker v. Sportelli*
83 F.R.D. 365 (E.D. Pa. 1979)....................................................................................... 6

*United States v. Bouchard Transp.*
No. 08-CV-4490 NGG ALC, 2010 WL 1529248 (E.D.N.Y. Apr. 14, 2010) ........................ 26

## FEDERAL STATUTES

Fair Debt Collection Practices Act, 15 U.S.C. 1962, *et seq*. ......................................... 9

Fair Labor Standards Act, 29 U.S.C. § 216(b)................................................................. 9

## STATE STATUTES

13 Pa.C.S.A. § 9625(c)(2)............................................................................................. 11

13 Pa.C.S.A. § 9625(e)(5)............................................................................................. 17

## RULES

Fed. R. Civ. P. 23 ..................................................................................................... 8, 13

Fed. R. Civ. P. 26(b)(1)............................................................................................. 8, 9

Fed. R. Civ. P. 26(e) ................................................................................................... 7

Fed. R. Civ. P. 33(b)(4).............................................................................................. 6

Fed. R. Civ. P. 33(d)(1)............................................................................................. 14

Fed. R. Civ. P. 34 .................................................................................................. 22, 23

Fed. R. Civ. P. 37(a) ............................................................................................. 29, 30

Fed. R. Civ. P. 37(b) ............................................................................................. 29, 30

## I.    **PRELIMINARY STATEMENT**

Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"), by and through its attorneys, Parker Ibrahim & Berg LLP, submits this Memorandum of Law in opposition to the Motion to Compel Discovery and Impose Sanctions (the "Motion") filed by Plaintiffs Edward R. Flynn, Douglas J. Abbott, Gene E. Daisey, and Catherine Hosick.

Throughout this litigation, Plaintiffs have deliberately misled this Court by misstating both the facts and the law in a transparent attempt to paint M&T as the "bad guy".[1]  This motion is no different.  M&T, however, will not waste any more of this Court's time with responding to either philosophical musings on the meaning of "truth," or snide comments made by our adversary.  Rather, M&T will simply state that it strongly disagrees and objects to Plaintiffs' characterization of M&T, and will address Plaintiffs' Motion on its merits alone.

Simply put, Plaintiffs' Motion should be denied.  The vast majority of Plaintiffs' stated "discovery issues" fail to identify any deficiencies in M&T's responses at all, and instead amount to improper requests for supplemental discovery or equally improper attempts to obtain discovery Plaintiffs are not entitled to: namely, class-wide discovery on *each and every* one of the nearly 4,000 potential putative class members.  Plaintiffs' arguments as to why these requests do not stand opposed to this Court's clear limitation of discovery to the four named Plaintiffs and a *sample* of the class (the scope of which has not been decided) are wholly unpersuasive.

Finally, as to the few valid discovery demands Plaintiffs have asserted, M&T has previously produced all information and documents relevant to these requests that are in its possession, custody, and control.  M&T simply cannot produce what it does not have.

---

[1] Indeed, Plaintiffs have gone so far as to doctor an exhibit to one of the many iterations of their Complaint, redacting out the date on the relevant notice in an attempt to overcome M&T's valid statute of limitation defense as to one of the former representative Plaintiffs.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This is a complex class action lawsuit involving M&T's repossession-related notices, in which considerable effort has already been expended by the parties and this Court to define the parameters of discovery, the deadline for completion of which is July 24, 2019.  A brief history of those efforts is described below.

On December 22, 2017, Judge Beetlestone ordered the parties to negotiate a mutually agreeable scheduling order.  *See* D.I. 20.  Unable to do so, counsel spent a day in the courthouse attempting to come to an agreement.  Judge Beetlestone thereafter entered an Initial Scheduling Order on January 11, 2018 (the "Initial Scheduling Order").  *See* Motion at Ex. 4.

Among other requirements, the Initial Scheduling Order instructed the parties to "meet and confer" in order to "delineate an electronic discovery plan for the production of the documents described [] above as well as a random sampling of potential class members."  *Id.* at p. 2.  Specifically, the parties were instructed to meet and "***discuss all relevant e-discovery issues*** including the search methodology, the format of the potential class member(s)' files to be produced, the time frame needed to generate a random sample of account numbers and to produce a random sample of 20% of the potential putative class members' files…including whether the production can be conducted on a rolling basis, and other relevant details."  *Id.* at 3.  The paragraph ends: "No production of the files of the potential class members beside the named Plaintiffs needs to be produced until further order of Court."  *Id.* at 4.

The next relevant order of the Court came on April 13, 2018.  *See* Motion at Ex. 5.  After ruling on M&T's motion to dismiss, the Court also included a requirement that "Defendants shall provide Plaintiffs with all documents referenced in this Court's January 11, 2018 Scheduling Order, including electronically stored information, for all Plaintiffs [] by April 27, 2018."  *Id.*

The Court then extended that deadline to May 11, 2018.  *See* D.I. 57.

In compliance therewith, on May 11, 2018, M&T produced the remaining documents, including a batch of nearly 18,000 pages relating to the four named Plaintiffs—which contained thousands of fully redacted pages.  These redactions were to internal bank reports that contained the names and personal information for tens of thousands of M&T customers.  M&T advised Plaintiffs in a June 1, 2018 letter that these redactions were to remove the confidential "information pertaining to customers *other* than the named plaintiffs".  (*See* **Exhibit A**.)  Any entries relating to Plaintiffs were not redacted.  *See* Ex. A.

Contemporaneously therewith, M&T also produced a privilege log, and approximately a week thereafter, an amended privilege log for all potentially responsive (although irrelevant) documents that M&T did not produce.  A true and correct copy of the complete amended privilege log is attached hereto as **Exhibit B**.[2]  The amended privilege log laid out the following information for each privileged document: (1) the document's Relativity[3] ID; (2) the reason for the privilege; (3) sort date/time; (4) file extension, if any; (5) the sender and recipient; and (6) the date/time sent.  *See* Ex. B.  With the exception of ten documents, every single entry was for a communication that occurred after the filing of Plaintiffs' original complaint.  *Id.*

Thereafter, on June 12, 2018, Plaintiffs propounded their First Set of Post Removal Discovery ("Discovery Requests").  *See* Motion at Ex. 6.  Several of the Discovery Requests mirrored what had been previously ordered by the Court (and previously produced by M&T).  *Id.*

---

[2] Plaintiffs' attached only a portion of the amended privilege log to the Motion.  While Plaintiffs purport to be providing this Court with the full document "under separate cover", Plaintiffs' have not provided M&T a copy of the same and as such M&T is attaching the full log here.

[3] To the extent the Court is not familiar, Relativity is a commonly used e-discovery software.  Plaintiffs were provided the standard load files which would allow Plaintiffs (or their e-discovery vendor) to load M&T's electronic production onto the Relativity platform.

By letter dated July 3, 2018, Plaintiffs also requested, *inter alia*, that M&T provide additional information to further the parties' efforts to establish the parameters of the class sampling, and the scope of discovery regarding the same.  (*See* **Exhibit C**.)  The letter states: "***Before a random sample can be ascertained***, you need to provide me with the size of the punitive classes."  The letter notes that it is "unclear how much time it will take for [M&T] to provide [Plaintiffs] with a list of all account numbers" or "to replicate [its] production for the named plaintiffs, for each of the randomly selected accounts."  *Id*. at 3.  The paragraph ends:  "At the next conference, perhaps we can address these issues with more clarity."  *Id.*

On July 11, 2018, M&T requested an extension until August 10, 2018, to respond to Plaintiffs' Discovery Requests.  Plaintiffs' response stated "Please know that I generally do not have any problem granting the professional courtesy of an extension to respond to discovery" but that he would like to "know which requests you will substantively respond to and which you will object to."  *See* Motion at Ex. 7.

Counsel for the parties then participated in a three-day in-court scheduling conference in an attempt to draft a mutually agreeable amended scheduling order.  During this time, counsel for M&T spent a significant about of time addressing many of Plaintiffs' discovery related questions.  However, a consensus on the amended order could not be reached due to Plaintiffs' counsel's unreasonable demands—including his insistence that the scheduling order itself include a section compelling M&T to produce the 27 specific documents addressed below in Section III(C)- Request No 12, and a representation that M&T waived the rule against one-way intervention (which, as Judge Beetlestone explained, M&T did not).  The parties then submitted briefing to the Court regarding the timing of summary judgment briefing and, as a result, Judge Beetlestone entered an amended scheduling order.  *See* D.I. 91.

On August 10, 2018, M&T responded to Plaintiffs' Discovery Requests. *See* Motion at Ex. 8.  Plaintiffs replied by letter on September 4, 2018, noting that "in response" to M&T's request for an extension of time to respond, Plaintiffs had "asked for [M&T's] assurance that [M&T] would use the proposed additional time to substantively respond to the discovery…" (*See* **Exhibit D**.)  Plaintiffs requested that M&T thus withdraw its general objections and provide additional information regarding its specific objections. *Id.*  Nowhere did Plaintiffs state that M&T's response was untimely or that Plaintiffs would move to have M&T's objections stricken as a result of the same. *Id.*

The parties then exchanged numerous correspondences in an effort to resolve these (and other) discovery disputes.   This effort cumulated with Plaintiffs' September 4, 2018 Correspondence and Meet and Confer Letter to Your Honor ("Plaintiffs' Meet and Confer Letter"), a true and correct copy of which is attached hereto as **Exhibit E**, and M&T's response to the same dated September 10, 2018 ("M&T's Meet and Confer Letter"). *See* Motion at Ex. 9.

Your Honor then held a telephonic conference on September 11, 2018, wherein Plaintiffs were instructed to file a Motion to Compel by Friday, September 21, 2018.  M&T requested 14 days to respond, while counsel for Plaintiffs only wanted M&T to have seven days.  Your Honor reasonably compromised at 10 days.  As set forth in M&T's Motion to Strike Plaintiffs' Motion, Plaintiffs' counsel failed to serve M&T with a copy of Plaintiffs' overlong brief until September 24, 2018 at 4:56 p.m. *See* D.I. 107.  The Motion to Strike is pending with the Court.

Therefore, in an abundance of caution, and in order to ensure that M&T has addressed all arguments raised by Plaintiffs, M&T now submits this Opposition to Plaintiffs' Motion.

III.    **LEGAL ARGUMENT**

    A.    **M&T'S VALID OBJECTIONS SHOULD NOT BE DEEMED WAIVED**

Plaintiffs argue that *all* of M&T's objections to Plaintiffs' Discovery Requests should be deemed waived due to the "tardiness" of M&T's response. *See* Motion at 10. However, even if Plaintiffs had refused to give M&T the 30 day extension, M&T's alleged delinquency is not severe enough to warrant the waiver of its valid objections by this Court.

While Rule 33(b)(4) does provides that "[a]ny ground not stated in a timely objection is waived", it also states "***unless the court, for good cause, excuses the failure***." Fed. R. Civ. P. 33(b)(4) (emphasis added). Thus, whether to deem untimely objections waived and compel any withheld discovery is "within the discretion of the Court." *See Haring v. Eckerd Corp.*, No. CIV.A. 01-3988, 2002 WL 32348343, at *1 (E.D. Pa. May 16, 2002). Due to its punitive nature, "waiver appears to be more in the nature of a sanction for more egregious conduct." *Scaturro v. Warren & Sweat Mfg. Co.*, 160 F.R.D. 44, 46 (M.D. Pa. 1995) (finding that an "untimely response" on its own does not "indicate conduct of the type for which defendant should be held to have waived objections.") This principle is illustrated by several cases cited by Plaintiffs, which deemed objections waived when they came long after the requests were due, often only in response to a motion to compel. *See e.g. Harris v. PV Holding Corp.*, No. CIV.A. 09-1568, 2009 WL 2600415, at *1 (E.D. Pa. Aug. 20, 2009) (finding no "good cause" to excuse waiver because the defendant's "respon[se] to the Motion to Compel does not excuse their failure to respond" to discovery); *Shenker v. Sportelli*, 83 F.R.D. 365, 366 (E.D. Pa. 1979) (waiving objections when the defendants ignored two sets of discovery and only objected in response to the motion to compel). Notably, despite finding waiver, *Shenker* still denied the portions of plaintiff's motion that sought to compel discovery that the plaintiff was not entitled to. *Id.*

While M&T admittedly served its responses after the 30-day deadline, M&T discussed on several occasions with Plaintiffs' counsel its need for a short extension to respond

appropriately and completely.  Counsel's refusal to agree to this reasonable and routine request in a complicated class action case, absent M&T's pre-commitment as to how it would respond, was facially unreasonable.  Further, unlike the cases cited by Plaintiffs, M&T responded to the Discovery Requests well before Plaintiffs filed this Motion.  Accordingly, this Court should not deem M&T's objections waived.

### B.    M&T FULLY RESPONDED TO PLAINTIFFS' INTERROGATORIES

Plaintiffs allege that each and every one of M&T's responses to Plaintiffs' interrogatories are insufficient.  The majority of the alleged deficiencies, however, are nothing more than supplemental requests or attempts to improperly obtain premature class-wide discovery.  These are improper bases for objecting to M&T's responses.

Further, unless specifically defended below, M&T did not withhold any information or documents on the basis of its asserted objections.  Therefore, to the extent the inadequacy alleged relates solely to M&T's inclusions of objections, designed to reassert its rights under the Federal Rules of Civil Procedure, these concerns should be found to be meritless as M&T has fully responded to the Discovery Requests.[4]  M&T now will address each alleged inadequacy in turn.

#### 1.    Interrogatory No. 1

In Interrogatory No. 1, Plaintiffs request information regarding "each person who was involved in answering any discovery request".  *See* Motion at 3.  In response, M&T provided Plaintiffs with the names of the individuals at M&T that assisted in preparing responses to Plaintiffs' Discovery Requests.  While Plaintiffs now request that M&T be compelled to provide the names of any individuals not disclosed on the basis of its objections, M&T did not withhold

---

[4] Plaintiffs also repeatedly suggest that M&T's reservation of its right to supplement its discovery responses somehow indicates that M&T's responses are *per se* inadequate.  M&T, however, has a legal duty to supplement its responses if necessary.  *See* Fed. R. Civ. P. 26(e).  As such, this Court should not allow Plaintiffs to draw improper inferences based upon this reservation.

any such information.  Accordingly, as M&T has fully responded, there is nothing to compel.

## 2.    Interrogatory No. 2

Plaintiffs next request the "aggregate sum of all deficiencies" for all class members.  *See* Motion at 13.  M&T stands by its stated objections and subsequent response.

First, Plaintiffs' request is premature and unduly burdensome, because a response to this Interrogatory would require M&T to manually analyze each and every class member's file – and not just for information regarding potential deficiency, but also for, *inter alia*, potential bankruptcy proceedings.[5]  But discovery has been expressly limited by the Court to the four named plaintiffs and a not-yet-established sampling of the putative class.  *See* Motion at Ex. 4.

Further, even if this Court had not clearly limited the scope of discovery, class-wide discovery prior to class certification can run afoul of Federal Rule 26(b)(1), which limits the scope of discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case".  Fed. R. Civ. P. 26(b)(1).  *See also, e.g., Carlin v. Dairy America, Inc*., No. 109CV00430AWIEPG, 2017 WL 4410107, at *4 (E.D. Cal. Oct. 4, 2017) (finding that "without certification of a class under Rule 23, the 'absent' class members are not yet parties to the case" and therefore that class-wide discovery on the plaintiffs was barred by Federal Rule 26(b)(1))*; Colson v. Cableview Commc'ns*, No. 3:09-CV-850-J-34JRK, 2010 WL 11507875, at *5 (M.D. Fla. Apr. 12, 2010) (noting that "[u]ntil the class is conditionally certified, however, discovery as to other class members is premature")[6]; *Knutson v. Blue Cross & Blue Shield of Minn*., 254

---

[5] Plaintiffs assert that M&T's concerns class member bankruptcies is "theoretical[]" and based on "assumption".  However, as three of the named Plaintiffs (Flynn, Hosick, and Abbott) have been involved in bankruptcy proceedings, M&T's concern is clearly more than theoretical.

[6] In *Colson*, plaintiffs moved for class certification under both Rule 216(b) of the Fair Labor Standards Act ("FLSA") and Rule 23 of the Federal Rules.  *Colson* at *1.  Further, while the requirements for certifying a class under the FLSA differ, matters of discovery (the relevant issue here) are still governed by the Federal Rules of Civil Procedure.

F.R.D. 553, 557-558 (D. Minn. 2008) (prohibiting pre-certification class-wide discovery because Federal Rule 26(b)(1) limits discovery to matters "relevant to any party's claim or defense" and class members were not "parties currently before the Court").[7]  As such, it is wholly premature for Plaintiffs to request what would amount to class-wide discovery.

Finally, even if this Request was not premature, M&T simply cannot attest to such a calculation in the aggregate as individual class members may not be liable for their deficiency. While Plaintiffs now request the aggregate "irrespective of whether those deficiencies are actually collectable", this request is not only still improper, but may also subject M&T to liability.  Specifically, M&T discovery responses are not *per se* exempted from consumer protection statutes, including the Fair Debt Collection Practices Act ("FDCPA").  *See, e.g.,* *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007); *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 367 (D. Md. 2010) ("[The defendant] has cited no authority, and the court has not found any, for the proposition that an interrogatory is exempt [from the FDCPA]").

Contrary to Plaintiffs' assertion, the FDCPA is not irrelevant.  Plaintiffs are essentially asking to M&T to attest that class members have a deficiency (*i.e.*, debt) that M&T is entitled to, regardless of if that debt is collectible.  If M&T asserts as such, a class member whose deficiency is uncollectable (for example, due to a bankruptcy stay), could argue that M&T misled them into believing that it was, or will be, be trying to collect the deficiency.

3.    **Interrogatory No. 3**

In Interrogatory 3, Plaintiffs request information on all auto loan deficiency actions filed

---

[7] Plaintiffs assert that M&T's position is "baseless" because M&T cites to out-of-state cases. Overlooking the fact that the Federal Rules of Civil Procedure apply beyond Pennsylvania state lines, Plaintiffs' position would require this Court to find the majority of Plaintiffs' own arguments "baseless", as Plaintiffs' memorandum is replete with citations to out-of-state cases— including, but not limited to, Plaintiffs' opening statement.

by M&T against all class members.  *See* Motion at 16.  M&T stands by its stated objections.

First, this Interrogatory is entirely overbroad and seeks information not relevant to any party's claim or defense.  It is not limited in time or jurisdiction, nor is it limited to deficiency actions filed in relation to the auto loans giving rise to the allegations in this lawsuit.  As a result, the answer to interrogatory would clearly encompass wholly irrelevant information.[8]

Additionally, M&T fails to see how actions filed by M&T would provide Plaintiffs with the information they purport to be seeking: "whether there are similar claims in other jurisdictions challenging [M&T's post-sale consumer statutory notices]."  *Id*.  Similarly, M&T questions the relevancy of Plaintiffs' request for information regarding "claims in other jurisdictions", as this suit alleges violations of a specific Pennsylvania state statute.  *See id.*

Finally, as M&T does not maintain a running list of deficiency actions filed, M&T would be required to manually review each and every individual class member's records to confirm whether not a deficiency action was filed.  Accordingly, for the reasons set forth more fully in Section III(B)- Interrogatory No. 2, *supra*, this request is premature and unduly burdensome.

### 4.    <u>Interrogatory No. 4</u>

Interrogatory No. 4 asks M&T to identify all persons with knowledge of any facts alleged in the Complaint.  *See* Motion at 17.  Plaintiffs do not identify any deficiency with M&T's response, *per se*, but rather lay out a dozen specific topics that they would now like M&T to identify individuals having knowledge of.  Plaintiffs' assertion that they are not seeking more information than what was originally sought is belied by many of the topics they now identify.  For example, they now request the identity of an individual knowledgeable about "the Bank's responses to discovery requests" and "the basis for the Bank's 'burdensome' objections".  *Id.* at

---

[8]For example, if a class member was sued by M&T in 1935 for a deficiency action arising out of a prior auto loan, under this overbroad request, M&T would be required to provide details regarding the same, even though it bears no relevancy to the instant action.

18.  These topics are not only unrelated to facts "alleged in the [Complaint]," but are also clearly a result of the discovery exchanged to date.  This is an improper basis for asserting that M&T's response was insufficient and an improper method of requesting supplemental discovery.

### 5.    Interrogatory No. 5

By asking M&T to calculate class damages, as Plaintiffs do in Interrogatory No. 5, Plaintiffs are essentially asking M&T to do Plaintiffs' job of proving their case, which M&T is not obligated to do.  *See* Motion at 18-19.  M&T stands by its objection.

"No citation is necessary for the basic principle of law that plaintiff has the burden of proof as to damages as well as liability."  *See Feurerer v. Adamar of New Jersey, Inc.*, No. CIV.A. 83-5931, 1985 WL 2781, at *1 (E.D. Pa. Sept. 19, 1985), *aff'd sub nom, Feuerer v. Adamar of New Jersey, Inc.*, 800 F.2d 1132 (3d Cir. 1986).  Further, Plaintiffs' request is based on the improper presumption that the notices at issue violated 13 Pa.C.S.A. § 9625(c)(2), a contention that M&T specifically denies.  Plaintiffs argue, however, that their request was proper because M&T has not provided sales contracts for each of the class members, such that Plaintiffs are unable to calculate the total damages themselves.  But Plaintiffs have not requested sales contracts for each of the class members, and M&T is under no obligation to provide what has not been requested.  More importantly, such a request would be premature and unduly burdensome as it would amount to undertaking discovery on each and every one of the individual putative class members.  *See* Section III(B)- Interrogatory No. 2, *supra*.

### 6.    Interrogatory No. 6

Plaintiffs next request that M&T provide an explanation of the difference(s) in meaning between "Total redemption amount" and "Amount required to Redeem".  *See* Motion at 18-20. M&T again points Plaintiffs to the specific language contained in the two written documents

11

referenced in Interrogatory No. 6, as those documents speak for themselves.

### 7. __Interrogatory No. 7__

Plaintiffs next request the total amount paid by M&T for storage expenses for all class members.  *See* Motion at 20.  M&T stands by its objections and responses, because this request amounts to class wide discovery which is premature and unduly burdensome.  *See* Section III(B)- Interrogatory No 2, *supra*.  Further, M&T has already provided Plaintiffs with Sold Expense Screens for the named Plaintiffs (at M&T019762-3, M&T019777, M&T019795-6, and M&T019870-1) from which Plaintiffs state this information is "readily accessible."  *See id.*

### 8. __Interrogatory No. 8__

In Interrogatory No. 8, Plaintiffs again request information regarding aggregate storage expenses for all class members.  *See* Motion at 22.  M&T stands by its objections and responses because, for the reasons set forth more fully in Section III(b)- Interrogatory No. 2, *supra*, this request for class wide discovery is premature and unduly burdensome.[9]  While Plaintiffs take issue with the fact that production for a 20% class sampling would likely amount to approximately 4,000,000 pages of documents, they do not dispute that around 4,750 pages of documents were produced for each named plaintiff and that a 20% sampling would require M&T to produce about the same amount of documents for 789 more individuals.  As such, it is wholly unclear why they believe M&T's position is "remarkable" – it is simply math.

### 9. __Interrogatory No. 9__

---

[9] While Plaintiffs acknowledge here, for the first time, that discovery has indeed been limited to a sampling of the class, Plaintiffs advance a new theory:  that by limiting discovery as such, the Court did not mean that Plaintiffs could not request whatever specific information they want on every single class member, just that Plaintiffs could not request the "full files" for more than the class sampling.  *See* Motion at 21.  This contention is nonsensical.  Indeed, it would essentially allow Plaintiffs to conduct full discovery on every single class member, up until the point that the last piece of information which would render the file "full" was requested.  This is clearly not what the Court intended by limiting discovery to a sampling of the class.

Interrogatory No. 9 requests the number of potential class members.  *See* Motion at 22. Plaintiffs argue that because class membership may not be static, M&T's response, which mirrors the figures given several months ago, is necessarily inaccurate.  *Id.*  While this is an improper basis for objecting to M&T's response, M&T is reviewing its records to determine whether any new individual customers could fall within the class definition since its initial comprehensive and time-consuming research on the issue was completed.  Updated figures, if any, will be provided to Plaintiffs.

### 10.   <u>Interrogatory No. 10</u>

Interrogatory No. 10 requests that M&T disclose its "process" for determining the size of the putative class in Interrogatory No. 9.  *See* Motion at 23.  While M&T stands by its objections, M&T has not withheld any information as a result of the same.

Plaintiffs do not define the term "process" nor do they request any specific information (for example, as they now clarify, what specific databases were searched), making the interrogatory vague and ambiguous.   Further, discussions between M&T and its counsel regarding this calculation are subject to attorney-client privilege.   Notwithstanding, M&T responded, stating that the class was determined by searching M&T's records for individuals that potentially match the criteria set forth in the Second Amended Class Action Complaint.  *Id.*  As such, M&T provided its "process" and has therefore responded to the interrogatory as asked.

### 11.   <u>Interrogatory No. 11</u>

Plaintiffs next request information regarding payments made to Plaintiff Gene Daisey's account.  *See* Motion at 24.  Overlooking the fact that plaintiff Daisey must have a record of the amounts he paid, M&T already produced plaintiff's Daisey's payment history, collection history, and other records for plaintiff Daisey from which this information can be derived.   These documents were clearly labeled when produced and accordingly, M&T was not required to

13

specifically identify them by bates numbers under Federal Rule 33(d)(1).

Moreover, M&T supplemented its response in its Meet and Confer letter stating that Daisey paid, *inter alia*:  (i) 2/19/13 branch payment of $811.68 (past due amount of $750.68; late fees of $60.60) and (ii) 2/19/13 mail payment of $203.59, which was reversed due to 2/26/13 stop payment).  *See* Motion at Ex. 9.  While Plaintiffs assert that the term "raises more questions than it answers", as explained by M&T's very next sentence, "[b]reakdowns of any other amounts that Daisey paid are in the possession of third-parties, or Daisey himself, and M&T does not have access to the same."  M&T cannot attest to information it does not know.

### 12.    **Interrogatory No. 12**

In Interrogatory No. 12, Plaintiffs requested a breakdown the Payoff Prior to Auction Date (the "Payoff Amount") and the Auction Expense itemization (the "Auction Amount") as listed in the Post-Sale Notice.  *See* Motion at 25.  M&T's response satisfies this request because the breakdown is clearly set forth in the notice itself.

While that the notice does not include the exact phrase "payoff prior to auction", it does explicitly state that the breakdown was for the payoff "*before we sell [the vehicle]*".  *See* Motion at Ex. 7 to Ex. 6.  This clearly references the "payoff prior to auction" and any argument to the contrary is in bad faith.  A detailed itemization of that payoff is then provided.  *See id*.  While that the exact $7,086.95 figure does not appear in that breakdown, it does state that "the amount of finance charges [] owe[d] will increase each day."  *Id.*  Finally, as M&T does not hold the auctions it therefore does not "calculate" the Auction Amount.

### 13.    **Interrogatory No. 13**

Plaintiffs fail to identify any deficiency in M&T's response and instead (again) request answers to questions not posed in Plaintiffs' original interrogatory.  *See* Motion at 25.  Here, Plaintiffs asked M&T to provide the criteria for demining the "expense" listed on the Notice of

Repossession.  *Id.*  Yet, Plaintiffs' Motion requests that M&T "explain whether this 'estimated' expense has been included in the amounts which the Bank charged-off for accounting purposes and whether any punitive class member who redeemed their vehicle or reinstated their account actually paid this 'estimated' expense".  *Id.* at 26.  This is not covered by Plaintiffs' original interrogatory, and the fact that Plaintiffs have now raised new questions does not mean that M&T's initial response was inadequate.  This request would also be premature and unduly burdensome as it would amount to an improper request for class-wide discovery.

### C.    M&T FULLY RESPONDED TO PLAINTIFFS' DOCUMENT REQUESTS

Plaintiffs next outline their perceived deficiencies in M&T's document production, including the enumeration of almost thirty specific documents that they demand be produced. M&T, however, does not possess the vast majority of the requested documents and M&T simply cannot produce what it does not possess—nor is it obligated to do so under the Federal Rules of Civil Procedure.  Further, those documents requested by Plaintiffs that M&T does possess have either already been produced or again amount to an improper attempt to obtain premature and unduly burdensome class-wide discovery.

### 1.    Requests No. 1-5

Plaintiffs' Requests No. 1-5 all request specific itemizations of expenses claimed on notices sent to the named Plaintiffs.  *See* Motion at 26-29.  Plaintiffs assert that M&T's responses are deficient because M&T has not produced screen shots of the "Sold Expense Screen" from M&T's computer system.  *Id.*  M&T, however, has produced these documents, rendering Plaintiffs' arguments moot.  *See* Section III(B)- Interrogatory No. 7, *supra*.[10]

### 2.    Request No. 6

---

[10] Plaintiffs in fact acknowledge that they may already have these documents, as they add the qualifier of "if not provided in the most recent production".

Plaintiffs next take issue with the fact that M&T has not yet produced a sampling of all classes, as demanded in Request No. 6. *See* Motion at 30. M&T stands by its objections and responses, predominately for the reasons set forth in response III(B)- Interrogatory No. 2, *supra*.

Plaintiffs have also grossly misstated Judge Beetlestone's January 11, 2018 Scheduling Order. This Order does not, as Plaintiffs suggest, "clearly set forth all the parameters of the random sampling", nor does it demand that M&T "produce a random sampling of 20% of the potential punitive class members [sic] files". *Id.* at 29. Rather, Judge Beetlestone's Order states:

> The conference ***shall discuss*** all relevant e-discovery issues including the search methodology, the format of the potential class member(s)' files to be produced, the time frame needed to generate a random sample of account numbers and to produce a random sample of 20% of the potential punitive class member's files (as described in Par 3. Above) and other information sought in Paragraph 6, including whether the production can be conducted on a rolling basis, and other relevant details.[11]

*Id.* at Ex 4, p. 3 (emphasis added). The paragraph ends: "No production of the files of the potential class members besides the named Plaintiffs need to be proceeded until further order of the Court." *Id.* Thus, the Scheduling Order set the 20% sampling benchmark specifically to determine its feasibility. Plaintiffs were fully aware of this on July 3, 2018, when they wrote to M&T regarding the same. *See* Ex. C. This is further evidenced by M&T's previous correspondences to the Court, including its July 13, 2018 letter to Judge Beetlestone and its Meet and Confer Letter to Your Honor, where M&T explained that a 20% class sampling is not feasible given the volume of information requested. *See* Motion at Ex. 9.

Despite Plaintiffs' apparent disbelief, the following facts are not in dispute: There are

---

[11] While Plaintiffs consistently and misleadingly bold the portion of the order stating "to produce a random sample of 20%", they fail to bold the portion that immediately proceeds it, *i.e.*, that "The conference ***shall discuss***…***the time frame needed to generate*** a random sample of account numbers and to produce a random sample of 20%".

approximately 3,946 potential members of the classes, 20% of which is 789 individuals.  M&T's production relating solely to the four named plaintiffs yielded almost 19,000 pages (about 4,750 pages per plaintiff).  By extrapolation, the same production for 789 more customers would yield just under four million pages of documents, which would undoubtedly take thousands of hours of internal bank employee and outside counsel time to produce as each class member must be searched for manually.[12]   In light of this, M&T has repeatedly suggested that the class sampling be reduced to a total of 150 accounts (50 for each NOR class), and that the scope of the documents to be produced be narrowed in a manner which provides plaintiffs the documents that they actually need, while minimizing the burden and expense on all parties—at which point M&T will be able to fully respond to Request No. 6.

       3.    **Request No. 7**

Plaintiffs demand production of any complaint filed in any jurisdiction relating to "any aspect of [M&T's] policy(s), practice(s), or procedure(s) of vehicle repossession…collection of DEFICIENCY balances, and/or a challenge to a notice of repossession or Explanation of Calculation of Surplus or Deficiency".  *See* Motion at 30.  M&T stands by its objections.

First, for the reasons set forth in Section III(B)- Interrogatory No. 2, *supra*, this request is premature and unduly burdensome, as it would require improper class-wide discovery.  Further, despite Plaintiffs assertion that these documents are relevant due to Plaintiffs' allegation that M&T's alleged violations are "part of a pattern or consistent with a practice of noncompliance" under 13 Pa.C.S.A. § 9625(e)(5), Plaintiffs fail to explain how from other states are relevant to M&T's alleged non-compliance with a Pennsylvania statute.  Similarly, it does not stand to

---

[12] Indeed, as Plaintiffs are aware, some of M&T's databases do not have the ability to generate reports or other "outputs" for their documents, and as such M&T has had to manually screen shot each screen in the databases for each named Plaintiff.

reason that matter relating to any M&T policy, practice, or procedure (regardless of its applicability to the potential class) would be relevant to the subject suit.  Finally, any such complaints are matters of public record and therefore, to the extent they exist, are just as readily obtainable by Plaintiffs as they are by M&T.

4.    **Request No. 8**

In Request No. 8, Plaintiffs request templates and/or exemplars for any Repossession Notices and Post-Sale Notices.  *See* Motion at 31.  As acknowledged by Plaintiffs, M&T has produced the same for its Repossession Notices.  M&T is in the process of reviewing its records to confirm whether any additional Post-Sale Notices may exist.

5.    **Request No. 9**

Plaintiffs next request exemplars for "each retail instalment sale contract ("RISC") that was assigned to [M&T] at any time during the CLASS PERIOD."  Motion at 32.  M&T stands by its objection.   First, Plaintiffs request is not limited to Pennsylvania borrowers, to auto loans, or to the potential class and it is wholly unclear what relevance, for example, an exemplar RISC for the purchase of a yacht in New York, would have on this matter.   More importantly, however, Plaintiffs have only requested exemplars of RISC's that have been "***assigned to*** [M&T] during the class period."   M&T does not maintain exemplars of non-M&T originated RISCs.  Rather, those exemplars would be in the possession, custody, and control of the assigning party.  The RICS relevant to the class will inevitably be produced in connection with the class-wide sampling, once the parameters of the same are determined.

6.    **Request No. 10**

Request No. 10 vaguely requests all documents that "tend to substantiate" M&T's responses to interrogatories.  *See* Motion at 32.  Plaintiffs, however, do not actually claim that M&T has withheld any responsive documents, but instead only reiterate their request for

production relating to any newly provided answers to interrogatories.  This is an improper basis

for asserting that M&T's prior response was inadequate.

7.     **Request No. 11**

Plaintiffs claim that M&T's response is inadequate because "Plaintiffs would like M&T

to fully answer this discovery request which includes the Bank's correspondence to and from any

insurer relating to the claim."  *See* Motion at 33.  As M&T has repeatedly stated, it is not aware

of any insurer that may be liable to satisfy Plaintiffs' claims and therefore there are no

documents responsive to this request.  Specifically, Request 11 states as follows:

> ***With respect to any and all insurance policies*** or any other contractual
> arrangements ***which may obligate*** any insurance company or any other
> PERSON, firm, or corporate, to provide to YOU, any investigative
> services, a legal defense or any insurance coverage, indemnification,
> reimbursement or contribution for any of the liabilities alleged in this
> action, ***please provide the following DOCUMENTS***:

Motion at p. 32 (emphasis added).  Thus, because there are no insurance policies (or contractual

arrangements) "which may obligate" anyone to provide M&T coverage (or benefit) for

Plaintiffs' claims, there are no documents for M&T to provide and M&T's response is sufficient.

8.     **Request No. 12**

Despite the fact that it is difficult to imagine a more impermissibly vague and overbroad

request than one that essentially just requests all relevant documents, as Request 12 does, M&T

has fully responded to this request.  Specifically, Request 12 demands:

> ADOCUMENTS, including autoIMS DOCUMENTS, that in any way
> CONCERN, refer, relate to, or discuss any of the Representative Plaintiffs
> or their repossessed vehicles, including all electronically stored
> information, all communications with any entity that provided any goods or
> services in connection with the repossession, storage, transportation, repair,
> reconditioning, retitling, redemption, preparation for sale  and/or sale of
> any of the Plaintiff(s) repossessed vehicles and/or reinstatement of their
> respective subject loan.

Motion at 33.  M&T produced all responsive documents.  Corresponding bates labels were not

provided, as this request is so expansive that essentially every document produced is responsive.

Plaintiffs next argue that M&T's response is inadequate because of M&T's alleged failure to produce 27 specifically enumerated documents—most of which do not fall within the above Request.  For example, Plaintiffs' demand for over a dozen of M&T's internal policies and procedures (while requested elsewhere) is not encompassed by the above request.  Accordingly, it is unclear how most of these documents in anyway relate to the adequacy of M&T's response to Request 12.  M&T will nonetheless address each demand in turn.

### i.   "Earlier and later versions" of Policies and Procedures (a-m)

M&T has already produced all versions of these documents that are in its possession.  To the extent the produced policies and procedures reference prior iterations, M&T is not in possession of those versions.  As M&T does not possess these documents, Plaintiffs' request for an evidentiary hearing to "discern the whereabouts of these documents" should be denied.

### ii.   "Excel logs"- (n)

No such documents with respect to the Plaintiffs exist.

### iii.   Templates and/or Exemplars- (o) and (x)

*See* M&T's Response to Requests No. 8-9, *supra*.

### iv.   "Agent Covered Fees Excel Spreadsheet"- (p) and (s)

Plaintiffs have never requested any such document in their discovery requests.  Further, the production of any such document is not required by any Court Order.

### v.   "Sold Expense Screen"- (q)

*See* M&T's Response to Requests No. 1-5, *supra*.

### vi.   Agreements with Third Party Vendors/Affiliates- (r)

As previously stated, M&T has produced all contracts and agreements that it has been able to locate in effect during the six year period prior to the filing of the Complaint with any

vendor involved with the repossession and sale of vehicles in Pennsylvania that M&T has in its possession, custody, or control.  To the extent any additional responsive documents are located, the same will be produced pursuant to M&T's ongoing duty to supplement.

### vii.   "Redemption Specialist Notes"- (t)

"Redemption Specialist Notes" are not individual documents that can be produced. Rather, as shown in M&T000984, "Redemption Specialist Notes" references a box in the system where a user can input information.  *See* Motion at Ex. 10.  Screenshots of the Plaintiffs' Locus notes and collection histories have already been produced and therefore would necessarily already include any "Redemption Specialist Notes" that had been inputted.

### viii.   "Unredacted copies of Bates 000973-4 and 000979-80- (u)

The referenced documents do not contain any redactions.

### ix.   Legible and Color copies of Produced Documents- (v)-(w)

Plaintiffs request legible and/or color copies of various documents, "to the extent not provided".  *See* Motion at p. 37.  M&T has already produced such documents.

### x.   "Copies of all versions of 'State requirements'"- (y)

Plaintiffs appear to be requesting that M&T explain to them the various state requirements relevant to notices of repossession and post-sale notices sent to potential putative class members.  Such a request is improper.  Further, to the extent that Plaintiffs are seeking M&T legal work product, such documents would be protected by the work product doctrine.

### xi.   "Quality Review Forms"- 6(z)

Plaintiffs fail to explain what they mean by "'Quality Review Forms' which were completed, reviewed, or discussed at any time during the Class Period which concern any Notice of Repossession or Post-Sale Notice used at any time during the Class Period."  Further, to the extent this phrase was obtained a screenshot of one of the named Plaintiffs' files, this request

would amount to a premature and unduly burdensome request for class-wide discovery.  *See* Section III(B)- Interrogatory No. 2, *supra*.

### xii.   All versions of the "Storage Fee Page"- 6(aa)

This request was not included in Plaintiffs' document requests, or required to be produced pursuant to this Court's orders.  Rather, this request is a supplemental inquiry as a result of the discovery exchanged to date.  This is not only an improper basis for asserting that M&T's response was insufficient, but it is also an improper method of requesting supplemental discovery.  Further, to the extent the "Storage Fee Page" was referenced in a screenshot of one of the named Plaintiffs' files, this request would amount to a premature and unduly burdensome request for class-wide discovery.  *See* Section III(B)- Interrogatory No. 2, *supra*.

### 9.   **Request No. 13**

Plaintiffs broadly request documents that "CONCERN, relate, pertain, or discuss M&T's Bank's policies, practices, and/or procedures in effect at any time after September 22, 2011 with respect to repossession…".  *See* Motion at 38.  M&T stands by its objections and response.

First, M&T has already produced all policies, practices, and/or procedures responsive to this request.  *See* Section III(C)(h)(i)-Response to Request 12, *supra*.  To the extent the documents requested relate to documents concerning individual class members, this request is premature and unduly burdensome.  *See* Section III(B)- Response to Interrogatory 2, *supra*.

Additionally, despite Plaintiffs' assertion, M&T is not strictly required under Rule 34 to provide specific bates labels in response to every request.[13]  Indeed, "[c]ourts in this district have consistently found [] that the producing party is not "obligated to organize documents produced

---

[13] Rule 34 seeks to "prevent[] attempts to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents."  *See Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, No. CIV.A. 09-6435 FLW, 2011 WL 1466369, at *12 (D.N.J. Apr. 18, 2011).  There is no allegation that M&T has attempted to do the same here.

to correspond with the categories identified in plaintiff's discovery requests." *Bala City Line, LLC v. Ohio Sec. Ins. Co.*, No. 16-CV-4249, 2017 WL 3443218, at *3 (E.D. Pa. Aug. 9, 2017). Rather, the producing party may simply produce documents as they are kept in the ordinary course of business. *Id.* Non-compliance with Rule 34 will only be found if that production is "so deficient as to undermine the usefulness of production". *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-CV-00946, 2015 WL 5042918, at *3 (E.D. Pa. Aug. 26, 2015) ("The standard this Court will use in determining what is required [under Rule 34] will be whether the production allows the requesting party ***to reasonably determine what documents are responsive to its requests***") (emphasis added) (internal citations omitted). Plaintiffs have not alleged that they are unable to determine what documents are responsive to this request, nor could they. Indeed, by requesting other versions of these policies and procedures (the existence of which Plaintiffs learned of in reviewing the documents produced in response to this request), Plaintiffs have admitted that they were able to determine which documents were responsive to this request.

10.   **Request No. 14**

Plaintiffs next request M&T's contracts and agreements with third party vendors during the relevant class period. *See* Motion at 39. As previously stated, M&T has produced all contracts and agreements that it has been able to locate in effect during the six year period prior to the filing of the Complaint with any vendor involved with the repossession and sale of vehicles in Pennsylvania that M&T has in its possession, custody, or control. To the extent any additional responsive documents are located, the same will be produced pursuant to M&T's ongoing duty to supplement.

11.   **Request No. 15**

Request No. 15 demands "an organizational chart showing departments and/or personnel involved with the repossession of vehicles, the resale of repossessed vehicles, the collection of

23

deficiency balances on accounts with repossessed vehicles." *See* Motion at 40.  M&T stands by its objections.  While Plaintiffs "insist" that M&T produce such a chart, Plaintiffs have failed to limit their request in either time or scope (*i.e.*, to the relevant class period or the geographic area at issue), making their request improper.

12.   <u>**Request No. 16**</u>

Request No. 16 demands production of any documents which substantiate the criteria identified by M&T in response to Interrogatory No. 13.  *See* Motion at p. 40.  M&T's response, however, did not set forth any criteria, and therefore there are no such documents available.

13.   <u>**Request No. 17**</u>

In their final, overly broad "catch-all" request for production, Plaintiffs demand all documents M&T referenced or relied upon when drafting its Answers to Interrogatories.  *See* Motion at 41.  Again, Plaintiffs do not identify any specific deficiency with regards to M&T's response.  Instead, Plaintiffs now demand, without citation to any rule or authority in support of the same, a "separate verification to this effect".  *Id.*  This is an improper request, and not a reason to deem M&T's response inadequate.

**D.  M&T'S PRIVILEGE LOG IS PROPER AND SUFFICENT**

Plaintiffs allege several inadequacies in M&T's privilege log—each of which are wholly without merit, as explained below.   Indeed, M&T's counsel has had numerous prior conversations with Plaintiffs' counsel explaining these exact issues.

First, Plaintiffs allege that the log is "virtually indecipherable," because "the bank is using a different nomenclatures" such that the privilege log numbers do not match the Bates numbers.  *See* Motion at 41-42.  While factually correct, as M&T previously explained to Plaintiffs' counsel, including in a letter dated May 23, 2018, "the ***Relativity ID for a particular document is not the same as a document's Bates Number***, if any.  ***Documents withheld on the***

24

***basis of privilege have not been assigned Bates Numbers***."  A true and correct copy of the May

23, 2018 Letter is attached hereto as **Exhibit F** (emphasis added).  Not only does the privilege

log indicate that the document is being referenced by "Relativity ID", and not bates number, but

the naming convention is different:  M&T's Relativity IDs begin MT0000001, while its Bates

production begins M**&**T000001.  All of this has been explained to Plaintiffs.

Second, Plaintiffs argue that the amended privilege log fails to provide any details

regarding the "date/time" the correspondence sent, the sender or recipient, or description of the

document.  *See* Motion at 42.   This argument is similarly, and deliberately, misleading.

Specifically, Plaintiffs only attach pages 16-39 of the amended privilege log—which, admittedly,

consists of entries that do not expressly contain the above information.  *Id.* at Ex. 11.  Plaintiffs,

however, fail to attach the preceding page, which shows not only why that information was not

expressly included in those entries, but also provides the information Plaintiffs claim is

missing.[14]  The last two entries on page 15 read as follows[15]:

| Relativity ID | Privilege Designation | Attorney Review Comments | Sort Date/Time | File Extension | Email From | Email To | Date/Time Sent |
|---|---|---|---|---|---|---|---|
| MT0000352 | ACC/WP | ACC/AWP in connection with preparation of analysis regarding repossessions at the request of counsel | 11/29/2017 12:16 | | "Fries, Kenneth <"/o=exchangeprod/ou=exchange administrative group (fydibohf23spdlt)/cn=recipients/cn=ecokf1"> | "Simon, Bill" <wsimon1@mtb.com> | 11/29/2017 12:16 |
| MT0000353 | ACC/WP | ACC/AWP in connection with preparation of analysis regarding repossessions at the request of counsel | 11/29/2017 12:16 | pdf | | | |

The first entry, MT0000352, indisputably provides the information that Plaintiffs allege

to be missing: (1) the basis of the privilege; (2) the date/time sent; and (3) the sender(s) and the

recipient(s).  M&T concedes that the next entry, MT0000353 (as well as every entry thereafter

from pages 16-39), list only the basis of the privilege and the date time sent.  However, it also

---

[14]  For the Court's convenience, M&T has inserted two relevant entries directly into its
Opposition.  A full copy is attached as Exhibit B.

[15]  In addition to including the last two entries from page 15 of the table, M&T has also included
the table's heading bar (included on the top of every page), which indicates exactly what type of
information is being provided in each cell.

includes a file extension type—here, pdf.  As counsel for M&T has explained to Plaintiffs'

counsel on numerous occasions for an inordinate amount of time (including during an e-

discovery conference in which the parties went through the entries one-by-one), this indicates

that the document was sent as an attachment to the prior email.  Thus, the date/time sent and the

sender(s) and recipient(s) for MT0000353 (as well as for every entry on pages 16-39) are

necessarily the same as MT0000352, the email to which it was attached.  Plaintiffs' counsel is

undeniably aware of this and to argue otherwise now is a clear attempt to mislead this Court into

providing him with communications protected by attorney-client privilege.[16]  Accordingly, M&T

has provided a proper and adequate privilege log and has not waived any claimed privilege.

Plaintiffs' request to compel M&T to produce these documents, regardless of privilege, should

therefore be denied.

Finally, Plaintiffs object to the fact "that on May 11, 2018, M&T produced 19,667 pages

of discovery, 90% of which was entirely blacked out, but [M&T] has provided no privilege log at

all for this set of documents.  *See* Motion at 43.  But these redactions are not based upon

---

[16] Aside from the first ten entries (which Plaintiffs do not take issue with), each communication on the privilege log occurred post-complaint, which consistent with the Third Circuit's reasoning in *Grider v. Keystone Health Plan Cent., Inc.* need not be included in the privilege log at all.  580 F.3d 119, 140 (3d Cir. 2009) ("We underscore that a privilege log may not be required for communications with counsel that take place after the filing of a lawsuit.").  The reasoning is simple: "requiring creation of an ongoing log of all post-complaint privileged communications would have a chilling effect on the attorney-client relationship".  *Id.*  Thus, "in most litigations, counsel will agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced."  *Id.*; *See also Murphy v. Allen Co., Inc.*, No. 5:09-CV-69-JBC, 2011 WL 13193320, at 3 (E.D. Ky. Jan. 7, 2011), *objections overruled*, No. CV 09-69-JBC, 2011 WL 13196154 (E.D. Ky. May 12, 2011) (collecting cases of courts that "treat post-litigation correspondence as presumptively privileged and outside the normal privilege log requirement"); *U.S. v. Bouchard Transp.*, No. 08-CV-4490 NGG ALC 2010 WL 1529248, at 2 (E.D.N.Y. 2010) ("[P]rivilege logs are commonly limited to documents created before the date litigation was initiated"); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, No. c 06-3219 JW (RS) 2009 WL 5114077, at 3 (N.D. Cal. 2009) ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log").

privilege.  Rather, they contain names and confidential financial information of tens of thousands of uninvolved M&T borrowers.  *See* Ex. A (letter to Plaintiffs' counsel explaining that "[i]nformation pertaining to customers other than the named plaintiffs is appropriately redacted from the production…")  Therefore, M&T did not waive any "privilege" by not including this redaction in its privilege log – but, even if M&T did, this Court should deny Plaintiffs' request to waive such a "privilege", as Plaintiffs simply are not entitled to the personal and financial information of tens of thousands of unrelated M&T customers.[17]

### E. PLAINTIFFS' DEMAND FOR ACCESS TO ALEX WILSHAW AND KENNETH FRIES IS ENTIRELY UNJUSTIFIED

Finally, while Plaintiffs do not set forth any legal argument regarding the adequacy of M&T's e-discovery liaison, both Plaintiffs' procedural history section and exhibits reference this.  Plaintiffs' argument lacks any merit.

M&T's appointment of Richard Kaminski as its fully qualified e-discovery liaison, was entirely proper.  Plaintiffs would rather be permitted access to M&T's in-house Digital Forensic Investigator, Alex Wilshaw.  Mr. Kaminski, however, fully satisfies all requirements to be e-discovery liaison.  For this reason, Plaintiffs' apparent belief that Mr. Wilshaw would be "better" qualified, is irrelevant.  Plaintiffs should not be allowed to dictate the identity of M&T's e-discovery liaison based solely on Plaintiffs' consultant's extensive mischaracterizations of the conferences the parties have held.  *See* Motion at Ex. 3.

As M&T has discussed more fully in its Reply in Further Support of its pending Motion for a Protective Order, Mr. Kaminski, Vice President of Technical Services at Avalon Document Services, is fully qualified to serve as M&T's e-discovery liaison.  Not only does Mr. Kaminski

---

[17] In order to redact out this confidential information, these records were produced in .pdf form, rather than in native excel format.  Plaintiffs' demand for the production of this (and any other document) in native form is improper as Plaintiffs have not shown (nor alleged) that they have a "particularized need" for the same, as required by this Court's Order.  *See* Motion at Ex. 2.

have over seven years of general experience in management positions concerning electronic discovery and data processing, but he was fully educated on M&T's specific data systems, and was available to educate Plaintiffs' counsel and his hired consultant regarding these systems.

Plaintiffs do not argue otherwise.   Instead, Plaintiffs allege that Mr. Kaminski's explanations regarding M&T's systems were inadequate, and Plaintiffs now demand unfettered access to numerous M&T employees.  This contention is entirely without merit.  Mr. Kaminski participated in two, separate conferences, and provided Plaintiffs with detailed explanations of each of M&T systems and databases.  The fact that Plaintiffs' counsel and consultant may not have fully understood Mr. Kaminski's repeated explanations does not require the entire e-discovery liaison process to be set aside.

Further, Plaintiffs complain that Mr. Kaminski oversaw, but did not personally perform the searches for the electronically stored documents – but the Court's Order Governing Electronic Discovery actually presumes that this would be the case, as the Order allows designation of a third party consultant as a liaison.  *See* Motion at Ex. 2.  There is simply no requirement that the e-discovery liaison be the individual who conducts the searches.  To the contrary, the whole purpose of appointing an e-discovery liaison is specifically to avoid M&T employees having to spend their work day addressing Plaintiffs' concerns regarding the inner workings of M&T's systems and databases or the adequacy of its document production thus far.

In sum, Mr. Kaminski has been properly educated on M&T's data systems, and has been available to educate Plaintiffs.  Plaintiffs should not be able to improperly expand M&T's discovery obligation in a manner that the Court's authorization of a designated liaison necessarily prohibits under the guise of a conclusory and self-serving "expert" affidavit.  For this reason, M&T respectfully requests that this Court deny Plaintiffs' request to mandate the

attendance of Mr. Wilshaw at future discovery conferences.

Plaintiffs' demand for access to Kenneth Fries, an M&T Vice President, at any discovery conference is even more inappropriate.  Plaintiffs provide no legal support for their conclusion that they are entitles to force Mr. Fries to appear before this Court because he has assisted with the preparation of discovery.

### F.  PLAINTIFFS' REQUEST FOR SANCTIONS SHOULD BE DENIED

Plaintiffs assert that M&T should be sanctioned due to its "repeated failures to answer Plaintiffs' discovery requests".  *See* Motion at p. 44.  Plaintiffs specifically request that M&T "be precluded from bringing or supporting counterclaims or affirmative defense of setoff, recoupment, or breach of contract" and additionally request that "M&T should be deemed to have admitted paragraphs 37, 38, 43, 44, 45, 53 and 59" of the Amended Complaint.  *Id.*

Plaintiffs' request should be denied.  Not only is the request without merit, but also amounts to an attempt to have this Court reconsider its denials of Plaintiffs' prior Motion to Strike, and Motion to Deem Denials as Admissions—both of which were found to be meritless and properly denied by this Court.  *See* D.I. 85 and 86.[18]

First, for the reasons set forth throughout this Opposition, M&T has properly and adequately responded to Plaintiffs' discovery requests.  Accordingly, M&T has not committed any sanctionable conduct.  Further, Rule 37(b), the only rule cited by Plaintiffs that allows for sanctions (Rule 37(a) governs only the ability to compel a party, not sanction them), first

---

[18] While Plaintiffs now couch their request to strike M&T's affirmative defenses and counterclaims in terms of discovery sanctions, the vast majority of Plaintiffs' argument as to why M&T's denials should be deemed admissions simply repeats the arguments (irrespective of the issue of sanctions) previously advanced by Plaintiffs and denied by this Court.  In light of the same, M&T will not address Plaintiffs' arguments regarding the sufficiency of M&T's denials.  To the extent this Court would like additional briefing on this issue, M&T respectfully requests the opportunity to submit a supplemental reply to respond to the same.

requires M&T to have violated an Order Compelling Discovery under the rule.  *See, e.g., Robert Billet Promotions, Inc. v. IMI Cornelius, Inc*., No. CIV. A. 95-1376, 1998 WL 150957, at *1 (E.D. Pa. Mar. 30, 1998) ("In the event that a party defies a Rule 37(a) order, Rule 37(b) authorizes the court to punish the offender with sanctions.)  M&T has not done so.

Moreover, it is well-settled the court should always consider whether a less severe sanction is appropriate.  *See In re Huertas v. U.S. Dept. of Educ*., 408 Fed.Appx. 639, 2010 WL 5065224 at *1 (3d Cir. 2010).  Striking affirmative defenses and modifying a party's pleading are undeniably drastic remedies that should be used sparingly by the courts.  *See e.g. N. Penn Transfer, Inc. v. Victaulic Co.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994).  Such harsh remedies would be especially unwarranted here in light of the fact that discovery is only just beginning. Indeed, the gravamen of Plaintiffs' sanctions argument is that because certain discovery has not yet been produced, M&T should be precluded from defending its case and asserting its claims. The parties, however, have nearly a full year of discovery left and have not yet engaged in class discovery.  *See* Section II(B)- Interrogatory No. 2 and Section II(C)- Request No. 6, *supra*. Accordingly, Plaintiffs' request for sanctions should be denied.

**IV.    CONCLUSION**

For all of the foregoing reasons, Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank respectfully requests that this Court deny Plaintiffs' Motion to Compel Discovery and Impose Sanctions.

*Respectfully submitted,*

**PARKER IBRAHIM & BERG LLP**

/s/ Scott W. Parker
Scott W. Parker, Esq.

Dated:  October 1, 2018

30