# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD R. FLYNN, CATHERINE HOSICK, DOUGLAS ABBOTT and GENE E. DAISEY, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK,<br><br>Defendant. | Case No: 2:17-cv-4806-WB<br><br>Class Action |

## DEFENDANT MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK'S MEMORANDUM CLARIFYING OBJECTIONS IT MADE DURING THE OCTOBER 26, 2018 EVIDENTIARY HEARING

**DRINKER BIDDLE & REATH LLP**
Alfred W. Putnam, Jr., Esq.
Michael P. Daly, Esq.
One Logan Square
Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

**PARKER IBRAHIM & BERG LLP**
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
Marissa Edwards, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Facsimile: (267) 908-9888

*Counsel for Defendant,
Manufacturers and Traders Trust Company
a/k/a M&T Bank*

I. **INTRODUCTION**

Your Honor has requested written briefing on certain objections asserted by M&T at the October 26, 2018 Hearing. As set forth below, M&T withdraws its objections to the production of (1) "redacted spreadsheets", subject to agreement of the parties on the issues below, and (2) system manuals, subject to the limitations outlined below. M&T, however, strenuously objects to Plaintiffs' request for access and inspection of M&T's computer systems ("Inspection Request"). This request is extreme, unwarranted, and entirely disproportionate to the needs of this case.

First, Plaintiffs have not even taken the requisite first step of serving a formal Inspection Request to M&T, as required by Federal Rules of Civil Procedure (the "Rules") Rule. 34. For this type of serious intrusion into M&T's computer systems, Plaintiffs should be required to comply with the Rules and serve a document request that identifies exactly what they are seeking, so that M&T can provide a formal response, including objections, in accordance with the Rules. Instead, they have sought to circumvent this requirement through their vague oral request for "just the opportunity to do a remote access."

Second, even assuming that Plaintiffs were to correct their procedural defect and issue a formal request under the Rules, such a request must still be denied. Under the Rules, this type of direct access should only be permitted in those cases that are truly exceptional. That is not the case here. Indeed, none of the claims or defenses here hinge upon the operation of M&T's internal, computer systems: Plaintiffs have alleged that they are entitled to statutory damages because M&T misled or overcharged them by including certain expenses on a written notice. The universe of discovery Plaintiffs need to try to prove that claim is quite limited: (1) specific documents relevant to each plaintiff (*e.g.*, Retail Installment Sales Contracts, Repossession

2

Notices, Post-Sale Notices, and records of repossession-related charges/expenses); (2) certain vendor agreements; and (3) certain policies and procedures. What they do not need – and what is plainly outside that universe of relevant discovery in a case of this kind – is a detailed understanding of how data is stored or accessed on M&T's computer systems, which contain highly confidential financial records of millions of M&T customers, including personal identification information ("PII"), such as social security numbers, dates of birth, credit information, personal income information, etc. Plaintiffs have not demonstrated, at this early stage, how any of this information is relevant to their case. Nor does their request come close to satisfying Judge Beetlestone's order governing electronic discovery, which provides that such inspections under Rule 34(b) "shall not be permitted, absent exceptional circumstances where good cause and specific need have been demonstrated."

Third, there are multiple other, much less intrusive methods for Plaintiffs to obtain the discovery that they are seeking. As set forth in greater detail below, M&T is willing to withdraw its objections to the production of system manuals, if any, for the nine systems[1] identified at the hearing, subject to their designation as confidential, and assuming they are in fact within M&T's possession, custody and control. Further, Plaintiffs will have the chance to conduct Rule 30(b)(6) depositions to inquire about each of those systems. In sum, there is simply no need for Plaintiffs to be allowed such invasive access to M&T's proprietary systems, when they can acquire the same information in other, less intrusive, more reasonable ways.

---

[1] These systems are (1) Locus; (2) Shaw; (3) AutoIMS; (4) CACS; (5) CAFE; (6) On-Demand; (7) SharePoint; (8) FileNet; and (9) Columbia Ultimate.

3

II.     ARGUMENT

    A.     **M&T DOES NOT OBJECT TO PRODUCING NEW SPREADSHEETS AS REQUESTED BY THE COURT AT THE EVIDENTIARY HEARING**

During the Evidentiary Hearing, Plaintiff's counsel spent a significant amount of time discussing M&T's production of several voluminous spreadsheets. Plaintiffs' counsel alleged that these were "redacted spreadsheets", because they were produced as redacted TIFFs rather than in native Excel format. These documents – M&T001675-M&T019668 – were produced solely based upon the requirement that M&T produce documents that reference the named Plaintiffs, not because they are in any way actually relevant to Plaintiffs' claims. The vast majority of the cells in those spreadsheets (over 99%) contain the personal financial information of tens of thousands of M&T customers, which is wholly unrelated to this lawsuit. Plaintiffs have provided no evidence to support their right to access this information. On the contrary, M&T is obligated to keep the personal data of its customers secure.

By way of example, the Gramm-Leach-Bliley Act ("GLB") strictly prohibits a financial institution such as M&T from disclosing the personal information of its consumers. *See* 15 U.S.C. § 6801 ("[E]ach financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."); *see also Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 83 (3d Cir. 2007), *as amended* (Mar. 7, 2007) (discussing GLB's "prohibition on disclosure of consumer financial information to unaffiliated third parties," and whether this prohibited defendant from releasing subpoenaed information); *Heritage Surveyors & Engineers, Inc. v. National Penn Bank*, 801 A.2d 1248, 1252-53 (Pa. Super. 2002) (a bank has an affirmative duty to keep its borrowers' financial information confidential); *McGuire v. Shubert*, 722 A.2d 1087, 1091-92 (Pa. Super. 1998) (causes of action for breach of confidentiality and invasion of privacy

4

available following a bank employee's disclosure of its customers' account information). These obligations do not disappear simply because there is a confidentiality order in place. To the contrary, they apply strictly here: Plaintiffs are *themselves* "nonaffiliated third part[ies]." The disclosure of personal data to them is prohibited, regardless of whether they are then required to keep it confidential.

The only way that M&T could comply with Plaintiffs' request, while simultaneously protecting (as it must) its customers' personal data from disclosure, was to produce the documents in PDF or TIFF format and redact the personal data of all consumers, other than the named Plaintiffs. *See Chao*, 474 F.3d at 87 n. 6 (noting that the defendant's obligations under GLB would be satisfied by the "pre-production redaction of personal information from the requested document … because there would not be a release of personal financial information"). But, as M&T's e-discovery liaison testified at the evidentiary hearing, it is impossible to redact an Excel spreadsheet: instead, the data would have to be deleted, thus altering the contents of the documents themselves. *See* Mot. Compl. Hr'g Tr., 31:15-20, Oct. 26, 2018.[2] Accordingly, in order to produce the documents in a format that did not otherwise alter the documents, M&T had to convert the excel files into TIFF format. A TIFF or PDF document converts a native file (*e.g.*, Word or Excel) to a digital picture of the entire file; a TIFF or PDF is akin to the pre-e-discovery practice of lawyers taking a piece of paper with handwritten notes on it, photo copying the document, and then producing the photocopy. Once a native document is converted to a TIFF, M&T's counsel could then perform the necessary redactions.

Contrary to Plaintiffs' suggestion that M&T expended this effort to "bury Plaintiffs in paper," the fact is it had no choice if it was going to avoid doctoring the contents of documents.

---

[2] Relevant portions of the transcript of the October 26, 2018 Evidentiary Hearing are attached hereto as Exhibit A.

While it might have been "simpler" for M&T to have removed the irrelevant rows at the outset rather than converting and redacting the entire spreadsheet, a party's discovery obligations are not governed by what is simplest, but by what is proper.  If M&T had done that and produced an altered document in response to Plaintiffs' demand for the full spreadsheet, there is little doubt that Plaintiffs' counsel would have charged the bank with document tampering.

Now that this Court has ordered M&T to produce new spreadsheets containing only the personal data of the representative Plaintiffs, M&T is protected from any document tampering allegation.  M&T is therefore able to withdraw its objection to producing these new properly truncated spreadsheets in their native Excel format with metadata intact, and is in the process of preparing those documents for production.

M&T respectfully requests that the Court instruct Plaintiffs what they will receive, and what they will not receive, in response to their request for named plaintiff information in native format.  For example, one spreadsheet (Bates No. M&T008200) contains 23,308 lines of data and 15 columns of data.  At the Court's instruction, M&T's counsel will delete 23,298 lines of data relating to other customers (including metadata relating to those customers), and produce a revised Excel file consisting of 10 lines, with 15 columns, all of which either contain column headings or relate solely to the named plaintiff(s).

   **B.** **M&T DOES NOT OBJECT TO PRODUCING RELEVANT SYSTEM MANUALS TO THE EXTENT THEY EXIST AND CAN BE LOCATED AFTER A REASONABLE SEARCH**

During the Evidentiary Hearing, M&T's witnesses testified that information relevant to Plaintiffs' discovery requests are housed in the following nine M&T systems:  (1) Locus; (2) Shaw; (3) AutoIMS; (4) CACS; (5) CAFE; (6) On-Demand; (7) SharePoint; (8) FileNet; and (9) Columbia Ultimate.  *See* Mot. Compl. Hr'g Tr., 14:3-17; 139:1-2.

At the hearing, Plaintiffs asked for the production of manuals relating to the operation of these specific systems.  These documents were requested so that Plaintiffs could better understand:  (a) how these systems can be searched for documents and data relevant to this lawsuit, and (b) how those search results can be exported.  Plaintiffs argue that these documents should be produced because M&T's ability to search and export data from these systems underlies several of the discovery disputes currently pending before Your Honor via Plaintiffs' motion to compel.

M&T should first be permitted an opportunity to respond to discovery after the disputes have been resolved by Your Honor, before Plaintiffs' counsel starts to argue that M&T's discovery compliance warrants the production of these manuals.  In the interest of cooperation, however, M&T is willing to withdraw its objection to producing the manuals on the specific systems discussed at the Evidentiary Hearing, to the extent M&T has such documents or can obtain such documents, so long as the documents are designated confidential (both because many of the systems are proprietary, and because the improper distribution of such manuals could create privacy and data risks for M&T's systems.  M&T further expressly reserves its rights to assert objections to the disclosure of any particular manual, to the extent such is required, once these manuals have been obtained and reviewed by M&T.  Finally, M&T requests that the Court allow it to provide Plaintiffs access through secure means.

Of course, M&T continues to object to this request to the extent that it extends beyond these specific systems identified.  Indeed, Your Honor specifically instructed:  "I'm going to direct that operational manuals for the software that's involved, whether it's AutoIMS or the other software programs, be provided, if they exist." Mot. Compl. Hr'g Tr., 65:5-8.  Despite this express limitation, Plaintiffs' formal request is not limited to just those systems discussed at the

Evidentiary Hearing. Rather, Plaintiffs have instead requested manuals and/or instruction guides relating to 16 different systems.[3] While nine of those systems were discussed at the Evidentiary Hearing, the remaining seven have never even been discussed in relation to this lawsuit, much less have had their capabilities questioned. Specifically, the following systems have never been discussed or disputed in this lawsuit, and therefore Plaintiffs are not entitled to manuals on their operation: (1) Forms; (2) TPX; (3) Hogan; (4) AFS; (5) CLS; (6) Aspire (incorrectly identified by Plaintiffs as "Aspite"); and (7) Vintek.

The majority of these newly requested systems are not only wholly unrelated to the instant lawsuit, but in some cases, are not even systems maintained by M&T. By way of example, Vintek is a third-party website that M&T can use to look up lien or titling information on a vehicle, the CLS system is for leasing accounts and the AFS system is for business accounts. None of these systems have been made issue in this case, and Plaintiffs have not asserted any reason why they would need these manuals.

Instead, it appears that Plaintiffs have just pulled these names from various procedures that M&T produced. Even the most basic systems like Microsoft Word, or common websites like PACER, are expressly listed in these procedures if they were used to complete the task. But simply because a system, application, or website was used does not mean that Plaintiffs are entitled to all of their manuals and guides on their operations. Plaintiffs should not be allowed to improperly expand M&T's discovery obligations by demanding documents wholly irrelevant to their claims or defenses simply because their names were listed in a given policy or procedure.

---

[3]  *See* Pls.' Second Set of Post Removal Discovery Demands attached hereto as Exhibit B. Plaintiffs list seventeen systems, but one is listed as "Café/CU," which actually refers to two systems, "Café" and "Columbia Ultimate," both of which already appear on the list.

For these reasons, M&T will withdraw its objections to the production of the nine system manuals listed herein, subject to their designation as confidential, and assuming they are in fact within M&T's possession, custody and control, once these manuals have been obtained and reviewed by M&T (and, subject to M&T express reservation of its rights to assert objections to the disclosure of any particular manual, if necessary). M&T requests, however, that its obligation to produce system manuals be limited to only those systems, unless and until such time that Plaintiffs can demonstrate the need for production related to the previously unmentioned, unrelated systems.

### C. M&T STRONGLY OBJECTS TO PLAINTIFFS' NEW REQUEST FOR A DIRECT INSPECTION OF M&T'S DATABASES OR DOCUMENTS

At the Evidentiary Hearing, Plaintiffs expressed an interest in obtaining remote access to M&T's internal systems. The Court should deny this request for several reasons.

First, this request is procedurally defective. Plaintiffs have not served an appropriate Inspection Request pursuant to Rule 34. M&T has not had an opportunity to formally object to such a request in accordance with the Rules. Nor have Plaintiffs provided any definition of the scope of their request, let alone with reasonable particularity. For these reasons alone, the request should be denied.

Second, this request seeks information that is not relevant to Plaintiffs' claims and M&T's defenses – which is, again, a requirement under the Rules. Nor can Plaintiffs show, as they must, that the information being requested is being improperly withheld. Indeed, the purported purpose for requesting this undefined walkthrough of M&T's computer systems is so that Plaintiffs' counsel can obtain a general understanding of how those systems operate. This request also fails to satisfy Judge Beetlestone's order governing electronic discovery, which provides that on-site inspections "shall not permitted, absent exceptional circumstances where

good cause and specific need have been demonstrated" – and which further presumes that there is an operative discovery request under Rule 34, which is lacking in this case.

Third, Plaintiffs have failed to show that they need access to M&T's internal systems – which is, by far, the most intrusive way to obtain the information that they seek. There are far less intrusive methods by which Plaintiffs may obtain this information, including the production of manuals and/or the conducting of Rule 30(b)(6) depositions.

Finally, M&T's computer systems contain highly confidential financial records of millions of M&T customers, including social security numbers, dates of birth, credit information, personal income information, etc. As the scope of Plaintiffs' request has not been defined, M&T cannot determine whether it would even be possible to engage in any such exercise without exposing the sensitive information of customers other than the named Plaintiffs. Further, even if there was a way to potentially safeguard the PII of other customers during such an exercise, there still exists the significant overarching concern that allowing external third-party internet access into M&T's system presents an inherent risk of PII access or intrusion to the system and network as a whole. Apart from customer privacy concerns, another significant issue is that folders housed on systems such as SharePoint contain numerous documents completely irrelevant to this matter, but with no way to shield such documents from view if one document in the folder is relevant.

For these reasons, Plaintiffs' request should be denied.

1. **Plaintiffs' Request Is Not the Subject of Any Document Demand And Has Not Been Described With Reasonable Particularity**

First, M&T objects to Plaintiffs' request for access to M&T's systems on the grounds that it is procedurally improper. Plaintiffs have *never* served any formal discovery request pursuant to Rule 34. Under the applicable rules, Plaintiffs must first serve M&T with a formal request

...

that fully outlines what Plaintiffs are seeking and M&T must then be given the opportunity to respond to the request. *See, e.g.*, *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-CV-00946, 2015 WL 5042918, at *7 (E.D. Pa. Aug. 26, 2015) ("Rule 34 contemplates a process by which a party serves another party with a request for the production of documents, receives a written response that either objects to the request or agrees to the production, and subsequently obtains access to the requested documents at the time, place, and in the manner specified in the request, subject to any objections.").

While M&T acknowledges that courts can find that noncompliant requests (for example, oral requests) still satisfy Rule 34, this should only be done where the request is particularly described and unambiguous – which is hardly the case here. *Compare, e.g., Trask v. Olin Corp.*, 298 F.R.D. 244, 259 (W.D. Pa. 2014) (allowing an email to serve as a Rule 34 request because it was "adequately communicated" such that the parties understood its scope), *and Dixon v. Cappellini*, 88 F.R.D. 1, 2 (M.D. Pa. 1980) (finding that a letter request followed the spirit of Rule 34 because "[t]he material requested is described with reasonable particularity, and that both parties were aware which documents were involved"), *with Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, No. 16-CV-1094-JTM-TJJ, 2017 WL 5970848, at *6 (D. Kan. Dec. 1, 2017) (sustaining defendant's objections to a request that it "bring a laptop with access to [defendant's] intranet system so, at the direction of Plaintiffs' counsel, the [defendant's] designee will navigate through the maintenance and inspection databases" in part because the discovery request was "not described with reasonable particularity as required").[4] Plaintiffs' request is much more akin to the latter case than the former.

---

[4] The *Nat'l R.R Passenger Corp.* court also denied this request as overbroad and irrelevant, which, for the reasons discussed more fully below, are also present in the case at bar. *See* 2017 WL 5970848, at *6.

Indeed, the scope of Plaintiffs' oral request at the Evidentiary Hearing for access to M&T's systems has not been defined:

> MR. SHENKAN: Your Honor, I would also ask for just the opportunity to do a remote access, or at least brief that opportunity so at least I can get a familiarity with these systems firsthand, similar to what Mr. Kaminski had obtained himself?

Mot. Compl. Hr'g Tr., 57:19-23. A request of this kind does not meet the requirements of the Federal Rules. *See* Fed. R. Civ. Pro. 34(b)(1). Without a formal discovery request containing the requisite details, M&T cannot even determine the propriety and feasibility of Plaintiffs' actual request, let alone interpose a full and complete response or objection to such a request.

Accordingly, M&T respectfully requests that this Court deny the request for access to M&T's systems. M&T further expressly reserves its rights to assert additional arguments and objections, if and when Plaintiffs serve M&T with a proper request under the Federal Rules.

**2. Plaintiffs Have Not (And Cannot) Meet Their Burden Of Showing That Access To M&T's Systems Is Warranted**

Both the Federal Rules of Civil Procedure and Judge Beetlestone's Order Governing Electronic Discovery establish exacting standards that Plaintiffs must meet before an order can be entered granting access to M&T's computer systems. Plaintiffs do not come close to satisfying either.

**i. Plaintiffs have not met the standard set forth in the Federal Rules of Civil Procedure**

Even assuming, for argument's sake, that there had been a formal discovery request for a direct inspection of M&T's internal systems, such a request would fail under the plain language of Rules 34 and 37, which were amended in 2015 to address this precise situation. As amended,

Rule 34 now makes it quite clear that the responding party can choose to produce documents rather than submit to an inspection: "The responding party may state that it will produce copies of documents or of electronically stored information *instead of permitting inspection.*" Fed. R. Civ. P. 34(b)(2)(B) (emphasis added). Similarly, Rule 37 now states that, if the responding party states that it will make such a production, the requesting party cannot move to compel an inspection unless the responding party fails to do so: "This motion may be made *if*: . . . (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B) (emphasis added); *see also, e.g.*, 7 James Wm. Moore et al., Moore's Federal Practice § 34.13(2)(A) ("The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response. This, in fact, is the common practice; producing copies of documents rather than simply permitting inspection.").

But even before the recent rule amendments, it was well-settled that Rule 34(a) "does not grant unrestricted, direct access to a respondent's database compilations." *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003). Indeed, the Advisory Committee explained in 2006 that Rule 34(a) "*is not meant to create a routine right of direct access to a party's electronic information system*," and cautioned that "[c]ourts should guard against undue intrusiveness resulting from inspecting or testing such systems." Fed. R. Civ. P. 34, Notes of Advisory Committee on 2006 Amendments (emphasis added). Instead, access to the information systems themselves (as opposed to copies of the information on those systems) should only be permitted

in truly exceptional cases – that is, cases in which relevant information: (1) is on the system; *and* (2) has been improperly withheld.[5]

---

[5] *See, e.g.,* Fed. R. Civ. Pro 26(b)(1) (information is discoverable only if it is "relevant to the claim or defense of any party"); *In re Ford Motor Co.*, 345 F.3d at 1316 ("Rule 34(a) allows the responding party to search his records to produce the required, relevant data. Rule 34(a) does not give the requesting party the right to conduct the actual search."); *Butler v. Kmart Corp.*, No. 05-0257, 2007 WL 2406982, at *3 (N.D. Miss. Aug. 18, 2007) ("The plaintiff has produced no evidence demonstrating that Kmart has acted improperly. As such, this court will not provide the plaintiff with unfettered access to Kmart's computer databases."); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 427 (D.N.J. May 19, 2009) ("The Sedona Principles wisely state that it is, in fact, the producing party who is the best position to determine the method by which they will collect documents. The producing party responding to a document request has the best knowledge as to how documents have been preserved and maintained."); *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005) ("The court is similarly disinclined to allow Plaintiff to conduct the forensic study at his own expense. Before permitting such an intrusion into an opposing party's information system . . . the inquiring party must present at least some reliable information that the opposing party's representations are misleading or substantively inaccurate."); *SEC v. Strauss*, No. 09-4150, 2009 WL 3459204, at *12 n.8 (S.D.N.Y. Oct. 28, 2009) ("There is a general reluctance to allow a party to access its adversary's *own* database directly. . . . [C]ourts have declined to find an automatic entitlement to access an adversary's database.") (emphasis in original); *Cummings v. Gen. Motors Corp.*, No. 00-1562-W, 2002 WL 32713320, at *8 (W.D. Okla. June 18, 2002), *aff'd*, 365 F.3d 944 (10th Cir. 2004), *as modified on denial of reh'g* (June 2, 2004) ("Plaintiffs have shown no case-related need for obtaining direct access to Defendant's computer files and databases. Without such a showing, Plaintiffs' proposed discovery is nothing more nor less than an attempt to rummage around in Defendant's files."); *Bethea v. Comcast*, 218 F.R.D. 328, 329-30 (D.D.C. 2003) ("[A] party's suspicion that another party has failed to respond to document requests fully and completely does not justify compelled inspection of its computer systems."); *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001) (denying a request for an inspection of computer systems, and finding that concerns as to the adequacy of discovery "is not sufficient to warrant such a drastic discovery measure"); *see also Van Westrienen v. Americontinental Collection Corp.*, 189 F.R.D. 440, 441 (D. Or. 1999) ("Plaintiffs are not entitled to unbridled access defendants' computer system or to canvass all of defendants' debtor files" and should instead "pursue less burdensome alternatives"); *Strasser, M.D., P.A. v. Yalamanchi, M.D., P.A.*, 669 So. 2d 1142, 1145 (Fla. 4th DCA 1996) (denying request for "carte blanche access to [party's] computer" because "once confidential information is disclosed, it cannot be 'taken back,' and once the wholesale invasion into the defendant's computer system has occurred, the damage to the system may be irreversible."); *Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 169 (S.D.N.Y. 2004) (denying request for "direct access to Compaq's hard drives, servers, and databases" because "circumventing the normal process of discovery" would be improper absent "widespread destruction or withholding of relevant information by Compaq").

That approach is not only required by the Federal Rules, but also endorsed by the Sedona Conference, a nonpartisan institute dedicated to the advanced study of law and policy. For example, Principle 6 of the Sedona Principles states that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information."[6] Comment 6.d then states:

> Courts have repeatedly found that Rule 34 does not create a routine right of direct access to an opposing party's electronic information system. Inspection of an opposing party's computer system under Rule 34 and state equivalents is the exception and not the rule for discovery of ESI. In the majority of cases, the issues in litigation relate to the informational content of the data stored on computer systems, not the actual operations of the systems; and, as noted above, the obligation to produce relevant content lies with the responding party. Unless the requesting party can prove that the actual operation of a particular system is at issue in the litigation, if the responding party provides the informational content of the data, there is no need or justification for direct inspection of the responding party's computer systems.
>
> Direct access to an opposing party's computer systems under a Rule 34 inspection also presents possible concerns such as: a) revealing trade secrets; b) revealing other highly confidential or private information, such as personnel evaluations and payroll information, properly private to individual employees; c) revealing confidential attorney-client or work-product communications; d) unreasonably disrupting the ongoing business; e) endangering the stability of operating systems, software applications, and electronic files if certain procedures or software are used inappropriately; and f) placing a responding party's computing systems at risk of a data security breach.
>
> . . . .
>
> To justify the onsite inspection of a responding party's computer systems, a requesting party must demonstrate that there is a substantial need to discover information about the computer

---

[6] The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. (2018), *available at* https://thesedonaconference.org/sites/default/files/publications/The%20Sedona%20Principles%20Third%20Edition.19TSCJ1.pdf.

> system and programs used (as opposed to the data stored on that system) and that there is no reasonable alternative. . . .

*Id*.  In fact, the Sedona Conference has supplemental principles regarding discovery from databases.  Its guidance there is no different:

> Absent the parties' specific agreement, a requesting party is rarely granted permission to conduct a direct examination of a responding party's database to view or obtain information stored within it. As also noted in the commentary to Sedona Principle 6 above, most litigation discovery requests relate to a database's content, not how it operates. Allowing full access to a responding party's database makes it difficult, if not impossible, to prevent the requesting party from accessing irrelevant or privileged information; all data fields in all database records are theoretically accessible. Direct access to a proprietary database by a non-employee also may compromise the validation of the data in the database, reducing the database's reliability for both business and legal situations.
> . . .
> ***Direct access to a party's database systems is disfavored and has been granted over objection only in extraordinary circumstances.***[7]

Here, there is nothing extraordinary that would warrant the intrusion sought by Plaintiffs.  Plaintiffs do not seek any specific piece of information or document, and therefore necessarily cannot meet either prong of the strict standard identified above.  Instead, Plaintiffs have issued a vague, oral request for a walkthrough of M&T's computer systems, for the sole purpose of obtaining a general understanding of those systems' operation.  *See* Mot. Compl. Hr'g Tr., 57:19-23 ("I would also ask for just the opportunity to do a remote access … so at least I can get a familiarity with these systems first hand…"); 56:9-11 ("Would you agree that that would be

---

[7] The Sedona Conference Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation, 15 Sedona Conf. J. 194-95 (2014) (emphasis added), *available at* https://thesedonaconference.org/sites/default/files/publications/The%2520Sedona%2520Conference%2520Database%2520Principles_2014%2520Edition.pdf.

helpful for someone like myself to better understand the systems, to actually be able to see them in operation?").

This is well beyond the type of request that was contemplated by the Federal Rules, in part because the discovery it seeks is completely irrelevant to any party's claims or defenses. The claims asserted in this case involve the accuracy and propriety of charges listed on written notices sent to M&T's customers – there is not a single claim, defense, or factual predicate involving the operation of M&T's systems. Accordingly, Plaintiffs can clearly make and defend their case fully without understanding how M&T's internal systems operate. As such, Plaintiffs have failed to meet their burden under the Federal Rules, and their request for access to M&T's systems should be denied.[8]

### ii. Plaintiffs have not met the standard required by Judge Beetlestone's Order Governing Electronic Discovery

Plaintiffs have also failed to meet the specific standard required for this case by Judge Beetlestone. Specifically, in light of the exacting standards outlined above, Judge Beetlestone's order governing electronic discovery explicitly addresses (and limits) requests for inspections of electronic discovery follows: "on-site inspections of electronic media under Federal Rules of Civil Procedure 34(b) shall not permitted, absent *exceptional circumstances where good cause and specific need have been demonstrated*." *See* D.I. 17, Order Governing Electronic Discovery, ¶1(d) (emphasis added). For the reasons set forth above, Plaintiffs have not even alleged that exceptional circumstances exist, much less have they demonstrated good cause and specific need for their requested access. Indeed, because Plaintiffs have not served a discovery

---

[8] Plaintiffs may argue that M&T's discovery compliance warrants granting them access to M&T's proprietary systems. This argument would be meritless, considering that Your Honor has not yet issued his rulings on the parties' discovery disputes. Before even considering this type of unnecessarily intrusive discovery, M&T should be permitted to respond to the discovery requests once the disputes have been resolved.

request, they have not even met the basic requirement of Judge Beetlestone's order that the request for an on-site inspection comport with Rule 34(b).

The fact that Plaintiffs are requesting that this inspection be performed while Plaintiffs' counsel and e-discovery liaison access in remotely does not change the fact that this same exacting standard should apply. Here, Plaintiffs are asking to view and inspect M&T's systems exactly as though they were on-site – the only difference being, Plaintiffs want to use an on-site M&T employee as their proxy while they participate in the inspection remotely. There is simply no difference between what Plaintiffs are requesting and a traditional on-site inspection, other than the fact that M&T will be physically moving the mouse and typing the keys on Plaintiffs' behalf. Simply because new technology allows Plaintiffs to use M&T as their puppet, while Plaintiffs remain "off-site", does not change the fact that they are requesting to perform an on-site inspection of M&T's systems. Accordingly, Plaintiffs still must demonstrate exceptional circumstances with a specific need for such access – and they have failed to do so.

### 3. The Information Sought By Plaintiffs Can Be Obtained Through Less Intrusive Discovery Methods

More fundamentally, M&T will be providing Plaintiffs with the manuals and instruction guides to these systems, and Plaintiffs will have an opportunity to conduct Rule 30(b)(6) depositions of M&T representatives. Plaintiffs can thus obtain the discovery they seek (*i.e.*, knowledge about how M&T's systems work), while obviating any need to resort to such an extreme, intrusive, and onerous method of discovery. *See*, *e.g.*, *Lorentz v. Sunshine Health Prod., Inc.*, No. 09-61529-CIV, 2010 WL 1856265, at *1 (S.D. Fla. May 10, 2010) (issuing protective order against a systems inspection request because the plaintiff had not attempted "more traditional means to obtain such information" such as document requests, which are "less intrusive than a full-fledged general rummaging through another party's computer systems").

While M&T does not doubt that Plaintiffs would like access to M&T's computer systems, Plaintiffs cannot meet their burden for such access, and this request should be denied.

### III. CONCLUSION

In sum, giving Plaintiffs access to M&T's systems when less obstructive alternatives exist would be excessive, inappropriate, and completely disproportionate to the needs of the case. It would violate the Federal Rules of Civil Procedure and the Court's Order Governing E-Discovery, and would unnecessarily put the privacy of M&T's customers and the nature of its internal systems at risk. Accordingly, this request should be denied.

Dated: November 16, 2018

Respectfully submitted,

/s/ Scott W. Parker

**DRINKER BIDDLE & REATH LLP**
Alfred W. Putnam, Jr., Esq.
Michael P. Daly, Esq.
One Logan Square
Suite 2000
Philadelphia, PA  19103
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757

**PARKER IBRAHIM & BERG LLP**
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
Marissa Edwards, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Facsimile: (267) 908-9888

*Counsel for Defendant,*
*Manufacturers and Traders Trust Company*
*a/k/a M&T Bank*

## CERTIFICATE OF SERVICE

I, Scott W. Parker, Esq. hereby certify that on November 16, 2018, I caused (i) the foregoing Memorandum of Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank Clarifying Objections It Made During the October 26, 2018 Evidentiary Hearing, (ii) all exhibits thereto, and (iii) this Certificate of Service to be electronically filed and served on all counsel of record via the court's CM/ECF system.

| | |
|---|---|
| Dated:  November 16, 2018 | **PARKER IBRAHIM & BERG LLP** |
| | /s/ Scott W. Parker |
| | James P. Berg, Esq. |
| | Scott W. Parker, Esq. |
| | Fred W. Hoensch, Esq. |
| | Marissa Edwards, Esq. |
| | 1635 Market Street, 11th Floor |
| | Philadelphia, PA 19103 |
| | Telephone: (267) 908-9800 |
| | Facsimile: (267) 908-9888 |
| | |
| | *Counsel for Defendant,* |
| | *Manufacturers and Traders Trust Company* |
| | *a/k/a M&T Bank* |