## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, et al, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| v. | : | No. 17-cv-04806-WB |
| | : | |
| MANUFACTURERS AND TRADES | : | |
| TRUST COMPANY | : | |
| | : | |
| Defendant. | : | |

## DECLARATION OF J. STOTT MATTHEWS
## PLAINTIFFS' E-DISCOVERY LIAISON

AND NOW COMES, J. Stott Matthews, an adult individual, affirms as follows:

1. I am an owner and Managing Partner of Spectrum Computer Forensics & Risk Management, LLC ("Spectrum"). Spectrum provides computer-forensic, electronic-discovery and computer-security-related services. For nine years, I have held the Encase Certified Examiner certification, EnCE, one of the globally recognized computer-forensic certifications. For six years, I held the Certified Information Systems Security Professional, CISSP, a globally recognized computer-security certification.

2. I also presently serve as a Co-Chair of the Litigation Technology Group for the United States District Court for the Eastern District of Michigan.

3. A copy of my CV is attached as **Exhibit 1**, and I attest to the accuracy of the representations within it.

4. To date, my services have included, among others, a review of two sets of electronic production made by the Defendant dated on or around May 11, 2018, including (i) a PDF-based production of Defendant's files (Bates 920 - 1,674), the "PDF Production Set", and (ii) "FLYNN001.zip" containing approximately 18,050 files (Bates 1,675 - 19,667) in Concordance database, load-file format, the "TIF Production Set" or "19,000 Page Production."

5. As Plaintiffs' E-Discovery Liaison, I participated, along with Richard Shenkan, in two telephonic e-discovery conferences with representatives of the Defendant on June 21, 2018 and July 2, 2018 and have reviewed an assortment of pleadings and other discovery to become familiar with the pending discovery dispute. I also attended and testified at an evidentiary hearing conducted by the Court on October 26, 2018.

EXHIBIT

1

tabbies®

6. The following are my opinion on several topics in light of the testimony from the 10/26/18 hearing and issues involving the pending discovery dispute.

## **Defendant's 19,000 Page Production**

7. The Court's December 1, 2017 Order Governing Electronic Discovery requires that Excel spreadsheets be produced in native format.

8. The 19,000 Page Production was transmitted to Plaintiffs' counsel on or about May 11, 2018.

9. At the first electronic discovery conference on June 21, 2018, I asked questions about the Bank's computer systems, its functionality, and some of the discovery responses.

10. Both Richard Shenkan and I were not aware of the content of the 19,000 Page Production until the second electronic discovery conference on July 2, 2018. At that time, Mr. Kaminski, the Defendant's e-discovery liaison, informed Richard Shenkan and me that this 19,000 Page Production was comprised of e-mails and Excel spreadsheets.

11. When I asked Mr. Kaminski why he did not provide the Excel spreadsheets in their native format which would ensure that the meta data was intact instead of converting them to a .tif image file format, Mr. Kaminski responded that he just did what he was told to do by M & T's counsel.

12. From my examination of the 19,000-Page Production file and after hearing Mr. Kaminski and Mr. Wilshaw, the Bank's Digital Forensics Investigator, testify at the October 26, 2018 hearing, this is what I discovered:

   (1) Mr. Wilshaw testified that he provided Mr. Kaminski with pst files (e-mail medium to transmit e-mail files) containing the results of search terms and date filter parameters (the query of yet has not been provided). In this production set, Defendant's counsel produced some number of Excel spreadsheets and e-mails, totaling 57 documents in all. It is unclear how many Excel files were provided, due to the manner in which they were produced (including, at a minimum, no file name or file extension in the load files, among other common pieces of metadata);

   (2) Mr. Kaminski's firm converted all of these 57 documents to approximately 19,000 .tif files; and

   (3) Defendants' counsel then fully redacted approximately 90% of these files, delivering completely blacked-out .tif image files in their production set.

13. As a result of converting the Excel spreadsheets to .tif image files:

   (1) The tabular format of the Excel spreadsheets became unaligned and distorted, much like a cut-up jigsaw puzzle without any instructions for its re-assembly;

(2) Each Excel file which, ordinarily can be readily opened with just a double click of a mouse, required the double click of the mouse for each of its pieces comprising part of the file. In other words, in an instance where only 57 double-mouse clicks should access these files, such was required for the 19,000 pages, separately. Even with the use of a litigation database platform like Relativity or Concordance, the content of this production and its manner of presentation was subpar (no meta data, no disclosure of its content, inordinate redactions, etc.) from an e-discovery industry norm and of very little value, if any.

(3) And, as mentioned above, no metadata, not even the file's name, extension, let alone the file's Author, Last Printed date, path, and date-related metadata, was provided in the load file, let alone its parent email's metadata (e.g. Subject, From, To, CC, BCC, Sent Date/Time, Attachment Count, and Attachment Name). It is for this very reason that neither Plaintiff's counsel, nor myself with the decade-plus experience, understood that these 19,000 pages represented an email production set, until informed of such during the second e-discovery conference call.

14. One effect of this tactic was to artificially inflate the time and cost of the production to attempt to substantiate a similarly artificial "unduly burdensome" objection. This is a tactic that represents a form of discovery abuse which I have not seen in more than 10 years and which runs counter to the Court's 12/04/17 (Doc. 17) and 1/26/18 (Doc. 22) Orders.

15. The Bank could have easily produced the Excel spreadsheets in their native format to ensure the integrity of their features and simply redact the cells or columns of data relating to un-involved customers. It acknowledged this at the hearing. This would take only hours to perform and could readily work to redact many tens-of-thousands of records in an Excel file. Alternatively, anonymizing the Excel data by using customer numbers would enable all the data to be produced in under an hour, as columns are simply deleted to achieve this goal.

16. Succinctly stated, the time necessary to assemble the correct query to cull through these Excel files and to separate the relevant person's files from the non-relevant ones for the four Representative Plaintiffs should have taken a few hours, *at most*. Then, once this query(s) is assembled and run, the data can be produced for 4,000 class member's accounts/names in under a day's time, *at most*.

17. The unfortunate result of not producing the Excel files natively is that Plaintiffs' counsel was forced to spend significant, unnecessary resources to expose this - what I believe to be -- abusive discovery tactic to advance their claim and to attempt to enforce the clear e-discovery mandate of the Court's 12/04/17 (Doc. 17) and 1/26/18 (Doc. 22) orders as they relate to the format Excel spreadsheets must be provided in and the lack of any provision for any redactions.

3

## Native Format of Plaintiff's and Class Member's Data

18. A relational database is made up of several components, of which the table is most significant. The database table is where all the data in a database is stored.

19. The structure of a database consists of one or more tables. Each table is made up of rows and columns. If you think of a table as a grid, the columns go from left to right across the grid and each entry of data is listed down as a row.

20. The information that is input into the Bank's computers through the portals/forms which were produced as the screen shots are present in one or more database systems. The information is ascribed a name which is called a database "field." Examples of some of the Bank's database fields are as follows:

<p style="text-align:center">Bates Stamp 997-998</p>

"EXPSTORVEH" for "Storage Fees" and "EXPPRE/REP" for "Expense of preparing the vehicle for sale" in the "Title" fields in Bates Stamp 997 and 998. (Exhibit 9 – 10 of Plaintiffs' Second Set of Post-Removal Class Discovery which is not attached as it is marked "Confidential")

<p style="text-align:center">Bates Stamp 20189</p>

&lt;&lt;Payoff_Prior_To_Sales&gt;&gt; for "Payoff prior to Auction Date;
&lt;&lt;Auction_Proceeds&gt;&gt; for "Auction Proceeds"
&lt;&lt;Obligations_after_proceeds&gt;&gt; for "Obligation after proceeds"
&lt;&lt;Auction_Expenses&gt;&gt; for "Auction Expense"
&lt;&lt;Repo_Expenses&gt;&gt; for "Repossession Expenses"
&lt;&lt;Credits&gt;&gt;  for "Credits"
&lt;&lt;Total_Amt_Dues&gt;&gt; for "Total Amount Due / Deficiency"

**Exhibit 2**.

21. Based on my analysis to date, the information which is in native format for each class member is stored in the one or more of the Bank's software systems in these database fields which can be readily accessible with the use of a query.

22. I understand that the Court issued orders on 1/11/18 and 4/13/18 relating to the mandatory production of all documents, including all electronically stored information, for all of the Representative Plaintiffs. To the best of my knowledge, the Bank has yet to produce any of the *database field headings and corresponding information* for each of the Representative Plaintiffs in each of the Bank's database systems or third-party database systems.

23. The production of this information should help the Court, Plaintiffs' counsel, and me to better understand what and how information is stored in each system and, accordingly, what information can be easily searched by the Bank's database systems for each class member. Having this information should considerably reduce the time and cost involved in the discovery

process and better enable the parties and the Court to better understand the Bank's database systems and the "unduly burdensome" objections presented by the Bank.

*Document Request*: Therefore, it would be helpful if the Bank would provide: (a) the data field headings and corresponding information in each database for each of the representative plaintiffs; and, (b) a list of all database fields, identifying the database and tables to which each field corresponds, for each of the Bank's computer systems.

## Defendant's Unqualified E-Discovery Liaison

24. When I asked Mr. Kaminski, Defendant's present E-Discovery Liaison, about this information, he was not knowledgeable about any of the details regarding even the most basic database matters of the Bank – as he was similarly not sufficiently knowledgeable about the Bank's computer systems, having never operated any of the systems himself. Based on his testimony at the 10/26/18 hearing and my discussions with Mr. Kaminski, he does not satisfy the requirements of the Court's Draft Order Governing Electronic Discovery setting forth the requirements of an e-discovery liaison.

## The "Flynn Spreadsheet(s)"

25. In my opinion, the disclosure of the Flynn Sheet(s) referenced at the 10/26/18 hearing is extremely important because it established that the Bank's "unduly burdensomeness" objection was not credible. I say this because the Bank had (and easily can generate an update to) the very information sought in Plaintiff's First Set of Post Removal Discovery seeking, by way of illustration, the "finance charge" and "amount financed" to calculate the aggregate amount of statutory minimum damages (Interrogatory 5) and the aggregate deficiency balances (Interrogatory 2).

*Document Request*:  From my perspective, the critical information regarding the Flynn Spreadsheet(s) referenced at the 10/26/18 hearing which I would like to obtain are as follows: (a) all documents identifying the queries which were run to generate these spreadsheets; (b) the names of the databases in which the queries were run; (c) the names of the tables within those databases; (d) the name of the person who was responsible for running the query(s); and, (e) the information regarding the named Plaintiffs in the spreadsheet(s). Assuming that I can obtain this information, I can work with a Bank representative (preferably the person who ran the query(s) that generated the Flynn Spreadsheet(s)) to run a query(s) to obtain the information sought in the discovery.

## Corporate Deposition with Remote Access Session

26. I would be able to assist Plaintiff's counsel to take a corporate deposition to better understand, among other things, how the Bank's computer systems generally work and the most efficient means to search and to retrieve the information sought in the discovery which remains outstanding and to which the Bank has asserted an "unduly burdensome" objection relating to the sampling and several other discovery requests.

27. At the deposition, I suggest that the Bank have a computer which has full access the Bank's systems accessible to enable the deponent(s) to answer questions posed to him/her by having the capability to use a visual of the Bank's systems. Of course, the Bank's computer systems would be accessed <u>solely</u> by the deponent or another Bank representative and the information in the deposition could be marked "Confidential" to allay any anticipated objection by the Bank that its systems to maintain its business information is a trade-secret.

28. I suggest that the deposition and the computer monitor both be videotaped so that there can be a contemporaneous record of each. After the deposition, the videos then can be easily merged to show each visual with a split-screen to ensure a reliable record.

29. Because I reside in Michigan and the Bank is located in Buffalo, New York, it makes most economical sense for me to attend the deposition via a remote access session (though I am certainly willing to travel to Buffalo, NY if necessary). Undoubtably, the Bank uses a remote access application for its employees to use, and I am fine using the Bank's preferred remote-access system and will confer with the Bank's representative to coordinate these provisions.

*Document request*: In preparation for this deposition, as a matter of efficiency, I would like to be provided with all of the operation manuals for each of the computer systems used at the Bank during the class period and be put in touch with someone with whom I can discuss a remote access connection.

## 12 Policies Stored in Sharepoint or Archive Back-up

30. I understand that the Court issued an order on 1/11/18 requiring the Bank to produce policies and procedures at issue in this lawsuit. To that end, I also understand that there are 12 earlier iterations to the already-provided policies which remained outstanding and which Plaintiffs' counsel requested at the hearing which are set forth in Exhibit 1 of Plaintiffs' Second Set of Post-Removal Discovery (Exhibit 7 of the hearing transcript).

31. Because of the Bank's Response and Objections to Plaintiff's First Set of Post-Removal Discovery, I initially thought that the Bank simply did not have these documents anymore, because it stated:

> M&T states that it has already produced <u>all</u> such responsive documents in its possession pursuant to its obligations under the [1/1/18] Initial Scheduling Order. (Emphasis added)

32. Mr. Fries' testimony at the 10/26/18 hearing seems to establish, however, that these policies and procedures are, indeed, stored either in the Bank's Sharepoint application, in a back-up archive system, or similar system.

33. Now, the Bank's counsel appears to be requesting 30 days from the entry of an order to locate the "policies or procedures that have been archived and are therefore not readily available on the system." Bank's Opposition to Plaintiffs' "Suggested Language Changes to Proposed Order" (Doc. 126, p. 19).

34. While it is possible that prior versions of the policies and procedures will be provided by the Defendants, I can conduct a forensic search for this information, if such becomes necessary. In this connection, the Bank would need to produce a mirror image of each device, drive, and server on which such policies and procedures were previously located (already requested in Document Request 24 of Plaintiff's Second Set of Post Removal Discovery). I would confer with the Bank's representative to select a neutral third-party forensic expert to coordinate the search and to establish a mutually agreed-to protocol to conduct the queries to locate this information or confirm that it no longer is in existence.

*Document Request*: The term "absolute path" or "full path" refers to the complete details needed to locate a file or folder, starting from the root element and ending with the complete list of directories and subdirectories. In preparation for this forensic search, I need to obtain documents which show the "absolute path" or "full path" of where these policies and procedures were previously located. In light of Kenneth Fries' testimony, I need the "absolute path" or "full path" of the Sharepoint application and all archive back-up systems at the Bank. If the archive system is cloud-based, then I need the name of the system, at a minimum, at this juncture and will supplement this document request.

### My Bill for my Time Unnecessarily Expended to Expose Defendant's Frivolous Undue Burdensome Objections to Date

35. In connection with my work as an e-discovery liaison, I have spent a total over 29 hours. My hourly rate is $210 for analysis, review and reporting and $500 for expert services, rates which I ordinarily charge other clients for similar work. The total amount due for my services to date is $9,679.

36. Of the amount due, I attribute only roughly 5 hours (my preparation time and the time spent at the first e-discovery conference) resulting in $1,050 to be reasonably needed to begin to become familiar with the Bank's systems and to review the Bank's discovery responses.

37. The balance of my time has been devoted to unwinding the Defendant's remarkable claim that the 19,000 Page Production was legitimate and compliant with the Court's 12/04/17 (Doc. 17) order.

I affirm the above content is accurate and state these opinions within a reasonable degree of professional certainty subject to 18 US.C §1621.

J. Stott Matthews

# *Digital Discovery and Computer Forensics*
## **J. Stott Matthews**
866-977-9779
E-Mail: jstott.matthews@spectrumforensics.com
www.spectrumforensics.com

## SPECTRUM COMPUTER FORENSICS AND RISK MANAGEMENT LLC

- Provide digital-discovery, computer-forensic, and computer-security-related services.

- Digital-discovery and computer-forensic services offered:
    - ✓ Identification of electronic devices and storage media relevant to a case, such as servers; computers; USB storage devices; iOS, Android and other types of cell phones; CDs/DVDs; and other types of digital media.
    - ✓ Bit-stream imaging of hard drives, storage and email servers, and other digital media and the preservation of electronic media.
    - ✓ Preservation and collection of Cloud-based data.
    - ✓ Extraction of data, computer files, including email stores, from live systems.
    - ✓ Keyword searching to identify case-critical data, as well as proprietary and privileged information.
    - ✓ Analysis of operating-system and other software-application logging.
    - ✓ Review and analysis of software code, including VB and C# (.Net platform).
    - ✓ Determination of the origin, history, and authenticity of electronic documents.
    - ✓ Examination of deleted files, electronic-file meta data, and other digital artifacts on computers and related electronic devices.
    - ✓ Creation of load files for litigation database applications, including Concordance, among others.
    - ✓ Provide a Web-enabled, scalable and secure, litigation database for all matters, including those of a multi-client, multi-geographic location nature.
    - ✓ Restoration of e-mail and the search for case-critical information within.
    - ✓ Support the creation of interrogatories, deposition questions, and related steps in the litigation process.
    - ✓ Expert witness and deposition services.

- Services offered to clients range from law firms to corporations. Prior engagements have spanned multi-million dollar civil suits and the support of criminal cases.

## CERTIFICATIONS

- State Licensed Professional Investigator (Michigan)

- Encase Certified Examiner (EnCE) - Nine Years (Computer-forensics certification)

- Certified Information Systems Security Professional (CISSP®) - Six Years (Computer-security certification)

*We handle the technology, so you can practice the law.*

EXHIBIT
exhibit
*1*

**EXPERT WITNESS**

- 20th Circuit Court for the County of Ottawa, State of Michigan (Expert Testimony – April '18 2nd)

- 20th Circuit Court for the County of Ottawa, State of Michigan (Expert Testimony – April '18 1st)

- American Arbitration Association (Expert Testimony – September '17)

- United States District Court for the Western District of North Carolina (Expert Testimony – July '17)

- Circuit Court for the County of Washtenaw, State of Michigan (Expert Deposition Testimony – June '17)

- United States District Court for the Eastern District of Michigan (Expert Testimony – December '16; Expert referenced in Federal Court Opinion).

- Circuit Court for the County of Oakland, State of Michigan (Expert Deposition Testimony – September '15)

- Circuit Court for the County of Wayne, State of Michigan / Jury trial (Expert Testimony – March '15)

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – December '14)

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – November '14)

- United States District Court for the Eastern District of Michigan (Expert Testimony – October '14)

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – October '13)

- Circuit Court for the County of Macomb, State of Michigan (Expert Testimony – October '13)

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – May '13)

- United States District Court for the Eastern District of Michigan (Expert Testimony – March '13; Expert referenced in Federal Court Opinion)

- 20th Circuit Court for the County of Ottawa, State of Michigan (Expert Testimony – January '13)

- 20th Circuit Court for the County of Ottawa, State of Michigan (Expert Deposition Testimony – January '13)

- Circuit Court for the County of Oakland, State of Michigan (Expert Deposition Testimony – March '12)

- Superior Court for the County of Hall, State of Georgia (Expert Testimony – December '11)

- Trial Court for the County of Washtenaw, State of Michigan (Expert Testimony – May '11)

*We handle the technology, so you can practice the law.*

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – December '10)

- Circuit Court for the County of Emmet, State of Michigan (Expert Testimony – October '09)

- Circuit Court for the County of Kalamazoo, State of Michigan (Expert Testimony – September '08)

- Circuit Court for the County of Oakland, State of Michigan (Expert Testimony – August '08)

- Circuit Court for the County of Genesee, State of Michigan (Expert Deposition Testimony – December '07)

- United States District Court for the Eastern District of Michigan Southern Division (Expert Deposition Testimony - August '07)

- United States District Court for the Eastern District of Michigan Southern Division (Expert Referenced in Federal Court Opinion – December '06)

- Third Circuit Court for the County of Wayne, State of Michigan (Expert Testimony – November '06)

- Third Circuit Court for the County of Wayne, State of Michigan (Expert Deposition Testimony – November '06)

- United States District Court for the Eastern District of Michigan Southern Division (Expert Testimony – September '06)

- Berrien County Trial Court, State of Michigan (Expert Deposition Testimony – July '06)

- Berrien County Trial Court, State of Michigan (Expert Deposition Testimony – March '06)

- Sixth Circuit Court for the County of Oakland, State of Michigan (Expert Deposition Testimony – August '05)

## PROFESSIONAL TRAINING

- 32 hours "NT File System and Artifacts", Date: May 22 – 25, 2007; Sterling, VA.

- 40 hours of "Microsoft-based Network Forensics", Date: August 22 – August 26, 2005; Falls Church, VA.

- 32 hours of "Network Intrusion Investigations", Date: November 30 – December 3, 2004; Pasadena, CA.

- 40 hours of "Incident Response, Forensic Analysis and Discovery", Date: July 19 – 23, 2004; Sterling, VA.

*We handle the technology, so you can practice the law.*

## LECTURES AND APPEARANCES

- April 19, 2018; DRI (Defense Research Institute) - Business Litigation Program; Co-Presenter: "Employee Theft of Trade Secret or Confidential Information", Denver, CO.

- November 10, 2017; MDTC 2017 Winter Meeting; Co-Presenter: "Technology in Today's Practice of Law", Novi, MI.

- June 9, 2017 ICLE / State Bar of Michigan – Upper Michigan Legal Institute - Presenter: "Technology Security and Privacy", Mackinac, MI.

- November 23, 2016; ICLE – Co-Presenter: "Tech Competence, Confidentiality, and Cyber Ethics for Lawyers and Law Firms", Plymouth, MI.

- February 10, 2015; Panelist: Panelist - Federal Bar Association - Co-Chair of Litigation Technology Committee; Update and Survey Results - E-Discovery Model Order, Detroit, MI.

- January 14, 2014; Panelist - Federal Bar Association - Co-Chair of Litigation Technology Committee; Topic -  E-Discovery Model Order, Detroit, MI.

- July 19, 2011; Co-Presenter: Best Practices in Computer Forensics; Association of Legal Support Professionals (ALSP), Eastern Chapter of Michigan, Troy, MI.

- April 15, 2010; The Federal Bar Association - Eastern District of Michigan Chapter; Panelist (including one Federal Judge); "Social Media and Its Impact on Litigation: From Discovery Through Trial" at Wayne State University Law School, Detroit, MI.

- March 19, 2008; Speaker: "Internal Threats & Implications of New PII Legislation", ISACA (Information Systems Audit and Control Association) Monthly Meeting, Detroit Chapter, Dearborn, MI.

- November 30, 2007; Co-Presenter: 'Hot Issues in Privacy Law' – 'Computer Forensics: What Are You Really Sharing?', The Institute of Continuing Legal Education, Ann Arbor, MI.

- May 4, 2007; Co-Presenter: 'The Revised Federal Rules of Civil Procedure: The Changes, Best Practices and Risks', Michigan State Bar – Annual Legal Assistants Day of Education, Frankenmuth, MI.

- September 14, 2006; Guest Lecturer: High Tech Crimes Class - Washtenaw Community College, Ann Arbor, MI.

- October 6, 2005; "Digital Detroit" Panelist at 2005 Detroit IT Security Summit: 'Securing Our Infrastructure: Practical Means to Safe Business Practices', Novi, MI.

- July 5, 2005; Washtenaw County Family Court, Presentation: 'Digital Discovery and Computer Forensics – Current Status and Family Law', Ann Arbor, MI.

- April 28, 2005; Washtenaw County Bar Association, Presentation: 'Computer Forensics,

*We handle the technology, so you can practice the law.*

Electronic Discover and their Benefits to Building your Case – It's not Just for Big Cases, Anymore', Ann Arbor, MI.

## PRIOR PROFESSIONAL EXPERIENCE

- Among 15 years of professional experience, as member of the executive team, served as Director of Business Development and Finance in the high-tech joint venture between DaimlerChrysler, Ford and GM, and as Vice President - Controller of Chrysler Corporation's Japanese subsidiary.

## EDUCATION

- M.B.A., Finance, Columbia University Graduate School of Business

- B.A., Economics and East Asian Studies, Bucknell University

## OTHER

- Honorably discharged veteran of the United States military.

*We handle the technology, so you can practice the law.*

«Todays_Date»

«Letter_Name»
«Letter_Address»
«Letter_City», «Letter_Sate» «Letter_Zip»

RE:   Name:  «Borrowers_Name»
       Account #: «Account_»
       Collateral: «Year» «Make»  «Model»

Dear «Letter_Name»:

Please be advised that your repossessed collateral was sold at a private auction on «Sold_Date».
Here is a description of how we applied the proceeds from sale to the account balance and
calculated the deficiency of «Total_Amt_Due»(the amount you owe us) that remains after the
sale:

| | |
|---|---|
| Payoff prior to Auction Date: | «Payoff_Prior_To_Sale» |
| Less: Auction Proceeds: | «Auction_Proceeds» |
| Equals: Obligation after proceeds | «Obligations_after_proceeds» |
| Plus: Auction Expense: | «Auction_Expense» |
| Plus: Repossession Expense: | «Repo_Expense» |
| Less: Credits | «Credits» |
| Equals: Total Amount Due/ Deficiency | «Total_Amt_Due» |

Future debits, credits, charges, interest and expenses, if any, may affect the amount of the
deficiency. Please contact me immediately to make arrangements for payment of the remaining
amount due.

If you have filed for relief under the United States Bankruptcy Code, please understand that this
notice is given to you for informational purposes only to provide you with an accounting of the
sale and is not an attempt to collect a debt or any deficiency after the sale.

However, if you have not filed for bankruptcy or you are not entitled to protection under the
Bankruptcy Code, this is an attempt to collect a debt and any information obtained will be used
for that purpose.

If you want additional information about this transaction, you may contact us at 1-800-724-8644
or write to us at M&T Bank, Attention: Remarketing Support, PO Box 2187, Buffalo, NY 14240.
The office hours associated with our phone number 1-800-724-8644 are Monday through
Thursday 8:00 am – 9:00 pm, EST and Friday 8:00 am – 5:00 pm EST.

Sincerely,

«Work_Out_Specialist»
Workout Specialist



EXHIBIT
2

M&T020189