IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, et al | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-cv-04806-WB |
| MANUFACTURERS AND TRADES | : | |
| TRUST COMPANY | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER REGARDING DISCOVERY DISPUTES

The Plaintiffs filed a Motion to Compel Discovery Responses. Doc. No. 103 (motion); Doc. No. 105 ("Pl. Mem."). The Defendant responded (Doc. No. 110 ("Def. Resp.")) and the Plaintiffs have filed a reply. Doc. No. 111. I filed a Memorandum providing my tentative rulings on pending discovery disputes. Doc. No. 121. I held a hearing on October 26, 2018, and a transcript has been filed. Doc. No. 131. The parties have filed suggested language changes to the tentative rulings. Doc. No. 125 (Plaintiffs') and Doc. No. 126 (Defendant's). The parties have also filed post-hearing memoranda of law. Doc. No. 135 (Plaintiffs') and Doc. No. 136 (Defendant's). Plaintiffs also filed a "Declaration of J. Stott Matthews" and a "Declaration of Richard Shenkan." Doc. No. 137 (Matthews) and Doc. No. 138 (Shenkan). Plaintiffs filed a second memorandum, and a "Supplemental Report" by Mr. Matthews. Doc. No. 139 and Doc. No. 140. The Defendant filed a second memorandum. Doc. No. 145.

This memorandum and order proceeds through the various discovery requests. The "Findings of Fact," below, are new. My rulings largely adhere to my tentative rulings, but where there are differences, the language of this Order controls.

### FINDINGS OF FACT

A. Based on my review of the motions and supporting documents, and on the testimony that I heard on October 26, 2018, I find that the Defendant has unreasonably delayed and obstructed discovery in this case.

B. I find that Richard Kaminski, the Defendant's e-discovery liaison, did not make the decision to convert native files, including emails and Excel spreadsheets, to text or TIFF format. Doc. No. 131, at 26-33. This conversion meant that the documents produced were not electronically searchable. *Id.*

C. The stated reason for not supplying Excel spreadsheets in native format was that to do so would alter the original document. *Id.* at 31. I find that this explanation is meritless. Mr. Kaminski testified that he told counsel for the Defendant that the Excel spreadsheets should be produced in native format under the Court's previous Order. *Id.* at 34. Mr. Kaminski explained that the Excel spreadsheets could have been produced by excising material to be redacted and producing a redacted Excel worksheet, and identifying it as redacted. *Id.* at 40. The original Excel spreadsheets would still retain the original data and metadata. I find that this method of producing the spreadsheets would have been far more efficient than the one adopted by counsel for the Defendant. It also would have complied with Judge Beetlestone's e-discovery protocol.

D. I find that the production in text and TIFF format was largely a waste of time and money. Mr. Kaminski testified that the TIFF documents took three or four people two or three days to produce. *Id.* at 41. There is no readily discernible purpose for converting the Excel spreadsheets into TIFF, other than to make them less useful to the recipient. The Excel production would have been far more time efficient. The uselessness of the TIFF production was compounded by the decision to redact almost all substantive information. The effect was to produce page after page of completely black documents. In addition, copying the Excel documents to TIFF broke apart the Excel spreadsheets into multiple pages, which had to be pieced together manually by the

recipients. *Id.* at 54-55. The effect was to dump a pile of fragmented, highly redacted spreadsheets on the recipient. This was an unfair and abusive discovery practice.

      E. I find it was not Mr. Kaminski, but counsel, who made the decision to produce via text and TIFF, rather than in native format, and that it was counsel who applied all the redactions. *Id.* at 33. I find that one of the known consequences of producing via text and TIFF is that none of the metadata in the Excel spreadsheets (or emails) was produced. *Id.* at 43-44. Mr. Kaminski explained that Excel metadata would be automatically included if Excel spreadsheets were produced, and that it would have to be removed (by a "scrubbing program") if it were not to be produced. *Id.* at 48-49. Counsel for the Defendant objected that the production of metadata would be unduly burdensome and very costly. *Id.* at 45. Defendant produced no evidence establishing the burdensomeness or cost of producing Excel metadata, and Mr. Kaminski's testimony contradicts counsel's objection. Whether the objection was interposed in good faith I will leave for another day.

      F. I find that "Mr. Kaminski, while quite expert at his role, is not the person . . . who's going to have primary knowledge of how documents are stored, kept, and so forth at the bank." *Id.* at 83.

      G. Mr. Matthews was Plaintiffs' e-discovery expert. *Id.* at 89. I accept him as an expert in the field, based on his training and experience. *Id.* at 89-90. Mr. Matthews testified that 90% of the 57 documents produced in text and TIFF format were blacked out for redaction purposes. *Id.* at 91. He testified that the production excluded all metadata. *Id.* at 92. He testified that the metadata would have provided useful information "so that the person on the other receiving side understands what they're looking at. That is the purpose of model orders such as the one that the Judge originally

entered in this case, is to facilitate the exchange of information so the parties can make their arguments based on the data that's provided." *Id*.

      H.  Mr. Matthews testified that producing the documents in native format would have been quite simple and cost effective. *Id*. at 93-94. The production in non-native format was "on the extreme side of . . . unhelpful." *Id*. at 94. Mr. Matthews responded "absolutely" to the question "is this one of the most extreme discovery abuse instances that you've seen?" *Id*. at 94-95. Mr. Matthews testified that a modern bank has people in the organization who "have the expertise to query the systems, generate those special queries . . . select this information from this table, from this database, and give me the dump of what . . . are in those systems." *Id*. at 96. Mr. Matthews estimated that the cost of e-discovery would be $100 to $200 a gigabyte. *Id*. at 99. Because no metadata had been produced, he could not say with certainty how many gigabytes of information had been produced so far, but he estimated between five and ten gigabytes, and the cost of producing that information electronically would have been $1,000 to $2,000. *Id*. at 100.

      I. Mr. Matthews could not understand why the headers of Excel files in this case would (generally) be part of attorney-client communication. *Id*. at 105. Neither can I.

      J. Mr. Wilshaw is a digital forensics investigator for Defendant. *Id*. at 113. He helped to construct email queries as part of the process of responding to discovery propounded by Plaintiffs. *Id*. at 116. He was unable to say how much time he spent constructing and executing email queries. *Id*. at 117, 123. He did not recall how many gigabytes of information were produced as part of email discovery. He did not participate in culling the emails for privilege. *Id*. at 120-21.

      K.  Kenneth Fries is a vice-president and process improvement manager for Defendant. *Id*. at 127. When asked in discovery to identify the class size, he sent a

request to "analytics," who developed a report. *Id.* at 128. He sent the report to legal. *Id.* It would be easy to redact the names of the customers from the report and provide it to opposing counsel. *Id.* at 129. Part of the data on the report are deficiency balances for the customers. *Id.* at 130. Minimum statutory damages were also calculated in the report. *Id.* at 131.

    L. Mr. Fries testified that a significant part of the burdensomeness of gathering discovery was taking screen shots of information pertaining to Plaintiffs from the various software systems in which information is kept. *Id.* at 135. Additional burden was imposed by having to print out statements of collection history from the "On-Demand" system. *Id.* at 136. He testified that the Defendant collected certain information from the "CACS" system (one of several the Defendant uses) by taking screenshots and importing the information into Word. *Id.* at 138.

    M. Mr. Fries testified that current bank policies were maintained on SharePoint, a Microsoft product that can be accessed by Mr. Fries from his computer. *Id* at 143. Archived policies may be accessible only to the manager of the SharePoint site. *Id.*

    N. Mr. Fries was knowledgeable about what type of information was accessible on several different software programs used by the Defendant. *Id.* 143-47.

    O. Counsel for Defendant produced four boxes of documents consisting of spreadsheets "stitched together" for my *in camera* review. *Id.* at 151. Defendant claims the documents are subject to the attorney-client privilege, or to the attorney work-product doctrine. *Id.* at 149-51. Plaintiffs have objected that the privilege claims have not been the subject of a proper privilege log.

Good cause appearing, it is on this 30th day of January, 2019, **ORDERED**, as follows:

**General Rulings**

1) Generally, Plaintiffs' requests and interrogatories are clear, directed toward obviously relevant information, and should be answered. The parties' main dispute seems to be over whether discovery before class certification should be done by sampling or class-wide. Many of the subordinate disputes take on their significance because of this issue.

2) Defendant's objections are otherwise non-specific, boiler-plate responses with very little substance. Particularly when it comes to a showing of disproportionality or burdensomeness, Defendant's objections are lacking. The objections are in most instances overruled. In some instances, Defendant contends it has already responded to interrogatories or demands for production. If it has provided answers or documents, and has nothing further to add after its objections have been overruled, it will say so under oath. If it needs to supplement its responses, in light of the objections being overruled, it will do so under oath.

3) The Defendant's general objections to interrogatories are overruled. Objections must be noted with specificity. Fed. R. Civ. Pro. 33(b)(4); *see Covington v. Sailormen Inc.*, 274 F.R.D. 692, 693–94 (N.D.Fla. 2011) ("Common sense should have been enough for Defendant to know that boilerplate, shotgun-style 'General Objections,' incorporated without discrimination into every answer, were not consistent with Fed.R.Civ.P. 33(b)(4)'s directive that '[t]he grounds for objecting to an interrogatory must be stated with specificity.'"). The same holds for requests for production. *See* Fed. R. Civ. Pro. 34(b)(2)(B).

4) An objecting party must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. Pro. 34(b)(2)(C). In large measure the Defendant has not complied with this rule. It will do so.

5) If the Defendant has been notified in writing of purported deficiencies in its responses to discovery, and its response is that it has nothing, or nothing further to disclose, it shall respond by affidavit under oath that it has made careful search of records and information under its control in response to the notice of deficiencies and has nothing, or nothing further, to disclose. Such an affidavit may be the basis of precluding evidence submitted by the Defendant at a later stage of the proceeding, if the discovery request covered the evidence and the evidence was not produced in discovery.

6) If the Defendant indicates in a discovery response ordered below that all information responsive to the request or interrogatory has been previously supplied, Defendant shall make such an assertion under oath and shall supply the Bates-stamp numbers of all responsive documents and refer to the interrogatory answer by number and date of response.

**Sampling Protocol**

7) Plaintiffs want extensive class-wide discovery. Defendant claims undue burden, and seeks discovery limited to only 150 individuals, which would represent 50 persons in each of the three classes identified in the Amended Complaint, and approximately 3.8% of the 3,956 people identified by Defendant as the total number of people who are potential class members. *See* response to Plaintiffs' interrogatory 9. Plaintiffs want complete discovery as to 20% of the potential class members, and class-wide discovery as to a number of other issues.

8) To resolve this impasse, on or before February 7, 2019, the Defendant shall file under seal separate lists of the account numbers of each potential class member in the "FORM 1 NOR CLASS," the "FORM 2 NOR CLASS," the "NOR ALTERNATIVE CLASS" and the "POST-SALE NOTICE CLASS." Defendant shall order the lists by date of transaction, oldest to most recent. The date of transaction shall appear in a column next to each account number. The parties shall agree on a means of randomly selecting 10% of each class for sampled discovery. If there is agreement, the parties shall promptly file a stipulation indicating their agreement and I will enter an order confirming the parties' protocol.

9) If the parties cannot agree, on or before February 14, 2019 the parties shall each file a memorandum of no more than 5 pages, exclusive of exhibits, explaining why discovery should not proceed by selecting every tenth name, with a random starting point on each list selected by me. If Defendant claims undue burden, Defendant shall supply an estimate of the number of documents and pages of records to be supplied for a 10% sample group, and explain how Defendant arrived at the figure. Defendant shall also supply a thorough accounting of the hours spent on the 19,000 pages produced so far (Def. Mem. 16-17) concerning Representative Parties, detailing the persons who spent time on producing the documents, their job title and function, the hours spent on production of documents, an explanation of the nature of work done, the annual salary and hourly salary rate attributable to that person (for attorneys and paralegals employed by its outside counsel, Defendant need only supply hourly billing rate), and an itemization of other costs associated with the production. The estimate and accounting shall be submitted under oath. The purpose of the submission is to provide me with

reliable information on the projected burdensomeness of the sampling procedure outlined above.

10) If Defendant contends a smaller sample size will produce statistically reliable results fairly representative of the complete class, it shall file an affidavit under oath from a qualified statistician supporting their contention and providing concrete suggestions on how to overcome the statistical concerns.

11) If Plaintiffs contend the sample group is too small, or otherwise will not produce statistically reliable results fairly representative of the complete class, they shall file an affidavit under oath from a qualified statistician supporting their contention and providing concrete suggestions on how to overcome the statistical concerns. Upon review of the parties' submissions I will issue an order fixing the discovery sampling protocol.

12) There shall be no class-wide discovery until further court order. Full class-wide discovery at this time would be overly burdensome and disproportionate to the issues and monetary amounts involved in this case. Sampled discovery should enable the parties to make reliable extrapolations about what full scale class-wide discovery would reveal. This should be enough to address the legal and factual issues that must be resolved prior to class certification.

**Resolution of Specific Objections to Interrogatories and Requests for Production**

13) Individual discovery disputes are tentatively resolved below. The discovery ordered below shall be limited to the sample class members selected for discovery in accordance with paragraphs 7-9, above (the "Sampled Customers"). All discovery

ordered below is limited to the alleged class period, September 22, 2011 through the present.

14) **Interrogatories**

**No. 1** (Pl. Mem. 12; Def. Mem. 7). Plaintiffs ask for identification of the persons who were involved in answering the interrogatories. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**No. 2** (Pl. Mem. 13; Def. Mem. 8). Plaintiffs ask for an account of the deficiencies for all class members. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer. The answer shall also identify "the number of deficiencies M&T has marked as discharged in [its] systems," *see* Doc. 126 at 6, by designating them "zero (bankruptcy)." The Defendant shall state, according to the Bank's latest records, how many class members in each class had any deficiency balance discharged in bankruptcy. The Defendant shall also state, for each class, the aggregate total of the deficiencies, based on its records.

**No. 3** (Pl. Mem. 3; Def. Mem. 9). Plaintiffs ask for auto loan deficiency actions against any putative Class Member during the Class Period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath, based on its records.

**No. 4** (Pl. Mem. 17; Def. Mem. 10). Plaintiffs ask for persons having knowledge of the facts alleged in the Complaint. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**No. 5** (Pl. Mem. 18; Def. Mem. 11). Plaintiffs ask for a calculation of minimum statutory damages. All of Defendant's objections are denied, except its claim that the results of its damages calculation, as described during the testimony of Mr. Fries, are attorney work-product. To avoid trenching on attorney work-product, I will direct that the parties engage in additional discovery, as follows:

A. By February 7, 2019, Plaintiffs shall serve a Notice on the Defendant containing a description of the information and calculations Plaintiffs need to compute statutory damages as to the Sampled Customers.

B. Within 21 days of the date the sampling protocol is fixed, as contemplated under paragraphs 7, 8, and 9, above, Defendant shall produce, via electronic response in easily comprehensible and searchable form, all the information requested by Plaintiff.[2]

C. Within 14 days of the date that all the information mentioned in sub-paragraph B is supplied to the Plaintiffs, Plaintiffs shall provide the Defendant with a computation of statutory damages for the Sampled Customers.

D. Within 14 days of service of Plaintiffs' computation of statutory damages for the Sampled Customers, Defendant shall admit or

---

[2] Defendant has already performed all these computations but claims that the work was done at the direction of its attorneys in anticipation of litigation. The claim is plausible. Nevertheless, given the Defendant's history of unreasonable objection, and the reality that the information-gathering and computation has already been done, I will not look favorably on a claim that providing the information necessary to perform the damage calculations is unduly burdensome, costly, or irrelevant. Defendant could obviate any cost or burden by simply turning over the data and calculations that it already has collected and performed. Any burden or cost is M&T's choice. Nor will a request for extension of the time to comply with this Order be granted, absent extraordinary circumstances.

deny the accuracy of each computation for each Sampled Customer. For any calculation the accuracy of which it denies, Defendant shall supply a counter-computation, which includes all necessary sub-calculations, and produce all documents upon which it relies in its counter-computation.

**No. 6** (Pl. Mem. 19; Def. Mem. 11). Plaintiffs ask for an explanation of the difference in meaning between two phrases appearing on Defendant's forms. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**No. 7** (Pl. Mem. 20; Def. Mem. 7). Plaintiffs ask for the aggregate amount Defendant paid all third parties for storage expenses. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. In addition, Defendant shall identify by Bates stamp numbers all documents upon which it based its answer.

**No. 8** (Pl. Mem. 21; Def. Mem. 12). Plaintiffs ask for the aggregate sum for each of three classes for the "Expense of Storing the Vehicle" as listed in the Notice of Repossession for all putative class members' repossessed vehicles. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**No. 9** (Pl. Mem. 22; Def. Mem. 12-13). Plaintiffs ask for the total number of people who comprise the various classes defined in the Complaint. Defendant has supplied figures, subject to non-specific objections. All of Defendant's objections are overruled. If the overruling of the objections means that the

answer must be supplemented, Defendant shall supplement its answer under oath.

**No. 10** (Pl. Mem. 23; Def. Mem. 10). Plaintiffs ask for the process by which Defendant answered its interrogatories. The question as phrased is unduly vague and focuses on the process of answering interrogatories rather than on the substance of the litigation. The Plaintiffs' motion as to this interrogatory is DENIED. The Defendant will supply a description of the process it used to respond to Interrogatories 7, 8, and 9, as ordered above.

**No. 11** (Pl. Mem. 24; Def. Mem. 13-14). Plaintiffs ask for specific information about Gene Daisey's loan. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall **also** provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**No. 12** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for specific information regarding a post-sale notice send to Abbott. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall **also** provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**No. 13** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for the criteria Defendant used to calculate the $200 expense for preparing/repairing the repossessed vehicle. The fact that the figure was an "estimate," as Defendant contends, does not obviate the responsibility to answer the question. If there were no criteria used, and the figure was selected arbitrarily, Defendant shall so

13

state. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

15) **Requests for Production**

**Nos. 1-5** (Pl. Mem. 26-28; Def. Mem. 15). Plaintiffs ask for documents supporting specific charges for storing and repairing repossessed vehicles of the representative plaintiffs. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 6** (Pl. Mem. 29; Def. Mem. 15-16). Plaintiffs seek sample discovery of all classes. All of Defendant's objections are overruled. Within 30 days of the date the sampling protocol is fixed, as contemplated under paragraphs 7, 8, and 9, above, Defendant shall supply an unequivocal response under oath with responsive documents as to each of the Sampled Customers.

**No. 7** (Pl. Mem. 30; Def. Mem. 17). Plaintiffs seek complaints filed against Defendant based on notices of repossession and post-sale notices that are the same or similar to the notices at issue in this case, that were filed against Defendant regarding its repossession policy, practice and procedure. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 8** (Pl. Mem. 31; Def. Mem. 18). Plaintiffs seek exemplars of every notice of repossession and post-sale notice form sent by Defendant during the class period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 9** (Pl. Mem. 31; Def. Mem. 18). Plaintiffs seek exemplars of each retail installment sale contract assigned to Defendant during the class period. All of

Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 10** (Pl. Mem. 32; Def. Mem. 18). Plaintiffs ask for all documents that tend to substantiate Defendant's interrogatories. Plaintiffs' request is DENIED as phrased because the question is unduly vague. Defendant shall supply all documents upon which it relied, or which it consulted, in responding to Interrogatories.

**No. 11** (Pl. Mem. 32; Def. Mem. 11). Plaintiffs ask for insurance policies that may cover Defendant for the claims asserted by Plaintiffs. Defendant responds that it has already stated in its Rule 26 initial disclosures that it has no such insurance. Plaintiffs acknowledge that this answer was provided in Defendant's initial disclosures. Plaintiffs' motion is DENIED.

**No. 12** (Pl. Mem. 33-38; Def. Mem. 19-22). Plaintiffs ask for all documents concerning the representative plaintiffs or their repossessed vehicles. Defendant responds that it has already supplied all such documents. Plaintiffs have identified a number of deficiencies. Defendant has responded to the deficiencies. Defendant shall supply its answer, provided at Def. Mem. 20-22, as a supplemental response, under oath. In addition, the objections identified at Def. Mem. 20-22, (iii), (iv), (v), (x), (xi) and (xii) are overruled. The deficiencies identified by Plaintiffs seem reasonably clear and are drawn from language in documents already produced by Defendant.

**No. 13** (Pl. Mem. 38; Def. Mem. 22). Plaintiffs seek documents that concern Defendant's repossession policies, procedures and practices. All of

Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 14** (Pl. Mem. 39; Def. Mem. 23). Plaintiffs seek Defendant's contracts with third party vendors concerning repossession. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 15** (Pl. Mem. 39; Def. Mem. 23). Plaintiffs demand an organizational chart. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 16** (Pl. Mem. 40).[3] Plaintiffs demand "all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer in YOUR answer to Interrogatory 13, above." Pl. Mem. 40. Defendant contends it did not provide any criteria in its answer to Interrogatory 13. Defendant's objections to Interrogatory 13 have been overruled, and it has been directed to answer. Accordingly, all of Defendant's objections are overruled, for the same reasons. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 17** (Pl. Mem. 41; Def. Mem. 24). Plaintiffs demand "all DOCUMENTS that YOU referenced or relied upon in YOUR answer to the above interrogatories." Defendant objects that the request is overbroad and improper. Def. Mem. at 24. I do not see why. Defendant has not explained why. Defendant's

---

[3] I note that Plaintiffs addressed Request No. 16 in their post-hearing "Suggested Language Changes," while the Defendant did not. Doc. No. 125 at 13; Doc. No. 126 at 14. My tentative rulings did not address Request No. 16. This Order controls.

16

objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

16) **Privilege Log** (Pl. Mem. 41; Def. Mem. 24). I will resolve privilege log issues after examining the most recent privilege log, hearing argument from counsel, and if necessary, examining documents subject to a privilege claim *in camera*.

17) **Sanctions** (Pl. Mem. 44-50; Def. Mem. 29-30). The sanctions motion is DENIED, without prejudice to its being renewed once the discovery outlined in this Memorandum has been completed and privilege issues resolved.

18) Unless otherwise noted in this Order, the due date for responses and other action required under this Order is February 14, 2019.

BY THE COURT:

_s/Richard A. Lloret_
RICHARD A. LLORET
U.S. Magistrate Judge