IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, and CATHERINE HOSICK, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | No. 2:17-CV-04806-WB |
| v. | ) ) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR SECOND MOTION TO
COMPEL DISCOVERY RESPONSES AND IMPOSE SANCTIONS**

## I. INTRODUCTION

This motion comes on the heels of the Court having already compelled most of the discovery sought via Plaintiff's First Set of Post-Removal Discovery and making an evidentiary finding that "the Defendant has unreasonably delayed and obstructed discovery in this case." See, Memorandum and Order Regarding Discovery Disputes (dkt. 147)(hereafter "Discovery Order"), p. 1. Due to Defendant's repeated contemptuous and reckless disregard to its discovery obligations, Plaintiffs ask the Court to compel Plaintiff's Second Set of Post-Removal Discovery and for sanctions.

The following is a short procedural history.

Contemporaneously with the service of the complaint in the Court of Common Pleas of Philadelphia, Plaintiffs served a First Set of Class Discovery on the Defendant Bank. The Bank did not respond to this discovery in any fashion and removed the case to this Court. At the Rule 16 conference, in an effort to efficiently advance this case, Judge Beetlestone ordered the

Defendant to produce certain highly relevant categories of documents as part of a ***stipulated-to*** case management order. ("CMO Order"; dkt.21). The Court also issued an order governing electronic discovery order mandating, *inter alia*, the production of Excel files in their native format. ("Electronic Discovery Order"; dkt. 17)   Though the Bank produced some documents according to the CMO Order, despite repeated requests by Plaintiff's counsel, the Bank failed to produce all the documents as required by the January 11, 2018 Order.  The Bank also produced an inadequate privilege log.

On April 13, 2018, the Court issued another order compelling the production of the information in the CMO Order, clarifying that it relates to "electronically stored information." ("Second Compulsion Order"; dkt. 55).

On May 11, 2018, the Bank produced approximately 19,667 pages in .tif format, 89% of which were blacked-out *entirely* and 10% with very little bits of content, which Plaintiffs' expert has since determined could have been reduced to ***only 48 pages***. Indeed, the remarkably useless production consisted of 1-page [a single row (1" x 6") Excel spreadsheet] converted to 6,325 pages; and another 3-page Excel document converted to 2,015 pages. (Supplemental Report of Plaintiff's E-Discovery Liaison, Stott Matthews (dkt. 142)[1] ("In summary, rather than produce the above 13 sheets of content ("Sheets s/Cont") in Excel format in approximately 13 8 1/2" x 11" pages, M&T Bank chose to produce them in 14,810 individual TIF pages, single-file image documents (requiring each page to be opened, whether using a litigation database or not). M&T Bank then used this highly inflated page count to incorrectly represent to this Honorable Court that the

---

[1] Though this pleading was initially filed under seal as a matter of prudence as the Bank designated the Excel spreadsheets of Plaintiffs Hosick and Abbott as "Confidential," the Bank has since withdrawn this designation at the request of Plaintiff's counsel. **Exhibit 1**.

production of documents for a 20% sample of class members' files would be unduly burdensome.") *Id.* at p. 10.

On June 12, 2018, Plaintiffs propounded Plaintiff's First Set of Post-Removal Discovery. After delaying weeks after its 30 day deadline to respond to the discovery, the Bank interposed baseless objections and similarly failed to fully answer that discovery and was otherwise uncooperative and obstructionist. Though documents trickled-in, the Bank failed to correct its flagrant deficiencies.

On September 21, 2018, Plaintiffs filed a Motion to Compel Discovery Responses and Impose Sanctions.

On October 26, 2018, the Court held a full day evidentiary hearing devoted to the outstanding discovery disputes.  At several points during the Hearing, Plaintiffs requested that the Bank provide certain information that had not previously been *specifically* included in their First Set of Post-Removal Discovery (though were categorically included in such requests). During the evidentiary hearing, the Court instructed the Bank to provide certain information to Plaintiffs and instructed Plaintiffs to formally request additional documents through a written request, as a matter of efficiency.

On November 5, 2018, Plaintiffs served their Second Set of Post-Removal Discovery which largely consisted of requests made at the evidentiary hearing. **Exhibit 2**.[2]  While the Bank provided responses on December 5, 2018, they are clearly inadequate. **Exhibit 3**.

Plaintiffs attempted to resolve the issues with the deficiencies in the Bank's response to the second set of discovery in letters to defense counsel on November 26, 2018, December 4, 2018, December 11, 2018, two letters dated February 5, 2019, and on February 8, 2019. **Exhibit 4**.

---

[2] The entire set of this set of discovery with the confidential exhibits has been filed under seal. Dkt. 143.

(Composite of Deficiency Letters). Though sending two replies on December 20, 2018 (**Exhibit 5**)(both letters) and producing a supplement of documents on February 1, 2019, the Bank has been uncooperative in resolving these issues. Indeed, the Bank (by unverified letter from Attorney Parker) posited that numerous policies have been destroyed because they were purportedly "overwritten" by the new policy. *Id*.

Though the Defendant provided two supplemental answers on February 11, 2019 (**Exhibit 6**) and, once again, requested additional time to more fully respond to the discovery, the Bank clearly has not taken heed to the Court's admonition in its 1/31/19 order.

Significantly, to both the Bank's initial and supplemental responses, the Bank attached a whimsical "certification" which illustrates the Bank's continued attempt at deception and elusiveness:

> "...that the factual information contained in the responses is true and correct to the best of my knowledge, information, and belief, and the records still in existence and presently recollected. I reserve the right to make any changes in the responses if it appears at any time that omissions or errors have been made therein, or that more accurate information is available."

18 USC §1746, however, does not permit a "certification" based on a "belief," but requires an affidavit that the information is "true and correct." Moreover, the description that the "certification" is limited to "records in existence and presently recollected" also calls into question the accuracy of the Bank's responses. Perhaps, most unusual, is the Bank's insistence that it can simply submit documents at any future time without regard to the discovery time limitations imposed or even change its responses if it is caught in another untruth, claiming a "right to make any changes in the responses if it appears at any time that omissions or error have been made therein, or that more accurate information is available." Tellingly, the Court's 1/31/19 order instructed the Bank to answer all compelled discovery requests from Plaintiff's First Set of Post-

4

Removal Discovery under oath. Apparently, the Bank just didn't get the message to "shape-up" and comply with discovery rules and court orders. Evidently, the Bank needs to be admonished again – this time with a considerable sanction as this billion-dollar, publicly traded, multi-state Bank continues to deliberately and egregiously engage in contemptuous misconduct.

This Motion to Compel and Impose Sanctions is being filed to compel the documents requested and information sought in Plaintiffs' Second Set of Post-Removal Class Discovery, to obtain complete disclosures in connection with its Rule 26(a) obligation, and to have this Honorable Court impose a reasonable sanction for the Bank's continued acts to thumb its nose at the Court's orders and its obligation to engage in an honest and good faith effort to advance this case, pursuant to F. R.C.P. Rule 1.

## II.AUTHORITY FOR REQUESTED RELIEF

Fed.R.Civ.P. 37 is entitled "Failure to Make Disclosure or to Cooperate in Discovery; Sanctions." Subsection (a)(1) provides that a party may move for an order compelling disclosure or discovery. Paragraph (a)(3)(B) states that such a motion to compel may be made if, *inter alia* a party fails to answer an interrogatory submitted under Rule 33 or a party fails to produce documents under Rule 34. Subsection (a)(4) makes clear that an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond. Finally, subsection (b)(2) provides for sanctions for failure to comply with a court order related to discovery. Sanctions may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> **(iii) striking pleadings in whole or in part;**
> (iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
**(vii) treating as contempt of court the failure to obey any order
except an order to submit to a physical or mental examination.**

## III.   THE BANK'S OBJECTIONS ARE BASELESS AND ANSWERS INCOMPLETE

### Once again, Plaintiff has not produced documents or responded to discovery in the time required by court order or statute

M&T had thirty days in which to respond to Plaintiff's Second set of Post-Removal

Discovery pursuant to the Fed.R.Civ.P. 33(b)(2) and 34(b)(2)(A), and has admitted such by the

Bank in its Opposition to Plaintiffs' Suggested Language Changes to Proposed Order (Dkt 126,

p. 13). Nevertheless, in its Response to this discovery, the Bank failed to fully respond to no

less than 8 document requests because it was still in the process of either obtaining, reviewing,

preparing or identifying the responsive documents within the required time period.  Further, many

of the answers the Bank provided were incomplete, and many of its objections are baseless.

The Bank repeatedly failed to respond to the discovery in a timely fashion or seek an order

permitting the extension of the statutory deadline.

The Third Circuit Court of Appeals has explained the liberality of discovery:

> It is well recognized that the federal rules allow broad and liberal discovery. See
> In re Madden, 151 F.3d 125, 128 (3d Cir.1998) ("Pretrial discovery is ...
> `accorded a broad and liberal treatment.'") (citing Hickman v. Taylor, 329 U.S.
> 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); see also Wright, Miller & Marcus,
> Federal Practice & Procedure, Civil 2d § 2007 ("The rule does allow broad scope
> to discovery and this has been well recognized by the courts."). *Pacitti v. Macy's,*
> 193 F.3d 766 (3rd Cir. 1999).

> Also see: 8 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2007 (3d ed.
> 2011) (noting that courts have repeatedly recognized the broad scope of
> permissible discovery and that "Rule 26(b) allows great freedom in discovery.")

Plaintiffs are entitled to Defendant's full and complete responses to the interrogatories and

the requests for production of documents addressed below and requests an order directing

Defendant to provide full and sufficient answers to each request.

## A. <u>INSTRUCTIONS</u>

### <u>Instruction 4</u>

4. YOU are not to redact any information unless there is a prior written agreement made by all counsel or Court Order. See, Stipulated Discovery Confidentiality Order (Doc. 22).

### <u>Objection to Request No. 4</u>

M&T objects to Plaintiffs' "instruction" that M&T is "not to redact any information unless there is a prior written agreement made by all counsel or Court order." *See* Discovery Requests at Instructions/Definitions ¶ 4. M&T's obligation to protect the personal data of unrelated customers from disclosure to third parties (*which necessarily includes Plaintiffs*) is undisputed. *See e.g., Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 83 (3d Cir. 2007), *as amended* (Mar. 7, 2007) (discussing the "prohibition on disclosure of consumer financial information to unaffiliated third parties" and noting that a defendant's obligations is satisfied by the "pre-production redaction of personal information from the requested document...because there would not be a release of personal financial information"). M&T's legal obligation to redact certain information does not disappear simply because a confidentiality order is in place or because Plaintiff "instructs" M&T otherwise. (Emphasis added).

### <u>Why Objection is Baseless</u>

The Bank's interpretation of *Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 83 (3d. Cir. 2007) as standing for the proposition that the Bank cannot provide Protected Personal Information ("PPI")(even to this firm's own clients, the representative plaintiffs) despite the fact that there is a stipulated-to confidentiality order requiring such disclosure is simply wrong. In *Chao v. Community Trust Co.*, 2005 WL 1084619 (E.D. Pa. 2005), a trust company attempted to avoid compliance with a subpoena duces tecum served by representatives of the Secretary of Labor on the basis that the documents involved were protected by the Gramm-Leach-Bliley Act, the court cited to the GLBA's exception to protection from disclosure (15 U.S.C.A. § 6802(e)(8)), requiring disclosure "to comply with a properly authorized civil, criminal, or regulatory investigation or subpoena or summons by federal, state, or local authorities." The Third Circuit remanded to the District Court because it had mistakenly not ruled on whether the Secretary of Labor had jurisdiction to conduct the investigation. The Bank mistakenly states that *Chao* ruled that a defendant's obligations are satisfied by the pre-production redaction of personal information from the requested document. Rather, the Court in *Chao* stated (in fn. 6) that if the Secretary had paid for pre-production redaction, then Gramm-Leach-Bliley would not have been implicated by the subpoena.

This in no way is a ruling that Gramm-Leach-Bliley requires redaction if documents are produced under the 6802(e)(8) exception. Again, to avoid continued conflict and advance this action, Plaintiffs are <u>not</u> seeking the PPI of any class member at this time; however, they are entitled to all information relating to themselves without redactions as well as certain information relating to the composition of the class.

### Instruction 5

If YOU contend that answering any of the discovery requests in this set of discovery or maintain that answering any of the discovery in Plaintiffs First Set of Post-Removal Discovery or any other discovery propounded or served on the BANK is "unduly burdensome," please provide the following information/documents:

    i.   the expected cost associated with answering the request;

    ii.  the expected time associated with answering the discovery request;

    iii. the name, title, and employer of all person(s) who were involved in making the determination as to the projection of the cost and/or time associated with answering the request; and,

    iv. IDENTIFY and produce all DOCUMENTS which s/he or they relied upon in making the determination as to the projection of the cost and/or time associated with answering the request.

    "[T]he party resisting discovery must show specifically how ... each
    Interrogatory is not relevant or how each question is overly broad,
    burdensome, or oppressive." *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d.
    Cir. 1982)(citing *Roesberg* v. *Johns-Manville Corp.*, 85 F.R.D. 292, 296-97
    (E.D. Pa. 1980)(Emphasis added).

### Objection to Instruction 5

M&T objects to Plaintiffs' instruction that M&T provide specific explanations and/or documents if M&T with any an undue burden objection it may assert to the Discovery Requests herein. *See* Discovery Requests at Instructions/Definitions ¶ 5. While M&T bears to burden of establishing any undue burden objection it may assert, Plaintiffs are not entitled to determine what proof M&T submits in support of the same.

### Why Objection is Baseless

The Bank interposed the "unduly burdensome" objection numerous times in its responses to Plaintiff's First Set of Discovery Requests. It failed to come forward with any evidence at the hearing though it also fails to withdraw any of its objections. This schizophrenic approach caused (and continues to cause) immense confusion, delay, costs, and is (and has been) a waste of the Court's resources.  In an attempt to solve this issue, Plaintiffs took a proactive approach and requested certain information that would determine whether the Bank's "unduly burdensome"

objections are (and have been) legitimate. To date, the Bank has asserted a general argument, for example, that a 20% sample of the class would cause undue burden ("4 million pages") though failed to provide a single affidavit detailing *its* burden to fulfil its already promised obligation to provide a 20% sample of the classes.

## B.   REQUESTS FOR PRODUCTION OF DOCUMENTS

### Request No. 1

All policies, procedures, and/or practices which are referenced on the first page of Exhibit 1 (including 1-1 through 1-12).

### Response to Request No. 1

M&T has previously produced the documents referenced at Exhibit 1-2 at M&T020190-M&T020194, Exhibit 1-9 at M&T020232-M&T020237, and Exhibit 1-12 at M&T020238-M&T020245. M&T states that it is in the process of obtaining documents responsive to this Request and will supplement its production regarding the same under separate cover.

### Reason for Compelling Response

On January 11, 2018, the Court issued an Order (Dckt 21) requiring the prompt production of all policies and procedures. That Order was entered over a year ago, yet the Bank claims it is still "in the process of obtaining documents responsive to this Request." This is a blatant violation of the time period set out in the Court's order, and the Bank should be compelled to produce these documents immediately. Furthermore, at the 10/26/18 evidentiary hearing, Mr. Fries testified that current bank policies were maintained on SharePoint, a Microsoft product that can be accessed by Mr. Fries from his computer. Hg. Tr. at 143. He also stated that Archived policies may be accessible only to the manager of the Sharepoint site. Id. See also, Memorandum Opinion, p. 5. Despite Mr. Fries' testimony under oath that the policies/procedures referenced at the evidentiary hearing exist, in a letter dated December 20, 2018 to the undersigned, Attorney Scott Parker wrote:

> "M&T has also confirmed that the following specific versions are no longer available as they were overwritten by the new (previously produced) policies:
>
> 1. CAM Procedure Voluntary Repossession on SCRA – 9/30/201 version;
> 2. Processing a Paid Redemption for Release – 6/23/2014 version;
> 3. Processing Possession Referrals – 9/20/2016 version;
> 4. REPO missing Info – April 24, 2013 version;
> 5. Repossessed Missing Info – 6/12/2014 version;
> 6. Repossession Letter and Title Ordering Procedure – 10;27/2014

version;

7. Remarketing Sale Procedure – 11/18/2014 version.

Additionally, M & T has confirmed that there is no individual "Repo/Remarketing Referral Procedure" document. This term refers to the repo/remarketing process, not a specific procedure with that title.

Though when asked about destroyed documents, the Bank cleverly side-stepped this issue in its formal responses. Production of Document Request 24 of Plaintiff's Second Set of Post-Removal Discovery states:

If YOU contend that any DOCUMENT responsive to any discovery request in this set of discovery, in Plaintiff's First Set of Post-Removal Discovery or any other set of discovery propounded or served on the BANK cannot be produced as a result of an automatic, intentional, or accidental document destruction or retention processes, produce a mirror image of each device, drive, or server on which such DOCUMENTS could previously be located. Such production shall occur at a location, date and time mutually agreeable to all parties and persons involved for forensic examination by an independent expert.

Mr. Ryan, the Bank's representative, formally responded by "Certification" (not under oath) as follows:

M&T states that it does not contend that any document responsive to any discovery request in this set of discovery, in Plaintiff's First Set of Post-Removal Discovery, or any other set of discovery propounded or served on M&T cannot be produced as a result of an automatic, intentional, or accidental document destruction or retention process.

Notably, (a) Mr. Ryan's certification to discovery, (b) Attorney Parker's representation in a letter, and (c) Mr. Fries' testimony under oath are irreconcilable. These sort of continued flagrant discovery abuses should not be condoned by this Honorable Court.

By Order dated February 2, 2019, the Court ordered the Bank to provide a detailed account of the whereabouts of these "overwritten" policies. To date, despite the passage of 2 weeks, no affidavit has been provided. The extent that these policies are not available, Plaintiffs would like their expert, Stott Matthews, to conduct a forensic examination of the Bank's computer system.

### Request No. 2

As ordered by the Court at the 10/26/18 hearing, please produce the instruction manuals, operation or "how-to" DOCUMENTS, or other DOCUMENTS which DESCRIBE (or tend to DESCRIBE) how any of the following software programs or applications operate: (a) Filenet; (b) Locus; (c) AutoIMS; (d) CACS; (e) Café / Columbia Ultimate (CU); (f) Forms; (h) Columbia Ultimate; (i) On-demand; (j) TPX; (k) Shaw; (l) Hogan; (m) AFS; (n) CLS; (o) Aspire, (p)

Vintek; and (q) SharePoint.

### Response to Request No. 2

M&T objects to this Request as it is impermissibly vague, requests information not relevant to any party's claim or defense, is overbroad and seeks to impose discovery obligations on M&T beyond those required by the Court. M&T also objects to Plaintiffs' characterization of the October 26, 2018 hearing testimony and orders.

Specifically, M&T objects that the phrases "describe or tend to describe" and "how to documents" are vague as it fails to describe the documents sought with reasonable particularity as required under Federal Rule of Civil Procedure 34(b)(1)(A). M&T also objects to this Request because Plaintiffs assert claims arising out of the content of repossession-related notices, and how M&T's internal systems operate is wholly irrelevant to that claim. Finally, M&T objects that this Request is overbroad and seeks to impose discovery obligations beyond those required. By way of further response, the Court ordered only the production of "operational manuals" for AutoIMS and "the other software programs" at issue. *See* Mot. Compl. Hr'g Tr., 65:5-8. Those "other software programs" were: (1) Locus; (2) Shaw; (3) CACS; (4) CAFE; (5) On-Demand; (6) SharePoint; (7) FileNet; and (8) Columbia Ultimate. *Id.* at 14:3-17; 139:1. Any request beyond the systems is improper. Plaintiffs' request is also overbroad in that the request encompasses the operation of these systems generally and is not limited to their operation in the context of repossession related services.

Subject to and without waiver, M&T states that it is in the process of reviewing and preparing the following operational manuals for production: FileNet; Locus; AutoIMS; CACS/Cafe; Columbia Ultimate; On-Demand, and Shaw. M&T anticipates the production of these documents to follow under separate cover within the next fourteen (14) days. M&T further states that no such operation manuals have been located for SharePoint.

### Reason for Compelling Response

The production of operation/instruction manuals is absolutely imperative to assist Plaintiffs' counsel and their e-discovery liaison to pursue alternative means to obtain relevant information that the Bank has failed to produce and to debunk the Bank's unsubstantiated objections to both Plaintiffs and this Court that Plaintiffs' requests are burdensome, would result in the production of millions of pages of paper, and would require a manual review of every file. Plaintiffs must have this information to determine the search and retrieval capabilities of Defendants' computer/software systems, because the Bank provided an unqualified, uninformed e-discovery liaison.

Furthermore, the Bank's unilateral limiting the list of systems for which it must produce manuals must be rejected. At a minimum, it must additionally produce manuals for three other systems: Access and SharePoint, to which its e-discovery liaison testified (Hearing Transcript at

14, lines 15-16); and the "Forms" software referred to in previously produced documents that was used to make the Notice of Repossession and Post-Sale Notice forms in question. How the forms were created with this software system and where such documents are stored is highly relevant information. However, the Bank continues to object to the production of its "Forms" software manual even as late as Friday, February 8 in a meet-and-confer conference. Moreover, the Bank says it cannot locate the manuals for SharePoint software and should be compelled to state whether those manuals were also destroyed and the details thereto.

Further, because of the Bank has been unclear on whether everything related to each system has been produced, the Defendant should be compelled to file an affidavit that it has produced a complete and accurate copy of the manuals to the software which it has produced and a detailed account as to what documents have been destroyed or are no longer available.

### Request No. 5
As ordered by the Court at the 10/26/18 hearing, please produce a copy of all of Richard Kaminski's notes regarding any matter which relate, discuss, or CONCERN the above described litigation (he testified he has these notes at the 10/26/18 hearing).

### Response to Request No. 5
M&T objects to this Request as it is impermissibly vague, requests information not relevant to any party's claim or defense, seeks information protected by the attorney-client privilege and/or work product privilege, is overbroad and seeks to impose discovery obligations on M&T beyond those required by the Court. M&T also objects to Plaintiffs' characterization of the October 26, 2018 hearing testimony and orders.

Specifically, M&T objects to Plaintiffs' request for notes on "any matter which relate, discuss, or concern the above described litigation" as it is overbroad, vague, and fails to describe the documents sought with reasonable particularity as required under Federal Rule of Civil Procedure 34(b)(1)(A). Further, Plaintiffs assert claims arising out of the content of repossession-related notices, and "all" personal notes of M&T's e-discovery liaison that in any way relate this litigation are not relevant to these claims or defenses and are therefore beyond the scope of permissible discovery. *See* Fed. R. Civ. Pro 26(b)(1). M&T also objects to this request to the extent the documents sought contain privileged, confidential, proprietary, or trade secret information. *See e.g. In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) (noting that hired litigation consultants are protected by the work product doctrine and finding that a consultant's notes were privileged work product requiring a showing of exceptional circumstances to be discoverable). Finally, M&T objects that this request is overbroad and seeks to impose discovery obligations beyond those required. By way of further response, the Court ordered only the production of the "two to three pages of notes" relating to Mr. Kaminski's on- site visit to M&T in June. *See* Mot. Compl. Hr'g Tr., 18:21-19:11.

Subject to and without waiver, M&T states that Mr. Kaminski's notes from his on-site visit are being produced contemporaneously herewith at M&T020284-M&T020285.

### Reason for Compelling Response

At the e-discovery conference (which the Defendant refused to transcribe), Mr. Kaminski began to list the names of the persons whose e- mail addresses he searched. He stopped at the request of the Bank's counsel though assured the undersigned that he would provide a copy of his notes which included a list. This information is not in the notes the Bank provided.  Plaintiffs ask that the Court issue an order on the Bank's E-Discovery Liaison, Richard Kaminski, and on his employer Avalon Document Services to produce a copy of his personal notes of any project he performed in connection with this litigation and attach an affidavit stating the accuracy of this submission. In the affidavit, Plaintiffs also request that Mr. Kaminski list the names of each person whose e-mail account he conducted an electronic search and the results of the search, attaching a copy of any e-mail documents to his affidavit.

### Request No. 7

At the 10/26/18 hearing, Mr. Fries testified to a spreadsheet(s) which was generated by the Bank's analytics team [hereafter "Flynn Spreadsheet(s)]" which he recalls contained (or may have contained) a list of putative class members, account numbers, origination date, their respective finance charge, amount financed, deficiency balance, and bankruptcy information. Please produce a copy of the "Flynn Spreadsheet(s)" in its native Excel format. You may remove the content in the cells which show the names, address, and phone number (if such information is contained in the Flynn Spreadsheet(s). You are not to remove any metadata.

### Response to Request No. 7

M&T objects to this Request as it seeks information protected by the attorney-client privilege and/or work product privilege to which Plaintiffs are not entitled to.  *See* Fed. R. Civ. P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993). M&T expressly incorporates its arguments and objections as asserted throughout its previous briefings on this matter as though they were set forth more fully herein. M&T also objects as much of the information sought in this Request can be obtained by reviewing documents previously produced, including, *inter alia*, the Retail Installment Sales Contracts and Post-Sale Notices. M&T further objects to this Request as it is premature and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects that this Request is an improper request for class-wide discovery on each and every one of the nearly 4,000 potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a sample of the class (the scope of which has not yet been decided). Finally, M&T objects because the documents sought in this Request are the subject of a motion currently pending before this Court.

### Reason for Compelling Response

The Bank proffers three reasons why it believes that it need not respond to this document request; 1) it seeks information protected by the attorney work product; 2) the information

contained in the Flynn Spreadsheets can be obtained by reviewing documents previously produced; and 3) production of the Flynn Spreadsheets is premature.  All three are wrong.

As to the work product defense, there can be no dispute that the content of the Flynn Spreadsheets is factual material that is, itself, not protected by the work product doctrine. Therefore, the Bank's only possible claim to work product protection must be based on its attorneys having compiled this factual matter.  The Bank's reliance on Rule 26(b)(3) to claim work product protection for the Flynn Spreadsheets is, however, misplaced.  Fed.R.Civ.P. 33(a)(2) provides that "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact,"

This Court has recognized that in the context of interrogatories that "we must read the work product protection afforded by Rule 26(b)(3) in conjunction with Rule 33(c), which expressly permits interrogatories 'involve[ing] an opinion or contention that relates to fact or the application of law to fact.'"  *Directory Dividends, Inc. v. SBC Communications, Inc.*, No. 01-CV-1974, 2003 WL 23208804 (E.D. Pa. April 23, 2003 (*citing* Fed.R.Civ.P. 33(c)[3]).

Following Third Circuit precedent, Judge Beetlestone expressly did not bifurcate fact and class discovery.  (dkt. 91)("Fact Discovery (not bifurcated)").  It was (and remains) improper for the Bank to refuse to provide basic documents from which general data about the putative class members can be obtained, then use the work product exception to attempt to shield itself from disclosing a document that would answer these questions. It is black-letter law that the work product doctrine cannot be used as a sword and a shield.  *See Merisant Co. v. McNeil Nutritionals, LLC.*, 242 F.R.D. 303 (E.D. Pa. 2007)(the attorney-client privilege cannot be used as both a "shield" and a "sword," by a party making factual assertions based on a supposedly privileged document, and then denying its adversary an opportunity to uncover the foundation for those assertions in order to contradict them). *See, Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, 707 F. Supp. 2d 463 (D. Del. 2010)(Discovery obtained from patent assignees in response to an interrogatory in patent infringement action, as well as the testimony of inventor and patent assignees' attorney at their depositions constituted a waiver of the attorney-client privilege; patent assignees could not use the advice of counsel both as a sword to defeat the intent prong of alleged

---

[3] This language is found in Rule 33(a)(2) of the present version of Rule 33.

infringer's claim of inequitable conduct and as a shield to prevent alleged infringers from obtaining information to prove intent to withhold information from the Patent and Trademark Office (PTO)).

**Request No. 8**

All DOCUMENTS which relate, pertain, or discuss any of the Bank's retention and/or destruction policy(s), practice(s), and/or procedure(s) which were (are) in effect at any time during the CLASS PERIOD.

**Response to Request No. 8**

M&T objects to this Request as it is overbroad and requests information not relevant to any party's claim or defense. By way of further response, Plaintiffs' Request is not limited to those retention and/or destruction policies regarding documents or information at issue in this lawsuit. M&T further objects that the request for any documents that "discuss" the policies requested is overbroad, vague, and does not describe the document sought with reasonable particularity.

Subject to and without waiver, M&T states that it is in the process of obtaining documents responsive to this Request and will supplement its production regarding the same under separate cover.

**Reason for Compelling Response**

Again, M&T makes boilerplate "overbroad" and "not relevant" objections.  The Bank's retention and destruction policies are relevant to determining what documents they should still have, and the truthfulness of any claims they make that they no longer have certain documents. Further, as Plaintiffs do not have an exhaustive list of what documents or information is at issue, and do not wish to rely on the Bank's judgment in making this determination, they did not limit their request as the Bank thinks they should have.

While M&T has recently supplemented its production with a few documents relating to a retention policy, it is not clear whether this policy is limited to e-mails or other categories of information or is exhaustive. Moreover, the documents speak to a log or some means to access the destructive history; however, no such information has been provided.  Accordingly, the Court should require the Bank to provide any responsive policy which was used at any time during the relevant class period with the dates such policy(s) were used. The Bank should also be compelled to detail, in affidavit form, (by answering "who" "what" "when" "where" "why" and "how") the destruction (including the "overwriting" of policy and procedure manuals) of any records relating to, discussing, or pertaining to this litigation in any fashion. The Bank's counsel should also be compelled to provide a copy of any litigation-hold letters it sent to the Bank to Plaintiff's counsel. If, the Bank claims that such letter(s) are subject to attorney-client privilege, Plaintiffs

15

request that the Bank provide a copy of all such letters to the Court for an *in-camera* inspection immediately.

### Request No. 10

A copy of all versions of the "State Requirements" DOCUMENT(S) which were used (or are used) by the Bank at any time during the CLASS PERIOD. A copy of this document is referenced in Bates Stamp 920, 981, and 988 (which are attached as Exhibits 5, 6 and 7).

### Response to Request No. 10

M&T objects to this Request as it is overbroad, requests information not relevant to any party's claim or defense, and seeks information protected by the attorney-client privilege and/or work product privilege. By way of further response, Plaintiffs' claims involve Pennsylvania state borrowers and Pennsylvania state law, yet this Request is not limited to "State Requirements" in effect for the Commonwealth of Pennsylvania or to the class members. Further, the document requested is legal work product created by M&T's in-house legal counsel, and is therefore protected from disclosure by the attorney-client privilege and/or work product privilege. M&T will be providing an updated privilege log reflecting the inclusion of this document under separate cover.

### Reason for Compelling Response

This request is clearly relevant, as Plaintiffs believe these are documents employees used to guide them when providing UCC notices. They will show that the Bank's violations of the UCC were systematic. Further, the Bank cannot claim attorney-client protections when the policy used by the Bank, disseminated to clerks, instructs them to consult these documents as part and parcel to execute the policy. All policies should have been provided in order to comply with the Court's 1111/18 and 4/13/18 orders as well. Simply because a policy may have been created or approved by the Bank's legal counsel does *not* make the document non-discoverable as protected by privilege. SE *Property Holdings, LLC v. Gulftouth Private Bank,* No. 3:13 cv 6, 2015 WL 12868077, at *2) (N.D. Fl, Feb. 27, 201S)("[t]he attorney-client privilege protects *communications* between attorneys and their clients; it does not protect policies and procedures developed by attorneys for their clients."). Moreover, Defendant has a duty to provide an updated privilege log, in a timely fashion, which purportedly should list this information and has (once again) failed to do so. Therefore, as set forth in detail below, any claim for privilege (certainly at least with respect to this information) is waived. In the alternative, these responsive documents should be provided to the Court for an in-camera inspection.

### Request No. 11

All DOCUMENTS which relate, pertain, or discuss any of the Bank's "Overseer Report(s)" form(s) or document(s) which was (were) created and/or used at any time during the CLASS PERIOD. The use of this document(s) is referenced in M&T000920 and 20215 (which

are attached as Exhibits 5 and 8)

### Response to Request No. 11

M&T objects to this Request as it is impermissibly vague, requests information not relevant to any party's claim or defense, is overbroad, and seeks to impose discovery obligations on M&T beyond those required. By way of further response, Plaintiffs have requested all documents relating to "Overseer Reports" that were created or used in the class period. However, Overseer is a report generation tool which is used by M&T to create reports on any number of bank related activities. Simply because a repossession related policy and procedure includes a reference to an Overseer Report, does not mean that all Overseer Reports, or the contents of the actual reports, are in any way relevant to the subject lawsuit.

Subject to and without waiver, M&T states that there is no "Overseer Report(s)" referenced in Exhibit 5 and therefore no such responsive documents exist. M&T further states that that it is in the process of identifying whether any Overseer Report #1684 as referenced in Exhibit 8 exists for the Representative Plaintiffs and will supplement its production regarding the same under separate cover.

### Reason for Compelling Response

While the Bank recently produced the Overseer Report, i.e. the Deficiency Balance Detail Report #1684 referenced in Exhibit 8 to the Second Set of Discovery, this is only a sample of one overseer report during the putative class period. Plaintiffs requested all documents related to Overseer Reports during the putative class period which have yet to be produced (i.e., all Overseer Reports during the putative class period). It is also unknown whether Defendant has produced all versions of this report.

### Request No. 12

All DOCUMENTS which relate, pertain, or discuss the "Letter Revision Project", as referenced in M&T000920. **Exhibit 5**.

### Response to Request No. 12

M&T states that the term "Letter Revision Project" is not referenced in Exhibit 5 and therefore no such responsive documents exist. To the extent Plaintiffs intended to reference "Letter Revision Project" as referenced in Exhibit 4, M&T directs Plaintiffs to its response to Request No. 16.

### Reason for Compelling Response

*See*, "Reason for Compelling Response" to #16 below which is incorporated herein.

### Request No. 13

All invoices, bills, and other information which the Bank or any of its representatives (including but not limited to William Simon, Esq., Kenneth Fries, or any of the Bank's counsel at Parker Ibrahim & Berg) sent to or received from Avalon Document Services or its representatives, including but not limited to Richard Kaminski or richard.kaminski@teamavalon.com or any

other e-mail with the "teamavalon.com" in the e-mail.

### Response to Request No. 13

M&T objects to this Request as it is impermissibly vague, requests information not relevant to any party's claim or defense, seeks information protected by the attorney-client privilege and/or work product privilege, is overbroad and seeks to impose discovery obligations on M&T beyond those required.

Specifically, M&T objects that the Request for all "other information" is overbroad, vague, and fails to describe the documents sought with reasonable particularity as required under Federal Rule of Civil Procedure 34(b)(1)(A). M&T also objects because Plaintiffs assert claims arising out of the content of repossession-related notices, and invoices, bills or "other information" sent to M&T's e-discovery liaison are not relevant to these claims or defenses and are therefore beyond the scope of permissible discovery. *See* Fed. R. Civ. Pro 26(b)(1). M&T also objects to this request to the extent the documents sought contain privileged, confidential, proprietary, or trade secret information. *See e.g. In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 665 (3d Cir. 2003) (noting that hired litigation consultants are protected by the work product doctrine and finding that a consultant's notes were privileged work product requiring a showing of exceptional circumstances to be discoverable).

### Reason for Compelling Response

Invoices related to third-party services provided for the Bank are not protected by attorney-client privilege. Invoices are not work product, as they were not prepared in anticipation of litigation, but were simply requests for payment for services. The term "other information" is not overbroad, as Plaintiff is requesting all information relating to the services Avalon provided to the Bank relating to this case. This information is relevant to identify the time and effort which the Defendant has *already* expended to "unreasonably delay[ed] and obstruct[ed] discovery in this case." [1/31/19 Order, Finding of Fact A] and bears on Plaintiff's reinstated request for sanctions made in connection with this motion.

### Request No. 14

The invoices or bills which PIB sent to the Bank which set forth the time and/or the billable rate which any of PIB's agent(s) spent redacting any part of any DOCUMENT(S) in this litigation.

### Response to Request No. 14

M&T objects to this Request as it requests information not relevant to any party's claim or defense, seeks information protected by the attorney-client privilege and/or work product privilege, and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects because Plaintiffs assert claims arising out of the content of repossession-related notices, and M&T's incurred attorneys' fees are not relevant to these claims or defenses and are therefore beyond the scope of permissible discovery. *See* Fed. R. Civ. Pro 26(b)(1). M&T further objects to this Request as it seeks information protected by the attorney- client privilege and/or work product privilege to which Plaintiffs are not entitled to.

*See* Fed. R. Civ. P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993).

## Reason for Compelling Response

Invoices for third party redaction services are not protected by privilege. Indeed, the entire redaction process for the 19,000 page production was an attempt by the Bank to artificially inflate the burden argument as, when produced in native format, comprised only 48 pages. This information is relevant to identify the time (delay) and effort which the Defendant has *already* expended to "unreasonably delay[ed] and obstruct[ed] discovery in this case." [1/31/19 Order, Finding of Fact A] and bears on Plaintiff's reinstated request for sanctions made in connection with this motion.

## Request No. 15

All DOCUMENT(S) which CONCERN, discuss, or pertain to any query(s) or computer search(s) and/or any results of all query(s) or computer search(s) which the Bank [including but not limited to its analytics department or analytics team or Randy Surface] performed at any time which in any way which CONCERNS, relate to, discusses, or pertains to this litigation.

-This request seeks any query/computer search information to determine the size of the putative classes, the identity of the putative Class Members, the finance charge or amount financed as stated in the loan documents of any putative Class Members; whether or not the Class Member has a deficiency balance and, if so, the amount; whether the Class Member filed for bankruptcy; or any other information regarding these Class Members subsequent to the filing of the initial complaint (September 22, 2017).

-You are to provide all information in its native electronic format.

-You may remove the content of any cells which show the name, address, phone number or social security number (if any such information exists in the data requested) of any putative class member so long as: (a) the information is conspicuously marked as redacted; and (2) the redaction does not affect, modify, or distort any of the content of the other information responsive to this request.
-You are not to remove any metadata or the headings of any columns or rows of any Excel spreadsheet.

## Response to Request No. 15

M&T objects to this Request as it is impermissibly vague, requests information not relevant to any party's claim or defense, seeks information protected by the attorney-client

privilege and/or work product privilege, is overbroad and seeks to impose discovery obligations on M&T beyond those required.

Specifically, M&T first objects because Plaintiff's request for all "queries" that M&T has run and "all results" from those queries in relation to this litigation is vague, overbroad, and does not describe the documents sought with reasonable particularity as required under the Rules. M&T further objects to this Request because Plaintiffs assert claims arising out of the content of repossession-related notices, and what search queries M&T used when responding to Plaintiffs' discovery requests (or otherwise) are not relevant to these claims or defenses and are therefore beyond the scope of permissible discovery. *See* Fed. R. Civ. Pro 26(b)(1). Further, as has been extensively briefed, M&T objects to this Request as it seeks information and documents protected by the attorney-client privilege and/or work product privilege to which Plaintiffs are not entitled to. *See* Fed. R. Civ. P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993). M&T further objects as the documents and information sought in this Request are the subject of a motion currently pending before this Court.

### Reason for Compelling Response

While the Court has recently ordered for the Defendants and Plaintiffs to have a meet-and-confer regarding the production of the database fields and the data relating to those fields as it pertains to the named Plaintiffs (dkt. 149), to date, the Defendant has objected to providing such information. The content of the terms of queries (including those queries which the Bank may need to run to supplement its answer to Interrogatory 9 of Plaintiff's First Set of Post-Removal Discovery (asking for total number of people in each class and how each total was computed)) are not protected by the attorney-client privilege nor work product doctrine and should be produced immediately. Plaintiffs have no objection to modifying this request to ensure that the Bank provide database headings of all such queries and any corresponding information populated for the representative Plaintiffs.

### Request No. 16

All DOCUMENTS which refer, relate, or discuss the "Letter Project," including but not limited to the NOTICE OF REPOSSESSION letter requirements as the term is used in Bates Stamp No. 933, a copy of which is attached hereto as Exhibit 4.

### Response to Request No. 16

M&T objects to this Request as it is overbroad, requests information not relevant to any party's claim or defense, and seeks information protected by the attorney-client privilege and/or work product privilege. By way of further response, M&T objects that this Request is not limited in scope or time to repossession related letters, letters sent to Pennsylvania borrowers, or to the Class Period. M&T further states that documents relating to the "Letter Revision Project" are legal work product created by either M&T's in-house legal counsel or by outside counsel at the instruction of M&T's in-house legal counsel, and are therefore protected from disclosure by the attorney-client privilege and/or work product privilege. Subject to and without waiver, M&T states that that it is in the process of obtaining and reviewing all relevant documents responsive

to this Request and will supplement its production regarding the same under separate cover. M&T will also provide an updated privilege log reflecting the inclusion of any relevant document that was withheld on the basis of privilege, to the extent any such document is withheld.

<u>**Reason for Compelling Response**</u>

At the October 26, 2018 hearing (p. 77), the Court ordered the Bank to produce the Agent Coverage Fees Excel Spreadsheet on the basis that it comprised a "procedure employees are designed to follow." The same rationale applies to the production of the Letter Revision Project documents. Those documents are part of a policy at issue: the generation of repossession letters and retitling of repossessed vehicles. Though not stated specifically, the Court has already ordered the production of these documents in its 1/11/18 Order, p. 15, compelling the production of Document Request 13 of Plaintiff's First Request for Post-Removal Discovery which seeks:

> "All DOCUMENTS which CONCERN, relate, pertain, or discuss M & T's Bank's policies, practices, and/or procedures in effect at any time after September 22, 2011 with respect to repossession, sale, storage, transportation, repair, reconditioning, retitling, and/or redemption of repossessed vehicle, and/or the reinstatement of any loan related to a repossessed vehicle; and/or the SENDING of any NOTICE OF REPOSSESSION and/or POST SALE NOTICE."

The document with Bates Stamp #933 is part of the "Repossession Letter and Vault/ELT Title Ordering Procedure" policy (Bates 920-933). Indeed, the form letter shown in Bates No. 933 was sent to Gene Daisey and Edward Flynn and other putative class members. *See,* Exhibits 1, 5, and 6 of Plaintiff's Second Amended Complaint evidencing the use of the form in question.  #933 refers to the procedure for the "Supervisor" to use, stating in relevant part:

> **2) The repossession letter requirements from the Letter Revision Project are available on the Legal Sharepoint site: http://sharepoint.mandtbank.com/sites/TeamLegal/ ConsumerLoanDfltServicing/default.aspx.**

The Bank's remarkable position that these documents (which must be reviewed by the Bank's employees in order to properly execute this relevant policy) are protected by the attorney-client privilege is misplaced. As stated above, the work product/attorney-client privilege doctrine cannot be used as a shield and a sword. See, *Merisant Co. v. McNeil Nutritionals, LLC., supra; See also,* SE *Property Holdings, LLC v. Gulfeouth*

*Private Bank, supra.,* ("[t]he attorney-client privilege protects *communications* between attorneys and their clients; it does not protect policies and procedures developed by attorneys for their clients."

## Request No. 18

Please state the number of putative CLASS MEMBERS:

(A) to whom the Bank has issued a 1099-C for the cancellation of a DEFICIENCY in the:
     i. FORM 1 NOR CLASS;
     ii. FORM 2 NOR CLASS;
     iii. NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS or FORM 2 NOR CLASS.

(B) to whom the Bank has not pursued any DEFICIENCY on account of the CLASS MEMBERS having filed for bankruptcy protection in the:
     i. FORM 1 NOR CLASS;
     ii. FORM 2 NOR CLASS;
     iii. NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS or FORM 2 NOR CLASS.

## Response to Request No. 18 [4]

*Initial Response of 12/5/18*: M&T objects that this Request does not seek any documents and is therefore improper. M&T further objects to this Request as it is impermissibly vague, is overbroad and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects that the term "pursued" in the phrase "pursued any deficiency" is vague, undefined, and subject to multiple interpretations. M&T also objects as this Request is an improper request for class wide discovery on each and every one of the nearly 4,000 potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a sample of the class (the scope of which has not yet been decided).

By way of further response, the information sought in this request would require M & T to review each individual class member's file on an individual basis. For example, it is not enough to know whether or not a class member filed for bankruptcy, rather, the information requested also requires knowing what type of bankruptcy was filed, whether the underlying debt was discharged in that bankruptcy, and if so, whether M & T was properly notified of that discharge.

Subject to and without waiver, as Plaintiffs have requested no documents, no such responsive documents exist.

*Supplemental Response of 2/11/19*: M&T objects that this Request does not seek any documents and is therefore improper. M&T further objects to this Request as it is impermissibly vague, is overbroad and seeks to impose discovery obligations on M&T beyond those required.

---

[4] On February 11, 2019, M&T supplemented its initial set of objections to Requests 18 and 22. **Exhibit 6**.

Specifically, M&T objects that the term "pursued" in the phrase "pursued any deficiency" is vague, undefined, and subject to multiple interpretations. M&T also objects to this Request as an improper request for class- wide discovery on each and every one of the potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a 10% sample of the class---once the same has been decided.

Subject to and without waiver, M&T states that none of the named Plaintiffs were issued a 1099-C. M&T further states that deficiency actions were not filed against Plaintiff Flynn, Plaintiff Hosick, or Plaintiff Abbott on account of those individuals filing for bankruptcy protection. M&T further states that it filed a proof of claim for the deficiency balance in Plaintiff Abbott's bankruptcy proceeding on November 16, 2016. *See* M&T042288-M&T042294.

### Reason for Compelling Response

While this interrogatory was mistakenly mis-categorized under the heading of a document request, such should not have been grounds for the Bank to refuse to answer or otherwise plead in a timely fashion.

This information is highly relevant as the Bank has (though procedurally improper) asserted an affirmative defense of set-off and recoupment in Paragraph 28 of its Affirmative Defenses. (Dkt. 66)

In order for any of these claims to exist at this juncture, there must be a debt owed by the class member to the Bank – the debt cannot have been forgiven. If the deficiency has previously been forgiven, it can no longer serve as a set-off against amounts owed by the Bank to Class Members.

IRS regulations require a lender to issue a Form 1099-C to a borrower when the lender forgives a debt. Thus, the issuance of a 1099-C to a particular class member is strong evidence that the lender has, in fact, forgiven or written-off the debt. See, In re: Welsh, No. 06-1083, 2006 WL 3859233, at 1 (Bankr. E.D. Pa. 2006)(a creditor who discharges an indebtedness may not file a proof of claim).

> [i]t would be inequitable ... to require that [the debtor-defendant] report the discharge of debt as income on his federal tax return or fact the potential tax consequences and hold that the plaintiff may continue to hold him liable on the debt.
> *Id.* at 4.

In sum, the issuance of a 1099-C is evidence of a debt cancellation and highly relevant to any deficiency balance which the Defendant is pursuing in connection with this litigation. Having discharged an indebtedness, the Bank may not seek to set-off, recoup, or otherwise pursue a forgiven debt. If the Bank states, under oath, that it has not submitted any 1099-C's

to any Class Member, then such will satisfy this inquiry.

The term "pursued" is not in any way vague or overbroad.  This is not a request for class-wide discovery.   Plaintiffs are not asking for individual information about class members, only for aggregate totals to show numerosity for class certification purposes. Defendant provided an answer as to the named Plaintiffs, but this is inadequate as Plaintiff is asking for class aggregate numbers. Additionally, it should not matter whether the debtors filed a Chapter 7 or 13, as the requests seeks information without specifying which chapter the bankruptcy petition was filed under. From the spreadsheets and software manuals provided most recently, it is apparent that the Bank electronically stores and can retrieve information regarding whether the debtor has filed a Chapter 7 or 13 Bankruptcy and whether the debt is pursued, whether a claim was submitted, or whether the balance was written-off.

### Request No. 19
All DOCUEMNTS [sic] which CONCERN, refer, discuss, or relate to the repossession fee or expense of $20.00 which Mr. Fries referenced in the 10/26/18 hearing.

### Response to Request No. 19
M&T objects to this Request as it is impermissibly vague and overbroad and fails to describe the documents sought with reasonable particularity as required under Federal Rule of Civil Procedure 34(b)(1)(A). Subject to and without waiver, M&T states that it is in the process of obtaining documents responsive to this Request and will supplement its production regarding the same under separate cover.

### Reason for Compelling Response

This request is not vague or overbroad or unparticular.  It asks for documents related to a specific $20.00 fee testified to by Mr. Fries.  Further, Defendant's argument that the request is too vague is belied by their response that they are searching for documents responsive to the request. To date, while the Bank stated that it will supplement its response, it has yet to do so. If it has, Plaintiffs ask that the Bank state the Bates Stamp number of such documents in its supplemental response.

### Request No. 21
A copy of all DOCUMENTS on the Legal Sharepoint site:

**http://sharepoint.mandtbank.com/sites/TeamLegal/ConsumerLoanDfltServicing/default.aspx**

Bates Stamp No. 933, a copy of which is attached hereto as Exhibit 4.

### Response to Request No. 21

M&T objects to this Request as it is impermissibly vague and overbroad, requests information not relevant to any party's claim or defense, seeks information protected by the attorney-client privilege and/or work product privilege. Specifically, M&T objects that the Request for "all documents" on M&T' Legal SharePoint site is overbroad, vague, and fails to describe the documents sought with reasonable particularity as required under Federal Rule of Civil Procedure 34(b)(1)(A). By way of further response, this Request is not limited in scope (to documents relevant to the claims at issue) or time (the Class Period) and therefore requests wholly irrelevant documents. M&T also objects as the Request seeks privileged information. *See* M&T's Response to Request No. 16.

### Reason for Compelling Response

Plaintiffs adopt the same reasoning for these documents as set forth in Document Request 16 above. At the October 26, 2018 hearing (p. 77), the Court ordered the Bank to produce the Agent Coverage Fees Excel Spreadsheet on the basis that it comprised a "procedure employees are designed to follow." The same rationale applies to the production of these documents as they, too, are part of a policy at issue. Though not stated specifically, the Court has already ordered the production of these documents in its 1/11/18 Order, p. 15, compelling the production of Document Request 13 of Plaintiff's First Request for Post-Removal Discovery.

The request is not vague, as it refers to documents on one website.  Further, it is not overbroad, as the policy previously produced by M&T (Bates Stamp 933, referenced in the above Request and attached as Exhibit 4 to the Second Set of Post-Removal Discovery) specifically refers M&T employees to this website when they are drafting repossession letters. The main issue in this case is the Bank's non-compliance with the UCC regarding defaulted consumer vehicle loans, thus the documents requested are highly relevant. Further, M&T has yet to provide a detailed privilege log for any documents it alleges are privileged and, therefore, has waived any privilege relating to these documents.

### Request No. 22

State whether or not the BANK has "charged off" any accounts of any Representative Plaintiff or (putative) CLASS MEMBERS prior to the date of filing of the initial complaint (September 22, 2017). If YOUR answer is "yes," please state:

(A) Whether the STORAGE EXPENSE or the "EXPSTORVEH" (as the term is referenced in Bates 997-998) (Exhibit 9 and Exhibit 10) was included in the amount (or the calculation of the amount) the BANK charged-off; and,

(B) Whether the "Expense of preparing the Vehicle for Sale" or the "EXPPRE/REP" (as the term is referenced in Bates 997-998) was included in the amount (or the calculation of the amount) the BANK charged-off.

## Response to Request No. 22

*Initial Response of 12/5/18*:  M&T objects that this Request does not seek any documents and is therefore improper. M&T further objects to this Request as it is overbroad and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects because Plaintiffs have asserted claims arising out of the content of repossession related notices and whether or not M&T has "charged off" any account is irrelevant to the claims or defenses asserted in this case. M&T further objects that this Request is an improper request for class-wide discovery on each and every one of the 4,000 potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a sample of the class (the scope of which has not yet been decided), as the information sought in this request would require M&T to review each class member's file on an individual basis. Subject to and without waiver, as Plaintiffs have requested no documents, no such responsive documents exist.

*Supplemental Response of 2/11/19*: M&T objects that this Request does not seek any documents and is therefore improper. M&T further objects to this Request as it is overbroad and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects because Plaintiffs have asserted claims arising out of the content of repossession related notices and whether or not M&T has "charged off" any account is irrelevant to the claims or defenses asserted in this case. M&T further objects that this Request is an improper request for class-wide discovery on each and every one of the potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a 10% sample of the class-once the same has been decided.

Subject to and without waiver, M&T states that the accounts of Plaintiff Flynn, Plaintiff Hosick, and Plaintiff Abbott were charged off. M&T further states that the amounts charged off for Plaintiff Flynn, Plaintiff Hosick, and Plaintiff Abbott did not include "Expense of preparing the Vehicle for Sale" or "Storage Expense" and that costs incurred for preparing and/or repairing the vehicle(s) for sale were deducted from the auction proceeds by the third-party vendor prior to the proceeds being remitted to M&T.

## Reason for Compelling Response

Again, mis-categorization of an interrogatory in the document request section is not grounds for the Bank not to it. Further, this request seeks information as to how the Bank treats the subject "expenses," for tax purposes. Exhibit 9 to the request (Bates 000987) shows that database fields of "EXPSTORVEH" (Storage Fees) / "EXPPRE/REP" (Expense of preparing the vehicle for sale) / "OTHEXP" (Other Expenses) seems to establish that these fees/expenses were included in the amount written-off by the Bank.  This information is highly relevant because it establishes, *inter alia*, a motive for the Bank to engage in such

26

illicit conduct which is a relevant line of inquiry into the Bank's Obligation of Good Faith as well as actual damages and/or commercially unreasonable conduct. *See, Second Amended Complaint,* Par. 63-65 and 146-147. In other words, the Bank stands to gain by charging illegal fees under the ruse of an expense in two ways: (1) by collecting more money from consumers who redeem; and.(2) by taking artificially high charge-offs against its profit. See additional explanation from Interrogatory 2 below which is incorporated herein. Plaintiffs asked whether how these improper expenses were included on a class-wide basis, which is certainly relevant for class certification and liability. The Bank's election to narrow the request only to the named Plaintiffs is inadequate. Similarly, Plaintiffs ask that the Bank submit an answer, under oath, stating whether the amount which the Bank wrote-off in connection with any of the class members' accounts included any Storage Fees "EXPSTORVEH" (Storage Fees) or "EXPPRE/REP" (Expense of preparing the vehicle for sale) and a detail of the amounts written-off prior to the filing of the subject account for each of the named Plaintiffs. The certification submitted is inadequate.

### Request No. 23
All Excel spreadsheets which CONCERN, relate, discuss, or refer to or which were generated for this litigation, including but not limited to making a determination of the size of the classes, a deficiency balance amount, a bankruptcy filing, and/or potential statutory damages. You are to produce all spreadsheets in their native format, keeping all meta data [sic] and the column/row headings intact, though YOU may remove any cells in the spreadsheet which are unique to any person other than the Representative Plaintiffs so long as such redaction is conspicuously noted in the spreadsheet.

### Response to Request No. 23
M&T objects to this Request as it seeks information protected by the attorney-client privilege and/or work product privilege to which Plaintiffs are not entitled to. *See* Fed. R. Civ. P. 26(b)(3); *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir. 1993). Indeed, Plaintiffs specific request documents generated by M&T specifically relating to its defense "for this litigation". This is entirely improper. By way of further response, M&T incorporates its arguments and objections as asserted throughout its previous briefings on this matter as though they were set forth more fully herein. M&T further objects as the documents sought in this Request are the subject of a motion currently pending before this Court.

### Reason for Compelling Response
In an interest of efficiency, Plaintiffs seek the production of Excel spreadsheets generated in response to the Court's 1/31/19 order, reserving its right to seek additional documentation at a later date.

## C. **INTERROGATORIES**

### **Interrogatory No. 1**

At the 10/26/18 hearing, Kenneth Fries testified that each computer systems used by the Bank has a "technical owner." Please state the name of each "technical owner" for each of the following computer software systems: (a) Filenet; (b) Locus; (c) AutoIMS; (d) CACS; (e) Cafe; (f) Cafe/CU; (g) Forms; (h) Columbia Ultimate; (i) On-demand; (j) TPX; (k) Shaw; (l) Hogan; (m) AFS; (n) CLS; (o) Aspite; (p) Vintek; and, (q) Sharepoint.

### **Response to Interrogatory No. 1**

M&T objects to this Interrogatory as it, requests information not relevant to any party's claim or defense, is overbroad and seeks to impose discovery obligations on M&T beyond those required by the Court. M&T also objects to Plaintiffs' characterization of the October 26, 2018 hearing testimony and orders.

Specifically, M&T objects to this Request because Plaintiffs assert claims arising out of the content of repossession-related notices, and the "technical owners" of M&T's internal systems or how M&T's internal systems operate is wholly irrelevant to that claim. Finally, M&T objects that this Request is overbroad and seeks to impose discovery obligations beyond those required. By way of further response, the software programs at issue during the hearing were limited to: (1) Locus; (2) Shaw; (3) CACS; (4) CAFE; (5) On-Demand; (6) SharePoint; (7) FileNet; and (8) Columbia Ultimate. *See Mot. To Compl. Hrg Tr.* at 14:3-17; 139:1.

Subject to and without waiver, M&T states that that the following individuals are the "technical owners" for the following systems:
Locus: Robert Denman
Shaw: Matt Sheker
AutoIMS: Tom Thornton
CACS/CAFÉ: Bemina Rohde On-Demand: David Paar
SharePoint: Albert Watson
FileNet: David Rey
Columbia Ultimate: Barbara Kieffer

### **Reason for Compelling Response**

The Bank objects to the Plaintiffs' characterization of the October 26, 2018 hearing testimony and orders. However, the only mention in the Interrogatory of the October 26 hearing is the statement that "At the 10/26/18 hearing, Kenneth Fries testified that each computer systems [sic] used by the Bank has a 'technical owner.'" The testimony that Plaintiffs allegedly characterized is: "From a technical perspective, each one of these systems has a technical owner department." (Hearing Transcript at p. 133). The statement in the Interrogatory is almost a verbatim recitation of the testimony, not a characterization.

The Bank also objects that the identity of the technical owners of the Bank's computer systems is not relevant to Plaintiffs' claims. By repeatedly asserting its bad faith undue burden objections, and by claiming that other documents could not be located when Mr. Fries testimony was to the contrary, the Bank *made* the system's "technical owners" a relevant issue because of its intransigence and bad faith objections, as one or more of them may need to be deposed regarding the existence (or destruction) of the discarded documents and to help determine the most efficient way to obtain the information necessary for the Sample.

In addition, M&T asserts the boilerplate objections that this interrogatory "is overbroad and seeks to impose discovery obligations beyond those required." The overbreadth objection is facially invalid and the "impose obligations beyond those required" is meaningless.

Apparently erroneously finding justification in the foregoing unfounded objections, the Bank provided technical owners for only 8 of the 17 systems listed in the Interrogatory. Plaintiffs insist that the Bank provide the owners for the remaining systems or an affidavit that the software application was not used in connection with or the storage of any electronic information regarding any of the Representative Plaintiffs or putative class members.

### Interrogatory No. 2

Please state the aggregate sum of all "Expense of preparing/repairing the Vehicle for sale" listed in the NOTICE OF REPOSSESSION for all (putative) members' repossessed vehicles in the:

      a. The FORM 1 NOR CLASS;
      b. The FORM 2 NOR CLASS;
      c. All putative CLASS MEMBER(S) of the NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS or FORM 2 NOR CLASS.

### Response to Interrogatory No. 2

M&T objects that Interrogatory as premature and seeking to impose discovery obligations on M&T beyond those required. Specifically, M&T objects that this Request is an improper request for class-wide discovery on each and every one of the nearly 4,000 potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a sample of the class (the scope of which has not yet been decided). By way of further response, the information sought in this request would require M&T to review each individual class member's file on an individual basis to the determine what figure was listed on the Notice of Repossession.

Subject to and without waiver, M&T states that pursuant to Rule 33(d), the answer to this Interrogatory may be determined by reviewing the documents that are, or will be, produced pursuant to a class sampling. By way of further response, Plaintiffs have requested that M&T provide it with information that is "listed in the Notice of Repossession". The burden deriving or

ascertaining this information from the document (i.e.- reviewing the document and reading the expense listed) will be substantially the same for either party. Accordingly, M&T directs Plaintiffs to the Notice of Repossessions already produced for the named Plaintiffs and to the Notice of Repossessions that will be produced for the class sampling—once the size and scope of the same has been determined.

## Reason for Compelling Response

This is a companion request to Interrogatory 8 and 9 of Plaintiff's First Set of Post-Removal Discovery seeking the billable amount and the paid amount for the storage expenses. By order dated 1/31/19, the Court has already compelled this information. By analogy, this purported billable and paid amounts for the "Prepare/Repair" fee should also be compelled.

M & T's representation in its answer to Interrogatory 13 of Plaintiff's First Set of Post-Removal Discovery regarding the "Prepare/Repair" fee in which the Bank stated:

> M & T states that the aforementioned "expenses" are an estimate of expenses likely to be incurred in connection with repairing a repossessed vehicle and preparing a repossessed vehicle for sale. This amount is subject to adjustment upward or downward based on the actual expenses of repairing a repossessed vehicle and preparing a repossessed vehicle for sale. Borrowers whose vehicles are repossessed are only responsible for paying the actual expenses of repairing a repossessed vehicle and preparing a repossessed vehicle for sale.

This representation infers that the estimate is a standardized "estimate" of $200.00 for each repossessed vehicle. If this fact is accurate, then simply multiplying $200 by the number of NORs sent would yield the amount billed. If no person paid *this* figure because it was an "estimate," then the Bank can simply state such by way of affidavit.

The database field of "EXPPRE/PRE" in the Columbia Ultimate software system is referenced in Bates 997-998. (Exhibit 9-10 of Second Set of Post-Removal Discovery) which shows that the Bank is readily able to query its database to answer this interrogatory. Despite this prior representation that the term is an "estimate" and reference to its computer system of the database field, the Bank stated in its Response to Plaintiffs' Second Set of Post-Removal Discovery:

> [t]he information sought in this request would require M & T to review <u>each</u> class member's file on an individual basis. <u>Emphasis</u> added.

The documents produced to date establish that this representation is simply not true. Indeed, one of the policies that the Bank produced (M&T000988-999) specifically states at 000995 that in New York, Pennsylvania, and Maryland, the sale preparation expense is *uniformly* $200. If this is the Bank's actual policy, it is not an "estimate" as previously represented, but a standardized amount billed in all NOR and the Bank will not have to review each class member's file to determine the Sale Preparation Expense charged to each, as represented.

Plaintiffs request that the Court compel the Bank to answer this interrogatory fully, under oath. In addition, Plaintiff requests that the Defendant provide the code which comprises the "EXPPRE/PRE" database field in the Columbia Ultimate software as was used to send to each of the Representative Plaintiffs.

### Interrogatory No. 3

Please state the aggregate amount YOU actually **paid** all third parties for the "Expense of preparing/repairing the Vehicle for sale" listed in the NOTICE OF REPOSSESSION for all (putative) members' repossessed vehicles in the:

    a.   The FORM 1 NOR CLASS;
    b.   The FORM 2 NOR CLASS;
    c.   All putative CLASS MEMBER(S) of the NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS or FORM 2 NOR CLASS.

### Response to Interrogatory No. 3

M&T objects that Interrogatory is premature and seeks to impose discovery obligations on M&T beyond those required. Specifically, M&T objects that this Request is an improper request for class-wide discovery on each and every one of the nearly 4,000 potential putative class members in contradiction to the Court's clear limitation of discovery to the four named Plaintiffs and a sample of the class (the scope of which has not yet been decided). By way of further response, the information sought in this request would require M&T to review each individual class member's file on an individual basis to the determine what expenses were paid on the file in relation to the repossession

### Reason for Compelling Response

As the Court has ordered the Bank to answer a similar inquiry regarding storage expenses (Interrogatory 7 of Plaintiff's First Set of Post-Removal Discovery), Plaintiffs similarly request that the Court compel the Bank to answer this interrogatory fully, under oath. Again, this is not an improper request for class-wide discovery, but simply a request for an aggregate amount to determine whether the vehicle preparation expense was actually incurred by the Bank. If the Bank never paid *anything at all* to any third party with respect to the "Expenses of

preparing/repairing the vehicle for sale" concerning *any* class member then the Defendant should state so.

### Interrogatory No. 4

For each contract/agreement with any third party which YOU produced to comply with Request 14 of Plaintiffs First Set of Post-Removal Discovery and Paragraph 5(ii) of the Court's 1/11/18 Order (Doc. 21), please state:
(a) The date the contract/agreement ended or lapsed;
(b) Whether or not, when the contract/agreement ended or lapsed, the BANK renewed it;
(c) Whether or not the BANK has fully complied with answering, without objection, Document Request 14 of Plaintiffs First Set of Post-Removal Discovery and Paragraph 5(ii) of the Court's 1/11/18 Order (Doc. 21);
(d) If YOUR answer to 4(c) above is "no" please explain what information remains outstanding, why the information has yet to be provided, and IDENTIFY the name(s) of the third-party(s) whose contract/agreement has yet to be produced.

### Response to Interrogatory No. 4

M&T states that pursuant to Rule 33(d), the answer to this Interrogatory may be determined by reviewing the documents that are, or will be, produced.

By way of further response, if a produced contract/agreement has an ended or lapse date, the same will be listed in the produced contract. The burden deriving or ascertaining this information from the document (i.e.- reviewing the policy for an end date) will be substantially the same for either party. Accordingly, M&T directs Plaintiffs to the vendor contract/agreements it has produced at M&T00451- M&T00701, M&T00868- M&T00880, M&T00948- M&T00956, M&T001561- M&T001663, M&T019669- M&T019740, and M&T019986- M&T20189. M&T further states that that the contracts/agreements at issue are service contracts and therefore if a contract/agreement does not have an end date specified in the contract, that the contract is deemed to be on-going.

Finally, M&T states that it has not withheld any contracts/agreements on the basis of any objection asserted. Therefore, M&T has fully complied with answering Document Request 14 of Plaintiffs First Set of Post-Removal Discovery and Paragraph 5(ii) of the Court's 1/11/18 Order for each contract/agreement with any third party which it has produced. Discovery is ongoing and M&T reserves its right to supplement its production as discovery continues. (Emphasis added).

### Reason for Compelling Response

The reason for this request was that Plaintiffs doubt all relevant contracts have been provided.  For example, the Bank has only provided one contract for the vehicle auction Adesa which was entered in *2017*. However, Plaintiff Hosick's repossessed vehicle was auctioned by Adesa in May of *2015*,

thus there should be an earlier contract with Adesa. Of course, if the Bank provided such information, Plaintiffs request that they state the respective Bates Stamp references.

Plaintiffs are simply attempting to assess whether all of the relevant contracts that ever existed have been produced. Defendant should be compelled to answer this interrogatory fully and to submit an affidavit, under oath, that the Bank has fully complied with Plaintiff's First Set of Post-Removal Discovery and Paragraph 5(ii) of the Court's 1/11/18 order.

The "certification" which is attached to this discovery response (like the earlier set) and the Bank's last sentence in its response to this interrogatory that "[d]iscovery is ongoing and M & T reserves its right to supplement its production as discovery continues" is equivocal.

### Interrogatory No. 5

If YOU contend that answering any of the discovery requests in this set of discovery or YOU maintain that answering any of the discovery in Plaintiffs First Set of Post-Removal Discovery or in any other set of discovery subsequently served or propounded on the BANK is "unduly burdensome," please provide the following information/documents:

(1) the expected cost the Bank would have to expend if it were to fully answer the discovery request, detailing (a) the number of people and the hourly rate/salary of those people; (b) the number of hours to be expended; the rate of pay for those people involved (hourly/salary); (c) the tasks which each person would perform; (d) the cost for the use of the computer system to run a query I search, if any;

(2) the name, title, and employer of all person(s) who were involved in making the determination as to the projection of the cost and/or time associated with answering the request; and,

(3) IDENTIFY and produce all DOCUMENTS which s/he or they relied upon in making the determination as to the projection(s) of the cost and/or time associated with answering the request

### Response to Interrogatory No. 5

M&T objects to this interrogatory as it seeks information not relevant to any party's claim or defense, and seeks to impose discovery obligations on M&T beyond those required.

Specifically, M&T objects to this Interrogatory because Plaintiffs assert claims arising out of the content of repossession-related notices, and the information requested is wholly irrelevant to these claims or defenses and are therefore beyond the scope of permissible discovery. *See* Fed. R. Civ. Pro 26(b)(1). Further, while M&T bears the burden of establishing any undue burden objection it may assert, Plaintiffs' are not entitled to determine what proof M&T submits in support of the same.

Subject to and without waiver, M&T states that it will submit information and documentation in support of any undue burden objection it may assert.

33

### Reason for Compelling Response

The basis for the Bank's "unduly burdensome" objections is highly relevant to this matter because the Bank's use of such objections has presented an obstacle to Plaintiffs' receipt of relevant information. The Bank has previously interposed 12 "unduly burdensome" objections to Plaintiff's First Set of Post-Removal Discovery without one scintilla of evidence to sustain its burden. The Bank's assurance that it will "submit information and documentation in support of any undue burden objection it MAY assert" does not shield it from its obligation to fully answer this interrogatory with respect to its prior asserted objections. By repeatedly asserting its bad faith undue burden objections, and by claiming that other documents could not be located when Mr. Fries' testimony was to the contrary, the Bank *made the completeness and truthfulness of its discovery responses an issue in this case.* Having itself manufactured this relevance, the Bank should not be heard to invoke it as a defense to further discovery. The answer to this interrogatory is similarly highly relevant to Plaintiffs' renewed request for sanctions.

## D.  REQUEST FOR ADMISSION

### Request for Admission No. 1

At the time that the Bank interposed a its "unduly burdensome" objection to Interrogatories 2 and 5 of Plaintiffs' First Set of Post-Removal Discovery (calling for aggregate deficiencies and statutory damages), the Bank and/or its agent had one or more spreadsheets which it generated (though never disclosed to Plaintiffs counsel) which calculated the deficiency balance amounts and the finance charge and the amount financed for more than 3,000 putative class members.

### Response to Request for Admission No. 1

M&T objects to Request No. 1, as the contents of the referenced spreadsheets are protected by the work-product privilege and, accordingly, appear on M&T's privilege log. The work product doctrine protects items prepared in anticipation of litigation from discovery. *See* Fed. R. Civ. P. 26(b)(3). The protection arises when, based on "the nature of the document and the factual situation of the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252, 1258 (3d Cir. 1993). Plaintiffs are expressly seeking admissions as to the contents of items that were prepared to assess M&T's potential exposure in this case. Therefore, the requested documents and information were not just prepared "because of the prospect of litigation" (which would itself be sufficient) but were in fact prepared specifically because of this litigation. Accordingly, the work-product privilege applies.

Further, non-opinion or "[f]act work product is discoverable only upon a showing 'substantial need' *and by demonstrating that one cannot otherwise obtain the 'substantial equivalent'* of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.,* 237 F.R.D. 373, 381 (E.D. Pa. 2006) (citing Fed. R. Civ. P. 26(b)(3)) (emphasis added). "The party seeking discovery has the burden of proving each of these factors." *Peerless Heater Co. v. Mestek, Inc.,* No. CIV.A. 98-

6532, 1999 WL 35147370, at *5 (E.D. Pa. Dec. 6, 1999) (citing *Newark Ins. Co. v. APT Security Systems, Inc.*, Civ. A. No. 96–3469, 1997 WL 438458, at *2 (E.D. Pa. July 29, 1997). The production of opinion work product, however, also "requires a heightened showing of extraordinary circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 664 (3d Cir. 2003). Thus, even assuming that these spreadsheets contain only non-opinion work product (which requires a lower burden for production), Plaintiffs have still failed to meet the burden for disclosure and therefore requesting an admission regarding the contents of the same is improper. Subject to and without waiver, it is admitted only that at the time M&T responded to Plaintiffs' First Set of Post-Removal Discovery, M&T had, at the instruction of counsel, created a privileged exposure analysis, the existence of which was included on M&T's privilege log which was disclosed to Plaintiffs. It is specifically denied that Plaintiffs are in any way entitled to this privileged document or the information contained therein.

### Reason for Compelling Response

The Bank either misunderstands or intentionally mischaracterizes the substance of this Request.  The Bank contends that "Plaintiffs are expressly seeking admissions as to the content of" the spreadsheets.  (Response at 27) and that "the contents of the referenced spreadsheets are protected by the work-product privilege." (*Id.*).  However, Plaintiffs does not seek obtain information about the contents of the spreadsheet with this request, and so the work product doctrine is not implicated. Instead, this Request only seeks to establish that at the time that the Bank asserted its undue burden objection to Plaintiffs' requests for statutory damages and deficiency totals, the Bank had ***already*** completed the very analyses ***itself*** which it was claiming was too unduly burdensome to complete (or provide) to Plaintiffs in response to properly propounded discovery.  Kenneth Fries testified at the October 26, 2018 hearing that the Bank generated a spreadsheet which had a column for deficiency balances and statutory damages. (Hearing Transcript at p. 129-31), information sought by Plaintiffs in Interrogatory 2 and 5 of Plaintiffs' First Set of Post-Removal Discovery. This request seeks to memorialize that testimony and is highly relevant to Plaintiffs' renewed request for sanctions.

### E.  IMPROPER AFFIDAVIT

The "Certification" attached to the Bank's Response is procedurally improper. Michael Ryan,[5] the individual signing as the Bank's representative, stated:

---

[5] Despite Plaintiff's request, the Bank has failed to list Mr. Ryan as a person with knowledge of any of the facts of this litigation to fulfil its Rule 26(a) disclosure requirements. The Bank has listed Mr. Fries as the sole individual with any such information. The Bank's failure to make accurate disclosures is also an additional ground for the imposition of sanctions sought herein.

> I, Michael Ryan, am employed by Manufacturers and Traders Trust
> Company a/k/a M&T Bank ("M&T") as Group Vice President. I
> have read the foregoing responses to those interrogatories
> improperly served as requests for production of documents in
> Plaintiffs' Second Set of Post-Removal Class Discovery and know
> the contents thereof. The responses were prepared by me with the
> assistance and advice of counsel, upon which I have relied. The
> factual information contained in the responses is true and correct to
> the best of my knowledge, information and belief, and the records
> and information still in existence and presently recollected. I reserve
> the right to make any changes in the responses if it appears at any
> time that omissions or errors have been made therein, or that more
> accurate information is available.

The statute requires that the Defendant state a response unequivocally, under oath. 18 USC §1746 does not permit a certification based on a "belief" but requires a verification that the information is "true and correct." Moreover, the limitations that the certification is limited to "records in existence and presently recollected" and a "belief" calls into question the accuracy of these responses. Perhaps, most unusual, is the Bank's insistence that it can simply submit documents at any time without regard to the discovery time limitations imposed or change its responses if they are, once again, caught in a lie – a "right to make any changes in the responses if it appears at any time that omissions or error have been made therein, or that more accurate information is available." Tellingly, the Court's 1/31/19 order instructed the Bank to answer all compelled discovery requests under oath. Plaintiffs simply ask that the Bank be compelled to do so for this set of discovery as well.

Further, the language for records and information "still in existence," appears to be in tension with M&T's answer to Document Request No. 24, in which M&T states that:

> [I]t does not contend that any document responsive to any discovery
> request in this set of discovery, in Plaintiffs First Set of Post removal
> Discovery, or any other set of discovery propounded or served on
> M&T cannot be produced as a result of automatic, intentional or
> accidental document destruction or retention processes.

The Bank should be required to advise Plaintiffs as to what records and information are not "still in existence," and serve an amended proper certification without the numerous equivocations.

## IV.  PRIVILEGE LOG

As stated in Plaintiffs' First Brief in Support of Motion to Compel Discovery Responses (p. 41), the Bank produced a privilege log, then an amended privilege log, both of which are not only inadequate, but virtually indecipherable.  Despite repeated requests by Plaintiffs, the Bank has failed to provide an adequate privilege log.  Because of this, M&T has waived all privileges, and should be compelled to produce all documents, regardless of any privilege.  If a party fails to properly assert a privilege the privilege may be waived. *Rhoads, supra, at 221 Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 221 (E.D. Pa. 2008) (*citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 914 F. Supp. 1172, 1178 (E.D. Pa. 1996)).[6]

## V. SANCTIONS

Because of Defendant's repeated failures to answer Plaintiffs' discovery requests, as set forth above, Plaintiffs respectfully request that the Court strike all affirmative defenses and its putative right to assert any counter claim.[7] The courts have set out an analysis for determining whether this is an appropriate sanction:

> This court has applied the same general analysis in reviewing all sanction orders which deprive a party of the right to proceed with or defend against a claim, using some or all of the six-part test enunciated in *Poulis v. State Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d Cir.1984). *See, e.g., Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73–74 (3d Cir.1987); *Gold Kist, Inc. v. Laurinburg Oil Co.,* 756 F.2d 14, 19 (3d Cir.1985). Under the *Poulis* test, the district court must consider:
> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis,* 747 F.2d at 868 (emphasis omitted).
> *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1148 (3d Cir.,1990).

---

[6] Plaintiffs incorporate by reference their previous argument regarding the Bank's privilege log in their First Brief in Support of Their Motion to Compel Discovery Responses (pp. 41-44).

[7] M&T reserved the right to assert additional counterclaims against Plaintiffs, including for breach of contract and setoff. (Additional Defenses Section, ¶39, of Answer and New Matter to Second Amended Complaint (Doc. No. 66))

This test has been applied to motions to strike affirmative defenses for failure to follow discovery orders. *Amalgamated Bank of New York v. Pennsylvania Companies*, 1995 WL 71324, (E.D.Pa. 1995). Not every one of the six factors may be applicable in a given case. *Id.* In this case, the 6-part *Poulis* test supports such a sanction. Plaintiffs have been and continue to be severely prejudiced by the Bank's repeated failure to comply with its statutory mandate regarding its duty to respond to discovery requests in a timely fashion, under oath. Its repeated contemptuous conduct and discovery misconduct is not an aberration; The Court has already held that it has "unreasonably delayed and obstructed discovery in this case." 1/31/19 Order, Finding of Fact A. In the event that the Court believes that a lesser sanction is more proper, Plaintiffs request that the Court strike only Defendant's recoupment, set-off, and any deficiency contract claim. Alternatively, Plaintiffs request any sanction the Court deems just and proper.

***Another evidentiary hearing is requested.***

## VI.   CONCLUSION

The Bank's objections to the Plaintiff's Second Set of Post-Removal Discovery are baseless. All of its objections should be overruled and fully answered, unequivocally, without objection, under oath. Moreover, the Court should sanction the Bank for its continued flagrant egregious, contemptuous, and repeated misconduct.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan, Esquire
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St.
West Bloomfield, MI 48323
T: (248) 562-1320
F: (888) 769-1774

## CERTIFICATE OF GOOD FAITH ATTEMPTS
## TO RESOLVE DISCOVERY DISPUTE

I certify that the undersigned has made numerous attempts to resolve this discovery dispute as evidenced by the correspondence attached hereto as Exhibit 4 and have been unsuccessful.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this pleading was sent by E-Mail this 18th day of Febrary 2019 to all counsel of record. Furthermore, all counsel subscribe to the ECF and, therefore, received a copy of this pleading when filed.

SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
*Attorney for Plaintiffs*