IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, and CATHERINE HOSICK, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL ACTION |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | No. 2:17-CV-04806-WB |
| v. | ) ) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | ) ) ) | |
| Defendant. | ) ) | |

### PLAINTIFFS' THIRD MOTION TO COMPEL DISCOVERY AND TO IMPOSE SANCTIONS

AND NOW COMES Plaintiffs, by and through their counsel, who respectfully request that the Court compel Defendant to comply with the Court's directives set forth in its 1/31/19 Order regarding Plaintiffs' First Set of Post-Removal Discovery and sanction the Defendant for its continued willful disobedience of the Court's Orders and its discovery obligations. In support thereof, Plaintiffs state as follows:

## 1. **INTRODUCTION**

Contemporaneously with the service of the complaint in the Court of Common Pleas of Philadelphia, Plaintiffs served a First Set of Class Discovery on the Defendant Bank. The Bank did not respond to this discovery in any fashion and removed the case to this Court. At the Rule 16 conference, in an effort to efficiently advance this case, Judge Beetlestone ordered the Defendant to produce certain highly relevant categories of documents as part of a *stipulated-to* case management order on January 11, 2018. (dkt. 21) On April 13, 2018, the Court issued another order compelling the production of the information in the January 11 Order. (dkt. 55).

1

On June 12, 2018, Plaintiffs propounded Plaintiff's First Set of Post-Removal Class Discovery. (See dkt. 103 and 105). Weeks after its 30-day deadline to respond to the discovery, the Bank interposed baseless objections and similarly failed to fully answer that discovery and was otherwise uncooperative and obstructionist. On September 21, 2018, Plaintiffs filed a Motion to Compel Discovery Responses and Impose Sanctions and a Brief in Support. (dkt. 103 & 105). On October 26, 2018, the Court held a full day evidentiary hearing devoted to the outstanding discovery disputes.

These discovery issues have been extensively discussed by the parties and the Court. In addition to numerous communications between the parties and the aforesaid hearing, the parties set out their differences in multiple filings. This Court filed tentative rulings on Plaintiffs' Motion to Compel and the parties filed suggested language changes to the ruling. (dkt. 121, 125, 126). The parties filed post-hearing memorandums. (dkt. 135 & 136). Plaintiffs filed declarations of counsel and an expert, and a second memorandum and supplemental expert report. (dkt. 137, 138, 139 & 140). Defendant filed a second memorandum. (dkt. 145).

On January 31, 2019, this Court entered a Memorandum and Order Regarding Discovery Disputes ("Discovery Order"). (dkt. 147 & 148). In Finding of Fact A. in that opinion, this Court found as fact that:

> A. Based on my review of the motions and supporting documents, and on the testimony that I heard on October 26, 2018, I find that the Defendant has unreasonably delayed and obstructed discovery in this case.

The Discovery Order contains several General Rulings, including that Defendant's general objections to interrogatories are overruled (Ruling 3), that Defendant must state whether any responsive materials are being withheld on the basis of an objection (Ruling 4), that Defendant

must state by affidavit under oath if it has nothing further to disclose regarding its responses Plaintiff has claimed are deficient or if it asserts that all information has been previously supplied (Rulings 5 & 6), and a Sampling Protocol (Rulings 7 – 11).  The Sampling Protocol requiring the parties to come to an agreement as to the parameters of the protocol by February 14, 2019 and if they cannot, to file briefs and the Court will decide on the parameters.

The Court then individually ruled on each interrogatory and document request in the First Set of Post-Removal Discovery (Discovery Order, pp. 10 – 17), and required responses based on its rulings to be made by February 14, 2019 (*Id*, Ruling 18).  After the Court extended the deadline to respond by 7 days, the Defendant served Amended Responses to Plaintiffs' First Set of Post-Removal Discovery thereafter. ("Amended Responses")(**Exhibit 1**).  Defendant's Amended Responses blatantly ignored the rulings in the Discovery Order, as set-out in below.

## 2. **AUTHORITY FOR REQUESTED RELIEF**

Fed.R.Civ.P 37(a)(1) provides that a party may move for an order compelling disclosure or discovery.  Paragraph (a)(3)(B) states that such a motion to compel may be made if, *inter alia* a party fails to answer an interrogatory submitted under Rule 33 or  a party fails to produce documents under Rule 34.  Subsection (a)(4) makes clear that an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

Fed.R.Civ.P. 37(b)(2) provides for sanctions:

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

3

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

As shown below, the Defendant continues to snub its nose at this Court's clear directives and should be sanctioned for its continued egregious conduct.

### 3.   THE BANK'S CONTEMPTUOUS CONDUCT TO VIOLATE THE 1/31/19 DISCOVERY ORDER

### INTERROGATORY NO. 1

Please state the name, address, and employer of each person who was involved in answering any discovery request and stating which discovery request(s) that person was involved in.

**Court's Ruling to No. 1** (Pl. Mem. 12; Def. Mem. 7). Plaintiffs ask for identification of the persons who were involved in answering the interrogatories. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**Response to Interrogatory No. 1** M&T states that the following individuals and their teams were involved in answering Plaintiffs' Discovery Requests: (1) Kenneth S. Fries, Vice President, M&T Bank; (2) Thomas Thornton, Vice President, M&T Bank; (3) Matthew Brysinski, Banking Officer, M&T Bank; (4) Michael P. Ryan, Group Vice President, Consumer Asset Management (CAM), M&T Bank; (5) Yvonne Slevar, Vice President, M&T Bank; and (6) Shawn Baumgarden, Project Manager, M&T Bank. These individuals were involved in responding to a number of Discovery Requests as M&T's responses were completed in a collaborative manner.

M&T further states that the following individuals assisted in answering Plaintiffs' Discovery Requests in the following limited manner: (1) Jennifer Thompson, Assistant Vice President, Vendor Management, M&T Bank, assisted with obtaining information and documents relating to third-party vendors; (2) Fred Randell Surface, CAM Program Manager II, M&T Bank, assisted in determining the number of individuals in the potential putative classes; and (3) Paul Zawodzinski, Technology Senior Manager, M&T Bank, assisted in determining the ability for M&T to recover previously overwritten policies and/or procedures. M&T Bank employees may only be contacted through counsel for M&T.

**Defendant's Failure to Comply** Despite the Court's overruling all objections and its order to supply an unequivocal answer, the Defendant failed to provide addresses along with the names. The Defendant says that its employees can only be contacted through its counsel, but even if

true, that does not give it the right to refuse to answer the question in violation of the Discovery Order as these individuals may need to be served with a subpoena to attend trial or a hearing in this matter. Plaintiffs would like to have this readily-discoverable information in preparation for any class certification hearing and trial in this matter for purposes of service of a subpoena. Some people may no longer be in the defendant's employ at the time of either of these events. Plaintiffs have no objection to having the information marked as "confidential."

## **INTERROGATORY NO. 2**

Please state the aggregate sum of all DEFICIENCIES YOU claim are due and owing as of the date of answering this discovery request, for:

> (A) The FORM 1 NOR CLASS;
> (B) The FORM 2 NOR CLASS;
> (C) All putative CLASS MEMBER(S) of the NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS

**Court's Ruling to No. 2** (Pl. Mem. 13; Def. Mem. 8). Plaintiffs ask for an account of the deficiencies for all class members. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer. The answer shall also identify "the number of deficiencies M&T has marked as discharged in [its] systems," *see* Doc. 126 at 6, by designating them "zero (bankruptcy)." The Defendant shall state, according to the Bank's latest records, how many class members in each class had any deficiency balance discharged in bankruptcy. The

---

> ### *Defendant's Improper Systematic Disregard to Class-Related Targeted Discovery Requests Limiting only to Named Plaintiffs*
>
> ### **[Relevant to Interrogatories 2, 3, 7, and 8 below]**
>
> **The Court's instruction to provide targeted class-related information as to the class' composition was clear. While Defendant stated in its discovery response to these interrogatories that it will supplement its response when the members of the sampled class are identified, such is in direct violation of the Discovery Order as the Order compelled the production of this information relating to the composition of the putative classes. This fact is abundantly clear by the text of the order which required that the response be provided by February 14, 2019, which  - by definition - was well before any class members would have been identified pursuant to the sampling protocol in the Discovery Order. Furthermore, when the Court ordered that a discovery request be answered according to a sampling, it *specifically* stated so in its individual ruling on that particular request, such as its ruling on Interrogatory No. 5 [specifying a sampling protocol (Discovery Order, p. 11)]. The Discovery Order did not do so for these interrogatories; as such, any sampling is irrelevant to the Defendant's response to these interrogatories. This targeted information will be used to better understand the general composition of the classes at large from which statistical assumptions can then be made. This requested information is critical to enable Plaintiffs to prepare for their class certification motion.**

Defendant shall also state, for each class, the aggregate total of the deficiencies, based on its records.

**Response to Interrogatory No. 2**  M&T states that the aggregate sum of all deficiencies for the named Plaintiffs is $23,638.25. This figure is provided irrespective of whether any individual deficiency is collectable (i.e. - regardless of whether it has been discharged in bankruptcy or is otherwise legally uncollectable). As such, by providing the above aggregate total, M&T is not asserting its entitlement to collect the same from any individual Plaintiff. M&T further states that, according only to M&T's records, deficiency balances were marked as "discharged in Bankruptcy" for Plaintiff Hosick and Plaintiff Flynn, amounting to $18,604.32. M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Defendant's Failure to Comply**  The Interrogatory requested aggregate deficiencies for each of the putative NOR classes.  The Court ruled that Defendant's objections were overruled: "Defendant shall supply an unequivocal answer" and "state, for each class, the aggregate totals of the deficiencies."  The Banks did not do so, limiting its response to the named Plaintiffs only. Further, the Court specifically ordered that the Defendant shall state "how many class members in each class" had deficiency balances discharged in bankruptcy. Defendant again only states this as well only as to the named Plaintiffs, in disregard of the Court's clearly defined directive. Plaintiffs' counsel did not need the Defendant to advise which of his four clients had filed for bankruptcy protection. See, Box, p. 5 incorporated herein.

## INTERROGATORY NO. 3
Please IDENTIFY (including caption, docket number, and court or, as may be applicable, arbitration proceedings information) any auto loan DEFICIENCY action filed by YOU or on YOUR behalf against any putative CLASS MEMBER of any of the CLASSES identified in the OPERATIVE COMPLAINT.

**Court's Ruling to No. 3** (Pl. Mem. 3; Def. Mem. 9). Plaintiffs ask for auto loan deficiency actions against any putative Class Member during the Class Period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath, based on its records.

**Response to Interrogatory No. 3**  M&T states that no auto loan deficiency actions have been filed by M&T, or on M&T's behalf, against any of the named Plaintiffs. M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Defendant's Failure to Comply**  Of course, like its response to Interrogatory 2 above, Plaintiffs' counsel knew before the interrogatory was drafted whether their clients were sued for a deficiency action in this case. The Interrogatory asks for deficiency actions against *any putative class member*.  The Court ordered that Defendant "supply an unequivocal answer." The Defendant ignores the Discovery Order and answers only to the named plaintiffs. The Defendant says it will supplement its answer when members of the sampling class are

identified, but any sampling is irrelevant to its response to this interrogatory which applies to the putative classes at large. See, Box, p. 5 incorporated herein.

## INTERROGATORY NO. 6

Please explain in detail the difference(s) between the meaning of "Total redemption amount" as that phrase appears on the FORM 1 NOR and the meaning of "Amount required to redeem," as that phrase appears on the FORM 2 NOR.

**Court's Ruling to No. 6** (Pl. Mem. 19; Def. Mem. 11). Plaintiffs ask for an explanation of the difference in meaning between two phrases appearing on Defendant's forms. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**Response to Interrogatory No. 6** M&T states that the "Total redemption amount" as that phrase appears on the FORM 1 NOR means the total amount required to redeem the motor vehicle by reinstatement. M&T further states that the "Amount required to redeem" as that phrase appears on the FORM 2 NOR means the amount required to redeem the motor vehicle and terminate the installment sale contract by payment in full.

**Defendant's Failure to Comply** Defendant did not provide an "unequivocal" answer pursuant to the Discovery Order. Rather, the Defendant states that one amount is the total amount to "redeem the motor vehicle by reinstatement." The terms "redemption" and "reinstatement of a loan" are mutually exclusive. Defendant should be required to explain whether the term "Total redemption amount" as that phrase appears on the FORM 1 NOR means "the amount to redeem (or buy back) the repossessed vehicle" or "to reinstate the loan." The Court ordered an "unequivocal" answer; the Bank's response is equivocal.

## INTERROGATORY NO. 7

Please state the aggregate amount YOU actually **paid** all third parties for the STORAGE EXPENSE (i.e., the "Expense of storing the Vehicle" which YOU state in FORM I NOR and Form 2 NOR) for all (putative) members' repossessed vehicles in the:

      (A) FORM 1 NOR CLASS;
      (B) FORM 2 NOR CLASS, and,
      (C) the NOR ALTERNATIVE CLASS (excluding those class members in the FORM
         1 NOR CLASS and the FORM 2 NOR CLASS)

**Court's Ruling to No. 7** (Pl. Mem. 20; Def. Mem. 7). Plaintiffs ask for the aggregate amount Defendant paid all third parties for storage expenses. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. In addition, Defendant shall identify by Bates stamp numbers all documents upon which it based its answer.

**Response to Interrogatory No. 7** M&T states that the aggregate amount it paid directly to any third party for the expense of storing the named Plaintiffs' repossessed vehicles is zero. M&T further states that Plaintiff Daisey redeemed his vehicle directly from the third-party vendor and therefore paid the storage fees directly to said vendor. The vehicles of the remaining named Plaintiffs were sold. If a vehicle goes to sale, any expenses incurred (including, if applicable,

storage expenses) would be deducted from the sale proceeds before the funds are transmitted to M&T, thereby eliminating the need for M&T to directly pay the third party. M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Defendant's Failure to Comply**  Like the earlier interrogatories directed as a "biopsy" of information relating to the composition of the classes at large, Plaintiff asks for an aggregate amount *for each putative class*, not for the named Plaintiffs. The Court required an "unequivocal answer" as to the putative classes, and again the Defendant ignores the Court's order, answering only for the named Plaintiffs and stating it will supplement and then only as to a sampling. A sample is irrelevant to the Bank's obligation to fully answer this interrogatory. See, Box, p. 5 incorporated herein. This information is readily available by querying the database field "EXPSTORVEH" (storage fees) as detailed in Exhibit 9 and Exhibit 10 to Plaintiff's Second Set of Discovery. (dkt. 143).

### INTERROGATORY NO. 8
Please state the aggregate sum of the "Expense of storing the Vehicle" listed in the NOTICE OF REPOSSESSION for all (putative) members' repossessed vehicles in the:

> (A) FORM 1 NOR CLASS;
> (B) FORM 2 NOR CLASS, and,
> (C) the NOR ALTERNATIVE CLASS ( excluding those class members in the FORM 1 NOR CLASS and the FORM 2 NOR CLASS);

during the CLASS PERIOD.
[By way of example, the aggregate sum for the representative plaintiffs' "Expense of storing the Vehicle" is $265.00. [Hosick $40 + Daisey $75 + Flynn $75 + Abbott $75 = $365.00. [1]

**Court's Ruling to No. 8** (Pl. Mem. 21; Def. Mem. 12). Plaintiffs ask for the aggregate sum for each of three classes for the "Expense of Storing the Vehicle" as listed in the Notice of Repossession for all putative class members' repossessed vehicles. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**Response to Interrogatory No. 8**  M&T states that the aggregate sum of the expense of storing the vehicle listed on the notices of repossessions sent to the named Plaintiffs is $365.00. M&T states that the Notices of Repossession for the named Plaintiffs were previously produced at M&T0004-M&T0005 (Daisey), M&T00039-M&T00040 (Flynn), M&T00917-M&T00919 (Hosick), and M&T001285-M&T001287 (Abbott). M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Defendant's Failure to Comply** Like the earlier interrogatories directed as a "biopsy" of information relating to the composition of the classes at large, Plaintiff asks for an aggregate

---

[1] $100 clerical error in original interrogatory which stated $265.00.

amount *for each putative class*, not for the named Plaintiffs. The Court required an "unequivocal answer" as *to the putative classes*, and again the Defendant ignores the Court's order, answering only for the named Plaintiffs and stating it will supplement and then only as to a sampling. A sample is irrelevant to the Bank's obligation to fully answer this interrogatory.

Indeed, Plaintiffs had this information, too, *prior* to propounding this discovery request as such information was readily identifiable from the Notice of Repossessions attached to the pending Complaint. See, Box, p. 5 incorporated herein. This information is readily available by querying the database field "EXPSTORVEH" (storage fees) as detailed in Exhibit 9 and Exhibit 10 to Plaintiff's Second Set of Discovery. (dkt. 143).

## INTERROGATORY NO. 9
Please IDENTIFY the total number of people who comprise the (putative):
      a.  FORM I NOR CLASS, and state how YOU computed it;
      b.  FORM 2 NOR CLASS, and state how YOU computed it;
      c.  NOR ALTERNATIVE CLASS, and state how YOU computed it;
      d.  POST-SALE NOTICE CLASS, and state how YOU computed it;

**Court's Ruling to No. 9** (Pl. Mem. 22; Def. Mem. 12-13). Plaintiffs ask for the total number of people who comprise the various classes defined in the Complaint. Defendant has supplied figures, subject to non-specific objections. All of the Defendant's objections are overruled. If the overruling of the objections means that the answer must be supplemented, Defendant shall supplement its answer under oath.

**Response to Interrogatory No. 9** As of the date of the Order, M&T has identified 4,999 unique accounts, totaling 5,965 putative class members when including co-borrowers, combined for all putative classes, broken down as follows:

      a.  FORM 1 NOR: 1,460 (including 175 co-borrowers)
      b.  FORM 2 NOR: 3,841 (including 700 co-borrowers)
      c.  NOR ALTERNATIVE: 664 (including 91 co-borrowers)
      d.  POST-SALE NOTICE: 4,451 (including 623 co-borrowers)

      M&T further states that all members of the putative Post-Sale Notice Class are also members of one of the other three putative classes. M&T's response is not an admission that a valid class or classes exist.

**Defendant's Failure to Comply** The Defendants did NOT fully answer this discovery request. While the Defendant claimed that "its response to Interrogatory No. 9 was arrived at by running a search of M&T's electronic records using the criteria set forth in the Second Amended Class Action Complaint ("Amended Complaint")[Response, p. 9], the Bank concedes that it ran a query for variables *very different than the class criteria* of the Complaint. Indeed, it explained that *it generated a "proxy"* limiting the search for people who were sent a Notice of Repossession "between September 22, 2011 and May 31, 2012" [*Id.*, 9-10]. The putative class period s "from September 22, 2011 through the date of certification." [Par. 122(d); 124(d);

126(d)]. Furthermore, these figures are further called into question in light of Attorney Parker's factual averments in his letter to the Court dated January 31, 2019 which states that the Bank queried only those "persons who (1) **received** "FORM 1 NOR"; (2) **received** 'FORM 2 NOR"; (3) **received** "ALT NOR." *See,* Scott Parker 2/14/19 Letter to Court. **Exhibit 2**. When Attorney Parker stated that the submission was "[i]n accordance with Your Honor's Order dated January 31, 2019," when he *knew* that the Bank used a "proxy" factor and modified the class criteria. The multi-billion dollar Bank has done "everything under the sun" not to provide a valid and reliable class size determination. Any "sampling" of an unreliable population would also be unreliable. Plaintiffs statistician, Ms. Karns makes several suggestions in her report (dkt. 155, p. 11-13). In light of the Bank's evasive conduct, her suggestion that the Bank submit to a corporate deposition with a remote access (as discussed at the evidentiary hearing) is quite reasonable and is respectfully requested again. Ms. Karn's states "[t]he topics to address include, inter alia, [1] the in-house computer system's capabilities; [2] the Bank's discovery responses to date and methodology used to generate its mathematical (or accounting) responses; [3] the reliance on external data providers such as AutoIMS; and [4] the feasibility to complete the proposed collection data instrument (Exhibit A)." A copy of Ms. Karns' practical suggestions and the data sheet are attached as **Exhibit 3**. The entire report is filed at dkt.

## INTERROGATORY NO. 10

Please explain in detail the process, and IDENTIFY all person involved with, how YOU arrived at YOUR answer to the above interrogatories.

**Court's Ruling to No. 10** (Pl. Mem. 22; Def. Mem. 12-13). Plaintiffs ask for the total number of people who comprise the various classes defined in the Complaint. Defendant has supplied figures, subject to non-specific objections. All of the Defendant's objections are overruled. If the overruling of the objections means that the answer must be supplemented, Defendant shall supplement its answer under oath.

**Response to Interrogatory No. 10**  M&T's objections to this Interrogatory were sustained. Pursuant to the Order, however, M&T herby provides "a description of the process it used to respond to Interrogatories 7, 8, and 9". See Order at p. 13, No. 10.

    **Interrogatory No. 7 –** M&T states that its response to Interrogatory No. 7 was drafted by M&T, with the assistance of counsel, and is based on knowledge of the process by which M&T handles third-party repossession-related expenses that may be incurred to and/or paid by M&T.

    **Interrogatory No. 8 –** M&T states that its response to this Interrogatory was arrived at by reviewing the Notices of Repossession produced for the named Plaintiffs at M&T0004-M&T0005 (Daisey), M&T00039-M&T00040 (Flynn), M&T00917-M&T00919 (Hosick), and M&T001285-M&T001287 (Abbott), writing down the figure listed on each for the "Expense of storing the Vehicle" and adding these figures together.

    **Interrogatory No. 9 –** M&T states that its response to Interrogatory No. 9 was arrived at by running a search of M&T's electronic records using the criteria set forth in the Second Amended Class Action Complaint ("Amended Complaint").  Specifically, M&T states that it ran

a search for all customers (including co-borrowers) who: (1) purchased their vehicle at a Pennsylvania dealership; (2) were sent a Notice of Repossession (as that term is defined in the Amended Complaint) relating to that vehicle between September 22, 2011 and January 31, 2019; and (3) had their vehicle repossessed in Pennsylvania. Prior to May 2012, M&T's systems did not include a searchable data point for "state of repossession". As a proxy for the same, M&T supplemented the above search by conducting a search for customers (including co-borrowers) who: (1) purchased a vehicle at a Pennsylvania dealership; (2) were sent a Notice of Repossession (as that term is defined in the Amended Complaint) relating to that vehicle between September 22, 2011 and May 31, 2012; and (3) have a Pennsylvania address. The results of these two searches were then combined into one master class list. After removing any commercial loans, the total was provided as the total number of potential class members "combined for all putative classes" as requested in Interrogatory No. 9. M&T then sorted the customers based on the date their Notice of Repossession was sent into individual lists for FORM 1 NOR, FORM 2 NOR, or NOR ALTERNATIVE (as those terms are defined in the Amended Complaint). Finally, M&T took any customer listed in the FORM 1 NOR CLASS, FORM 2 NOR CLASS, or NOR ALTERATICE CLASS whose vehicle was sold and added them to the separate POST-SALE NOTICE CLASS (as that term is defined in the Amended Complaint). M&T then added up the customers listed within each sub-list and provided those figures. M&T's response is not an admission that a valid class or classes exist.

**Defendant's Failure to Comply**   Again, the Defendants did NOT fully answer this discovery request as ordered. Of course, the first-step is to define exactly who are in the classes, a process that the Bank has yet to do.

 **Interrogatory No. 7** – The Bank's response references a "process by which M&T handles third-party repossession related expenses," but fails to describe the process as applied to the putative classes in question. If the answer is that the Bank, as a matter of policy and practice, did not pay any third parties for any of the storage expenses it billed class members in the FORM 1 NOR and FORM 2 NOR, then it should so state. This information is readily available by querying the bank's accounting records. The query(s); the software systems queried; the identity of the persons involved in these queries and answering this interrogatory should be disclosed in its response along with a brief summation of what they each did should also be provided.

 **Interrogatory No. 8** -- The Bank should be compelled to add-up each class member's storage expenses in the putative classes – either manually or electronically. This information is readily available by querying the database field "EXPSTORVEH" (storage fees) as detailed in Exhibit 9 to Plaintiff's Second Set of Discovery for each putative class member. The query(s); the software systems queried; the identity of the persons involved in these queries and answering this interrogatory should be disclosed in its response along with a brief summation of what they each did should also be provided.

11

**Interrogatory No. 9** – [*Putative Class Sizes Remain Unknown; Bank Used a "Proxy"; Any Sample of Inaccurate Population is Unreliable*]

While the Defendant claimed that "*its response to Interrogatory No. 9 was arrived at by running a search of M&T's electronic records using the criteria set forth in the Second Amended Class Action Complaint*" ("Amended Complaint")[Response, p. 9], the Bank concedes in the next sentence that it ran a "proxy" with a query of variables *very different than the class criteria* of the Complaint. In so doing, it limited the search regarding a data point for people who were sent a Notice of Repossession "between September 22, 2011 and May 31, 2012" [*Id.*, 9-10]. The putative class period is more than 6 years ("from September 22, 2011 through the date of certification." [Par. 122(d); 124(d); 126(d)].

Furthermore, these figures are further called into question in light of Attorney Parker's factual averments in his letter to the Court dated January 31, 2019 which states that the Bank queried only those "persons who (1) **received** "FORM 1 NOR"; (2) **received** 'FORM 2 NOR"; (3) **received** "ALT NOR." *See*, Scott Parker 2/14/19 Letter to Court. **Exhibit 2**. When Attorney Parker stated that the submission was "[i]n accordance with Your Honor's Order dated January 31, 2019," when he *knew* that the Bank used a "proxy" of dissimilar variables compared to the class criteria. It is common-sense that any "sampling" of an unreliable population will yield an unreliable sample.

Applying a "received" criteria instead of a "sent" criteria has the effect to reduce the size of the class because it effectively limits the classes to borrowers to whom the Bank has a record of receiving the alleged disclosure notice, perhaps personally by certified mail green card. A borrower's receipt of the challenged notice, however, is irrelevant to the class definition and similarly has no nexus to liability. Indeed, the Pennsylvania Commercial Code imposes a duty on a secured creditor to include mandatory and accurate information in its disclosure notices and liability is triggered irrespective of any harm. 13 Pa. C.S. §9625, Comment 4, Second Amended Complaint, ¶110.

If Attorney Parker mis-stated the scope of the class in his letter to the Court, then he should clarify such by way of an affidavit and explain which criterium was used regarding the class list he filed.

Furthermore, making matters even more suspect, the Bank seems to have run different queries and arrived at wildly different information when it responded to discovery seeking the class size (Int. 9 of Plaintiff's First Set of Post Removal Discovery) in August, 2018 and when it submitted such information under oath, pursuant to the Court's 1/31/19 order, in a list to the Court generating wildly different figures.

|     |                           | **Aug. 10, 2018** | **Feb. 21, 2019**                |
| --- | ------------------------- | ----------------- | -------------------------------- |
| a.  | FORM 1 NOR:               | 792               | 1,460 (including 175 co-borrowers) |
| b.  | FORM 2 NOR CLASS:         | 2,433             | 3,841 (including 700 co-borrowers) |
| c.  | NOR ALTERNATIVE CLASS:    | 721               | 664 (including 91 co-borrowers)    |
| d.  | POST-SALE NOTICE CLASS:   | 2,733             | 4,451 (including 623 co-borrowers) |

The Bank's Response to Interrogatory 9 initially stated that it applied the class criteria; but – in light of this response – that was apparently never done.

While Plaintiffs recognize that the class period continues after the complaint has been filed, the class list should not increase for the class members who were sent a Form 1 NOR which had been discontinued; but the figure grew purportedly by hundreds of class members. The accuracy and methodology of determining the class size is clearly called into question. Plaintiffs' counsel is entitled to know the class size, based on the objective criterium of its putative classes, and how the figures were determined (i.e., the disclosure of all computer queries have been properly requested in Plaintiff's Second Set of Post-Removal Discovery and has been objected-to). The proposed corporate deposition with remote access addressing this information in preparation for the sample is further warranted by the Bank's unreliable response to this most basic interrogatory seeking class size.

There are several conflicting and irreconcilable representations: (1) one sentence in Mr. Ryan's answer that the Bank used the class complaint's criteria; (2) another sentence in Mr. Ryan's answer which qualifies the first sentence stating that part of the determination was based on a "proxy";[2] and (3) Attorney Parker's representation that the Bank purportedly complied with the Court's order though improperly defined the class criteria in terms of "receipt" rather than the "sending" of Notices of Repossession. Obtaining class size information which can be relied upon in a class certification motion is highly relevant discovery and is the first-step to determining the size and protocol for any sampling. ***Enough is enough!***

### INTERROGATORY NO. 11

With respect to Gene Daisey's loan relating to his subject repossessed vehicle, please state:

  (A) The gross amount YOUR business records show (as was reflected on September 22, 2017), as being paid:

  i.   to YOU by Gene Daisey any time after his vehicle was repossessed;
  ii.  to YOU from any PERSON (other than Gene Daisey);
  iii. to others by YOU, including but not limited to any STORAGE EXPENSE(S) or any payments for the repair, sale preparation, and/or transport of his repossessed vehicle.

  (B) List a detailed breakdown of how YOU calculated the gross amount described in (a)(l), (a)(2), and (a)(3) above stating:

  i.   the date of the payment;
  ii.  the amount of the payment; and,
  iii. the goods or services paid for by the payment (e.g., storage expense; repair expense; redemption amount; interest; or principal).

---

[2] If the Bank needs to determine some of the class members' eligibility by hand-work for one year, then it should do so.

13

**Court's Ruling No. 11** (Pl. Mem. 24; Def. Mem. 13-14). Plaintiffs ask for specific information about Gene Daisey's loan. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall *also* provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**Response to Interrogatory No. 11**   M&T states that pursuant to Rule 33(d), the answers to Interrogatory 11 may be determined by reviewing documents that have been produced at M&T00345-M&T00379, M&T019774 and M&T019910. M&T further states, however, that per these records, a total of $4,292.28 was paid on Plaintiff Daisey's account after February 15, 2013, the date his vehicle was repossessed. *See, e.g.,* M&T00379. ***Of that payment total, $1,014.87 was reversed.*** *Id. (Emphasis added)* These payments were broken down as follows:

| Due Date | Post Date | Next Due Date | Amount | Transaction Description | Principal | Interest | Fees | Balance |
|---|---|---|---|---|---|---|---|---|
| 11/13/12 | 02/19/13 | 12/13/12 | 203.59 | Payment | 154.92 | 48.67 | | 2,885.20 |
| 12/13/12 | 02/19/13 | 04/13/13 | 811.28 | Payment | 749.68 | | 61.60 | 2,135.52 |
| 04/13/13 | 02/19/13 | 03/13/13 | 203.59 | Payment Reversal | 154.92 | 48.67 | | 2,290.44 |
| 03/13/13 | 02/19/13 | 11/13/12 | 811.28 | Payment Reversal | 749.68 | | 61.60 | 3,040.12 |
| 11/13/12 | 02/19/13 | 03/13/13 | 811.28 | Payment | 702.01 | 48.67 | 60.60 | 2,338.11 |
| 03/13/13 | 03/18/13 | 04/13/13 | 199.60 | Payment | 186.62 | 12.98 | | 2,151.49 |
| 04/13/13 | 04/22/13 | 05/13/13 | 199.60 | Payment | 184.13 | 15.47 | | 1,967.36 |
| 05/13/13 | 05/22/13 | 06/13/13 | 200.60 | Payment | 187.47 | 12.13 | 1.00 | 1,779.89 |
| 06/13/13 | 06/23/13 | 06/13/13 | 3.99 | Late Chg Assessed | | | 3.99 | 1,779.89 |
| 06/13/13 | 06/24/13 | 07/13/13 | 18.00 | Extension Granted | | | 18.00 | 1,779.89 |
| 07/13/13 | 06/24/13 | 08/13/13 | | Extension Granted | | | | 1,779.89 |
| 08/13/13 | 08/22/13 | 09/13/13 | 203.59 | Payment | 165.96 | 33.64 | 3.99 | 1,613.93 |
| 09/13/13 | 09/23/13 | 10/13/13 | 199.60 | Payment | 188.38 | 10.62 | | 1,424.95 |
| 10/13/13 | 10/23/13 | 11/13/13 | 199.60 | Payment | 190.82 | 8.78 | | 1,234.13 |
| 11/13/13 | 11/22/13 | 12/13/13 | 199.60 | Payment | 191.99 | 7.61 | | 1,042.14 |
| 12/13/13 | 12/23/13 | 01/13/14 | 199.60 | Payment | 192.96 | 6.64 | | 849.18 |
| 01/13/14 | 01/21/14 | 02/13/14 | 199.60 | Payment | 194.54 | 5.06 | | 654.64 |
| 02/13/14 | 02/20/14 | 03/13/14 | 199.60 | Payment | 195.57 | 4.03 | | 459.07 |
| 03/13/14 | 03/21/14 | 04/13/14 | 199.60 | Payment | 196.86 | 2.74 | | 262.21 |
| 04/13/14 | 04/23/14 | 04/13/14 | 199.60 | Payment | 197.83 | 1.77 | | 64.38 |
| 04/13/14 | 05/14/14 | 04/13/14 | 1.28 | Late Chg Assessed | | | 1.28 | 64.38 |
| 04/13/14 | 05/14/14 | 00/00/00 | 65.94 | Payoff | 64.38 | 0.28 | 1.28 | |

*Id.* The amounts listed under the "Fees" heading are late fees, except for the $18.00 fee charged on June 24, 2013, which was an extension fee. *Id.; See also* M&T000345-M&T00375 (monthly account statements). Upon information and belief, these payments were made by Plaintiff Daisey. M&T states that it does not have any records of payments made on Plaintiff Daisey's account after February 15, 2013 by any person other than Plaintiff Daisey. Additionally, M&T further directs Plaintiffs to those documents previously produced at M&T019774 and M&T019910, showing a February 15, 2013 invoice directed to M&T from MCRC for their involuntary repossession fee of $385.00 and a "Paid Amount" of $385.00 for the same. M&T also directs Plaintiffs to M&T00155, which indicates that Plaintiff Daisey was not charged this repossession fee.

14

**Defendant's failure to comply**  Defendant did not provide an "unequivocal answer" as required. There are two discrete sections with three clear questions each which remain largely unanswered. The Court stated that, the Defendant shall "*also*" reference any responsive documents – meaning that the unequivocal answer shall not wholly rely upon a document. The Defendant ignored the first clear mandate, solely providing a reference to previously produced documents and an *excerpt* from a payment log without Bates reference. The log shows "Payment Reversal" for two payments, but Defendant coyly does not explain the details regarding the payment reversal – items clearly sought by these interrogatories. The Defendant should be required to state what sums comprised the amount of each good or service resulting in the reversal of charges; why there a reversal of charges; whether Daisey receive any benefit as a result of the goods or services to which there was a reversed charge; who paid the reversed funds and to whom; when; how was it paid; at whose direction all of this was done; whether such was performed pursuant to any policy and practice. The Defendant should provide documents/evidence of such.

Further, when answering what amounts were paid "to others by YOU, including [expenses]", M&T "directs" plaintiffs to documents allegedly showing that M&T did not charge Plaintiff Daisey for a repossession fee.  However, the document allegedly showing that fee was not charged to Daisey (M&T00155 – **Exhibit 4**) appears to be an M&T redemption form provided to the repossessor or other third party who had the redeemed vehicle, and it instructed that the "AGENT IS TO COLLECT FROM CUSTOMER: … STORAGE FEES ONLY." The Bank should answer the questions, as instructed by the Court, unequivocally. If the repossessor acted as a collection agent for the Bank for storage fees (or any other fee), then it should state such. The amount of stoage

Based on this document, it appears that M&T ordered its agent to collect storage fees from Daisey, but did not disclose this in its answer to Interrogatory 11 (if M&T ordered the fee to be collected by the agent, then the agent would have paid this fee to M&T after collecting it from Daisey). By not answering this interrogatory in a straight-forward and unequivocal manner, the Bank continues to engage in a shell-game. The charging of these fees to borrowers such as Daisey is the basis for one of the main claims in this litigation, and the Defendant completely omitted critical information regarding how this process is conducted from its answer, despite the Court's clear directive.

## INTERROGATORY NO. 12
In the POST-SALE NOTICE which the BANK SENT to Abbott (Exhibit 4), the Bank included itemizations as follows:

**Payoff prior to Auction Date: $7,086.95**
**Auction Expense: $1,371.78**

Please list a detailed breakdown of how YOU calculated each of these itemizations.

**Court's Ruling No. 12** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for specific information regarding a post-sale notice sent to Abbott. All of the Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall also provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**Response to Interrogatory No. 12**   M&T states that the $7,086.95 "payoff prior to Auction" listed on Abbott's Post-Sale Notice can be further broken down as follows: Unpaid principal balance of $6,861.06; accrued finance charges of $181.25, and unpaid fees of $44.64. *See, inter alia*, M&T001283-M&T001284, M&T001159-M&T001205; and M&T0046731. For additional details regarding calculation of the unpaid principal balance, accrued finance charges, and unpaid late fees, M&T directs Plaintiffs to the monthly account statements and account activity statement produced as M&T001283-M&T001284 and M&T001159-M&T001205.

M&T further states that the Auction Expense as listed was calculated by subtracting the repossession fee as listed on the Repo Tab in Locus ($195.00) from the total charges billed to M&T by the third-party vendor ($1,566.78) for an Auction Expense of $1,371.78. $195.00 of the repossession fee was invoiced pre-auction and therefore listed separately from the Auction Expense on the Post-Sale Notice.

M&T further states that the total charges billed to M&T for Plaintiff Abbott's vehicle are calculated by the third-party vendor and can be further broken down as follows:

| Charges | | | | | | Customize Layout |
| --- | --- | --- | --- | --- | --- | --- |
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Recon: Labor | BATTERY | 0 | - | $90.00 | - | $90.00 |
| Recon: Gasoline | FLUID SERVICE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $125.00 | - | $125.00 |
| Admin: Administration Fee | TITLE FEE | 0 | - | $65.00 | - | $65.00 |
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Admin: Repossession Fee | AMERICAN RECOVERY | 0 | - | $325.00 | - | $325.00 |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Other: Miscellaneous | Miscellaneous | 0 | - | $20.00 | - | $20.00 |
| Transport: Transportation Fee | - | 0 | - | $210.00 | - | $210.00 |
| Recon: Mechanical Work | INOP | 0 | - | $585.78 | - | $585.78 |
| Admin: Administration Fee | IMS FEE | 0 | - | $14.00 | - | $14.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,566.78 (total) | - | $1,566.78 (total) |

M&T019950-M&T019958; *see also* M&T000528-M&T00529 and M&T001286.

**Defendant's Failure to Comply**  The Defendant failed to explain, in detailed fashion, exactly how it calculated the Auction Expense of $1,371.78. Particularly, there is a $20.00 "Other: Miscellaneous" expense and a $14.00 IMS "Fee," but no receipts to establish that these were actual expenses assessed to and paid by M & T Bank. Regarding the $20.00 miscellaneous expense, Plaintiffs further requests: (a) an explanation as to what this charge corresponds to; (b) what good(s) or service(s) M&T received regarding this charge; and, (c) whether the Bank paid this charge. Receipts for the $20.00 and $14.00 IMS Fee are requested.

**INTERROGATORY NO. 13**

In the NOTICE OF REPOSSESSION which the BANK SENT to each of the Representative Plaintiffs, the BANK included an itemization for: **Expense of preparing/repairing the Vehicle for sale: $200.00**.  Please state the criteria for how YOU determined this "expense." <u>Please provide all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer.</u>

**Court's Ruling No. 13** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for the criteria Defendant used to calculate the $200 expense for preparing/repairing the repossessed vehicle. The fact that the figure was an "estimate," as Defendant contends, does not obviate the responsibility to answer the question. If there were no criteria used, and the figure was selected arbitrarily, Defendant shall so state. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

**Response to Interrogatory No. 13**  M&T states that the $200.00 "expense" is an estimate of the actual charges that the borrower may be assessed. M&T further states that the estimate is provided as a placeholder to place the borrower on notice that an additional fee for preparing/repairing the vehicle for sale may be assessed to them as the actual fees incurred are not known at the time the notice is sent. M&T further states that this estimate was <u>determined by reviewing a sampling of accounts with repossessed vehicles and comparing the actual expenses incurred for preparing/repairing those vehicles for sale. M&T then used this information to create an estimate of the potential charge.</u> A borrower, however, is only responsible for paying those expenses actually incurred for their vehicle. (<u>Emphasis</u> added).

**Defendant's Failure to Comply**  Plaintiffs asked for the criteria, which the Discovery Order specifically stated must have been answered.  The Defendant simply states they reviewed a "sampling of accounts" and "compared the actual expenses incurred for preparing/preparing" the vehicles.  However, the Defendant does not state the actual criteria, such as which accounts were sampled, if the accounts sampled were from certain years or certain states or locations, if they only sampled consumer vehicle accounts or they sampled commercial vehicle accounts, nor have they provided any documents tending to establish that this "sampling of account" was actually done (as was requested in Document Request No. 16).  Indeed, <u>Plaintiff asked for documents which concern or substantiate the criteria, and the Defendant produced no documents despite the Court's clear directive.</u>

17

## DOCUMENT REQUEST NO. 1

**Request No. 1** In the NOTICE OF REPOSSESSION which the BANK SENT to Daisey (Exhibit 5), the Bank included itemizations as follows:

**Expense of storing the Vehicle: $175 (5 days, at $35.00 per day]**
**Expense of preparing/repairing the Vehicle for sale: $200.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Court's Ruling No. 1** (p. Mem. 26-28; Def. Mem 15). Plaintiffs ask for documents supporting specific charges for storing and repairing repossessed vehicles of the representative plaintiffs. All of the Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 1** M&T states that, as explained above, the $200.00 charge is an estimate for expenses incurred and therefore no specific supporting documentation relating to the same exists. M&T further states that, according to its records, Plaintiff Daisey was assessed a storage fee of $175.00 at $35.00 a day. *See, inter alia*, M&T001367-001368; M&T019770. M&T further states that the amount charged per day is established by the third-party vendor. Additional documents regarding these storage charges may be in the possession, custody or control of the vendors performing the services.

**Defendant's Failure to Comply**  M&T states that Daisey was assessed a storage fee of $175.00 and cites to produced documents. However, M&T019770 is a Locus screen capture for Daisey's account, but the account entries are cut-off.  There is an entry that says "storage is $175.00 to 2/19/13 $..." but then the document is cut-off and illegible. It is unclear whether this is simply a note added to Daisey's account that such a storage fee could be charged, or if this is an actual entry charging his account for this fee.  Further, 001367-68 are documents with no heading other than "Gene Daisey" and his vehicle type and VIN, and otherwise with no explanation of the type of document it is, from which database these notes were generated, or whether they are complete. There are entries stating in part "Added Expense: '385'" and "storage is $175.00 to 2/19/13 $35.day;" however, it is unclear from this document whether these charges were actually billed to Daisey, whether they were incurred by the Bank, and if Daisey ever paid them to anyone. No actual receipts or proof of payment was provided. The Bank should provide all responsive documents and the full documents of all notes. If there are no receipts evidencing any payment for storage fees paid by M& T Bank, then the Bank should state such. These documents are attached as composite **Exhibit 5**. The Bank had an obligation to provide me with all of the documents relating to the Representative Plaintiffs, not only as a mandatory Rule 26(a) disclosure, but also to comply with the Court's 1/11/18 order – which, as is evident by this truncated document, has yet to be fulfilled.

## DOCUMENT REQUEST NO. 2

**Request No. 2**  In the NOTICE OF REPOSSESSION which the BANK SENT to Flynn (Exhibit 6), the Bank included itemizations as follows:

**Expense of storing the Vehicle: $75 (3 days, at $25.00 per day]**
**Expense of preparing/repairing the Vehicle for sale: $200.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Court's Ruling No. 2**  (p. Mem. 26-28; Def. Mem 15). Plaintiffs ask for documents supporting specific charges for storing and repairing repossessed vehicles of the representative plaintiffs. All of the Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 2**  M&T states that, as explained above, the $200.00 charge is an estimate for actual expenses incurred and therefore no specific supporting documentation relating to the same exists. M&T further directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00079- M&T00080, M&T019762-M&T019763, M&T019874-M&T019876, M&T019881-M&T019882; and M&T019891-M&T019894, which demonstrate that the actual expense incurred for repairing/preparing Plaintiff Flynn's vehicle for sale was $921.00. This figure was calculated by adding the "Recon" charge types billed to M&T by the third-party vendor and broken down as follows:

| **Charges** | | | | | | **Customize Layout** |
|---|---|---|---|---|---|---|
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Admin: Administration Fee | IMS FEE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $115.00 | - | $115.00 |
| Sublet: Outside Repair | TITLE FEE | 0 | - | $35.00 | - | $35.00 |
| Recon: Tires | TIRE | 0 | - | $810.00 | - | $810.00 |
| Transport: Transportation Fee | | 0 | - | $325.00 | - | $325.00 |

| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
|---|---|---|---|---|---|---|
| | COMMONWEALTH RECOVERY | | | | | |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Transport: Transportation Fee | - | 0 | - | $88.00 | - | $88.00 |
| Recon: Gasoline | GAS | 0 | - | $16.00 | - | $16.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,521.00 (total) | | $1,521.00 (total) |

19

M&T019874-M&T019875. For further details and documents relating to these charges, M&T directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00079-M&T00080, M&T019762-M&T019763, M&T019874-M&T019876, M&T019881-M&T019882; and M&T019891-M&T019894. M&T further states that the amount charged per day for storage is established by the third-party vendor. According to M&T's records, Plaintiff Flynn's vehicle was repossessed by Commonwealth Recovery, which charged a *per diem* storage fee of $25.00. *See* M&T020257. M&T further states that the amount charged per day is established by the third-party vendor. Additional documents regarding these charges may be in the possession, custody, or control of the vendors performing the services.

**Defendant's Failure to Comply** Defendant cites to several produced documents showing the expense for preparing/repairing Flynn's vehicle was $921.00. These are AutoIMS documents (a third-party website centralizing data shared by repo agents, auctions, etc.) showing the "recon" expenses as illustrated above, and one Locus screen capture showing that the vehicle was sold and listing "repo expenses" and "AutoIMS fees." It is unclear from all of these documents what the IMS Fee entailed (i.e., whether it was an expense incurred by M&T or a fee charged by the Bank).

Also, it is unclear who the "recon" expense was charged to (i.e., whether as it charged to M&T by a third party and paid by M&T, or was it charged directly to Flynn by a third party? Because the Notice of Repossession sent to Flynn lists the "Expense of preparing/repairing the Vehicle for sale" as part of the redemption amount, which the notice states is "the full amount you owe (not just the past due payments), including our expenses" [emphasis added], M&T must provide documentation that it actually incurred these expenses, and that they are not simply something charged directly to Flynn. Furthermore, Plaintiffs request that the Bank clarify whether the additional amount of $600.00 was incurred by the Bank and charged to Flynn as a purported deficiency balance, providing documentation supporting such.

**DOCUMENT REQUEST NO. 3**

**Request No. 3** In the NOTICE OF REPOSSESSION which the BANK SENT to Abbott (Exhibit 7), the BANK included itemizations as follows:

**Expense of storing the Vehicle: $75 [3 days, at $25.00 per day]**
**Expense of preparing/repairing the Vehicle for sale: $200.00**

**Right to Redeem: …**
**Sale preparation expenses: $200.00 …**
**Storage expenses: $75.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

20

**Court's Ruling No. 3** (p. Mem. 26-28; Def. Mem 15). Plaintiffs ask for documents supporting specific charges for storing and repairing repossessed vehicles of the representative plaintiffs. All of the Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 3** M&T states that, as explained above, the $200.00 charge is an estimate for actual expenses incurred and, therefore, no specific supporting documentation relating to the same exists. M&T further directs Plaintiffs to the documents previously produced at, *inter alia*, M&T001363- 001366, M&T019950-M&T019952, M&T019957-M&T019959; M&T019966-M&T019969; M&T019812; and M&T019862-M&T019871, which demonstrate that the actual expense incurred for repairing/preparing Plaintiff Abbott's vehicle for sale was $782.78. This figure was calculated by adding the "Recon" charge types billed to M&T by the third-party vendor and broken down as follows:

| Charges | | | | | | Customize Layout |
|---|---|---|---|---|---|---|
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Recon: Labor | BATTERY | 0 | - | $90.00 | - | $90.00 |
| Recon: Gasoline | FLUID SERVICE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $125.00 | - | $125.00 |
| Admin: Administration Fee | TITLE FEE | 0 | - | $65.00 | - | $65.00 |
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Admin: Repossession Fee | AMERICAN RECOVERY | 0 | - | $325.00 | - | $325.00 |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Other: Miscellaneous | Miscellaneous | 0 | - | $20.00 | - | $20.00 |
| Transport: Transportation Fee | - | 0 | - | $210.00 | - | $210.00 |
| Recon: Mechanical Work | INOP | 0 | - | $585.78 | - | $585.78 |
| Admin: Administration Fee | IMS FEE | 0 | - | $14.00 | - | $14.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,566.78 (total) | - | $1,566.78 (total) |

M&T019950-M&T019952. For further details and documents relating to these charges, M&T directs Plaintiffs to the documents previously produced at, *inter alia,* M&T001363-001366, M&T019950-M&T019952, M&T019957-M&T019959; M&T019966-M&T019969; M&T019812; and M&T019862-M&T019871. M&T also directs Plaintiffs to, *inter alia*, M&T019853 and M&T001363, showing that at the time that the Notice of Repossession was sent, a total of $75.00 in storage fees had been assessed on Plaintiffs Abbott's account at a rate of $25/day. M&T further states that the exact amount charged per day is established by the third-party vendor. Plaintiffs Abbott's vehicle was repossessed by American Recovery Corporation, which charged a per diem storage fee of $25.00. *See* M&T020257. Additional documents regarding these charges may be in the possession, custody or control of the vendors performing the services.

21

**Defendant's Failure to Comply**  M&T provided an untitled list of entries that lists storage fees of $75.00 (M&T001363) and a Locus screenshot (M&T19853) with only half the account entries visible. Legible copies should have been provided.

## DOCUMENT REQUEST NO. 8

**Request No. 8**  EXEMPLARS of each and every FORM

      (A) NOTICE OF REPOSSESSION; and,
      (B) POST SALE NOTICE
SENT by YOU or YOUR agents at any time during the CLASS PERIOD.

**Court's Ruling No. 8** (Pl. Mem. 31; Def. Mem. 18). Plaintiffs seek exemplars of every notice of repossession and post-sale notice form sent by Defendant during the class period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 8**  M&T states that it has produced documents responsive to this request as follows: Exemplar Notice of Repossession (to August 2011) at M&T045680; Exemplar and Template Notice of Repossession (September 2011 through May 2012) at M&T045681-M&T045684; Exemplars and Template Notice of Repossession (June 2012 through September 2013) at M&T045685-M&T045690; Exemplar and Template Notice of Repossession (October 2013 through December 2014) at M&T045691-M&T45694; Exemplar and Template Notice of Repossession (January 2014 through August 2014) at M&T045695-M&T045700; Exemplars and Template Notice of Repossession (September 2014 through the present) at M&T045701- M&T045709; Exemplar and Template Post-Sale Notice (2011-2012) at M&T045679; and Exemplar and Template Post-Sale Notice (2012-present) at M&T045710-M&T045711.

**Defendant's Failure to Comply**  In addition to the exemplars of the notices, Plaintiffs' counsel requested both templates and exemplars at the evidentiary hearing. M&T's counsel promptly agreed to provide *both* exemplars and templates for the statutory notices in question:

> MR. PARKER: Your Honor, that's an easy one. So, the
> -- in the request for production exemplars were requested.  So,
> examples of all three repossession notices and Post-Sale Notices
> for the class period were provided.  Some of those might be what
> Plaintiffs' counsel is now -- are now calling templates.  To the
> extent that he wants both templates and exemplars, I have no
> issue with providing those. (10/26/18 Hrg, tran., pp. 68-69)

However,  M&T did <u>not</u> provide a template to go along with each of the Notice of Repossession and Post-Sale Notices used throughout the putative class period. There are two exemplars (M&T 045679 and 80) which have been produced without a template listing the database fields. There is also one template (M&T 045679) in which the database fields were omitted. Plaintiffs request that the Court compel the Defendant to provide a complete copy of: (a) *all* exemplars and

templates used by the Bank during the putative class period; (b) state the period each exemplar/template was used; and (c) state the number of putative class members in each respective class who were sent the prospective notice. Plaintiffs would also ask that the "code" or values for each of the database fields in each template also be provided. This information will help to determine the formulae for each database field in question (i.e., for example: whether the [un-incurred] storage expense, the $20.00 miscellaneous fee, or the "estimate" prepare/repair fee were included in the "Auction Expense" in the Post-Sale Notice).

## DOCUMENT REQUEST NO. 12

**Request No. 12**   All DOCUMENTS, including autoIMS DOCUMENTS, that in any way CONCERN, refer, relate to, or discuss any of the Representative Plaintiffs or their repossessed vehicles, including all electronically stored information, all communications with any entity that provided any goods or services in connection with the repossession, storage, transportation, repair, reconditioning, retitling, redemption, preparation for sale, and/or sale of any of the Plaintiff(s)' repossessed vehicles, and/or reinstatement of their respective subject loan.

**Court's Ruling No. 12** (Pl. Mem. 33-38; Def. Mem. 19-22). Plaintiffs ask for all documents concerning the representative plaintiffs or their repossessed vehicles. Defendant responds that it has already supplied all such documents. Plaintiffs have identified a number of deficiencies. Defendant has responded to the deficiencies. Defendant shall supply its answer, provided at Def. Mem. 20-22, as a supplemental response, under oath. In addition, the objections identified at Def. Mem. 20-22, (iii), (iv), (v), (x), (xi) and (xii) are overruled. The deficiencies identified by Plaintiffs seem reasonably clear and are drawn from language in documents already produced by Defendant.

**Defendant's Answer**   Defendant's answer is several pages, so is not reproduced in full here, but can be found in Defendant's Amended Responses (**Exhibit 1**)

**Defendant's Failure to Comply**   Plaintiffs' original Motion to Compel and Defendant's Response incorporated several other discovery issues the parties had under this request. Of those, two are still an issue.

A few documents produced were illegible, and Plaintiffs asked that they be produced in legible form. M&T states at 12(i): "[M&T] has produced legible copies of all documents, to the extent legible copies exist." A key document, the retail installment contract of Plaintiff Flynn (M&T00025-26), is not legible, especially its second page. A "deficiency waiver addendum" (M&T 00033-34) is also illegible. Thus far, Defendant has assured Plaintiff that clearer documents were not available. However, if the Bank is not able to present legible copies of contracts, then any contract counter-claim would be unsuccessful due to the Bank failing to have an original contract (or even a legible copy of the contract). The Bank should state whether or not it retains original retail installment contracts. If so, this would moot one of the questions raised by Plaintiffs' statistician in her proposed data sheet.

Further, M&T objects to providing the "state requirements" on the basis of attorney-client privilege and work product. However, M&T admits that some employees had access to that

document, thus there is no privilege. This document is part of the procedure which the Bank uses to facilitate the processing of the letters. The same rationale which the Court applied to compel the production of the Agent Covered Fee Spreadsheet (including First Set of Post-Removal Discovery Document Requests 13 and the Court's 1/11/18 Order, Par. 6) calls for the production of the State Requirements document and should be provided.

## DOCUMENT REQUEST NO. 13

**Request No. 13**  All DOCUMENTS which CONCERN, relate, pertain, or discuss M & T Bank's policies, practices, and/or procedures in effect at any time after September 22, 2011 with respect to repossession, sale, storage, transportation, repair, reconditioning, retitling, and/or redemption of a repossessed vehicle, and/or the reinstatement of any loan related to a repossessed vehicle; and/or the SENDING of any NOTICE OF REPOSSESSION and/or POST SALE NOTICE.

**Court's Ruling No. 13** (Pl. Mem. 38; Def. Mem. 22). Plaintiffs seek documents that concern Defendant's repossession policies, procedures and practices. All of Defendant's objections are overruled.  Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 13** M&T states that it has already produced all documents responsive to this request. *See* M&T00439-M&T00450, M&T00920-M&T00947, M&T000963-M&T1020, M&T001376- M&T001533, M&T020190-M&T20255, M&T020286-M&T020296; M&T020920-M&T021533; M&T041330- M&T041550; M&T044331-M&T044828; M&T045108- M&T45488; M&T045534- M&T045678; and M&T045750- M&T046031; *See also* M&T's Response to Request No. 12, "Earlier and later versions" of Policies and Procedures, *supra*. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

**Defendant's Failure to Comply** M&T referred Plaintiffs to M&T's Amended Response 12(a) to Plaintiff's First Set of Post-Removal Discovery.  This response (which is several pages, so is not included here, but can be found in Defendant's Amended Responses at **Exhibit 1**) states that all policies were produced, but that several could not be found and/or were overwritten.  Mr. Ryan has executed an affidavit attached to the Amended Responses stating such earlier versions were "likely overwritten by the individual employee performing the update."  This is an ambiguous, equivocal response.  Are there any records which substantiate that this was done, such a document retention logs, etc.? Plaintiffs presume that earlier versions would be reviewed by the legal department, perhaps for the "Letter Project" or "state requirements" of which documents are being withheld subject to attorney-client privilege / work product doctrine. As such, there may be other versions of these earlier documents saved in *other* parts of the Bank (i.e., legal or compliance departments) that have yet to be searched. Furthermore, Plaintiffs have requested a mirror image of the computer system and/or that their forensic expert be permitted to examine M&T's computer systems and data storage to determine whether these policies can be recovered (Plaintiffs' Second Set of Post-Removal Discovery Doc. Request 24, which the Bank has objected-to and which is the subject to the pending Motion to Compel Second Set of Post-Removal Discovery).

24

## DOCUMENT REQUEST NO. 14

**Request No. 14**  Any and all contracts and/or agreements in effect at any time after September 22, 2011 with autoIMS, any auction, any repossessor, or any other entity CONCERNING or relating to any goods or service(s) rendered with respect to the repossession, sale, storage, transportation, repair, reconditioning, retitling, redemption, preparation for sale, and/or the sale of a repossessed vehicle, and/or the reinstatement of any loan relating to a repossessed vehicle.

**Court's Ruling No. 14** (Pl. Mem. 39; Def. Mem. 23). Plaintiffs seek Defendant's contracts with third party vendors concerning repossession. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**Response to Request No. 14**  *See* M&T's Response to Request No. 12, at Agreements with Third Party Vendors/Affiliates of Policies and Procedures, *supra*. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

The response at 12 referred to in M&T's response is: **f) Agreements with Third Party Vendors/Affiliates- (r)**  M&T states that it has already produced all documents responsive to this request. *See, inter alia*, M&T00451-M&T00701, M&T00868-M&T00880, M&T00948-M&T00956, M&T001561-M&T001663, M&T019669-M&T019740, M&T019986-M&T20189, M&T020300-M&T020919, M&T041551-M&T041608, and M&044828-M&T044846 and M&T045088-M&T45107. M&T further states that these agreements are service contracts and if a contract/agreement does not have an end date specified in the contract, that the contract is deemed to be on-going. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

**Defendant's Failure to Comply** Plaintiffs respectfully submit that M&T has not produced all documents responsive to this request.  For example, M&T has only produced one contract for ADESA, which was entered into in 2017 (M&T19669-19740), during the pendency of this case. However, Plaintiff Hosick's vehicle was auctioned by ADESA in 2015. Thus, the ADESA contract prior to 2017 is missing. Additionally, Plaintiffs believe that the Bank provided the full contract with the exhibit stating the applicable charges for Upstate Recovery, LLC.

## DOCUMENT REQUEST NO. 16

**Request No. 16**  Please provide all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer in YOUR answer to Interrogatory 13 above.

**Court's Ruling No. 16** (Pl. Mem. 40)Plaintiffs demand "all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer in YOUR answer to Interrogatory 13, above." Pl. Mem. 40. Defendant contends it did not provide any criteria in its answer to Interrogatory 13. Defendant's objections to Interrogatory 13 have been overruled, and it has been directed to answer. Accordingly, all of Defendant's objections are overruled, for the same reasons. Defendant shall supply an unequivocal response under oath with responsive documents.

25

**Response to Request No. 16** M&T states that no such responsive documents exist. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

**Defendant's Failure to Comply**  See, "Defendant's Failure to Comply" under Interrogatory 13 above. The Bank now states that the purported "estimate" was "determined by reviewing a sampling of accounts with repossessed vehicles and comparing the actual expenses incurred for preparing/repairing those vehicles for sale. M&T then used this information to create an estimate of the potential charge." Int. Response 13. The Bank, however, has not provided any documents substantiating its contention that it conducted any such functions.

Plaintiffs, therefore, request that any and all documents which relate, discuss, concern, or tend to substantiate that the Bank's contention that the "prepare/repair" fee is an "estimate" which was "determined by reviewing a sampling of accounts with repossessed vehicles and comparing the actual expenses incurred for preparing/repairing those vehicles for sale [and] that M&T then used this information to create an estimate of the potential charge" (as it stated in its response to Interrogatory 13) must be provided.

## 4.  SANCTIONS REQUESTED

Plaintiffs again ask that this Court require full and complete responses as stated in its 1/31/19 order and to impose sanctions against Defendant for its continued egregious violations of court orders. As an appropriate sanction, Plaintiffs respectfully requests that the Court strike all affirmative defenses and its putative right to assert any counter claim.[3] The courts have set out an analysis for determining whether this is an appropriate sanction:

> This court has applied the same general analysis in reviewing all sanction orders which deprive a party of the right to proceed with or defend against a claim, using some or all of the six-part test enunciated in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1984). *See, e.g., Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73–74 (3d Cir.1987); *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir.1985). Under the *Poulis* test, the district court must consider:
> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which

---

[3] M&T reserved the right to assert additional counterclaims against Plaintiffs, including for breach of contract and setoff. (Additional Defenses Section, ¶39, of Answer and New Matter to Second Amended Complaint (Doc. No. 66))

entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis,* 747 F.2d at 868 (emphasis omitted).

*Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (3d Cir.,1990).

This test has been applied to motions to strike affirmative defenses for failure to follow discovery orders. *Amalgamated Bank of New York v. Pennsylvania Companies*, 1995 WL 71324, (E.D.Pa. 1995). Not every one of the six factors may be applicable in a given case. *Id.* In this case, the 6-part *Poulis* test supports such a sanction. Plaintiffs have been and continue to be severely prejudiced by the Bank's repeated failure to comply with its statutory mandate regarding its duty to respond to discovery requests in a timely fashion, under oath. Its repeated contemptuous, egregious discovery misconduct is not an aberration. The Court has already held that it has "unreasonably delayed and obstructed discovery in this case." 1/31/19 Order, Finding of Fact A. Plaintiffs incorporate all motions, briefs, and testimony regarding its Motion to Compel Plaintiff's First Set of Post Removal Discovery and Impose Sanctions (dkt. 103, 105, 131, 135) and their pending Motion to Compel Discovery Responses and Impose Sanctions (dkt. 151 and 152). In the event that the Court believes that a lesser sanction is more proper, Plaintiffs request that the Court strike only Defendant's recoupment, set-off, and any deficiency contract claim. Alternatively, Plaintiffs request any sanction the Court deems just and proper.

**An evidentiary hearing is requested.**

5.   **CONCLUSION**

This Court should compel the above discovery and sanction the Defendant for its violations of the January 31, 2019 Discovery Order set forth above, pursuant to Fed.R.Civ.P. 37, and in light of its continued disregard for other orders.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.

Richard Shenkan
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St.
West Bloomfield, MI 48323
T: (248) 562-1320 / F: (888) 769-1774