IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

---

EDWARD R. FLYNN, GENE DAISEY,  :
DOUGLAS J. ABBOTT, and CATHERINE  :  CIVIL ACTION
HOSICK, individually and on behalf of all  :
others similarly situated,  :  CLASS ACTION
   :
             Plaintiffs,  :  Case No:  2:17-cv-4806-WB
    v.  :
   :
MANUFACTURERS AND TRADERS  :
TRUST COMPANY a/k/a M&T BANK,  :
   :
             Defendant.  :

---

### AMENDED RESPONSES AND OBJECTIONS OF DEFENDANT MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK TO PLAINTIFFS' FIRST SET OF POST-REMOVAL CLASS DISCOVERY

Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"), by and through its undersigned counsel, hereby provides the following amended responses and objections to Plaintiffs' First Set of Post-Removal Class Discovery Directed to Manufacturers and Traders Trust Company a/k/a M&T Bank (the "Discovery Requests") in accordance with the Court's Order and Memorandum dated January 31, 2019 (the "Order"). (D.I. 147-148)

As expressly ordered therein, M&T's responses are limited to the Class Period and named Plaintiffs. Where noted, M&T will supplement its responses for the Sampled Class Members at such time as they, and the scope of class sampling discovery, have been determined.

### RESPONSES AND OBJECTIONS TO INTERROGATORY REQUESTS

**Interrogatory No. 1:**

Please state the name, address, and employer of each person who was involved in answering any discovery request and stating which discovery request(s) that person was

1



involved in.

**Response to Interrogatory No. 1:**

M&T states that the following individuals and their teams were involved in answering Plaintiffs' Discovery Requests: (1) Kenneth S. Fries, Vice President, M&T Bank; (2) Thomas Thornton, Vice President, M&T Bank; (3) Matthew Brysinski, Banking Officer, M&T Bank; (4) Michael P. Ryan, Group Vice President, Consumer Asset Management (CAM), M&T Bank; (5) Yvonne Slevar, Vice President, M&T Bank; and (6) Shawn Baumgarden, Project Manager, M&T Bank. These individuals were involved in responding to a number of Discovery Requests as M&T's responses were completed in a collaborative manner.

M&T further states that the following individuals assisted in answering Plaintiffs' Discovery Requests in the following limited manner: (1) Jennifer Thompson, Assistant Vice President, Vendor Management, M&T Bank, assisted with obtaining information and documents relating to third-party vendors; (2) Fred Randell Surface, CAM Program Manager II, M&T Bank, assisted in determining the number of individuals in the potential putative classes; and (3) Paul Zawodzinski, Technology Senior Manager, M&T Bank, assisted in determining the ability for M&T to recover previously overwritten policies and/or procedures.

M&T Bank employees may only be contacted through counsel for M&T.

**Interrogatory No. 2:**

Please state the aggregate sum of all DEFICIENCIES YOU claim are due and owing as of the date of answering this discovery request, for:

    a.   The FORM 1 NOR CLASS;

    b.   The FORM 2 NOR CLASS;

    c.   All putative CLASS MEMBER(S) of the NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS

or FORM 2 NOR CLASS.

**Response to Interrogatory No. 2:**

M&T states that the aggregate sum of all deficiencies for the named Plaintiffs is $23,638.25. This figure is provided irrespective of whether any individual deficiency is collectable (i.e. - regardless of whether it has been discharged in bankruptcy or is otherwise legally uncollectable). As such, by providing the above aggregate total, M&T is not asserting its entitlement to collect the same from any individual Plaintiff.

M&T further states that, according only to M&T's records, deficiency balances were marked as "discharged in Bankruptcy" for Plaintiff Hosick and Plaintiff Flynn, amounting to $18,604.32. M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Interrogatory No. 3:**

Please IDENTIFY (including caption, docket number, and court or, as may be applicable, arbitration proceedings information) any auto loan DEFICIENCY action filed by YOU or on YOUR behalf against any putative CLASS MEMBER of any of the CLASSES identified in the OPERATIVE COMPLAINT.

**Response to Interrogatory No. 3:**

M&T states that no auto loan deficiency actions have been filed by M&T, or on M&T's behalf, against any of the named Plaintiffs. M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Interrogatory No. 4:**

Please IDENTIFY all PERSONS having knowledge of the facts alleged in the OPERATIVE COMPLAINT and set forth with particularity each PERSON'S knowledge of the

3

facts.

**Response to Interrogatory No. 4:**

In addition to the named Plaintiffs and Sampled Class (at such time that the members of the same are identified), M&T states that it has identified the following individual(s) with knowledge of the facts alleged in the Operative Complaint to date:

| Individual | Subject of Information |
|---|---|
| Kenneth S. Fries, Vice President c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, and the number of individuals in Pennsylvania who had delinquent accounts that included repossession of the collateral securing the account during the relevant time period as well as information regarding repossession related Policies and Procedures in effect for the class period. |
| Thomas Thornton, Vice President c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, and the number of individuals in Pennsylvania who had delinquent accounts that included repossession of the collateral securing the account during the relevant time period as well as information regarding repossession related Policies and Procedures in effect for the class period. |
| Michael P. Ryan, Group Vice President, Customer Asset Management (CAM) c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, and the number of individuals in Pennsylvania who had delinquent accounts that included repossession of the collateral securing the account during the relevant time period as well as information regarding repossession related Policies and Procedures in |

4

5170466.2

| | effect for the class period. |
|---|---|
| Mike Otto, Vice President<br>c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, the estimated expense of repairing and/or preparing a vehicle for sale, and information regarding repossession related Policies and Procedures in effect for the class period. |
| Amy Perry, Assistant Vice President<br>c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, the estimated expense of repairing and/or preparing a vehicle for sale, and information regarding repossession related Policies and Procedures in effect for the class period. |
| Yvonne Slevar, Vice President<br>c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, the estimated expense of repairing and/or preparing a vehicle for sale, and information regarding repossession related Policies and Procedures in effect for the class period. |
| Sarah Jenks, Operations Manager<br>c/o Parker Ibrahim & Berg LLP | Information regarding Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, and information relating to the third party vendor contracts and/or agreements in effect during the class period |

M&T further states that additional M&T employees may have been involved with day-to-day collection and/or repossession related activity on any individual class member's account and therefore may have information relating to the same. The identity of those specific employees can be ascertained by reviewing the Account Info Tab Comments section from the Locus System, screen shots of which were previously produced for the named Plaintiffs at

5

M&T019750- M&T019873; *see also* Extracted Locus data produced at M&T00901-M&T00912 and M&T001363-M&T001375.  M&T expressly reserves the right to supplement and amend this response as discovery continues.

**Interrogatory No. 5:**

Please state the aggregate amount of minimum statutory damages computed pursuant to 13 Pa.C.S.A. §9625(c)(2)(adding the "Finance Charge"+ 10% of the "Amount Financed" as set forth in the Schumer Box of each CLASS MEMBERS' Retail Instalment Contract) for each of the following putative classes:

     a.  FORM 1 NOR CLASS;

     b.  FORM 2 NOR CLASS; and,

     c.  NOR ALTERNATIVE CLASS, excluding those (putative) CLASS MEMBERS in the FORM 1 NOR CLASS or FORM 2 NOR CLASS).

**Response to Interrogatory No. 5:**

M&T states that it will provide a response to Interrogatory No. 5 in accordance with the procedure laid out in the Court's Order.  *See* Order at p. 11, No. 5.

**Interrogatory No. 6:**

Please explain in detail the difference(s) between the meaning of "Total redemption amount" as that phrase appears on the FORM 1 NOR and the meaning of "Amount required to redeem," as that phrase appears on the FORM 2 NOR.

**Response to Interrogatory No. 6:**

M&T states that the "Total redemption amount" as that phrase appears on the FORM 1 NOR means the total amount required to redeem the motor vehicle by reinstatement.  M&T further states that the "Amount required to redeem" as that phrase appears on the FORM 2 NOR means the amount required to redeem the motor vehicle and terminate the installment sale

contract by payment of the contract in full.

**Interrogatory No. 7:**

Please state the aggregate amount YOU actually **paid** all third parties for the STORAGE

EXPENSE (i.e., the "Expense of storing the Vehicle" which YOU state in FORM I NOR and

Form 2 NOR) for all (putative) members' repossessed vehicles in the:

- (a) FORM 1 NOR CLASS;
- (b) FORM 2 NOR CLASS, and,
- (c) the NOR ALTERNATIVE CLASS (excluding those class members in the FORM 1 NOR CLASS and the FORM 2 NOR CLASS).

**Response to Interrogatory No. 7:**

M&T states that the aggregate amount it paid directly to any third party for the expense

of storing the named Plaintiffs' repossessed vehicles is zero.  M&T further states that Plaintiff

Daisey redeemed his vehicle directly from the third-party vendor and therefore paid the storage

fees directly to said vendor.  The vehicles of the remaining named Plaintiffs were sold.  If a

vehicle goes to sale, any expenses incurred (including, if applicable, storage expenses) would be

deducted from the sale proceeds before the funds are transmitted to M&T, thereby eliminating

the need for M&T to directly pay the third party.

M&T further states that it will supplement its response to this Interrogatory at such time

that the members of the Sampled Class are identified.

**Interrogatory No. 8:**

Please state the aggregate sum of the "Expense of storing the Vehicle" listed in the

NOTICE OF REPOSSESSION for all (putative) members' repossessed vehicles in the:

- (a) FORM 1 NOR CLASS;
- (b) FORM 2 NOR CLASS, and,
- (c) the NOR ALTERNATIVE CLASS ( excluding those class members in the FORM 1 NOR CLASS and the FORM 2 NOR CLASS);

7

during the CLASS PERIOD.

[By way of example, the aggregate sum for the representative plaintiffs' "Expense of storing the Vehicle" is $265.00. [Hosick $40 + Daisey $75 + Flynn $75 + Abbott $75 = $265.00].

**Response to Interrogatory No. 8:**

M&T states that the aggregate sum of the expense of storing the vehicle listed on the notices of repossessions sent to the named Plaintiffs is $365.00. M&T states that the Notices of Repossession for the named Plaintiffs were previously produced at M&T0004-M&T0005 (Daisey), M&T00039-M&T00040 (Flynn), M&T00917-M&T00919 (Hosick), and M&T001285-M&T001287 (Abbott).

M&T further states that it will supplement its response to this Interrogatory at such time that the members of the Sampled Class are identified.

**Interrogatory No. 9:**

Please IDENTIFY the total number of people who comprise the (putative):

 a. FORM 1 NOR CLASS, and state how YOU computed it;
 b. FORM 2 NOR CLASS, and state how YOU computed it;
 c. NOR ALTERNATIVE CLASS, and state how YOU computed it;
 d. POST-SALE NOTICE CLASS, and state how YOU computed it;

**Response to Interrogatory No. 9:**

As of the date of the Order, M&T has identified 4,999 unique accounts, totaling 5,965 putative class members when including co-borrowers, combined for all putative classes, broken down as follows:

 a. FORM 1 NOR:  1,460 (including 175 co-borrowers)
 b. FORM 2 NOR:  3,841 (including 700 co-borrowers)
 c. NOR ALTERNATIVE:  664 (including 91 co-borrowers)
 d. POST-SALE NOTICE:  4,451 (including 623 co-borrowers)

M&T further states that all members of the putative Post-Sale Notice Class are also

8

members of one of the other three putative classes.  M&T's response is not an admission that a valid class or classes exist.

**Interrogatory No. 10:**

Please explain in detail the process, and IDENTIFY all persons involved with, how YOU arrived at YOUR answers to the above interrogatories.

**Response to Interrogatory No. 10:**

M&T's objections to this Interrogatory were sustained.  Pursuant to the Order, however, M&T hereby provides "a description of the process it used to respond to Interrogatories 7, 8, and 9".  *See* Order at p. 13, No. 10.

**Interrogatory No. 7-** M&T states that its response to Interrogatory No. 7 was drafted by M&T, with the assistance of counsel, and is based on knowledge of the process by which M&T handles third-party repossession-related expenses that may be incurred to and/or paid by M&T.

**Interrogatory No. 8-** M&T states that its response to this Interrogatory was arrived at by reviewing the Notices of Repossession produced for the named Plaintiffs at M&T0004-M&T0005 (Daisey), M&T00039-M&T00040 (Flynn), M&T00917-M&T00919 (Hosick), and M&T001285-M&T001287 (Abbott), writing down the figure listed on each for the "Expense of storing the Vehicle", and adding these figures together.

**Interrogatory No. 9-** M&T states that its response to Interrogatory No. 9 was arrived at by running a search of M&T's electronic records using the criteria set forth in the Second Amended Class Action Complaint ("Amended Complaint").  Specifically, M&T states that it ran a search for all customers (including co-borrowers) who: (1) purchased their vehicle at a Pennsylvania dealership; (2) were sent a Notice of Repossession (as that term is defined in the Amended Complaint) relating to that vehicle between September 22, 2011 and January 31, 2019;

and (3) had their vehicle repossessed in Pennsylvania.  Prior to May 2012, M&T's systems did not include a searchable data point for "state of repossession".  As a proxy for the same, M&T supplemented the above search by conducting a search for customers (including co-borrowers) who: (1) purchased a vehicle at a Pennsylvania dealership; (2) were sent a Notice of Repossession (as that term is defined in the Amended Complaint) relating to that vehicle between September 22, 2011 and May 31, 2012; and (3) have an Pennsylvania address.  The results of these two searches were then combined into one master class list.  After removing any commercial loans, the total was provided as the total number of potential class members "combined for all putative classes" as requested in Interrogatory No. 9.  M&T then sorted the customers based on the date their Notice of Repossession was sent into individual lists for FORM 1 NOR, FORM 2 NOR, or NOR ALTERNATIVE (as those terms are defined in the Amended Complaint).  Finally, M&T took any customer listed in the FORM 1 NOR CLASS, FORM 2 NOR CLASS, or NOR ALTERANTIVE CLASS whose vehicle was sold and added them to the separate POST-SALE NOTICE CLASS (as that term is defined in the Amended Complaint).  M&T then added up the customers listed within each sub-list and provided those figures.

M&T's response is not an admission that a valid class or classes exist.

**Interrogatory No. 11:**

With respect to Gene Daisey's loan relating to his subject repossessed vehicle, please state:

(a) The gross amount YOUR business records show (as was reflected on September 22, 2017), as being paid:

(1) to YOU by Gene Daisey any time after his vehicle was repossessed;
(2) to YOU from any PERSON (other than Gene Daisey);
(3) to others by YOU, including but not limited to any STORAGE EXPENSE(S)

10

or any payments for the repair, sale preparation, and/or transport of his repossessed vehicle.

(b) List a detailed breakdown of how YOU calculated the gross amount described in (a)(l), (a)(2), and (a)(3) above stating:

(1) the date of the payment;
(2) the amount of the payment; and,
(3) the goods or services paid for by the payment (e.g., storage expense; repair expense; redemption amount; interest; or principal).

**Response to Interrogatory No. 11:**

M&T states that pursuant to Rule 33(d), the answers to Interrogatory 11 may be determined by reviewing documents that have been produced at M&T00345-M&T00379, M&T019774 and M&T019910. M&T further states, however, that per these records, a total of $4,292.28 was paid on Plaintiff Daisey's account after February 15, 2013, the date his vehicle was repossessed. *See, e.g.,* M&T00379. Of that payment total, $1,014.87 was reversed. *Id.* These payments were broken down as follows:

| Due Date | Post Date | Next Due Date | Amount | Transaction Description | Principal | Interest | Fees | Balance |
|----------|-----------|---------------|--------|-------------------------|-----------|----------|------|---------|
| 11/13/12 | 02/19/13 | 12/13/12 | 203.59 | Payment | 154.92 | 48.67 | | 2,885.20 |
| 12/13/12 | 02/19/13 | 04/13/13 | 811.28 | Payment | 749.68 | | 61.60 | 2,135.52 |
| 04/13/12 | 02/19/13 | 03/13/13 | 203.59 | Payment Reversal | 154.92 | 48.67 | | 2,290.44 |
| 03/13/13 | 02/19/13 | 11/13/12 | 811.28 | Payment Reversal | 749.68 | | 61.60 | 3,040.12 |
| 11/13/12 | 02/19/13 | 03/13/13 | 811.28 | Payment | 702.01 | 48.67 | 60.60 | 2,338.11 |
| 03/13/13 | 03/18/13 | 04/13/13 | 199.60 | Payment | 186.62 | 12.98 | | 2,151.49 |
| 04/13/13 | 04/22/13 | 05/13/13 | 199.60 | Payment | 184.13 | 15.47 | | 1,967.36 |
| 05/13/13 | 05/22/13 | 06/13/13 | 200.60 | Payment | 187.47 | 12.13 | 1.00 | 1,779.89 |
| 06/13/13 | 06/23/13 | 06/13/13 | | Late Chg Assessed | | | 3.99 | 1,779.89 |
| 06/13/13 | 06/24/13 | 07/13/13 | 18.00 | Extension Granted | | | 18.00 | 1,779.89 |
| 07/13/13 | 06/24/13 | 08/13/13 | | Extension Granted | | | | 1,779.89 |
| 08/13/13 | 08/22/13 | 09/13/13 | 203.59 | Payment | 165.96 | 33.64 | 3.99 | 1,613.93 |
| 09/13/13 | 09/23/13 | 10/13/13 | 199.60 | Payment | 188.98 | 10.62 | | 1,424.95 |
| 10/13/13 | 10/23/13 | 11/13/13 | 199.60 | Payment | 190.82 | 8.78 | | 1,234.13 |
| 11/13/13 | 11/22/13 | 12/13/13 | 199.60 | Payment | 191.89 | 7.61 | | 1,042.14 |
| 12/13/13 | 12/23/13 | 01/13/14 | 199.60 | Payment | 192.96 | 6.64 | | 849.18 |
| 01/13/14 | 01/21/14 | 02/13/14 | 199.60 | Payment | 194.54 | 5.06 | | 654.64 |
| 02/13/14 | 02/20/14 | 03/13/14 | 199.60 | Payment | 195.57 | 4.03 | | 459.07 |
| 03/13/14 | 03/21/14 | 04/13/14 | 199.60 | Payment | 196.86 | 2.74 | | 262.21 |
| 04/13/14 | 04/23/14 | 04/13/14 | 199.60 | Payment | 197.83 | 1.77 | | 64.38 |
| 04/13/14 | 04/23/14 | 04/13/14 | 1.28 | Late Chg Assessed | | | 1.28 | 64.38 |
| 04/13/14 | 05/14/14 | 00/00/00 | 65.94 | Payoff | 64.38 | 0.28 | 1.28 | |

*Id.* The amounts listed under the "Fees" heading are late fees, except for the $18.00 fee charged

on June 24, 2013, which was an extension fee. *Id.; See also* M&T000345-M&T00375 (monthly account statements). Upon information and belief, these payments were made by Plaintiff Daisey. M&T states that it does not have any records of payments made on Plaintiff Daisey's account after February 15, 2013 by any person other than Plaintiff Daisey.

Additionally, M&T further directs Plaintiffs to those documents previously produced at M&T019774 and M&T019910, showing a February 15, 2013 invoice directed to M&T from MCRC for their involuntary repossession fee of $385.00 and a "Paid Amount" of $385.00 for the same. M&T also directs Plaintiffs to M&T00155, which indicates that Plaintiff Daisey was not charged this repossession fee.

**Interrogatory No. 12:**

In the POST-SALE NOTICE which the BANK SENT to Abbott (Exhibit 4), the Bank included itemizations as follows:

**Payoff prior to Auction Date: $7,086.95**
**Auction Expense: $1,371. 78**

Please list a detailed breakdown of how YOU calculated each of these itemizations.

**Response to Interrogatory No. 12:**

M&T states that the $7,086.95 "payoff prior to Auction" listed on Abbott's Post-Sale Notice can be further broken down as follows: Unpaid principal balance of $6,861.06; accrued finance charges of $181.25, and unpaid fees of $44.64. *See, inter alia,* M&T001283-M&T001284, M&T001159-M&T001205; and M&T0046731. For additional details regarding calculation of the unpaid principal balance, accrued finance charges, and unpaid late fees, M&T directs Plaintiffs to the monthly account statements and account activity statement produced at M&T001283-M&T001284 and M&T001159-M&T001205.

12

M&T further states that the Auction Expense as listed was calculated by subtracting the repossession fee as listed on the Repo Tab in Locus ($195.00) from the total charges billed to M&T by the third-party vendor ($1,566.78) for an Auction Expense of $1,371.78. $195.00 of the repossession fee was invoiced pre-auction and therefore listed separately from the Auction Expense on the Post-Sale Notice.

M&T further states that the total charges billed to M&T for Plaintiff Abbott's vehicle are calculated by the third party vendor and can be further broken down as follows:

| Charges | | | | | | Customize Layout |
|---|---|---|---|---|---|---|
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Recon: Labor | BATTERY | 0 | - | $90.00 | - | $90.00 |
| Recon: Gasoline | FLUID SERVICE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $125.00 | - | $125.00 |
| Admin: Administration Fee | TITLE FEE | 0 | - | $65.00 | - | $65.00 |
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Admin: Repossession Fee | AMERICAN RECOVERY | 0 | - | $325.00 | - | $325.00 |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Other: Miscellaneous | Miscellaneous | 0 | - | $20.00 | - | $20.00 |
| Transport: Transportation Fee | - | 0 | - | $210.00 | - | $210.00 |
| Recon: Mechanical Work | INOP | 0 | - | $585.78 | - | $585.78 |
| Admin: Administration Fee | IMS FEE | 0 | - | $14.00 | - | $14.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,566.78 (total) | - | $1,566.78 (total) |

M&T019950-M&T019958; *see also* M&T000528-M&T00529 and M&T001286.

**Interrogatory No. 13:**

In the NOTICE OF REPOSSESSION which the BANK SENT to each of the Representative Plaintiffs, the BANK included an itemization for:

**Expense of preparing/repairing the Vehicle for sale: $200.00**

Please state the criteria for how YOU determined this "expense." Please provide all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer.

**Response to Interrogatory No. 13:**

M&T states that the $200.00 "expense" is an estimate of the actual charges that the borrower may be assessed. M&T further states that the estimate is provided as a placeholder to place the borrower on notice that an additional fee for preparing/repairing the vehicle for sale may be assessed to them as the actual fees incurred are not known at the time the notice is sent. M&T further states that this estimate was determined by reviewing a sampling of accounts with repossessed vehicles and comparing the actual expenses incurred for preparing/repairing those vehicles for sale. M&T then used this information to create an estimate of the potential charge. A borrower, however, is only responsible for paying those expenses actually incurred for their vehicle.

## OBJECTIONS AND REPSONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1**

In the NOTICE OF REPOSSESSION which the BANK SENT to Daisey (Exhibit 5), the Bank included itemizations as follows:

> **Expense of storing the Vehicle: $175 (5 days, at $35.00 per day]**
> **Expense of preparing/repairing the Vehicle for sale: $200.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 1**

14

M&T states that, as explained above, the $200.00 charge is an estimate for expenses incurred and therefore no specific supporting documentation relating to the same exists.  M&T further states that, according to its records, Plaintiff Daisey was assessed a storage fee of $175.00 at $35.00 a day.  *See, inter alia*, M&T001367-001368; M&T019770.  M&T further states that the amount charged per day is established by the third-party vendor.  Additional documents regarding these storage charges may be in the possession, custody or control of the vendors performing the services.

**Request No. 2**

In the NOTICE OF REPOSSESSION which the BANK SENT to Flynn (Exhibit 6), the Bank included itemizations as follows:

> **Expense of storing the Vehicle: $75 (3 days, at $25.00 per day)**
> **Expense of preparing/repairing the Vehicle for sale: $200.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts.  If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 2**

M&T states that, as explained above, the $200.00 charge is an estimate for actual expenses incurred and therefore no specific supporting documentation relating to the same exists. M&T further directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00079-M&T00080, M&T019762-M&T019763, M&T019874-M&T019876, M&T019881-M&T019882; and M&T019891-M&T019894, which demonstrate that the actual expense incurred for repairing/preparing Plaintiff Flynn's vehicle for sale was $921.00.  This figure was

15

calculated by adding the "Recon" charge types billed to M&T by the third-party vendor and broken down as follows:

| Charges | | | | | | | Customize Layout |
|---|---|---|---|---|---|---|---|
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost | |
| Admin: Administration Fee | IMS FEE | 0 | - | $12.00 | - | $12.00 | |
| Admin: Sale Fee | SALE FEE | 0 | - | $115.00 | - | $115.00 | |
| Sublet: Outside Repair | TITLE FEE | 0 | - | $35.00 | - | $35.00 | |
| Recon: Tires | TIRE | 0 | - | $810.00 | - | $810.00 | |
| Transport: Transportation Fee | | 0 | - | $325.00 | - | $325.00 | |

| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
|---|---|---|---|---|---|---|
| | COMMONWEALTH RECOVERY | | | | | |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Transport: Transportation Fee | - | 0 | - | $88.00 | - | $88.00 |
| Recon: Gasoline | GAS | 0 | - | $16.00 | - | $16.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | | $1,521.00 (total) | - | $1,521.00 (total) |

M&T019874-M&T019875.  For further details and documents relating to these charges, M&T directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00079-M&T00080, M&T019762-M&T019763,   M&T019874-M&T019876,   M&T019881-M&T019882;   and M&T019891-M&T019894.

M&T further states that the amount charged per day for storage is established by the third-party vendor.  According to M&T's records, Plaintiff Flynn's vehicle was repossessed by Commonwealth Recovery, which charged a *per diem* storage fee of $25.00.  *See* M&T020257. M&T further states that the amount charged per day is established by the third-party vendor. Additional documents regarding these charges may be in the possession, custody, or control of the vendors performing the services.

16

**Request No. 3**

In the NOTICE OF REPOSSESSION which the BANK SENT to Abbott (Exhibit 7), the BANK included itemizations as follows:

> **Expense of storing the Vehicle: $75 [3 days, at $25.00 per day]**
> **Expense of preparing/repairing the Vehicle for sale: $200.00**
>
> **Right to Redeem:**
> **Sale preparation expenses: $200.00**
> **Storage expenses: $75.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 3**

M&T states that, as explained above, the $200.00 charge is an estimate for actual expenses incurred and therefore no specific supporting documentation relating to the same exists. M&T further directs Plaintiffs to the documents previously produced at, *inter alia*, M&T001363-001366, M&T019950-M&T019952, M&T019957-M&T019959; M&T019966-M&T019969; M&T019812; and M&T019862-M&T019871, which demonstrate that the actual expense incurred for repairing/preparing Plaintiff Abbott's vehicle for sale was $782.78. This figure was calculated by adding the "Recon" charge types billed to M&T by the third-party vendor and broken down as follows:

17

| Charges | | | | | | Customize Layout |
|---|---|---|---|---|---|---|
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Recon: Labor | BATTERY | 0 | - | $90.00 | - | $90.00 |
| Recon: Gasoline | FLUID SERVICE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $125.00 | - | $125.00 |
| Admin: Administration Fee | TITLE FEE | 0 | - | $65.00 | - | $65.00 |
| **Charge Type** | **Description** | **Labor Hours** | **Labor Rate** | **Labor Cost** | **Parts Cost** | **Total Cost** |
| Admin: Repossession Fee | AMERICAN RECOVERY | 0 | - | $325.00 | - | $325.00 |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Other: Miscellaneous | Miscellaneous | 0 | - | $20.00 | - | $20.00 |
| Transport: Transportation Fee | - | 0 | - | $210.00 | - | $210.00 |
| Recon: Mechanical Work | INOP | 0 | - | $585.78 | - | $585.78 |
| Admin: Administration Fee | IMS FEE | 0 | - | $14.00 | - | $14.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,566.78 (total) | - | $1,566.78 (total) |

M&T019950-M&T019952.  For further details and documents relating to these charges, M&T directs Plaintiffs to the documents previously produced at, *inter alia*, M&T001363-001366, M&T019950-M&T019952, M&T019957-M&T019959; M&T019966-M&T019969; M&T019812; and M&T019862-M&T019871.

M&T also directs Plaintiffs to, *inter alia*, M&T019853 and M&T001363, showing that at the time that the Notice of Repossession was sent, a total of $75.00 in storage fees had been assessed on Plaintiffs Abbott's account at a rate of $25/day.  M&T further states that the exact amount charged per day is established by the third-party vendor.  Plaintiffs Abbott's vehicle was repossessed by American Recovery Corporation, which charged a per diem storage fee of $25.00.  *See* M&T020257.  Additional documents regarding these charges may be in the possession, custody or control of the vendors performing the services.

18

**Request No. 4**

In the NOTICE OF REPOSSESSION which the BANK SENT to Hosick (Exhibit 8), the BANK included itemizations as follows:

> **Expense of storing the Vehicle: $40 (2 days, at $20.00 per day]**
> **Expense of preparing/repairing the Vehicle for sale: $200.00**
>
> **Right to Redeem:**
> **Sale preparation expenses: $200.00**
> **Storage expenses: $40.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 4**

M&T states that, as explained above, the $200.00 charge is an estimate for actual expenses incurred and therefore no specific supporting documentation relating to the same exists. M&T directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00888, M&T00897-M&T00890, M&T019919-M&T019928, M&T019945-M&T019949, M&T019790, and M&T019795-M&T019796, which demonstrate that the actual expense incurred for repairing/preparing Plaintiff Hosick's vehicle for sale was $400.07. This figure was calculated by adding the "Recon" charge types billed to M&T by the third-party vendor and broken down as follows:

| Charges | | | | | | Customize Layout |
|---|---|---|---|---|---|---|
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Recon: Mechanical Work | inv # 118812 -- remove and rep | - | - | $59.53 | - | $59.53 |
| Recon: Detail | additional detail APPROVED, ne | - | - | $89.00 | - | $89.00 |

| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
|---|---|---|---|---|---|---|
| Recon: Detail | - | - | - | $89.00 | - | $89.00 |
| Admin: Sale Fee | - | | - | $108.00 | - | $108.00 |
| Admin: Repossession Fee | Millennium Capital and Recover | | - | $400.00 | - | $400.00 |
| Admin: Inspection Fee | inv # 118812 -- mech ck FAIL: | - | - | $25.00 | - | $25.00 |
| Recon: Mechanical Work | inv # 119025 -- R&R axle shaft | - | - | $162.54 | - | $162.54 |
| Transport: Transportation Fee | Pick Up from ERIE to AKRON VIN | - | - | $120.00 | - | $120.00 |
| | | - | - | $1,053.07 (total) | - | $1,053.07 (total) |

M&T019919-M&T019920.  For further details and documents relating to these charges, M&T directs Plaintiffs to the documents previously produced at, *inter alia*, M&T00888, M&T00897-M&T00890,   M&T019919-M&T019928,   M&T019945-M&T019949,   M&T019790,   and M&T019795-M&T019796.

M&T   further   directs   Plaintiffs   to   M&T00904,   M&T019941-M&T019943   and M&T019783 showing that at the time that the Notice of Repossession was sent, a total of $40.00 in storage fees had been assessed at a set rate of $20/day.  M&T further states that the exact amount charged per day is established by the third-party vendor.   Additional documents regarding these charges may be in the possession, custody or control of the vendors performing the services.

**Request No. 5**

In the POST-SALE NOTICE which the BANK SENT to Abbott (Exhibit 4), the Bank included itemizations as follows:

5170466.2

**Payoff prior to Auction Date: $7,086.95.**
**Auction Expense: $1,371.78**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 5**

See M&T's Response to Interrogatory No. 12, *supra*. M&T further states that additional documents regarding these charges may be in the possession, custody or control of the vendors performing the services.

**Request No. 6**

A SAMPLE of all CLASSES identified in Plaintiff's Second Amended Complaint.

**Response to Request No. 6**

M&T states that it will provide its response to Request No. 6 at such time that the members of the Sampled Class are identified and further clarification is provided regarding what documents are encompassed by Plaintiffs' definition of the class members' "files".

**Request No. 7**

Any complaints filed in any other lawsuit or administrative action in any state relating to any aspect of YOUR policy(s), practice(s), or procedure(s) of vehicle repossessions, storage of vehicles, the assessment of or calculation of interest, fees, or expenses, resale practices, collection of DEFICIENCY balances, and/or a challenge to a notice of repossession or Explanation of Calculation of Surplus or Deficiency, during the CLASS PERIOD.

**Response to Request No. 7**

M&T states that it has produced documents responsive to this request at M&T046032-M&T046565.

**Request No. 8**

EXEMPLARS of each and every FORM

ii. NOTICE OF REPOSSESSION; and,

iii. POST SALE NOTICE

SENT by YOU or YOUR agents at any time during the CLASS PERIOD.

**Response to Request No. 8**

M&T states that it has produced documents responsive to this request as follows: Exemplar Notice of Repossession (to August 2011) at M&T045680; Exemplar and Template Notice of Repossession (September 2011 through May 2012) at M&T045681-M&T045684; Exemplars and Template Notice of Repossession (June 2012 through September 2013) at M&T045685-M&T045690; Exemplar and Template Notice of Repossession (October 2013 through December 2014) at M&T045691-M&T45694; Exemplar and Template Notice of Repossession (January 2014 through August 2014) at M&T045695-M&T045700; Exemplars and Template Notice of Repossession (September 2014 through the present) at M&T045701-M&T045709; Exemplar and Template Post-Sale Notice (2011-2012) at M&T045679; and Exemplar and Template Post-Sale Notice (2012-present) at M&T045710-M&T045711.

**Request No. 9**

EXEMPLARS of each retail instalment sale contract ("RISC") that was assigned to YOU at any time during the CLASS PERIOD.

**Response to Request No. 9**

5170466.2

M&T states that it has produced documents responsive to this request at M&T045712-M&T045750.

**Request No. 10**

All DOCUMENTS which substantiate (or tend to substantiate) any of YOUR answers to any interrogatory( s) served by Plaintiffs.

**Response to Request No. 10**

M&T states that it has produced all documents it relied upon, or which it consulted, in responding to Plaintiffs' Interrogatories and directs Plaintiffs to those documents previously produced and referenced herein.

**Request No. 11**

With respect to any and all insurance policies or any other contractual arrangements which may obligate any insurance company or any other PERSON, firm, or corporation, to provide to YOU, any investigative services, a legal defense or any insurance coverage, indemnification, reimbursement, or contribution for any of the liabilities alleged in this action, please provide the following DOCUMENTS:

a. Any and all insurance policies, endorsements, and any addenda with all additions and deletions of any insurer who may be obligated to pay any portion of any judgment which may be rendered against the Defendant( s) or to provide a legal defense for the claims asserted in this action; and

b. Any and all DOCUMENTS SENT by YOU or received by YOU regarding (1) any insurance coverage or any insurance claim (i.e., denial or reservation of rights letter); OR, (2) any claim (i.e., denial or reservation of rights letter) for indemnification, reimbursement, or contribution.

23

**Response to Request No. 11**

No further response is required. *See* Order at p. 15, No. 11.

**Request No. 12**

All DOCUMENTS, including autoIMS DOCUMENTS, that in any way CONCERN, refer, relate to, or discuss any of the Representative Plaintiffs or their repossessed vehicles, including all electronically stored information, all communications with any entity that provided any goods or services in connection with the repossession, storage, transportation, repair, reconditioning, retitling, redemption, preparation for sale, and/or sale of any of the Plaintiff(s)' repossessed vehicles, and/or reinstatement of their respective subject loan.

**Response to Request No. 12**

M&T states that it has produced all documents responsive to this request. *See, inter alia,* M&T00001-M&T00053, M&T00073-M&T00435, M&T00702-M&T00867, M&T00881-M&T00919, M&T001021-M&T001375, M&T001533-M&T001560, M&T001664-M&T001674, M&T001675-M&T019668 (with the truncated spreadsheets re-produced at M&T020260-    M&T020283), M&T019741-M&T019975, M&T020260-M&T020283,. M&T041640-M&T041642; M&T042288-M&T42294; M&T042318-M&T42321; M&T045021-M&T045087; M&T045488-M&T045530; M&T045531; M&T045532-M&T45533; and M&T046596-M&T046733.

M&T further states that, as instructed by the Court, *see* Order at p. 15, No. 12, and as further detailed in the attached affidavit of Michael P. Ryan, Group Vice President, Consumer Asset Management (the "Ryan Affidavit"), M&T has made careful and rigorous search of the documents and information in its custody, possession, and control in response to the "notice of

24

deficiencies" set forth in Plaintiffs' Motion to Compel and specifically states as follows in response thereto:

### a) The "Earlier and later versions" of Policies and Procedures (a-m)

1. The earlier and any later version(s) of the "CAM Procedure Voluntary Repossessions on SCRA Accounts" policy. (M&T 446-447)[Policy created 9/30/14 and updated 4/15/15, only the 4/15/15 version produced.]

M&T states that is has undertaken a diligent inquiry and has been unable to locate the September 30, 2014 version of this policy.  *See* Ryan Affidavit at ¶ 12.  By way of further response, while M&T was able to locate the document saved as the first version of this policy, the contents of that document had been overwritten when the procedure was updated in 2015.  *Id.*  M&T further states that, in addition to the April 15, 2015 version referenced above, M&T has also produced the September 24, 2018 version of this policy at M&T046734-M&T046735.

2. The earlier and any later version(s) of the "Deficiency Balance Letters" policy. (M&T001382-1398) [Policy created 10/27/14 and updated 4/25/16, but only 4/15/16 version produced.]

M&T states that it has already produced the October 27, 2014 version of this policy.  *See* M&T020190-M&T020194.  M&T further states that, in addition to the October 27, 2014 and April 15, 2016 versions referenced above, M&T has also produced the November 25, 2014, October 16, 2015, January 25, 2016, and April 7, 2016, and April 25, 2016 versions of this policy.  *See* M&T020190- M&T020231, and M&T021170-M&T021186.  M&T has also produced the retired version of this policy, dated June 3, 2014.  *See* M&T045662-M&T045665.

3. The earlier and any later version(s) of the "Processing a Paid Redemption for Release" procedure; (M&T000969-974) [Policy created 6/23/14 and updated 9/7/17, but only 9/7/17 version produced.]

M&T states that it has undertaken a diligent inquiry and has been unable to locate the June 23, 2014 version of this policy.  *See* Ryan Affidavit at ¶ 13.  By way of further response, the June 23, 2014 version was overwritten when the procedure was updated in 2017.  *Id.*

5170466.2

4. The earlier and any later version(s) of the "Processing a Redemption Fee Request Procedure" policy; (M&T000975-980) [Policy created 6/23/14 and updated 9/7/17, but only 9/7/17 version produced.]

M&T states that it has undertaken a diligent inquiry and has been unable to locate the June 23, 2014 version of this policy. *See* Ryan Affidavit at ¶ 14. The June 23, 2014 version was overwritten when the procedure was updated in 2017. *Id.*

5. The earlier and any later version(s) of the "Processing Repossession Referrals" policy. (M&T001424-1444) [Policy created 9/20/16 and updated 9/27/16, but only 9/27/16 version produced.]

M&T states that it has undertaken a diligent inquiry and has been unable to locate the September 20, 2016 version of this policy. *See* Ryan Affidavit at ¶ 15. By way of further response, while M&T was able to locate the document saved as the first version of this policy, the contents of that document had been overwritten when the procedure was updated seven days later on September 27, 2016. *Id.* M&T further states that, in addition to the September 27, 2016 version, M&T has also produced the May 2, 2018 and August 30, 2018 versions of this policy at M&T021287-M&T021307 and M&T021350-M&T021370.

6. The earlier and any later version(s) of the "Repossession Letter and Vault/ELT Title Ordering" policy. (M&T000920-933). Policy "Last Revised" in "August 2013," which connotes multiple versions, but only one version was produced.]

M&T states that, in addition to the August 2013 version referenced above, it has also produced the prior version, dated July 20, 2012. *See* M&T045666-M&T045678. M&T further states that the December 27, 2010 version referenced in the July 20, 2012 version of the policy was overwritten when the policy was updated in 2012. *See* Ryan Affidavit at ¶ 16.

7. The earlier and any later version(s) of the "Repo Missing Info" policy. (M&T000934-946). [Policy states it was "Last Revised 4/24/13," which connotes multiple versions, but only one version produced.]

M&T states that it has undertaken a diligent inquiry and has been unable to locate the April 24, 2013 version of this policy. *See* Ryan Affidavit at ¶ 17. The April 24, 2013 version was overwritten when the procedure was updated on June 28, 2013. *Id.* M&T further states that

26

six versions of overlapping policies and procedures ("Repossessed- Missing Info" and "Repo Ops- Missing Info") have also been produced.  *See* M&T000981-M&T000987, M&T001490-M&T001523, M&T020232-M&T020241,

> **8.** The earlier and any later version(s) of the "Repossessed Missing Info" policies. Two versions of this policy exist, one updated 11/9/15 and the other updated 3/13/15. (M&T000981-987 (*"Abridged Version"*) and 001524-1527(*"Unabridged Version"*). [Each version states that this policy was created 6/12/14, but t6/12/14 version not produced.] See, **Exhibit 3**.

M&T states the June 12, 2014 version of this policy has been produced as "Repossessed-Missing Information".  *See* M&T020232-M&T020237.  The updated "Repossessed Missing Info" policies referenced above used this June 12, 2014 version as a base and, once updated, were saved as "Repossessed Missing Info".  *See* Ryan Affidavit at ¶ 18.  M&T further states that, in addition to these three versions, M&T has also produced four additional versions of overlapping policies and procedures ("Repo Missing Info" and "Repo Ops- Missing Info").  *See* M&T000934-M&T000946 and M&T001490-M&T001523.

> **9.** The earlier and any later version(s) of the "Repossession Referral Procedure" policy. [Policy created on 4/15/13 and updated on 7/1/16, but only the 7/1/16 version was produced. Also, a reference is made to the "Repo/Remarketing Referral Procedure" policy on M&T 445, however, no policy appears to have been provided. (M&T 443-5)]

M&T states that it has undertaken a diligent inquiry and has been unable to locate the April 15, 2013 version of this policy.  *See* Ryan Affidavit at ¶ 19.  The April 15, 2013 version was overwritten when the procedure was updated in July 2014.  *Id.*  M&T further states that, in addition to the July 1, 2016 version referenced above, M&T has also produced the July 10, 2018, and August 30, 2018 versions of this policy, along with the July 2014, January 13, 2016 and December 8, 2016 versions of the expanded "Repossession Referral Procedure with SCRA Review" policy.  *See* M&T020981-M&T021031.    M&T further states that there is no specific procedure titled "Repo/Remarketing Referral Procedure".  *See* Ryan Affidavit at ¶_.  Rather, this refers to the repo/remarketing referral process generally.  *Id.*

10. **The earlier and any later version(s) of the "Repossession Letter and Title Ordering Procedure" policy. (M&T000988-999) [Policy created 10/27/14 and updated 11/9/15, only 11/9/15 version produced.]**

M&T states that it has undertaken a diligent inquiry and has been unable to locate the October 27, 2014 version of this policy. *See* Ryan Affidavit at ¶ 20. By way of further response, while M&T was able to locate the document saved as the first version of this policy, the contents of that document had been overwritten when the procedure was updated. *Id.* M&T further states that, in addition to the November 9, 2015 version referenced above, M&T has also produced the September 13, 2018 version of the policy. *See* M&T021472-M&T021484.

11. **The earlier and any later version(s) of the "Remarketing Sale Procedure" policy. (M&T001481-1486) [Policy created 1/18/14 and updated 5/26/16, only 5/26/16 version produced.]**

M&T states that it has undertaken a diligent inquiry and has been unable to locate the November 18, 2014 version of this policy. *See* Ryan Affidavit at ¶ 21. The November 18, 2014 version was overwritten when the procedure was updated. *Id.*

12. **The earlier and any later version(s) of the "Voluntary Repossession" policy. (M&T 448-450) [Policy created 1/31/14 and updated 1/19/17, only 1/19/17 version was produced.]**

M&T states that it has already produced the January 31, 2014 version of this policy. *See* M&T020242-M&T020245. M&T further states that, in addition to the January 31, 2014 version and January 19, 2017 versions referenced above, M&T has also produced the January 14, 2016 and October 2, 2018 versions of this policy. *See* M&T020250- M&T020255.

**b) The "Excel logs"- (n)**

M&T states that it has produced, in native format, the "Excel spreadsheet log" at M&T042319. This spreadsheet has been truncated to remove (rather than redact) unrelated customer data. M&T has also produced the corresponding metadata for the original spreadsheet in CSV format at M&T042321. *See* M&T020242-M&T020245.

51704662

### c)  Templates and/or Exemplars- (o) and (x)

*See* M&T's Response to Request No. 8, *supra*.  M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

### d)  "Agent Covered Fees Excel Spreadsheet"- (p) and (s)

M&T states that it has already produced all documents responsive to this request.  *See* M&T020256, M&T020257, and M&T020258.  M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

### e)  "Sold Expense Screen"- (q)

M&T states that it has already produced all documents responsive to this request for the named Plaintiffs.  As M&T has previously advised, the Sold Expense Screen is located in Locus, screen captures of which have been previously produced for each named Plaintiff at M&T019750-M&T019764 (Plaintiff Flynn), M&T019765-M&T019778 (Plaintiff Daisey), M&T019779-M&T019797 (Plaintiff Hosick), and M&T019797-M&T019873 (Plaintiff Abbott). M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

### f)  Agreements with Third Party Vendors/Affiliates- (r)

M&T states that it has already produced all documents responsive to this request.  *See*, *inter alia*, M&T00451-M&T00701, M&T00868-M&T00880, M&T00948-M&T00956, M&T001561-M&T001663, M&T019669-M&T019740, M&T019986-M&T20189, M&T020300-M&T020919, M&T041551-M&T041608, and M&044828-M&T044846 and M&T045088-M&T45107.

M&T further states that these agreements are service contracts and if a contract/agreement does not have an end date specified in the contract, that the contract is

29

deemed to be on-going.  M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

g)  **"Redemption Specialist Notes"- (t)**

M&T states that it has already produced all documents responsive to this request as to the named Plaintiffs.  By way of further response, M&T states that the term "Redemption Specialists Notes" does not refer to a specific document.  Rather, it refers to those account entries (i.e.- notes) that were entered by a redemption specialist employee during the redemption process.  Only one named Plaintiff, Plaintiff Daisey, redeemed his vehicle.  All collection notes for Plaintiff Daisey, which include any notes entered by a redemption specialist, were previously produced at M&T00202-M&T00250.  M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

h)  **"Unredacted copies of Bates 000973-4 and 000979-80- (u)**

M&T states that it has produced true and correct copies of the policies found at M&T000973-M&T000974 and M&T000979-M&T000980 without any redactions.   M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

i)  **Legible and Color copies of Produced Documents- (v)-(w)**

M&T states that it has produced legible copies of all documents, to the extent legible copies exist.  M&T further states that if the original document was in color, color copies were provided.  M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

j)  **"Copies of all versions of 'State requirements'"- (y)**

M&T objects to this request as the document requested is legal work product created by M&T's in-house legal counsel for the purposes of providing legal advice, and is therefore

5170466.2

protected from disclosure by the attorney-client privilege and/or work product privilege. M&T further states that this "State Requirements" document can only be accessed by a select few M&T employees on a need to know basis. Subject to and without waiver, M&T states that it has provided herewith an updated privilege log reflecting the inclusion of the State Requirements document. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

> k)  "Quality Review Forms"- 6(z)

M&T states that it has already produced all documents responsive to this request. *See* M&T020259. M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

> l)  All versions of the "Storage Fee Page"- 6(aa)

M&T states that it has already produced all documents responsive to this request. *See* M&T020256, M&T020257, and M&T020258. M&T further states that it has made careful search of records and information under its control and has nothing further to disclose.

## Request No. 13

All DOCUMENTS which CONCERN, relate, pertain, or discuss M & T Bank's policies, practices, and/or procedures in effect at any time after September 22, 2011 with respect to repossession, sale, storage, transportation, repair, reconditioning, retitling, and/or redemption of a repossessed vehicle, and/or the reinstatement of any loan related to a repossessed vehicle; and/or the SENDING of any NOTICE OF REPOSSESSION and/or POST SALE NOTICE.

## Response to Request No. 13

M&T states that it has already produced all documents responsive to this request. *See* M&T00439-M&T00450, M&T00920-M&T00947, M&T000963-M&T1020, M&T001376-M&T001533, M&T020190-M&T20255, M&T020286-M&T020296; M&T020920-

31

M&T021533;   M&T041330-   M&T041550;   M&T044331-M&T044828;   M&T045108-M&T45488; M&T045534- M&T045678; and M&T045750- M&T046031; *See also* M&T's Response to Request No. 12, "Earlier and later versions" of Policies and Procedures, *supra*. M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

## Request No. 14

Any and all contracts and/or agreements in effect at any time after September 22, 2011 with autoIMS, any auction, any repossessor, or any other entity CONCERNING or relating to any goods or service(s) rendered with respect to the repossession, sale, storage, transportation, repair, reconditioning, retitling, redemption, preparation for sale, and/or the sale of a repossessed vehicle, and/or the reinstatement of any loan relating to a repossessed vehicle.

## Response to Request No. 14

*See* M&T's Response to Request No. 12, at Agreements with Third Party Vendors/Affiliates of Policies and Procedures, *supra*.   M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

## Request No. 15

An organizational chart showing departments and/or personnel involved with the repossession of vehicles, the resale of repossessed vehicles, the collection of deficiency balances on accounts with repossessed vehicles.

**Response to Request No. 15**

M&T states that it has already produced all documents responsive to this request.  *See* M&T041643-M&T042287.  M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

**Request No. 16**

Please provide all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer in YOUR answer to Interrogatory 13 above.

**Response to Request No. 16**

M&T states that no such responsive documents exist.  M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

**Request No. 17**

Please provide all DOCUMENTS that YOU referenced or relied upon in YOUR answers to the above interrogatories.

**Response to Request No. 17**

M&T states that it has produced all documents it referenced, relied up, or which it consulted, in responding to Plaintiffs' Interrogatories and directs Plaintiffs to the documents previously produced and produced herewith.  M&T further states that it has made careful search of records and information under its control and has nothing or nothing further to disclose.

33

**PARKER IBRAHIM & BERG LLP**

/s/ Scott W. Parker
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Fax: (267) 908-9888
scott.parker@piblaw.com

*Attorneys for Defendant,*
Manufacturers and Traders Trust
Company a/k/a M&T Bank

Dated:  February 21, 2019

34

5170466.2

## INTERROGATORY CERTIFICATION

I, Michael P. Ryan, am employed by Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T") as Group Vice President, Customer Asset Management ("CAM"). I have read the foregoing Amended Responses and Objections to Plaintiffs' First Set of Interrogatories and know the contents thereof. The responses were prepared by me and members of M&T's CAM group working under my instruction, with the assistance and advice of counsel, upon which I have relied. The factual information contained in the responses is true and correct to the best of my knowledge, information, and belief.

MANUFACTURERS AND TRADERS TRUST
COMPANY a/k/a M&T BANK

Michael P. Ryan
Group Vice President, Consumer Asset
Management (CAM)

Date: February 21, 2019

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF ERIE         )

On the 21st day of February in the year 2019 before me, the undersigned, a Notary Public in and for said State, personally appeared _Michael P Ryan_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Affidavit Regarding Discovery and affirmed to me that he/she executed same in he/her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the Affidavit Regarding Discovery, and that such individual made such appearance before the undersigned in _Getzville_, _NY_.

Notary Public

SHARI A. KEARLY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires August 26, 20_21_

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, and CATHERINE HOSICK, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION |
| | : | CLASS ACTION |
| Plaintiffs, | : : | Case No: 2:17-cv-4806-WB |
| v. | : : | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | : : : | |
| Defendant. | : : | |

## AFFIDAVIT OF MICHAEL P. RYAN IN SUPPORT OF M&T BANK'S AMENDED RESPONSES TO PLAINTIFFS' FIRST SET OF POST-REMOVAL DISCOVERY

**STATE OF NEW YORK** )
                                ) ss.
**COUNTY OF ERIE** )

I, Michael P. Ryan, affirm and state as follows:

1.      I am a Group Vice President of Consumer Asset Management ("CAM") at Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"). I am over the age of 18 and am competent to testify as to the matters contained in this Affidavit.

2.      I have been employed at M&T for a total 17 years. In my capacity as a Group Vice President, I have firsthand knowledge of and direct access to M&T's record keeping systems. I am familiar with Plaintiffs' loan accounts, the relevant notices sent out for those accounts, repossession of the collateral securing the accounts, and information regarding repossession related Policies and Procedures and third party agreements in effect for the class period. I make this Affidavit based on my review of M&T's records and my personal knowledge of how those records are kept and maintained.

3.      I have read the foregoing Amended Responses to Plaintiffs' First Set of Post-Removal Discovery and know the contents thereof.  The responses were prepared by me (and others at M&T as set forth more fully in Response to Interrogatory No. 1) with the assistance and advice of counsel.  I was personally involved with both the drafting of the responses and M&T's searches for responsive documents and I am familiar with the efforts undertaken by M&T to respond to the same.  As a result, I can attest to the fact that M&T has conducted a thorough and careful search of the records, information, and documents under its control in order to respond to Plaintiffs' First Set of Post-Removal Discovery.

4.      I further attest that the factual information contained in the responses is true and correct to the best of my knowledge and information and I attest to the veracity of all responses provided, including M&T's assertions that all information and documents responsive to a particular request have been previously supplied.

5.      I further attest that M&T has conducted a thorough and careful search of the records, information, and documents under its control in response to Plaintiffs' notice of purported deficiencies, as memorialized in writing in Plaintiffs' Motion to Compel Discovery.  I attest to the veracity of all responses provided thereto, including M&T's assertions that it has conducted a careful search and has nothing, or nothing further to disclose.

6.      As it relates to Plaintiffs' request for repossession related policies and procedures, M&T's search included, but was not limited to, searching: (1) M&T's SharePoint site for both "approved" and "non-approved" policies; (2) the network drives (or the "G-Drives") for both "approved" and "non-approved" policies; and (3) all "retired" and/or "archived" policies and procedures stored on both SharePoint and the network drives.  As a Group Vice President of CAM, I am the manager of, or have access to, all SharePoint sites and/or local drives where the

policies and procedures (including those archived or retired) requested by Plaintiffs may have been kept.

7.      Upon receiving Plaintiffs' request for certain specific "earlier and later versions" of policies and procedures that had already been produced, *see* D.I. No. 148 ¶15, No. 13, M&T re-conducted their search, in accordance with paragraph 6 above, on an individual basis for the versions requested by Plaintiffs. Myself and my team were personally involved in the search for these specific versions.

8.      Despite a diligent search, M&T was unable to locate 10 of the specific versions of policies and procedures requested by Plaintiffs.

9.      Updates to the policies and procedures are completed manually by bank employees in Microsoft Word. Unless specifically noted below, for updates which occurred before September 2014, the prior version was likely overwritten by the individual employee performing the update, in order to ensure that the most recent policy was being used. Prior to September of 2014, it was M&T's regular business practice to keep its policies and procedures on local network drives maintained by the individual who created or updated the policy or procedure. At that time, when a policy or procedure was updated, the individual responsible for the procedure could either save it as a new version on their local drive, or save over the prior version, such that the only policy accessible was the most recent policy. No internal business or retention policy practice that would require a new version to be saved.

10.      For updates which occurred around or after September of 2014, the earlier version was likely inadvertently overwritten as a result of M&T's transition into SharePoint. While some procedures were uploaded to SharePoint in September of 2014, the majority of the policies would not have migrated onto the SharePoint site until the next time they were updated. As a

result, the migration process was not completed until 2017. Occasionally, however, only the updated version, and not the prior version, was migrated. M&T's preferred practice once a policy has been migrated to SharePoint is to have all future updates saved in SharePoint as a new version of the policy, although there is no formal policy requiring this.

11.   I further attest as follows:

12.   M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the September 30, 2014 version of the "CAM Procedure Voluntary Repossession on SCRA Accounts" has been overwritten. While M&T's search found the document saved as "SCRA Voluntary Surrender Procedure- 1.0", the contents of that saved document reflect an update date of April 15, 2015. The September 30, 2014 version would have been overwritten at the time of the update, on or around April 15, 2015 and would have been overwritten by the individual performing the update, Brittney Post.

13.   M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the June 23, 2014 version of the "Processing a Paid Redemption for Release" procedure has been overwritten. The June 23, 2014 version would have been overwritten at the time of the update, on or around September 7, 2017, and would have been overwritten by the individual performing the update, Jess Williams.

14.   M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the June 23, 2014 version of the "Processing a Redemption Fee Request Procedure" has been overwritten. The June 23, 2014 version would have been overwritten at the time of the update, on or around September 7, 2017, and would have been overwritten by the individual performing the update, Jess Williams.

15.    M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the September 20, 2016, version of the "Processing Repossession Referrals" policy has been overwritten.  M&T's search located the document saved as "Processing Repossession Referrals (RO1)" but the contents of that saved document reflect an update date of September 27, 2016.  The September 20 2016 version would have been overwritten at the time of the update, on or around September 27, 2016 and would have been overwritten by the individual performing the update, Jess Williams.

16.    M&T's search located the July 20, 2012 version of "Repossession Letter and Vault/ELT Title Ordering" policy as requested by Plaintiffs.  The July 20, 2012 policy, however, references a December 27, 2010 version.  M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the December 27, 2010 version of the "Repossession Letter and Vault/ELT Tilting Ordering" policy has been overwritten.  The December 27, 2010 version would have been overwritten at the time of the update, on or around July 20, 2012 and would have been overwritten by the individual performing the update, Amy Madison.

17.    M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the April 24, 2013 version of the "Repo Missing Info" policy has been overwritten.  The April 24, 2013 version would have been overwritten at the time of the update, on or around June 28, 2013, and would have been overwritten by the individual performing the update, Amy Perry (formally Amy Madison).

18.    M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that June 12, 2014 version of this policy has been produced as "Repossessed- Missing Information".  The updated "Repossessed Missing

Info" policies referenced above used this June 12, 2014 version as their base and, once updated, evolved into the policies titled "Repossessed Missing Info".

19.     M&T has undertaken a diligent inquiry of all records and documents in its possession, custody, and control and has determined that the April 15, 2013 version of the "Repossession Referral Procedure" policy has been overwritten.  The April 15, 2013 version would have been overwritten at the time of the next update, July 2014, and would have been overwritten by the individual performing the update, Melissa Mac Leod.  As for Plaintiffs' request for the "Repo/Remarketing Referral Procedure", no such specific policy or procedure exists.

20.     M&T states that is has undertaken a diligent inquiry and has been unable to locate the October 27, 2014 version of the "Repossession Letter and Title Ordering Procedure" policy. While M&T's search found the document saved as "Repossession Letter and Title Ordering 1", the contents of that saved document have been updated.  The October 27, 2014 version would have been overwritten at the time of the update, on or around November 9, 2015 and would have been overwritten by the individual performing the update, Jess Williams.

21.     M&T states that it has undertaken a diligent inquiry and has been unable to locate the November 18, 2014 version of the "Remarketing Sale Procedure" policy.  The November 18, 2014 version would have been overwritten at the time of the update, on or around May 26, 2016 and would have been overwritten by the individual performing the update, Matt Brysinski.

22.     Following the search outlined above, I personally consulted with Paul Zawodzinski, Technology Senior Manager, M&T Bank, to determine whether any of the above versions were able to be recovered or otherwise restored. Mr. Zawodzinski advised me these versions could not be recovered, given the length of time that had passed since the documents

had been overwritten.  Mr. Zawodzinski further advised me while the shared drives housing these policies and procedures would have been backed up, the backups are only maintained for 28 days.

MANUFACTURERS AND TRADERS TRUST
COMPANY a/k/a M&T BANK

Michael P. Ryan
Group Vice President, Consumer Asset
Management (CAM)

Date:  February 21, 2019

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF ERIE       )

On the 21st day of February in the year 2019 before me, the undersigned, a Notary Public in and for said State, personally appeared __Michael P Ryan__ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Affidavit Regarding Discovery and affirmed to me that he/she executed same in he/her capacity; and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the Affidavit Regarding Discovery, and that such individual made such appearance before the undersigned in Getzville , NY              .

Notary Public

SHARI A. KEARLY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires August 26, 20 22

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2019 I caused a true and correct copy of the foregoing to be served upon the following counsel of record by electronic mail:

Richard Shenkan, Esq.
Shenkan Injury Lawyers, LLC
6550 Lakeshore St.
West Bloomfield, MI 48323


**PARKER IBRAHIM & BERG LLP**

/s/ Scott W. Parker
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Fax: (267) 908-9888
scott.parker@piblaw.com

*Attorneys for Defendant,*
Manufacturers and Traders Trust
Dated: February 21, 2019            Company a/k/a M&T Bank