UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD R. FLYNN, DOUGLAS J. ABBOTT, GENE E. DAISEY, and CATHERINE HOSICK, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK,<br><br>Defendant. | Case No: 2:17-cv-4806-WB |

## STATUS REPORT OF MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK

In accordance with the Court's June 2, 2020 Order [D.I. 198], Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"), by and through its undersigned counsel, hereby submits this Status Report and Proposed Case Management Order.

### I. Settlement Efforts & the Filing of the *Chapman* Action

For the better part of a year, M&T has engaged in good faith settlement negotiations with Plaintiffs Edward R. Flynn, Douglas J. Abbott, Gene E. Daisey, and Catherine Hosick ("Plaintiffs") in an effort to amicably resolve this matter. While the parties were making considerable progress, a settlement was unable to be reached after a second mediation session.

Immediately after that mediation, and while the parties were considering whether a third session would be fruitful, counsel for Plaintiffs informed M&T that he was filing a largely duplicative case against M&T in the Southern District of New York captioned as *Chapman v. Manufacturers and Traders Trust Company, a/k/a M&T Bank*, 1:30-cv-02372 (the "*Chapman*

Action"). A true and correct copy of the Complaint filed in the *Chapman* Action is attached hereto as **Exhibit A**.

Indeed, counsel has all but admitted the substantial overlap by promptly asking permission from presiding Judge Jed S. Rakoff to use all confidential discovery produced in *Flynn* in support of the plaintiffs' claims in *Chapman* -- a request that was summarily denied. Specifically, there, as here, the plaintiffs challenge M&T's Notices of Repossession and Post-Sale Notices for a class of Pennsylvania borrowers, claiming that the notices violated the UCC, both independently and *in pari materia* with the MVSFA. *See* Ex. A at ¶¶ 2, 101. Many of the allegations in *Chapman* are near verbatim recapitulations of the allegations here, with the plaintiffs making the same allegations regarding the same "Storage Expenses", "'Prepare/Repair Fees,'" "Redemption Fee[s], Personal Property Fee[s], and Administrative Fee[s]" that form the basis of this action. *See* Ex. A at ¶¶ 74-85, 93-99.

The filing of the *Chapman* case is clearly an attempt to circumvent this Court's Order barring Plaintiffs from any further amendment of their claims. *See* April 13, 2018 Order at D.I. 55 ("Plaintiff shall not be afforded any further amendment"). Not only has Plaintiffs' counsel violated the first-filed rule by re-alleging the same exact Pennsylvania claims in another court, but counsel did so in order to redefine and significantly expand the class definitions pled in plaintiffs' Second Amended Complaint, and to add purported additional factual bases for the causes of action already pled in the instant action. These facts alone highlight Plaintiffs' transparent attempt to circumvent this Court's bar on further amendments. Further, while Plaintiffs had complete control over where to file the *Chapman* complaint, that complaint contained a footnote requesting that *Champan* be transferred and consolidated with the *Flynn*

action – perhaps hoping that no one would notice Plaintiffs' attempted end run around this Court's April 13, 2018 Order.

Further, not only are the claims the same, but the putative classes substantially overlap as well – with *every single* member of Plaintiffs' proposed putative class in *Flynn* being a member of counsel's proposed putative class in *Chapman*. In fact, the two representative plaintiffs for the Pennsylvania class in *Chapman*, are members of counsel's proposed *Flynn* putative class.

M&T has filed a motion to dismiss in *Chapman*, which remains pending before the Court. A true and correct copy of M&T's Motion to Dismiss (without exhibits) is attached hereto as **Exhibit B.**

In an effort to move the instant matter forward in an expeditious and efficient manner, M&T has outlined the most pressing issues and its proactive efforts to address the same.

**II.     Sample Discovery**

M&T has repeatedly requested that Plaintiffs provide it with a complete list of the documents and information that Plaintiffs contend should be subject to sampled discovery. To date, Plaintiffs have refused to provide a concrete answer despite the fact that M&T has produced, *inter alia*, (i) all responsive loan documents, notices, reports, invoices, etc., in its possession relating to the named plaintiffs, (ii) spreadsheets containing all information contained in all data fields in all relevant systems relating to the named plaintiffs, (iii) all manuals and user guides in M&T's possession relating to those systems, (iv) all policies and procedures in M&T's possession that have been requested and (v) all vendor agreements in M&T's possession that have been requested.

As such, in an attempt to timely move this matter forward in an efficient manner, M&T has presented Plaintiffs with what it believes to be a reasonable and proportionate proposal

regarding the putative class sampling, consistent with the Court's prior orders regarding the same.

### A. Method of Selecting Sampled Accounts

*First*, as the Court is aware, on M&T has already submitted its six lists of potential class members from which the sample may be drawn. *See* D.I. 151. These lists were submitted in accordance with the Court's May 28, 2019 Order after substantial briefing, including expert reports, were submitted by the parties. *See* May 28, 2020 Order at D.I. 174, p. 3; *see also* D.I. 190 (denying Plaintiffs motion for reconsideration). In order to take into account the passage of time since the prior lists were submitted, however, M&T has offered to provide the Court with updated lists from which the Court (subject to its willingness to do so, of course) can use a random number generator (as Plaintiffs suggest) to select, from each of the six lists, 10% of accounts for sample discovery. On June 19, 2020 at 10:43 pm, Plaintiffs advised that they were "generally in agreement" with M&T's proposal for selecting sampled accounts, "subject to having a brief discussion with the Court regarding some of the outstanding issues that [were] repeatedly discussed without resolutions." As an example, Plaintiffs asked for confirmation that the sampling will treat accounts with co-borrower's as one "account." M&T, however, already confirmed this treatment, *see* Ltr. dated Feb. 7, 2019 ("M&T agrees to the proposal in your first letter of February 5th that accounts with co-borrowers only be listed once"), and the six lists submitted to the Court were done so on that basis. As such, M&T is unclear what "outstanding issues" regarding the selection process for the sampled accounts Plaintiffs believe require a conference with the Court.

B. <u>Documents and Information Subject to Sampling</u>

*Second,* for each account selected via the above procedure, M&T has proposed to provide the following documents and information in its possession to Plaintiffs - all of which are specific documents, or categories of information, Plaintiffs have specifically requested be produced as part of any sampling[1]:

1. Copies of the Retail Installment Sales Contracts, Notices of Repossession and Post-Sale Notices for each sampled account;

2. Copies of any invoices, receipts, or expense breakdowns showing payments between M&T and a repossession-related vendor, or between a sampled customer and a repossession-related vendor for each sampled account;

3. Payment history information for each sampled account;

4. Copies of the AutoIMS Auction Tab and Invoice Tab (as specifically requested by Plaintiffs) printed from AutoIMS for each sampled account;[2]

5. Excel spreadsheets containing *all* data contained in *all* data fields for each sampled account in the same manner as it has already done for the named plaintiffs on March 14, 2019;

6. An Excel spreadsheet for each class list containing charge-off dates and amounts, if any, reflected in M&T's Columbia Ultimate system;

7. An Excel spreadsheet for each class list containing the data displayed in the Locus "Sold Expense" Screen;

8. An Excel spreadsheet for each class list listing certain bankruptcy information requested by Plaintiffs as currently reflected in M&T's electronic records (if any such data is reflected in M&T's records) for all sampled accounts involving a bankruptcy.

M&T believes the above will provide Plaintiffs more than enough information on each sampled account to investigate the claims and defenses at issue, without being disproportionate

---

[1] Personally identifiable information, such as names, addresses, telephone numbers, VINs and social security numbers will be fully redacted (in the case of documents) or removed (in the case of data) prior to production. All digits contained in Account/Loan numbers will be redacted (in the case of documents) or removed (in the case of data) except for the last eight (8) digits.

[2] To the extent that the data contained in these two tabs can be electronically queried, M&T will provide the same (in lieu of print-outs) in an Excel spreadsheet for each class list.

to the needs of the case. To date, Plaintiffs failed or refused to identify any other specific document or piece of information they would need for sampled discovery. Instead, as of June 19, 2020, Plaintiffs have backtracked, now taking the position that rather than narrowing the scope of sampled discovery to those documents and information relevant to the issues in the case, M&T must produce the same expansive universe of documents "as [M&T] provided for the Representative Plaintiffs" for each sampled account. This is not the purpose of sample discovery, which, as Judge Lloret previously noted, is to "allow for more efficient, manageable, and cost effective discovery while supplying the parties with a reasonable basis to extrapolate to the entire population of the classes, on issues material to the case." *See* May 28, 2019 Order, D.I. 174, at p. 2 (further noting that "addressing each of the objections raised by the plaintiff would go far beyond what is necessary to obtain a reasonably useful sample, which is all that is needed").

According to Plaintiffs, they cannot proceed with their case or identify documents that they believe should be subject to class sampling because to do so now, after nearly three years of litigation, would be "premature" without first, *inter alia*, having M&T sit for a "transcribed and recorded" e-discovery conference which would include "remote access" to M&T's systems (a request that Plaintiffs have made, that the parties have briefed, and that this Court has refused to

grant, no less than three times already[3]), and allowing Plaintiffs to run a forensic search on mirror images of M&T's drives and servers. In ruling on this request, the Court found that Plaintiffs' pre-sample discovery would "undermine the point of the sampled discovery" and be "unduly burdensome when measured against the stakes at issue in the case". *See* May 28, 2019 Order, D.I. 174, at p. 1. Indeed, M&T has already provided more than enough information for Plaintiffs to identify what data and documents they need for sampled discovery, including, among a great deal of other documents and information, (i) numerous discovery responses detailing information relating to M&T's systems, (ii) spreadsheets containing **all** information contained in **all** data fields in **all** relevant systems of record relating to the named plaintiffs, (iii) a spreadsheet containing all data fields available (even those of which were empty for the named Plaintiffs) in these systems; (iv) all manuals and user guides in M&T's possession relating to those various systems; and (v) hard copy documents and screenshots from the relevant systems for the named Plaintiffs. These documents were all provided well over a year ago, yet Plaintiffs still claim to be "in the dark" regarding M&T's systems that they are unable to identify any documents that they will need to attempt to prove their case. It simply does not stand to reason that Plaintiffs need more information on how M&T *stores* its documents and data, to identify whether the documents or data itself is relevant.

---

[3] The three times that this Court refused to grant Plaintiffs' request for remote access were: (1) when this Court declined to adopt Plaintiffs' "Suggested Language Changes to Proposed Order" (*see* D.I. No. 125 at ¶ 16), after the parties engaged in extensive briefing on this very issue (*see* D.I. 135-136, 141-142); (2) in this Court's April 1, 2019 order, when, after Plaintiffs again requested remote access to M&T's systems (*see* D.I. 155 at Ex. 1; 161 at p. 10), the Court not only refused to grant such relief, but also prohibited Plaintiffs from "propound[ing] *any* additional discovery of any type" (D.I. 163. at p. 12) (emphasis in original); and (3) in this Court's May 28, 2019 order, when the Court ruled that Plaintiffs' proposed pre-sample discovery demands (which, yet again, included a request for a transcribed e-discovery conference with remote access) would "undermine the point of the sampled discovery" and be "unduly burdensome when measured against the stakes at issue in the case". May 28, 2019 Order, D.I. 174, at p. 1.

### C. Timing of Sampling

*Third*, as for the timing of sampling discovery, attached as **Exhibit C** to this Status Report is M&T's proposed Second Amended Scheduling Order. M&T is confident that it will be able to complete its proposed sampling within the timeframes of that proposed order, and will begin pulling and producing sampled discovery on a rolling basis as soon as Plaintiffs agree to M&T's sampling proposal or the Court enters an order adopting the same.

### III. Remaining Discovery Issues

Finally, despite M&T's best efforts, the parties have also been unable to resolve a number of discovery issues relating to Plaintiffs' discovery obligations under the Federal Rules.

### A. Depositions of the Named Plaintiffs

*First*, Plaintiffs unilaterally cancelled the depositions of Edward Flynn, Catherine Hosick, Gene Daisey and Douglas Abbott which were originally scheduled for June 20, 2019 and June 21, 2019 (Plaintiffs also unilaterally cancelled the scheduled deposition of M&T's deponent, Michael Ryan). Thereafter, on at least six separate occasions, M&T attempted to confer with Plaintiffs to reschedule these depositions. Plaintiffs failed to provide any meaningful response for nearly a year, providing new dates for the first time today, June 22, 2020, as M&T was preparing to file their Status Report.

### B. Inadequate, Incomplete, and Unverified Discovery Responses

*Second*, regarding Plaintiffs' responses to M&T's First Set of Interrogatories and Production of Documents dated June 1, 2019, M&T previously identified numerous deficiencies to Plaintiffs in a meet-and-confer letter dated July 16, 2019. Notwithstanding repeated

assurances, in the intervening eleven months, Plaintiffs failed to provide corrected – or even just verified – responses.[4] A very brief sampling of some of those deficiencies is below:

- All four Plaintiffs failed to respond to Interrogatories under oath;

- Plaintiffs provided the exact same omnibus response on behalf of each named Plaintiffs to multiple, and different, discovery requests;

- Plaintiff Daisey did not respond to Interrogatories No. 13-17 at all;

- Plaintiff Hosick did not respond to Interrogatories on her own behalf, instead relying on facts and affidavits relating to other named Plaintiffs;

- When relying on produced documents, Plaintiffs failed to cite to any bates citation (an incredible approach given their arguments in their motions to compel), instead relying on "all documents" produced by M&T, making it impossible for M&T to identify which documents, out of the tens of thousands of pages of documents produced by M&T, that Plaintiffs believe to be responsive;

- Plaintiffs assert various objections based on privilege but fail to provide a privilege log;

- Plaintiffs produced just 77 pages of documents (none of them relating to Plaintiff Flynn or Hosick, aside from counsel's retainer agreement), but without any Bates citations or labels indicating what the produced document is, where it is from, what request it is responsive to, or even which Plaintiff has produced the documents.

This is just a sampling of the issues outstanding with Plaintiffs' discovery responses. Despite repeated assurances - and the passage of nearly a year - no efforts have been made by Plaintiffs to correct these deficiencies, making it increasingly apparent that no action will be taken absent the filing of a formal motion to compel.

---

[4] At 7:53 p.m. this evening, just prior to M&T's filing of this Status Report, Plaintiffs served what they allege to be "corrected" responses on behalf of three of the four named Plaintiffs. Given the last-minute circulation of these responses which M&T has demanded for a year, M&T has not yet had the opportunity to fully review the same, although an initial review reveals that many of the issues referenced herein have not been "corrected."

### IV.   M&T's Proposed Second Amended Scheduling Order

On June 12, 2020, M&T provided Plaintiffs with its proposed Second Amended Scheduling Order.  In response, on Monday, June 15, 2020, Plaintiffs requested the Bank's consent to extend the parties' time to submit their respective Second Amended Scheduling Order(s) and status report(s) from June 15, 2020 to June 22, 2020 to afford Plaintiffs with a "few extra days" to digest and meet and confer on M&T's sampling protocol and proposed Second Amended Scheduling Order.  On June 17, 2020, the Court granted Plaintiffs' Unopposed Motion for Extension to Time to Submit Status Reports and Proposed Second Amended Case Management Order(s).  Notwithstanding, Plaintiffs did not respond to M&T's proposed Second Amended Scheduling Order until this past weekend on Saturday, June 20, 2020.

Despite the limited amount of time to do so, M&T responded to Plaintiffs, via letter attached hereto as **Exhibit D**, setting forth the reasons why Plaintiffs' proposal seeks to unnecessarily prolong fact discovery, ignores the Court's prior orders and grossly mischaracterizes the state of e-discovery in this matter to date.  As such, M&T respectfully requests that the Court enter the proposed Second Amended Scheduling Order attached hereto as Exhibit C.

### V.   Conclusions

M&T is fully prepared to move this this matter forward in an expeditious and efficient manner.  It has put forth here, and in more detail to Plaintiffs directly, concrete suggestions for how to appropriately and proportionately litigate this case through sampled discovery towards class certification.  Without Plaintiffs' buy-in, however, M&T, and this case, remain at a standstill.  M&T welcomes the opportunity to work with the Court to finalize a reasonable case

management plan moving forward and is available to answer any additional questions this Court may have.

Dated: June 22, 2020                                By: */s/ James P. Berg*
                                                                                   James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
Marissa Edwards, Esq.
**PARKER IBRAHIM & BERG LLP**
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Fax: (267) 908-9888

Alfred W. Putnam, Jr., Esq.
Michael P. Daly, Esq.
**FAEGRE DRINKER BIDDLE & REATH LLP**
One Logan Square
Suite 2000
Philadelphia, PA  19103
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757

*Counsel for Defendant*