IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD R. FLYNN, GENE DAISEY, )
DOUGLAS J. ABBOTT, and CATHERINE )          CIVIL DIVISION
HOSICK, individually and on behalf of all others )
similarly situated, )
)                                          CLASS ACTION
            Plaintiffs, )
)                                          Case No. 2:17-cv-04806-WB
       v. )
)
MANUFACTURERS AND TRADERS TRUST )
COMPANY a/k/a M&T BANK, )
)
            Defendant. )
)
)

**PLAINTIFFS' REPLY TO DEFENDANT'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. RULE 11**

NOW COME the Plaintiffs, by and through their undersigned counsel, who submits the

following in reply to Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for

Sanctions Pursuant to Fed. R. Civ. P. Rule 11 ("Response").

## I.  **Plaintiffs' Motion is Not Untimely**

At the outset, Defendant's Response argues that Plaintiffs' Motion for Rule 11 sanctions

should be dismissed as untimely. The cases cited to by the Defendant require Plaintiffs to file a

Rule 11 motion "as soon as practicable", which Plaintiffs have done.

In summary, and as set forth in detail in the paragraphs below, Plaintiffs took steps within

days of Defendant's Answer to have the paragraphs at issue deemed admissions, and continued

those efforts up until the nine-month stay in this case. Following the end of the stay, the parties

continued to engage in settlement talks and to attempt to resolve discovery issues until the status

conference in July, 2020. During this last time period, Plaintiffs served Defendant with their

proposed Rule 11 Motion, hoping to prod Defendant to resolve these issues. Defendant did not, and thus, Plaintiffs reluctantly filed their Rule 11 Motion.

Defendants filed the Answer at issue on July 1, 2018. On July 6, 2018, Plaintiffs filed a "Brief in Support of Motion to Deem Defendant's Denials in its' Answer to Second Amended Complaint as Admissions", which requested that this Court to deem the paragraphs at issue in this Rule 11 Motion admitted. (ECF 75). Plaintiffs' Motion was denied without prejudice on July 20, 2018. (ECF 86). Plaintiffs again asked the Court to deem these paragraphs admitted as a sanction in Plaintiffs' Brief in Support of Motion to Compel Discovery Responses on September 21, 2018. (ECF 105). A hearing was held on that Motion on October 26, 2018, and on January 31, 2019 the Court compelled certain discovery responses, but denied Plaintiffs' request for sanctions (including deeming the subject paragraphs admitted) "without prejudice to its being renewed once the discovery outlined in this Memorandum has been completed and privilege issues resolved." (ECF 147/148, p. 17). In compliance with the Court's Order, Plaintiffs waited on Defendant to resolve the discovery issues. However, Defendant did not do so. Instead, it produced some discovery documents in response to that Order, but in a delayed fashion, and never gave proper answers to the averments at issue in the Rule 11 Motion. On July 25, 2019, this case was stayed so the parties could mediate. (ECF 187). The stay was extended by several Orders. (ECF 189, 192, 194). The stay expired on its own terms on April 13, 2020, but this Court did not enter its Second Amended Scheduling Order until August 13, 2020

After the stay ended, the parties exchanged discovery deficiency letters and continued settlement discussions.  Because they were continuing discussions, on May 1, 2020 the parties asked for an extension of time to submit status reports and proposed case management orders, which was granted, and the deadline was extended until June 22, 2020. (ECF 197, 198). On June

4, 2020, Plaintiffs served their proposed Rule 11 Motion on Defendant pursuant to the Rule 11(c)(2) safe harbor provision, hoping to prod Defendant into resolving the subject issues. The parties continued to discuss discovery and pleading deficiencies and possible settlement. On June 22, 2020, the parties filed status reports and proposed case management orders. A status conference was held on July 6, 2020, and the court entered a Second Amended Scheduling Order (ECF 209) on August 13, 2020. Following the Scheduling Order, the Defendant made no move to amend its deficient answers, and Plaintiffs reluctantly filed their Rule 11 Motion.

Accordingly, there has been no delay. Plaintiffs have attempted several times to have Defendant fix its answers or have them deemed admitted, and the Court has denied those attempts without prejudice, apparently to give Defendant a chance to resolve the issue, yet Defendant has not done so.

## II. Defendant's Response lacks merit; Defendant's deliberate indifference to facts that it knew or reasonably should have known failed to comply with Rule 8(b)(5) and violated Rule 11(b)(1) and (4)

Defendant's Response paints a picture that is in stark contrast with reality.

### A. This is not a situation where Defendant made a reasonable investigation, and then denied allegations of the SAC based on a legitimate "lack of knowledge or information."

First, the Defendant's Response suggests that the issue now before this Court involves denials of allegations made by a Defendant after it conducted a reasonable investigation, where the denials later simply turned out to be incorrect. (See Defendant's Response, ECF 223, p. 5; "The wisdom of hindsight should be avoided; the attorney's conduct must be judged by what was reasonable to believe at the time the pleading, motion, or other paper was submitted."). Nothing could be further from the truth. Rather, the "denials" at issue were the result of a claimed lack of knowledge and information – information that was readily accessible to Defendant in its own

business records. Furthermore, these "lack of knowledge and information" denials, asserted under Rule 8(b)(5), were made in Defendant's answer to the Second Amended Complaint ("SAC") <u>at a point in time when the case had already been pending for almost eight months</u>. Simply put, when Defendant filed its Answer to the SAC in June 2018, Defendant either knew or reasonably should have known the information that it claimed to be lacking.[1] And while Plaintiffs eventually gained evidence that Defendant did not incur the storage expense and prepare/repair expense amounts that were specifically listed in the Notices of Repossession,[2] this is beside the point. The fact remains that Defendant's deliberate indifference to facts that it knew or reasonably should have known failed to comply with Rule 8(b)(5) and violated Rule 11(b)(1) and (4).

### B. This is not a situation involving "factual disputes" that are "being litigated"; This dispute involves Defendant refusing to acknowledge what the facts actually are.

Defendant's Response also states that "[f]actual disagreements that underlie a party's claims, of the type challenged in Plaintiffs' Motion, are routinely resolved in litigation, and simply do not provide any basis for Rule 11 sanctions" (ECF 223, p. 1), and that "Plaintiffs admit that the documents they cite as evidence of M&T's 'knowledge' are just '*examples* of the pricing information in the Bank's business records', and are not necessarily indicative of pricing relating to the named Plaintiffs' specific repossession. (See ECF 223, p. 9; Emphasis in original). This

---

[1] As Plaintiffs pointed out in their Rule 11 Motion, on March 16, 2018, **prior** to filing its Answer to Plaintiffs' SAC, the Bank's "reasonable investigation" revealed that the listed "storage expenses" in its post-repossession consumer disclosure notice (the consumer notice mostly at issue in this case) were not accurate, as it explained to the Court that said amounts were listed only as a "<u>conduit of information as to the **FEES** *that could be charged by a third party*</u>" (ECF 44, pp. 6-7); Emphasis added). This indicates that, at the time of its Answer, that Defendant **knew**, based on its own business records, that it received free storage from its vendors, and therefore, did not incur, or pay, its vendors the storage fees listed in the Notices of Repossession. As such, it had knowledge such that it could have provided full and accurate answers to Plaintiffs' averments in the SAC, yet it did not.

[2] As alleged in the SAC, the Defendant's denials of which (based on lack of information) form the basis for Plaintiffs' Motion.

suggestion that the issue before this Court involves "factual disputes" to be litigated as to what Defendant's terms were with its own vendors regarding free storage, and therefore, whether Defendant incurred and paid these storage expenses is patently false. A more accurate description would be that there is a legal dispute regarding the **legal** implications of these **facts** – even though Plaintiffs is still waiting to learn many of these facts from Defendant after Defendant has played almost three years of hide-the-ball, including as set forth in Plaintiffs' Motion.

Point in fact, Defendant's Response continues by asserting that Plaintiffs' Rule 11 Motion refers to vendor contracts that may not have been in effect when the named Plaintiffs vehicles were repossessed. (See ECF 223, p. 9). This is a problem of Defendant's making. Plaintiffs offered these contracts as examples because they were what Plaintiffs' have been expressly told by Defendant to have been in effect, based on the documents produced by Defendant, though which do not make clear the exact period the price lists were in effect. For example, with respect to third party vendor MCRC, Defendant produced a contract from December 2005, with a price list from January 2007 (entered into prior to the named Plaintiffs Daisey's and Hosick's repossessions by MCRC) and a contract from March 2017, with a price list from December 2016.

On numerous occasions, Plaintiffs have raised the issue of whether all contracts and price lists were produced because it appeared that significant gaps existed between contract dates. Defendant indicated that it has produced all contracts and that earlier versions renewed automatically if they were not replaced with revised contracts. Defendant's argument here – advanced in the Response and criticizing Plaintiff for referring to the incorrect versions of the contracts (even though Defendant would know this information, or reasonably should be able to obtain it) – only raises additional concerns as to whether all relevant versions of the vendor contracts have been produced as required by the Court's 1/11/18 and 4/13/18 orders. This

happening also underscores the need for the agreements from the vendors themselves thought the

subpoenas, which the Defendant has objected to (which is the subject of the pending discovery

dispute). [3]

> Defendant's Response continues this mantra with the following:

> Most telling of all, however, is Plaintiffs' acknowledgment that the parties are still
> engaged in discovery on this very issue. *See id.* (acknowledging that "[d]iscovery
> is ongoing", and that the parties are still determining "which contract and rates
> applied to certain timeframes during the class period). It simply does not stand to
> reason that M&T should have affirmatively admitted alleged "facts" in 2018 ***that
> the parties are still investigating in 2020***.

(ECF 223, p. 9-10);

What is really "[m]ost telling of all, however" is that Defendant now asserts that **both**

**parties are still in the dark,** still trying to figure out, through discovery, as to whether Defendant

incurred and paid the listed storage expenses (which, by contract, it received for free) and whether

Defendant incurred the listed $200 prepare/repair fee (for the sale of the vehicle) when it itemized

this amount (in order to redeem the vehicle or reinstate the contract – before sale).  The idea that

the Defendant does not know if it incurred certain expenses for certain accounts and, if so, in what

amounts, which is what Defendant's argument boils down to, is beyond belief.

### C. Defendant's argument that it paid *some amount* for the "prepare/repair" expenses does not support its position that it lacked knowledge or information when it filed its Answer to the SAC as to whether it had actually paid the $200 amount listed in the Notice when it was sent.

Defendant's argument that it paid *some amount* for the "prepare/repair" expenses – for

vehicles that were eventually sold (although much more than the $200 amount listed) – has nothing

---

[3] While Plaintiffs did refer to an extraneous price sheet for MCRC specific to Ohio, Plaintiffs also attached
information for MCRC National, which includes pricing for Pennsylvania.

to do with whether the $200 amount <u>listed</u> as a "prepare/repair" expense in the Notices of Repossession was actually incurred by Defendant.

As to those vehicles that were actually sold, Defendant points-out that it actually paid more than the $200 amount that were uniformly listed in all Notices of Repossession. Specifically, Defendant states that:

> To the contrary, discovery completed after the Answer was filed demonstrates that M&T did, in fact, pay expenses for preparing/repairing the vehicles for Plaintiff Flynn, Plaintiff Hosick, and Plaintiff Abbott. *See* Berg Decl., Ex. D, at Response to Request No. 2 (establishing that M&T paid $921.00 in repair/prepare expenses for Plaintiff Flynn's vehicle); *Id.* at Response to Request No. 3 (establishing that M&T paid $400.07 in repair/prepare expenses for Plaintiff Abbott's vehicle); *id.* at Request No. 4 (establishing that M&T paid $782.78 in repair/prepare expenses for Plaintiff Hosick's vehicle). Thus, because M&T did, in fact, pay these expenses, there is no basis for Plaintiffs to claim that, in M&T's Answer to Plaintiffs' Second Amended Complaint, M&T should have admitted that it did not pay these expenses.

The amount that Defendant paid/incurred for these "prepare/repair" expenses, at the time the Notices of Repossession were sent, were entirely in the possession of Defendant. And Defendant's denial in its Answer to the SAC that it lacked information and belief as to the <u>listed</u> $200 prepare/repair expense was contrary to Defendant's readily accessible business records showing that this was not an amount paid or incurred by Defendant. Eventually, only after being compelled to produce the information, Defendant disclosed that the "prepare/repair" expense of $200 was a <u>non-applicable amount</u> that was just uniformly listed in all Notices of Repossession as a "placeholder" for Defendant for the (eventual) accurate amount.

**D. Defendant's denial based on Plaintiffs' noted addition of emphasis does not support Defendant's denial based on the noted emphasis added; This is just more gamesmanship by Defendant in order to avoid admitting *anything substantive* in its Answers to the SAC.**

Lastly, Defendant claims that its denial of paragraph 35 of the SAC – which set forth a relevant portion of the Notice of Repossession that was actually sent to Plaintiff Daisey – was

appropriate because, according to Defendant, M&T's answer "denied Plaintiffs' efforts to mischaracterize the import of the referenced document by supplying inappropriate emphasis to certain verbiage" of the Notice, referring to Plaintiffs' use of bold and underlining to emphasize the language relevant to this case. Defendant's Response Brief states that it is "demonstrably false for Plaintiffs to contend that they 'did not characterize the document in any way', or that M&T's response was therefore improper."

Defendant's answer would only admit that M&T sent "*a Notice*" (i.e. *some* Notice) to Daisey. However, Plaintiffs SAC specifically noted "(**emphasis added**)" for this paragraph. Thus, there was no suggestion in the SAC that the language had been emphasized by M&T in the original Notice. A proper partial denial under Rule 8(b)(4) based on this should have admitted that it was the language used in the Notice, but denying that there was any such emphasis in the original.

WHEREFORE, based on the foregoing, and as more fully set forth and requested in Plaintiff's Motion for Rule 11 Sanctions, Plaintiffs respectfully request that this Honorable Court:

    A. Hold an evidentiary hearing to determine whether the Bank and its counsel knew that these specific allegations were, in fact, true when it/they denied same on the basis of lack of knowledge; and,

    B. As appropriate, impose a suitable sanction against the Defendant and their counsel, including, but not limited to ordering:

        1. That paragraphs 35, 37, 43, 44, 45, 53 and 59 of Plaintiffs' Second Amended Complaint are deemed admitted and that Defendant is precluded from arguing or presenting any evidence at the trial of this matter that Defendant incurred any storage fees or that Defendant paid $200.00 as a prepare/repair fee;

        2. That with respect to paragraph 38 of Plaintiffs' Second Amended Complaint, Defendant shall affirmatively state the amount that Plaintiff Daisey paid to M&T in order to get his vehicle back and itemize the $440 that Defendant required Daisey to pay to MCRC in order to get his vehicle back; and,

        3. That Defendant pay Plaintiffs' costs and attorney fees.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading has been sent to all counsel of record, each of whom subscribe to the Court's ECF system, as filed.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*