IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, PERCY CHAPMAN, and JANENE CHAPMAN, individually and on behalf of all others similarly situated | ) ) ) ) | CIVIL ACTION CLASS ACTION |
| Plaintiffs, | ) ) | Case No. 2:17-cv-04806-WB |
| v. | ) ) ) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | ) ) ) | |
| Defendant. | ) ) ) ) | |

**PLAINTIFFS' REPLY
TO DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## I.  INTRODUCTION

At issue in this case is the straight-forward question of whether form notices of repossession sent to several thousand consumers violate, in the same manner, Article 9 of the Uniform Commercial Code (UCC), 13 Pa.C.S. §9101 *et seq.*, individually and in *pari materia* with the Motor Vehicle Sales Finance Act (MVSFA), 12 Pa.C.S. §6101 *et seq.* This question is the common, predominating question of Plaintiffs' notice defect claims. The elements of class certification are clearly met.

M&T begins its Response with several pages on the merits of Plaintiffs' claims,  severely distorting Plaintiffs' claims and the law, all to the purpose of feigning complexity in its effort to obscure the fact this is a simple form notice defect class action. Because M&T relies on its distortions and misstatements in its argument against certification, Plaintiffs are reluctantly compelled to spend the first few pages of this Reply responding to M&T's merits arguments.

1

M&T's misdirection permeates its entire Response, and is addressed in greater detail below, but the following is typical:

> There is nothing in M&T's documents or databases that would allow it to determine whether a customer *primarily* used their vehicle for personal, family, or household use. (ECF 336, p. 57)

However, M&T's exemplars of the retail installment sales contracts (RISCs) entered into by putative class members (**Exhibit 1**)[1] feature check boxes to indicate whether the use is "personal, family, or household" or another use, or states that the contract is a "consumer credit contract". Similarly, the Notice of Repossession ("NOR") templates that Plaintiffs denoted in their Brief (ECF 323, p. 5-6) are what the putative class members' NORs are based on (**Exhibit 2**), and all of the NORs produced for the sample accounts state "M&T Bank" followed by "Consumer Lending Department". Thus, despite its protestations in its Response, M&T's contention is belied by its own forms, and utterly discreditable and dishonest. This is the type of contrived issues Defendant has resorted to in an attempt to block class certification of these claims. It does so because it has no legitimate means of seeking denial other than by false barriers.

## II.  RESPONSE TO M&T'S PURPORTED "FACTS OF RECORD"

### A.  Plaintiffs are not seeking to expand the class beyond Pennsylvania

As a preliminary matter, Plaintiffs assure the Court that they are not seeking to expand the class to include claims under the laws of any other states other than Pennsylvania, as M&T alleges. (ECF 336, p. 10-12). Plaintiffs' revised proposed class definitions limit this lawsuit (1) to people to whom M&T directed notice of repossession ("NOR") to a Pennsylvania address (ECF 323, p. 19-21), or (2) debtors whose vehicles were repossessed in Pennsylvania, because Pennsylvania's UCC and MVSFA control claims regarding repossession notices and fees. But as M&T claims that

---

[1] Exhibits filed in Supplemental Appendix.

some people in the classes entered into RISC's outside of Pennsylvania that contain choice-of-law provisions subjecting disputes to the laws of other states, Plaintiffs hereby revise the beginning subparagraph A of all of their proposed class definitions from "who entered into a retail installment sales contract for the financing…" to "who entered into a retail installment sales contract in Pennsylvania for the financing…", and will make any other amendments to the class definitions the Court deems necessary to limit the claims to Pennsylvania law, as was always Plaintiffs' intention.

### B.  M&T attempts to litigate the merits in its Memorandum, and in doing so severely distorts Plaintiffs' claims and the evidence

M&T claims, *ipse dixit,* that its NORs "satisfied the statutory requirements of the UCC and MVSFA" (ECF 336, p. 4), then spends pages 5 and 6 essentially admitting the contrary. Examination of the merits at the class certification stage serves only a limited purpose, and M&T's attempts to litigate the merits in its Response should not be permitted:

> Because the decision whether to certify a class "requires a thorough examination of the factual and legal allegations," the court's rigorous analysis may include a "preliminary inquiry into the merits," and the court may "consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take."

*Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 176 (3d. Cir. 2009); *see also Gonzalez v. Corning*, 885 F.3d 186, 201 (3d Cir. 2018).  As stated above, Plaintiffs will briefly address M&T's arguments to clear up M&T's distortions and misstatements of the merits which they rely upon in their arguments opposing certification.

The essence of Plaintiffs' NOR defect claims is that M&T listed non-actual, unincurred amounts in the NORs as a matter of pattern and practice during the class period. For example, M&T has admitted that it does not list the actual amount incurred, as of the date of the date the NOR was sent, for preparing/repairing the vehicle for sale. M&T admits that instead of listing the actual amount, it included a uniform $200 for preparation/repair of the vehicles for sale. (ECF 336,

p. 5). M&T explains that this was a (uniform) "estimate" or "placeholder" for some possible future actual amount. The NORs do not describe it as an "estimate" or "placeholder" but instead advises that this amount will have to be paid in order to redeem. M&T's NORs state either "As of the date of this notice, the amount required to redeem the Vehicle is:", or "To redeem the Vehicle you must pay the total redemption amount set forth below … Plus any expenses incurred and less any refunds received after the date of this notice". [2] Thus, this $200 prepare/repair fee is a false amount listed by M&T in the NOR sent to every putative class member in this case, and as a result the amount required to redeem listed in M&T's NORs is also false. The UCC states that only amounts that are reasonable and incurred by M&T can be charged as a prerequisite to redemption (13 Pa.C.S. §§9623(b), 9615(a)(1), and the UCC and MVSFA (12 Pa.C.S. §6256) in *pari materia* state that only "actual, reasonable, and necessary" amounts can be charged by a secured lender as a prerequisite to redemption and this admitted estimate was not incurred by M&T at the time the notice was sent.

M&T proffers many excuses for including false statements in its NORs, contending it provided estimates (without denominating them as such) for the benign, and disingenuously implied beneficial, purpose of "placing the [customer] on notice that an additional fee for preparing/repairing the vehicle for sale may be assessed to them", while advising that the borrower may call M&T to obtain information regarding the redemption amount. The Pennsylvania Legislature included no such exceptions in the UCC or MVSA, and this Court cannot grant such an exception to M&T. *Hahnemann University Hosp. v. Edgar*, 74 F.3d 456, 464 (3rd Cir. 1996) ("[I]n any event it is not the place of this court to create judicial exceptions to a Pennsylvania

---

[2] As seen in the templates of the NORs sent to putative class members – M&T047066-069, 047074-075, 047076-079, 047080-085, and 047092-094 (**Exhibit 2**), which were identified in Plaintiffs' Brief (ECF323, 5-6).

statute * * *"). M&T cannot send NORs with improper amounts and unilaterally place the burden on the consumer to call M&T to get the correct amount. Plaintiffs are at a loss as to how this benefits the consumer, as M&T claims.

M&T argues that its customers are only assessed the expense amounts actually incurred. (ECF 336, p. 6). First, this is irrelevant to Plaintiffs' claims, which focus on whether M&T's NORs accurately stated the prepare/repair expense incurred by M&T at the time the NOR was sent, which is what the UCC and MVSFA require, and, as stated above, is what M&T's NORs explicitly claim. M&T's chosen exemplar is revealing: "For example, Mr. Daisey redeemed his vehicle *before* any prepare/repair expenses were incurred and, as a result, was not assessed; nor did he pay any prepare/repair fees." (ECF 336, p. 6). The NOR sent to Daisey (second NOR in Exhibit 2 to ECF 323), lists $200 for "Expense of preparing/repairing the Vehicle for sale", as part of the "Total redemption amount of $1,572.28", and states Daisey "must pay the total redemption amount set forth below" to redeem the vehicle and states "Plus any expenses incurred … after the date of this notice," denoting that the $200 has been incurred as of the date of the NOR. Thus, M&T admits Daisey's NOR contained an unincurred, non-actual $200 prepare/repair expense that it informed Daisey he would need to pay to redeem as of the date of the NOR, which he ultimately did not owe or pay.[3] M&T goes on to claim, regarding Plaintiffs' improper storage fees claim, that M&T would be billed for and pay storage fees for customers who redeemed. This is incorrect, as the third-party vendors either charged the borrower directly, or M&T collected it from the borrower on behalf of the vendors. This was admitted by Deborah Peck, who was employed by M&T as a Repossession Specialist and then a Group Leader in the Repossession Department for most of the class period, who testified that the third parties first collected fees directly from the borrowers, and

---

[3] See Berg Declaration (ECF 336-1, ¶6(b) – admitting Daisey was not assessed and did not pay any prepare/repair fees.

then the procedure changed so that M&T collected it from the borrowers on behalf of the third

parties. (**Exhibit 3**, Peck dep., p. 107-109). Yet, M&T includes these fees in the NORs, in violation

of both the UCC and MVSFA (as fees must be actual and incurred by the secured lender).

### C.  Plaintiffs proposed class definitions ensure that only NORs with the claimed defects are included in the class

M&T attempts to confuse the issues more, stating "Contrary to Plaintiffs' claims, not all

of the NORs sent by M&T during the relevant period included this $200 estimated expense." (ECF

336, p. 6).  Plaintiffs explicitly state that they are excluding NORs which were based on several

templates that were irrelevant to this matter. (ECF 323, pp. 4, 7). The templates that Plaintiffs

deemed irrelevant (*Id.*, fn. 8) are those without an itemized prepare/repair expense. Plaintiffs'

proposed class definitions limit the class to persons who were sent NORs with an itemized $200

prepare/repair expense, thus excluding the NORs without the $200 prepare/repair expense

itemization. Plaintiffs have reduced the number of relevant sample accounts to exclude these

irrelevant notices, as a few were inadvertently included in the sample spreadsheet attached as

Exhibit 7 to Plaintiffs' original Brief. (See revised spreadsheet, **Exhibit 4**).

### D.  Plaintiffs' transactions do not require an individualized analysis

M&T claims that the Plaintiffs have disparate experiences requiring individual evaluation

of each class members' repossession, and proceeds to list a purported summary of each Plaintiff's

experience. (ECF 336, p. 12-17).  But critically, each Plaintiff's vehicle was repossessed, and each

was sent a NOR listing fabricated repossession-related expenses. M&T first goes into detail as to

each Plaintiffs' deficiency balances, and whether they could have afforded to redeem their

vehicles, but this is irrelevant to Plaintiffs' claims, which deal only with the content of the NORs.

M&T notes that Plaintiff Daisey received his NOR after he redeemed his vehicle. This is

also irrelevant – the sending of the improper notice is the basis for liability, and every

noncompliance with the relevant UCC provisions result in liability, pursuant to 13 Pa.C.S. §9625, cmt. 4. See *Coy v. Ford Motor Credit Co.*, 422 Pa. Super. 76 (1993) ("The term "to notify," under the UCC, does not include the notion that the person to whom notice is sent must receive it.").

M&T notes that Plaintiff Abbott voluntarily surrendered his vehicle, which is true but also irrelevant, as the UCC requires NORs to be sent when a secured party disposes of collateral after default, but does not distinguish this requirement based on whether the vehicle was involuntarily repossessed or surrendered. 13 Pa.C.S. §§9611(b). The MVSFA requires NORs to be sent when "repossession of a motor vehicle subject to an installment sale contract is effected other than by legal process". 12 Pa.C.S. §6254(a); See also *Cosgrove v Citizens Auto Finance Inc*, 2010 WL 3370760 (E.D. Pa, Aug. 26, 2010) ("*Cosgrove I*"), in which the Court held that the §623(D) of the MVSFA (the prior, substantively similar, codification of 12 Pa.C.S. §6254) requiring sending of NORs, was not intended to distinguish between involuntary repossession and voluntary surrender because "voluntary surrender is preferred under the law" as it "reduces potential conflicts between debtors and creditors" *Id.*, p. 3, and

> A person who relinquishes his car in the face of pressure from creditors and a person whose car was seized from him both have the same "forlorn hope that if he is notified, [he] will either acquire enough money to redeem the collateral or send his friends to bid for it." Indus. Valley Bank & Trust Co. v. Nash, 349 Pa.Super. 27, 502 A.2d 1254, 1263 (Pa.Super.Ct.1985) (quoting J.J. WHITE AND R.S. SUMMERS, UNIFORM COMMERCIAL CODE, §26–9 (2d ed.1980)). *Id.,* p. 3.

M&T then impugns the character of Plaintiff Flynn, alleging he submitted false testimony, in a ham-fisted attempt to challenge his adequacy. Flynn testified that he borrowed money from his family in an attempt to raise funds to redeem his vehicle. Following the deposition, he submitted an errata sheet that "upon further reflection" he did not receive money from his brother or mother relating to the repossession of his vehicle, and that he had a "Lapse in Memory". (See Exhibit L to ECF 336).

## III. PLAINTIFFS AND THE PUTATIVE CLASS MEET THE PREDOMINANCE REQUIREMENTFOR CLASS CERTIFICATION

### A. Plaintiffs' Claims do not Require an Individualized Review of Class Members' Files

M&T cites *McDonald v. Wells Fargo*, 374 F.Supp.3d 462, 511 (W.D. Pa. 2019) in support of the proposition that adjudication of Plaintiffs' claims require looking at the creditor's intent or the borrower's reliance or knowledge. (ECF 336, fn. 16).[4]  M&T cites to a statement in *McDonald* that "whether a notification is reasonable is fact-intensive" and notes that *McDonald* denied certification.  However, a finding of unreasonableness is not required for all of Plaintiffs' claims, only their alternative commercial unreasonableness claim. (ECF 323, p. 10 and fn. 11). M&T overlooks the further holding in *McDonald*: "A [NOR] failing to include all the criteria [in the UCC] is insufficient as a matter of law." *Id.* at 512.

More importantly, *McDonald* is inapplicable to the present case. Its facts are atypical and was from the beginning ill-suited for class action treatment. It dealt with a deceased debtor, a straw purchase, an estate as the named plaintiff, and potential fraud by the debtor, the vehicle driver, and an attorney. The instant action presents none of these ancillary issues, nor any other individual predominating factual differences. Second, the theories in *McDonald* that survived summary judgment were "(1) a claim under section 9610 challenging Wells Fargo's repossession of the vehicle as commercially unreasonable under the MVSFA and failing to recant the minimum bid in a Notice; and, (2) conversion" (*McDonald* at 510), neither of which are similar to Plaintiffs' UCC notice defect theory of liability under Sections 9614, 9615, and 9623 or Plaintiffs' obligation of good faith theory of liability. Third, unlike in *McDonald*, Plaintiffs here principally assert a violation of the UCC for listing *admittedly* un-incurred costs and fees for services not rendered

---

[4] M&T also relies on *McDonald to* oppose certification of Plaintiffs' commercial unreasonableness theory of liability (ECF 336, pp. 26-30), and Plaintiffs will address *McDonald* in that context separately, below.

based on form documents. Fourth, *McDonald* does not address the two most significant Pennsylvania authorities on proper notice under the UCC: *Cubler v. TruMark Financial Credit Union*, 83 A.3d 235 (2013) and *Indus. Valley Bank & Trust Co. v. Nash*, 349 Pa.Super. 27, 502 A.2d 1254 (Pa.Super.Ct. 1985). Finally, *McDonald* does not mention the doctrine of *pari materia*, a statutory construction concept that underlies one of Plaintiffs' legal theories of liability as to the NORs.

M&T argues that Plaintiffs' claims are not subject to common proof, arguing that all of Plaintiffs' claims are fact-intensive, and attempts to conflate Plaintiffs' commercial reasonableness theory of liability under 13 Pa.C.S. §9610(b) with the UCC's §9611(b) requirement that a secured party must provide a "reasonable authenticated notification of disposition". (ECF 336, p. 23, fn. 18). First, Plaintiffs' main theories of liability are not based on reasonableness, but on specific defects in the notice, and commercial unreasonableness is only an alternate theory of liability. Second, M&T is essentially contending that *all* UCC notice defect cases are fact intensive and thus not proper for certification. That proposition, however, runs head first into the undeniable fact that numerous federal and state courts have certified such form notice defect cases. (See ECF 323, p. 22 and fn. 13). M&T would have this Court flatly preclude notice defect lawsuits under the UCC, leaving individual actions the only option for individual consumers, who are rarely aware that the NORs sent to them do not comply with statutory requirements, and few if any would be likely to have the knowledge, time, or resources to bring a lawsuit against a sophisticated financial institution for statutory damages which would be $8,330.00 on average (per sample discovery) or for actual damages which would likely be less than statutory damages. M&T is clearly counting on the economic reality that, if it can prevent such claims being pursued in a class action format, they cannot, for practical purposes, be pursued against M&T at all.

Form notice defect cases are normally certified, especially when they are unlikely to be litigated individually.

> Predominance is readily satisfied, where the core claims asserted by each Class member all arise out of the same transaction or occurrence—the receipt of debt collection letter(s) from the Defendants. … *See, e.g., Saunders,* 2002 WL 1497374 at *8 ("In this case in which defendants sent substantially similar debt collection letters to members of the Berks Subclass and Kozloff Subclass 'common questions of law and fact predominate because of the virtually identical factual and legal predicates of each class member's claim.'" (quoting *Smith v. First Union Mortgage Corp.,* 1999 WL 509967 at *2 (E.D.Pa. July 19, 1999))); *... See also Saunders,* 2002 WL 1497374 at *8 ("A class action is superior to individual lawsuits in this case because it provides an efficient alternative to the infeasibility of pursuing individual small claims, each seeking relief for violations of federal and state law with respect to substantially similar debt collection letters, whose individual litigation expenses would exceed any potential recovery.").

*Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267, at *4 (E.D. Pa. May 9, 2003)

The following is a concise explanation of how UCC notice defect cases satisfy predominance:

> In this case, the questions of whether Hyundai engaged in a uniform course of conduct with respect issuing the same or substantially similar pre-disposition Notices to class member and whether these Notices violate Ohio law are central to this litigation. The success of each individual claim will depend on a favorable, disposition of the common question of whether. Hyundai's, standardized forms were statutorily deficient under the laws of Ohio. The claims of the Ohio class members arise out of, and are based on this common nucleus of operative facts. These issues, in turn, predominate and are the focus of the efforts of all of the
> putative litigants.

*Jenkins v. Hyundai Motor Fin. Co.*, No. C2-04-720, 2008 WL 781862, at *8 (S.D. Ohio Mar. 24, 2008)

M&T cites to *Wesbanco Bank, Inc. v. Beattie*, 2017 WL 678836 (Pa. Super) for its claim that what the borrower is aware of is relevant to Plaintiffs' claims. *Wesbanco* is a non-precedential state court decision, and it is not a notice defect lawsuit like the current case, but was a lawsuit by a lender to obtain a deficiency balance after repossession and resale of the defendant's vehicle. The court in *Wesbanco* analyzed whether the notice sent to the borrower put the defendant "on

notice that WesBanco intended to collect on his outstanding debt" for purposes of determining his liability for a breach of contract (not, as in the present case, where the claim is that the notice was defective, and thus, automatically entitling the plaintiffs and class members to damages under Section 9625). The court held that summary judgment was properly granted because the evidence showed that the defendant entered into a loan and defaulted on his payments. *Id.* at 4, 5.[5] The Court in *Wesbanco* was analyzing the NOR for a completely different purpose than the claims in the present case.

M&T cites to 13 Pa.C.S. §9614(5) for its argument that NOR errors must be misleading in order to render the NOR insufficient (and thus purportedly require individualized analysis of each transaction). Plaintiffs allege the NORs all suffer from the same deficiencies. Any analysis of whether the NORs are misleading would be the same for each class member. Likewise, M&T's statements that "Mr. Daisey himself never received the NOR prior to redeeming his vehicle, and thus cannot represent any putative class member that claims to have been misled by any NOR" (ECF 336, p. 24) and "there is no 'common evidence' that can be used to establish Plaintiffs' claim across the class" (Id., p. 25) are nonsensical – the recipient's knowledge and state of mind are irrelevant to whether the NOR sent to them failed to comply with statutory requirements, which is

---

[5] Further, the *Wesbanco* decision has been criticized for relying on the wrong statutory provision: "In so ruling, the Court [in *Wesbanco*] seems to rely on 13 Pa.C.S.A. §9613(3) which provides that the contents of a notification providing substantially the information specified in 13 Pa.C.S.A. §9613(1) are sufficient even if the notification includes information not specified by that paragraph or minor errors which are not seriously misleading. The difficulty with such reliance is that 13 Pa.C.S.A. §9613(3) is not incorporated by reference into 13 Pa.C.S.A. §9614 and arguably does not apply [to a consumer goods NOR].…The requirements of 13 Pa.C.S.A. §9614, covering consumer-goods transactions, are significantly more stringent than those under the general provisions of 13 Pa.C.S.A. §9613. See, generally, Official Comment to 13 Pa.C.S.A. §9614." *15 West's Pa. Forms, Commercial Transactions* §9614 Form 1, Commentary.

what triggers liability under Section 9625 (see cmt. 4). The other cases cited to by M&T regarding "individual inquiry" precluding class action are likewise irrelevant.[6]

M&T further points to 13 Pa.C.S. §9614(2) which states that "A particular phrasing of the notification is not required." <u>The issue is not the phrasing of the NORs, but the improper amounts listed in them.</u>

M&T misconstrues a statement in Plaintiffs' Brief out of context. In context, Plaintiffs said:

[the text of 13 Pa.C.S.A. §§9623(b) and 9615(a)(1)]. Thus, M&T's Notices of Repossession, which purportedly inform the Plaintiffs and putative class members how much they will have to tender to redeem the vehicle as of the date of the sending of the NOR, can only include in the redemption amount expenses actually incurred by M&T. Thus, by including the $200 estimate for the Prepare/Repair Expense, M&T violated the UCC. (ECF 323, pp. 9-10).

M&T twists this straightforward proposition as requiring the Court to examine the expenses actually incurred in each repossession to determine M&T's liability. (ECF 336, p. 22 and fn. 17). The sophistry is patent – the fact the NORs contained an estimated prepare/repair expense, and a storage expense that does not account for the free days of storage M&T received, alone constitute a violation of the UCC.

M&T continues its efforts to confuse the issues by citing to 13 Pa.C.S. §9613(2) and (3) (ECF 336, pp. 23-24) in support of its argument. The missing context are these initial words of §9613: "Except in a consumer-goods transaction, the following rules apply". As part of the class

---

[6] *Slapikas* v. *First Am. Title Ins. Co*., 298 F.R.D. 285, 298 (W.D. Pa. 2014) is an Unfair Trade Practices and Consumer Protection Law (and related common law claims) title insurance overcharge case where the court found that justifiable reliance (required for the UTPCPL claim) would have to be determined on an individual basis. Justifiable reliance, or any reliance, is not an element of UCC Section 9625 liability. *Ferreras v American Airlines, Inc.*, 946 F.3d 178 (2019) involved alleged overtime violations of the New Jersey Wage and Hour Law, where the court found that the timekeeping system could not provide commonality because each employee would have to provide individualized proof that they were actually working during the time period for which they claimed they were not paid. *Chen v. Amtrak*, 2019 WL 5294419 (E.D. Pa., 2019) is a nuisance, trespass, and negligence case required individualized inquiries into whether herbicide sprayed by the defendant had drifted onto each putative class members' property and if so whether such was an unreasonable invasion.

definition involves motor vehicles purchased for personal, family, or household purposes (see above, p. 1), the repossessed vehicles in this case all fall within the UCC definition of consumer goods (13 Pa.C.S. §9102), thus 9613(2) and (3) are inapplicable here.[7]

M&T raises another irrelevant case, *Colonial Pacific Leasing Corp. v. N & N Partners, LLC*, 981 F.Supp.2d 1345 (N.D. Ga., Nov. 4, 2013) to support its argument that individualized evidence is required for Plaintiffs' claims that the notices are defective. *Colonial Pacific* is a Georgia breach of contract case that involved the repossession of <u>commercial</u> equipment, as opposed to the present case which is a notice defect case involving <u>consumer</u> vehicles requesting damages under Section 9625 of the UCC. The UCC treats notices regarding commercial and consumer collateral differently (e.g., §9613 vs §9614). The defendant in *Colonial Pacific* claimed that the secured party's sale of the repossessed equipment was commercially unreasonable[8] thus the lender could not obtain a deficiency judgment. Plaintiffs are not claiming the sales of the vehicles themselves are commercially unreasonable. Further, the quote from *Colonial Pacific* that M&T cites (ECF 336, p. 24) dealt with whether the proper party sent the NOR, which is not a claim made by Plaintiffs.

M&T incorrectly argues that: (1) §§9623(b) and 9615(a) "do not apply" to NORs, and (2) if applicable, they would require individualized inquiry. (ECF 336, pp. 25-26). Sections 9623(b) and 9615(a) provide that a debtor redeeming repossessed collateral is only required to pay "expenses of retaking, holding, preparing for disposition, processing and disposing … incurred by

---

[7] §9614, addressing consumer goods, does incorporate §9613(1) regarding required minimal content for consumer NORs, but §9614 does *not* incorporate §9613(2) or (3). Further, §9613(2) applies only to claims a notification lacks information required by §9613(1) – plaintiffs do not make such a claim.

[8] Plaintiffs are at a loss as to why M&T relies on a case involving commercial unreasonableness in a section purportedly dealing with "Plaintiffs' claims under Section 9614" (ECF 336, heading on p. 22), rather in the next section where M&T addressed Plaintiffs' commercial unreasonableness theory of liability, other than as part of its main strategy to confuse the issues.

the secured party". (ECF 59, ¶¶69-73). Hence, M&T's NORs listing unincurred (estimated) prepare/repair expenses and unincurred storage expenses as part of the amount required to redeem violate §§9623(b) and 9615(a), because a notice obviously cannot state something contrary to UCC requirements, and as stated in Plaintiffs Brief and throughout this Reply, no individual inquiry is necessary.

**B. Class Certification of Plaintiffs' Commercial Reasonableness Theory of Liability is not Precluded**

M&T's next argument (ECF 336, p. 26) relies on *McDonald*, *supra*, to claim that Plaintiffs' commercial unreasonabless theory of liability is fact intensive. As stated above, *McDonald* is inapposite to the present case both on the facts and the claims at issue, and *McDonald* fails to address several important cases on certification of UCC notice defect claims.

Moreover, *McDonald* at 511 makes clear the Court was addressing commercial reasonableness "**In the sales context**" (emphasis added), citing *Savoy v. Beneficial Consumer Disc. Co.*, 468 A.2d 465, 467 (Pa. 1983) and *Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 200 (3d Cir. 2000), both of which dealt with claims that the actual sale of the collateral (disposition) was commercially unreasonable. Here, Plaintiffs claims address only defects in the NORs, not subsequent dispositions.

M&T argues that Plaintiffs were wrong to rely on the *Cosgrove* opinions to argue that a defective notice renders a disposition per se commercially unreasonable, stating that *McDonald* recognized that *Cosgrove* "***previously held that a technical violation of the MVSFA did not render the notice per se unreasonable***". (ECF 336, p. 28). *McDonald* does state this in fn. 318, noting that there are two opinions in *Cosgrove*, the second opinion (2011 WL 3740809) ("*Cosgrove II*") certifying the class, and that the first opinion (2010 WL 3370760) (*Cosgrove I*) purportedly "determin[ed] defendant's failure to notify plaintiff of its right to reinstate a contract

under the MVSFA did not render the defendant's notice unreasonable." Id., fn. 318.  However, the Court in *McDonald* misinterpreted the *Cosgrove I* opinion, which only denied plaintiffs motion for leave to amend to add a specific claim under the MVSFA because "[t]he notice of repossession these debtors received cannot be deficient for failing to tell debtors that they had the option to make a request [for reinstatement] that could be summarily denied", as this was no right to anything. *Cosgrove I,* 2010 WL 3370760. Hence, M&T's invocation of *McDonald* for the proposition a defective notice cannot render a disposition per se commercially unreasonable is baseless.

M&T then argues that the *Dudo* and *Ryan* cases relied on by Plaintiffs are unopposed settlement orders, and there was no evidence of rigorous analysis. (ECF 336, p. 28-29). M&T does admit that that the Eastern District held that a judgment entered with the consent of the parties "may involve a determination of questions of fact and law by the court" if a showing is made that that was the case.[9] This is the case in both *Dudo* and *Ryan*. The *Dudo* Final Approval order states that it approved the settlement "in light of the factual, legal, practical and procedural considerations raised by this case." (**Exhibit 5**, ¶ 2). The Court in *Dudo* also specifically stated that each requirement of certification was met, and includes an analysis of the issues  (*Id.*, p. 2-3) of whether commonality and predominance were met.

### C. The *Pari Materia* doctrine applies and does not require an individualized review on any issues

M&T's argument that the *pari materia* doctrine is inapplicable to this case misapprehends the Rule of Statutory Construction relating to *pari materia* and its application to the UCC and MVSFA. As Plaintiffs' Brief noted, "Statutes or parts of statutes are in *pari materia* when they

---

[9] *Becker v. Bank of N.Y. Mellon Trust Co., N.A.*, 2012 U.S. Dist. LEXIS 192813, at *24 (E.D. Pa. Oct. 31, 2012) citing *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953).

relate to the same persons or things or to the same class of persons or things." 1 Pa. C.S. §1932(a).

"Statutes in *pari materia* shall be construed together, if possible, as one statute." 1 Pa. C.S.

§1932(b).  This has been an essential statutory construction doctrine in the United States for almost

two centuries.  The US Supreme Court held in *United States v. Freeman*, 3 How. 556, 564-65

(1845):

> "The correct rule of interpretation is, that if diverse statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts in pari materia are to be taken together, as if they were one law. (Doug., 30; 2 Term. Rep., 387, 586; 4 Maule & Selw., 210.) <u>If a thing contained in a subsequent statute, be within the reason of a former statute, it shall be taken to be within the meaning of that statute</u> (Lord Raym., 1028); and <u>if it can be gathered from a subsequent statute in pari materia, what meaning the Legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute</u>. (Morris v. Mellin, 6 Barn. & Cress., 454; 7 Barn. & Cress., 99.)" (Emphasis added).

M&T is essentially arguing that Plaintiffs cannot bring claims for damages under the

MVSFA. To the contrary, the Honorable Wendy Beetlestone recently denied the portion of a

motion to dismiss on violations of the MVSFA, including Section 6254 which is a partial basis for

Plaintiffs' claims. *Mount v. Peruzzi of Langhorne LLC*, 2021 WL 3708714 (E.D. Pa. Aug. 20

2021), equating the MVSFA sections with the UCC, and acknowledging that an individual can sue

for violations of the MVSFA

> Count I alleges two violations of the Pennsylvania UCC provisions on repossession: 1) that Defendants unlawfully repossessed her vehicle in violation of Section 6251; and, 2) that Defendants failed to provide proper notice of repossession in violation of Section 6254 and Section 6257 … Plaintiff therefore states claims  under Sections 6254 and 6257 of the Pennsylvania UCC.

The Pennsylvania legislature explained in the enactment of the MVSFA, prior to its recent

recodification, the need for consumer safeguards pertaining to the repossession of motor vehicles

and collection practices. In this connection, the Pennsylvania legislature explained in the findings

and declarations of policy:

(a) That an exhaustive study by the Joint State Government Commission discloses nefarious, unscrupulous and improper practices … which are unjustifiably detrimental to the consumer and inimical to the public welfare. …

(c) The consumers, because of these legal technicalities and because of their unequal bargaining position, are at the mercy of unscrupulous persons and are being intolerably exploited in the instalment purchase of motor vehicles. Such exploitation is evident in…collection, repossession and other charges, unconscionable practices respecting ...repossession and redemption. 69 P.S. 602(c)(Emphasis added).

M&T makes the baseless argument that Plaintiffs are attempting to "override" or "rewrite" the statutory language of the UCC with their *pari materia* claim. The doctrine of *pari materia* does not override or re-write anything, it simply construes statutes relating to the same persons or things, together, as one statute. Plaintiffs did not invent the doctrine herein, nor is its application in this setting novel. These two statutes are properly construed together, as set forth in Plaintiffs Brief. As this Court recognized: "[S]ee *Nash*, 502 A.2d at 1263 (noting that Article 9 and the MVSFA should be construed together)." *Cosgrove v. Citizens Finance*, 2011 WL 3740809 at *1 (E.D. Pa. Aug. 25, 2011). *Nash* ruled that "the MVSFA and the UCC are clearly in *pari materia* since they relate to the identical thing – the sale of a repossessed motor vehicle…". *Nash*, 1263

M&T also argues that Plaintiffs are attempting to impose additional obligations on M&T, which is untrue, as (1) M&T is subject to the MVSFA regardless of whether Plaintiffs bring these claims or not, and (2) the doctrine of *pari materia* does not create obligations; it simply reads existing statutes together. The Pennsylvania Superior Court recognized that the UCC includes the NOR requirements of the MVSFA in *Cubler, supra*, a similar defective NOR case, which recognized that the UCC NOR provisions require both UCC NOR requirements ((1), (2) and (3) in the quote below) and MVSFA NOR requirements (12 Pa. C.S. §6254(c)(2)) ((4) in the quote below):

Cubler primarily relied upon sections 9613 and 9614 of the UCC (governing the contents and form of notification before disposition of collateral). These sections provide that, in a consumer goods transaction, before a secured party may dispose of

or sell the collateral following a debtor's default, the secured party must send the debtor a notice, setting forth, *inter alia,* (1) whether the sale will be public or private; (2) the time, date and place at which the collateral will be sold (if sold at auction); (3) that the debtor is entitled to an accounting of the unpaid indebtedness; and (4) the amount that must be paid to the secured party to redeem the collateral. *Cubler,* fn 1.

M&T argues there is no private right of action under the MVSFA. This is another red herring. Plaintiffs are not asserting a private right of action under the MVSFA, and instead are making claims under the UCC independently, and the UCC and MVSFA in *pari materia*, and are also claiming that the violations of the MVSFA render the NORs commercially unreasonable as a matter of law. Second, the cases M&T cite are not analogous to Plaintiffs' claims.

M&T relies on *Oliver v. City of Pittsburgh*, 11 A.3d 960 (Pa. 2011) to argue that ambiguity is required for *pari materia*. However, the facts of *Oliver* are not similar to those involved in this case. In *Oliver* an employer sought to have the Heart and Lung Act and the Motor Vehicle Financial Responsibility Law, two statutes that deal with very different subjects, read in *pari materia* so as to be able to subrogate recovery its employee received for a work-related motor vehicle accident. In stark contrast, *Nash* and its progeny speak directly to the requirement that courts must interpret the UCC and MVSFA *in pari materia* as they relate to the same subject matter. *E.g., Nash, supra*; *Cosgrove  2* at *2-3 (certified case to proceed as a class action for violations of the MVSFA); *McCall v. Drive Financial Services, L.P.* et al, No. 00005 of 2006 (C.P. Philadelphia, 2006) ("[p]laintiff and the potential class are entitled to uniform statutory damages as a result of the defendant's failure to comply with the UCC (and the MVSFA)"); *Coy, supra.* ("This court has held that the notice provisions of both the MVSFA and the UCC apply in cases of repossession and resale after default on a motor vehicle sales installment contract."); *Whiteman v. Degnan Chevrolet, Inc*., 272 A.2d 244, 247 (Pa. Super 1970) (holding the UCC and MVSFA in *pari materia* and that the MVSFA in isolation "was <u>not</u> intended to create a comprehensive system of regulation for the motor vehicle sale industry");

18

M&T then argues that *pari materia* does not apply because the UCC is not ambiguous, relying on *D'Happart v. First Commonwealth Bank*, 2021 WL 3825606 (Pa. Com. Pl., Aug. 25, 2021). D'Happart is a common pleas level case, relies on *Oliver* and *McDonald* which are inapposite to the present case, is in conflict with *Nash* and its progeny cited above, and is currently on appeal to the Superior Court of Pennsylvania at 580 WDA 2021. Further, even if ambiguity was a requirement, this is met. The Eastern District of Pennsylvania, in *Cosgrove v. Citizens Auto Finance, Inc.*, 2011 WL 3740809 (E.D. Pa. 2011), explained: "[t]he Pennsylvania UCC does not define "reasonable" notice, but Pennsylvania courts define the term by looking at statutes governing vehicle finance and repossession [e.g., the MVSFA]" citing to *Industrial Valley Bank, supra*.[10] 12 Pa.C.S. §6256 of the MVSFA (defining the types of fees that can be charged to redeem a vehicle), resolves the ambiguity in 13 Pa.C.S. §9623(b) and 13 Pa.C.S. §9615(a)(1) as to what it means for a secured creditor to show that it has "incurred" a "reasonable" expense, i.e., that it must be actual, necessary, and reasonable and supported by receipts or other satisfactory evidence of payment. Similarly, the Notice of Repossession content requirements of the MVSFA Section 12 Pa.C.S. §6254(c)(1)-(7) and the Notice of Repossession content requirements of UCC Section 13 Pa.C.S. §9614 (which incorporates 13 Pa.C.S. §9613(1)) both state what should be in a NOR but they have different requirements, and they must be read together to resolve the ambiguity of what information a NOR requires.

### D. Certification would not result in "mini-trials" regarding extinguishment of deficiency balances

M&T contends, without pointing to *any* controlling authority, that this Court must deny class certification because it will need to undergo an individualized inquiry to determine aspects

---

[10] This directly supports two of Plaintiffs' theories of liability: (1) the UCC and MVSFA are in *pari materia*, and (2) violations of the MVSFA are per se commercially unreasonable in violation of the UCC.

19

of the commercial reasonableness of the *sale*, particularly the value of each putative class member's vehicle. (*See* ECF 336, p. 33-35)(emphasis added). M&T's position is factually and legally incorrect. This case, however, is principally limited to the content of the discrete Notices of Repossession. The sale at most relates to the bank's affirmative defense of setoff.. Plaintiffs seek to represent a class of borrowers who were sent uniform, standardized Notice of Repossession insofar as the particular issues in question. The common issue of law is whether the alleged defects in the notice violate statutes. *See Cosgrove v. Citizens Auto Finance, Inc.*, 2010 WL 3370760 *5 (E.D. Pa. Aug. 26, 2010)("The evidence required to prove Plaintiff's claim is largely limited to the contract between the parties and the notice of repossession.")

One of Plaintiffs' theories is that the Notices of Repossession violates 13 Pa.C.S. §9611, mandating a "reasonable" disclosure. Attempting to rely upon *Savoy v. Beneficial Consumer Disc. Co.*, 503 Pa. 74, 468 A.2d 465 (1983), the Bank artificially injects wholly irrelevant factors to this statutory liability determination.[11] The *Savoy* Court applied the rebuttable presumption to *a deficiency judgment action* where the commercial reasonableness of *the disposition* was called into question, and did not raise the issue of 13 Pa. C.S. §9611, as referenced in SAC, ¶66. Thus, in that context, the challenge to commercial reasonableness of the sale creates a presumption that the value of the collateral equals the indebtedness secured unless the secured party rebuts the presumption. *Savoy,* 503 Pa. at 78, 468 A.2d at 467. *Savoy* addressed only the lender's burden to overcome the presumption.  *Savoy* had nothing to do with a borrower's defective notice claim under the code, federal procedure, nor class certification.

---

[11] Plaintiffs' citation to *Savoy* is taken out-of-context. The Defendant is free to file deficiency judgement actions (as was done in *Savoy*) in a state court for the few class members' whose claim may not be time-barred. But, the *Savoy* presumption has no application to the statutory claims at issue which provide for statutory damages unequivocally. "**Every noncompliance with the requirements of Part 6 in a consumer goods transaction results in liability, *regardless of any injury that may have resulted*.**" Official Comment to §9625(c)(2).

20

The only other potentially controlling appellate authority cited to by M&T is *United States v. Tabor Ct. Realty Corp.*, 803 F.2d 1288 (3d Cir. 1986), but *Tabor* was not a UCC and MVSFA vehicle repossession notice case. *Tabor* centered around a leveraged buy-out and a dispute over the validity of mortgages. *See Tabor Ct. Realty Corp.*, 803 F.2d at 1306 (3d Cir. 1986). *Tabor* also has no application here.

Again, Plaintiffs do not make any challenges to the sale prices or actual sales themselves. The bank injects confusion when it seeks to sweep up plaintiff's simple statutory claim with its more involved deficiency claim under a broad penumbra of "commercial reasonableness." *Savoy, supra.* Moreover, UCC section 9-507 in effect between 1980 and 2001 (referenced in Savoy, supra.) *did not* provide for a court to restrain collection of the underlying debt as a remedy. Current 13 Pa.C.S. §9625(a), relief requested in ad damnum clause of SAC, states: "If it is established that a secured party is not proceeding in accordance with this division, a court may order or <u>restrain collection</u>, enforcement or disposition of collateral on appropriate terms and conditions." The prior version of §9625 – UCC section 9-507, in effect between 1980 and 2001 – only allowed a court to restrain "<u>disposition</u>" of the collateral, and <u>if the disposition (i.e. sale) had already occurred</u>, then the debtor was <u>only entitled to statutory damages</u>.

Moreover, this case involves consumer protection statutes (the UCC and the MVSFA), which should be interpreted broadly in favor of the consumer. Thus, public policy strongly favors using §9625 as an enforcement mechanism where the statutory requirements have not been strictly followed. Permitting certification here, as most other courts have done with these repo-notice claims, is consistent with the Code's goals. *See Chisolm v TranSouth Fin. Corp.*, 194 FRD 538, 551 (E.D. Va. 2000)(certifying repo notice class, finding "the drafters of the UCC did not intend to place a burden upon debtors, but instead intended to police lenders under Article 9.")

The Bank's "rebuttal" argument is a red herring.  Plaintiff's defective notice claim is simple and stands on its own.  *See Cosgrove*, 2010 WL 3370760 \*5. Once certified, that case can readily be tried –if not susceptible to summary judgment (which Plaintiffs' respectfully submit it is as the notice violations [such as the admittedly *estimated* prepare/repair fee does not constitute an "actual" expense].  It is only the existing presumption that these class members owe nothing that the bank seeks to rebut as part of a *setoff* claim in reduction of plaintiff's minimum statutory damages.  But whether the bank can set off its contractual claim against the plaintiff's statutory claim is an open issue, recalling that the bank waived its right to counterclaim when it removed this matter to this Court. *Id* \*5.  But allowing the bank's mere setoff defense –which can at most reduce the plaintiff's statutory award –to override plaintiff's and the classes' express right to statutory damages would stand the Code's model on its head by depriving all the consumer class members of remedy while preserving to the bank alone its claimed deficiencies. This is why the weight of authorities, state and federal, have certified these claims despite the bank's claim to deficiency setoff. *See eg., Cooley v.  F.N.B. Corporation*,[12] 10010 (Lawrence County CCP 2013)(citing *Walzak v. Onyx Acceptance Corporation*, 365 Il. App. 3d. 664, 850 N.E.2d 357 (2006)("assuming that defendant's deficiency claims are not barred, that the mere threat or even the filing of such claims does not defeat certification"); "The disallowance of class certification merely because of the assertion of possible counterclaims would defeat the purpose of class action litigation. *Cooley, supra.; Chisolm, supra*; *Chipego, v. Five Star Bank*, No. 20110237 (Phl. CCP Sept. 2021); *Farley v. PSECU*, No. 001889 (Phl. CCP. 2020)(All attached as **Exhibit 6**).

**E.  M&T's Defenses do not require individualized proof**

    **1.  Bankruptcy filings do not create individualized issues**

---

[12] Richard Shenkan served as co-counsel for Plaintiffs in the contested certified class action, *Cooley, supra*.

M&T argues that M&T would have to search individual court records to determine which class members had filed for bankruptcy (it admits it has already identified 15% of the sample account members as having filed for bankruptcy). M&T claims it will need to identify these members in order to determine M&T's ability to pursue a deficiency balance via counterclaims, or to make potential res judicata or judicial estoppel defenses. However, as stated in the section below, M&T's counterclaims are permissive and should not be permitted in this class action, and consequently res judicata also does not apply. M&T argues that it will need to review the bankruptcy schedules to determine whether putative class members disclosed a cause of action against M&T, and if they have not, then M&T can claim their claims in this action are barred by judicial estoppel. This is baseless, as judicial estoppel requires, *inter alia*, an inconsistent position in two proceedings, and bad faith (*Danise v. Saxon Mortgage Services, Inc.*, 738 Fed.Appx. 47, 50 (2018)). Putative class members have not received any notice of this case, and have no reason to know they have these claims against M&T, thus neither the inconsistent position or bad faith prongs of judicial estoppel would be met. Further, the class notice can be revised to inform putative class members that if they have an open bankruptcy case, they need to consult with their bankruptcy counsel to discuss revising  their filings to give notice of their claims in this case.

Finally, M&T claims "it is an open issue" whether Chapter 7 debtors will have standing to be class members in this case, as the trustee assumes control over all assets of the debtor, including the claim. The class notice can be revised to further inform debtors in bankruptcy to consult with their bankruptcy counsel on this issue. Consequently, there is no reason why M&T would have to search to determine which putative class members have filed bankruptcy.

> **2. M&T's proposed counterclaims are permissive, lack independent federal jurisdiction, and are impermissible in this class action;**

M&T claims that class certification should be denied because of potential state law counterclaims and set-offs against putative class members. (ECF 336, pp. 37-38, 42-44). M&T's hypothetical and permissive breach of contract counterclaims and potential set-offs against the putative class members to collect deficiency balances have nothing to do with the notice claims brought by Plaintiffs on behalf of the putative class. Subject matter jurisdiction over the state law breach of contract claims, and to enforce state court judgements, is lacking, and even if this Court were to find that the permissive counterclaims and set-offs could be heard under 28 U.S.C. §1367, the Court should decline to exercise its jurisdiction.

Counterclaims, within the Federal Rules of Civil Procedure, can be either "compulsory" or "permissive." *See* Fed. R. Civ P. Rule 13. "Compulsory" counterclaims are defined as those "aris[ing] out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ P. Rule 13(a)(1)(A). If a counterclaim does not arise from the same transaction as the opposing party's claim, it is deemed a "permissive" counterclaim. Fed. R. Civ P. Rule 13(b). A counterclaim is deemed compulsory under Third Circuit law where it bears a "logical relationship to an opposing party's claim." *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,* 292 F.3d 384, 389 (3d Cir.2002); *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978). This "logical relationship" test is satisfied where separate trials would involve a <u>substantial duplication</u> of effort and time by the parties and the courts." *Id.* See also, *Vukich v. Nationwide Mut. Ins. Co.,* 68 Fed.Appx. 317, 319 (3d Cir.2003); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961). A "substantial duplication of effort" is likely to occur when claims involve (1) the same factual issues, (2) the same factual and legal issues, or (3) are offshoots of the same basic controversy between the parties. *Transamerica,* 292 F.3d at 390; *Xerox,* 576 F.2d at 1059.

While a compulsory counterclaim does not require an independent jurisdictional basis to be brought in federal court, even when it is purely a state-law claim, a permissive counterclaim requires an independent basis for federal jurisdiction. *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 988 (3d Cir. 1984); *Wolfington v. Reconstructive Orthopaedic Assocs. II, P.C.*, 268 F. Supp. 3d 756, 767–68 (E.D. Pa. 2016). Because M&T's counterclaims do not satisfy 28 U.S.C. §1331 or 28 U.S.C. §1332, the only other potential basis for jurisdiction over the permissive counterclaims is 28 U.S.C. §1367, which states "in any civil action of which the district courts have jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Courts have interpreted this to mean that supplemental jurisdiction can be exercised over permissive counterclaims if they arose out of a "common nucleus of operative facts" as the plaintiff's underlying claim(s). *Ambromovage,* 726 F.2d at 990 (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995)(noting that the Third Circuit treats section 1367 as codifying the jurisdictional standard established in *Gibbs*). *See also, Wolfington* 268 F. Supp. 3d 756, 769 ("The operative difference between the two test is that Rule 13 asks whether the claim and counterclaim arise from the same 'transaction or occurrence,' whereas Section 1367 asks whether the claim and counterclaim arise under a 'common nucleus of operative facts.'). While total congruity between all facts is not required to satisfy §1367, mere tangential overlap of facts is not sufficient to satisfy it. *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir., 1988).

Even if this Court were to find that M&T's state law breach of contract counterclaims arose under a "common nucleus of operative facts" as the Plaintiff's notice claims, the Court may decline to exercise supplemental jurisdiction if, among other things, "the [counter]claim substantially

predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *28 U.S.C. § 1367I(2) and I(4); Wolfington*, 268 F. Supp. 3d at 767–68; *See also, Watkins v. Synchrony Bank*, 2015 WL 5178134 at *2–3 (M.D. Pa. Sept. 4, 2015)(discussing a 'three-tiered analysis' that courts within the Third Circuit use to determine whether supplemental jurisdiction should be exercised, and explaining that this three-tiered analysis' is "designed to balance the benefits of increased judicial economy with principles of federalism [and] inquires specifically: (1) whether there is a "common nucleus of operative fact" between the state and federal claims; (2) whether the exercise of jurisdiction at issue would violate a particular federal policy decision; and (3) whether there are prudential reasons bearing on the appropriateness of hearing the state law claim." *citing Ambromovage,* 726 F.2d 972, at 989–90).

For its counterclaim argument, M&T does not rely on any Third Circuit case law – either from the Court of Appeals or from any district court in the Third Circuit. (ECF 336, p. 42-44). *Parker v. George Thompson Ford, Inc.,* 83 F.R.D. 378 (N.D. Ga., 1979) was a Fifth Circuit case at the time it was decided (now part of the Eleventh Circuit)*, Shelley v. AmSouth Bank*, 2000 U.S. Dist. LEXIS 11429 (S.D. Ala., 2000)*, and Heaven v. Trust Co. Bank*, 118 F.3d 735 (11th Cir. 1997) are Eleventh Circuit cases. All involved allegations that the defendant violated the Truth in Lending Act ("TILA"), among other claims. The Eleventh and Fifth Circuits, unlike the Third Circuit, have held that debt counterclaims are compulsory in TILA cases. *Heaven v. Tr. Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997); *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1363 (5th Cir.1979) (Holding that debt counterclaims are compulsory in Truth In Lending Act ("TILA") cases). Heaven does not dispute that debt counterclaims are compulsory in TILA and CLA cases as a general matter."); *Shelley v. AmSouth Bank*, 2000 WL 1121778, at *7 (S.D. Ala., 2000)("Finally, the defendant has counterclaims against some class members due to checks

presented against insufficient funds…Such counterclaims are compulsory. *See Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1364 (5th Cir.1979)(debt counterclaim under TILA is compulsory)).” *Parker* was decided before the Fifth Circuits decision in *Plant,* but *Parker* provided no analysis and simply relied on *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976) (En banc ). *See Parker,* 83 F.R.D. at 381. In *Mims* the District Court for the Northern District of Georgia, sitting en banc, concluded that a counterclaim for the balance of the underlying obligation in a TILA action is a compulsory counterclaim, overruling *Roberts v. National School of Radio and Television Broadcasting*, 374 F.Supp. 1266 (N.D.Ga.1974), which had previously held such counterclaims were permissive. *See Mims v. Dixie Fin. Corp.*, 426 F. Supp. 627, 628 (N.D. Ga. 1976). This Court specifically rejected the rationale of *Mims in Zeltzer v. Carte Blanche Corp.*, 414 F. Supp. 1221 (W.D. Pa. 1976).

*Cotchett v. Avis Rent a Car System, Inc.,* 56 F.R.D. 549, 552 (S.D.N.Y. 1972) never actually decided whether the counterclaims were permissive or compulsory. *Cotchett,* 56 F.R.D. at 552 (“there is no reason to decide the nature of the counterclaims at this time.”). Also, *Cotchett,* which involved up to 1.5 million plaintiffs and 100 defendants involved claims of conspiracy and price fixing in violation of antitrust laws. It was nothing like the simple UCC and MVSFA notice case now before this Court.

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 72 (E.D.N.C. 2008) was also nothing like this case. There, plaintiff dairy farm operators sued a defendant farm equipment dealer, alleging damages from failure of agricultural silage bags purchased from defendant's authorized dealers and asserting claims for negligence, breach of express warranty, breach of implied warranty of merchantability, unfair trade practices in violation of Wisconsin law, and restitution/disgorgement of unjust enrichment. *Farrar & Farrar Dairy, Inc.,* 254 F.R.D. at 70 (E.D.N.C. 2008). Plaintiffs sought to represent a class of individuals and corporations from

16 different states. *Farrar & Farrar Dairy, Inc.* 254 F.R.D. at 73. The *Farrar* Court noted that their would be unique defenses, including that "[c]ertain class members purchased silage bags from entities other than defendant or its authorized dealers; [c]ertain class members' claims are barred by the economic loss doctrine; [c]ertain class members' claims are barred by various individual contracts; [c]ertain class members' claims are barred by applicable statutes of limitation; [and] [c]ertain class members' claims are barred by the state-of-the-art doctrine. *Id.* at 74-75. The causation and affirmative defenses issues present in *Farrar* are not an issue here. Plaintiffs' claims are statutory claims, involving statutory damages, based on uniformly defective notices of repossession. The Official Comment to UCC Section 9625 makes clear that the minimum statutory damages do not require any showing of actual loss, reliance, or causation. 13 Pa. C.S.A. §9625I(2) and official comment 4.

*Czepiel v. Chemical Bank,* 764 F. Supp. 255, 256, 258 (D. Conn. 1991) is also not persuasive. The entirety of the analysis states: "[D]efendant's counterclaim is compulsory…As such, it is within the court's ancillary jurisdiction, and does not require an independent basis of subject matter jurisdiction." *Czepiel,* 764 F. Supp. At 258. *Czepiel* runs directly contrary to the well-reasoned opinion of this Court in *Cosgrove v. Citizens Auto. Fin., Inc.*, 2010 WL 3370760 (E.D. Pa., 2010), which just like this case was a notice of repossession case under the UCC and MVSFA, as well as numerous other cases from this district (and many others) holding that debt counterclaims are permissive rather than compulsory.

With respect to M&T's reliance on *Pinks v. M&T Bank Corp.,* that was pending in the Southern District of New York (Case No. 13-CV-1730), M&T misrepresents the Court's holding. Specifically, M&T states:

> In Judge Ellis' Report and Recommendation recommending that class certification be denied, having already held that individual issues predominate for other reasons, he did not need to address whether "the prospect of compulsory counterclaims for

deficiency balances" resulted in "individual issues predominat[ing], barring class certification." *Id*. at *20. <u>In his July 15, 2017 Order adopting Judge Ellis' recommendation, however, Judge Kaplan specifically went further, holding that the existence of compulsory counterclaims for deficiency balances necessarily results in the denial of class certification.</u> *See Pinks v. M&T Bank Corp.*, Case No. 1:13-CV-01730 (S.D.N.Y.), at Doc. No. 189. Accordingly, by virtue of the existence of compulsory counterclaims, individual issues predominate and class certification should be denied. (ECF 336, p. 44)

But Judge Kaplan <u>didn't</u> "specifically" go any further to hold that "the existence of compulsory counterclaims for deficiency balances necessarily results in the denial of class certification." *Pinks* was a UCC defective notice case, but the Plaintiff sought to represent a class of people from 20 states and the District of Columbia. (**Exhibit 7,** ECF 177, pp. 1-2, 6). On July 17, 2017, Judge Kaplan entered an Order holding that "Plaintiff's objections to the R&R are overruled, substantially for the reasons set forth in defendant's response [Dl 185] and his motions [DI 169, DI 186] are denied in all respects. <u>The Court notes also that it would deny class certification on the basis set forth at pages 10 – 13 of the R&R independent of the standing issues.</u> (**Exhibit 8,** ECF 189). After holding that Pinks lacked Article III standing, pages 10 – 13 of Judge Ellis' R&R explained that the multi-state nature of the proposed class action meant that individual questions of law would predominate over class issues. **(Exhibit 7,** ECF 177, p. 10-13). Then, on the bottom half of page 13, the R&R contains a section titled "C. Other Issues Raised by M&T Bank" addressing a number of other issues raised by M&T that the Court did not reach:

> <u>M&T Bank raises several other issues in its opposition to Pinks's motion for class certification that the Court does not reach</u>. Nevertheless, the Court's analysis above may impact the outcome of a determination on these issues.

> M&T Bank claims that individualized issues predominate because of (1) <u>the prospect of compulsory counterclaims for deficiency balances</u> and (2) <u>the existence of individualized defenses such as *res judicata,* set off, or recoupments for judgments obtained after the filing of the Complaint</u>. (Doc. No. 153 at 45-49) <u>For the other reasons</u> explained above, the Court's Recommendation agrees that individual issues predominate, barring class certification.

*Id.,* p. 13. This is the totality of the discussion regarding M&T's counterclaims for deficiency balances and individualized defenses such as *res judicata,* set off, or recoupments for judgments obtained against class members. The R&R, at the bottom of page 13 merely acknowledges that M&T raised the issues (along with several other issues not addressed). In fact, over the course of four pages, between pages 10 – 13 of Judge Ellis' R&R, less than 50 words are spent addressing potential counterclaims and set-off/res judicata issues. The remaining 99% (or more) of this space is spent addressing the multi-state nature of the class action and the numerous issues that posed.

M&T ignores cases from this Court, and others within the Third Circuit, holding that debt/breach of contract counterclaims in response to claims under TILA, FDCPA, TCPA, UCC, and the UCC in conjunction with the MVSFA, are permissive rather than compulsory. *Butler v. Police & Fire Fed. Credit Union*, 2020 WL 12654456 (E.D. Pa., 2020); *Wolfington v. Reconstructive Orthopaedic Assocs. II, P.C.*, 268 F. Supp. 3d 756 (E.D. Pa. 2016); *Ayres v. National Credit Management Corp.,* 1991 WL 66845 (E.D. Pa., 1991); *Watkins v. Synchrony Bank*, 2015 WL 5178134 (M.D. Pa. 2015); see also *Orloff*, 2003 WL 22100868, at *1 and fn 2 (E.D. Pa., 2003).

M&T also ignores *Cosgrove I,* which is directly on point. In *Cosgrove I,* just like this case, the Plaintiff alleged that Defendant violated the UCC and UCC in pari materia with the MVSFA. *Cosgrove,* 2010 WL 3370760, at *1, 3. Anticipating that many of the potential class members have deficiency balances on their loans, Defendant sought leave to amend its Answer to assert a counterclaim seeking a deficiency balance from each member of the potential class. *Cosgrove,* 2010 WL 3370760, at *5. The *Cosgrove* Court declined to exercise jurisdiction of the state law breach of contract counterclaims, holding that they were permissive counterclaims that did not form part of the same case or controversy as the Plaintiff's complaint:

> To begin with, CAFA does not provide this Court with original jurisdiction over Citizens' proposed counterclaim. CAFA, by its very terms, provides federal district courts with jurisdiction over cases brought by a "class of plaintiffs," not cases brought against a class of counterclaim defendants. ...
>
> …
>
> Because there is no original jurisdiction for Defendant's counterclaim, the Court must next determine if it can take supplemental jurisdiction over the counterclaim. The Court can only do so if the claim and counterclaim are so related that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a)…In this case, the issues of law and fact underlying the claims are quite different. Plaintiff's claim arises under state consumer protection statutes, whereas Citizens' counterclaims are a matter of pure contract law. The evidence required to prove Plaintiff's claim is largely limited to the contract between the parties and the notice of repossession. In contrast, for Citizens to prove that it is owed a deficiency balance, relevant facts include each plaintiff's payment history and Citizens' accounting thereof; the steps Citizens took to repossess the car; and the manner in which Citizens repossessed, stored, and sold the car. Although both Plaintiff's claim and the proposed counterclaims stem from various debtors' decisions to take out auto loans from Citizens, the relationship between the claim and the counterclaim is too tenuous to convert what would be a fairly streamlined [case]…Furthermore, allowing the assertion of such a counterclaim would take what is an arguably homogenous class and insert idiosyncratic issues, thereby defeating any possibility of meeting the "commonality" requirement of certifying a class under Federal Rule of Civil Procedure 23(b)(3). This would discourage potential class members from joining the class and run counter to Rule 23's objectives of promoting judicial economy, access to judicial relief, and deterrence of unlawful conduct…Therefore, the Court concludes that Defendant's proposed counterclaim is not compulsory and is thus not so related that it forms part of the same case or controversy as Plaintiff's Complaint. Thus, the Court denies Citizens leave to file its proposed counterclaim due to lack of jurisdiction.

*Cosgrove,* 2010 WL 3370760, at *5, *citing Orloff v. Syndicated Office Sys., Inc.,* 2003 WL 22100868 (E.D.Pa., 2003); See also, *Wolfington,* 268 F. Supp. 3d at 768 (Counterclaim in TILA case permissive and declining to exercise supplemental jurisdiction); *Watkins,* 2015 WL 5178134, at *3, *5 – 6 (Counterclaim in TCPA case permissive and declining to exercise supplemental jurisdiction); *Ayres v. National Credit Management Corp.,* 1991 WL 66845 at *1-2, *4 (E.D. Pa., 1991) (Counterclaim in FDCPA case permissive and declining to exercise supplemental jurisdiction);

Here, the class claims address the adequacy and validity of M&T's NORs in relation to the requirements of UCC Article 9, particularly 13 Pa.C.S.A. §§9611, 9614, 9616, 9623, 9625, and

the "commercial reasonableness" standard of §9610 (see Second Amended Complaint (SAC), ¶¶86-87). M&T's NORs were either substantively identical or differed only in irrelevant details (see **Exhibit 2**; SAC, ¶¶90-92;), so the content requirements of 13 Pa.C.S.A. §9615(a)(1), and redemption mandate of 13 Pa.C.S.A. §9623(b) constitute issues of fact and law common to all class members.[13] Also central to the class claims in this case are factual allegations that M&T charged fees – for storage, repair, preparation for resale, redemption, personal property, and administrative – that, while represented as reimbursement for its repossession-related expenses, were either wholly fabricated or fraudulently inflated (SAC, ¶¶36-37, 42-47, 52-53, 58-60, 74-75, 77, 82, 84) contrary to the UCC/MVSFA. The common issues of fact center on whether M&T charged fees it did not incur at all, or in excess of what it incurred. The fact that each member of the plaintiff class(es) defaulted on a vehicle loan made by M&T is a given; the key questions involve what M&T did (or failed to do) in foreclosing on its security interest in the associated vehicles, mainly in relation to notice requirements.

M&T's proposed putative counterclaims, on the other hand, all involve factual issues relating to its borrowers' liability for deficiencies remaining after foreclosure. Here, the amount owed by each class member at the time of foreclosure is an issue of fact, the interest rate of that borrower's individual loan is an issue of fact, and the proceeds realized from foreclosure (as well as the foreclosure-related fees of the auctioneer, usually a percentage of the amount bid) is an issue of fact. None of these factual questions is relevant to the class claims, *and none involve the same evidence as the class claims*. The class claims focus on M&T's compliance, or failure to comply, with the UCC and the UCC in pari materia with the MVSFA. In contrast, M&T makes no mention of the UCC whatsoever as being related to its putative counterclaims (ECF 336, pp. 42-44). Not

---

[13] Legal issues concerning M&T's (or its agents') compliance with the UCC in *pari materia* with the MVFSA, including but not limited to 12 Pa.C.S. §§6254, 6255, and 6256, are also part of the class action.

only is there no independent federal jurisdiction over such counterclaims, but there is little or no overlap between either the facts or the law governing the class claims on the one hand and the proposed counterclaims on the other. The "substantial duplication of effort and time by the parties and the courts" required by *Xerox* does not exist here. *Xerox Corp. v. SCM Corp.,* 576 F.2d 1057, 1059 (3d Cir.1978).

### 3. Judgements and potential set-offs, and res judicata issues, do not create individualized defenses

M&T's arguments with respect to judgements, res judicata issues, and potential set-offs fail for similar reasons as its counterclaim arguments. Res judicata has no application to class members previously sued in Pennsylvania Commonwealth courts because their notice claims asserted in this case would have been permissive counterclaims in Pennsylvania Commonwealth courts (unlike the Texas, Montana, and Alabama state law cases relied upon by Defendant). *Pa.R.Civ.P. 1031*; *Hunsicker v Brearman*, 402 Pa.Super. 347, 351, 586 A.3d 1387, 1389 (1991)("Under the Pennsylvania Rules of Civil Procedure, a defendant is not required to file a counterclaim; rather, the rule is permissive. Pa.R.Civ.P. 1031."); *Mistick Inc. v. City of Pittsburgh*, 166 Pa. Cmwlth. 294, 297, 646 A.2d 642, 643–44 (1994)(Inclusion of counterclaim in answer is permissive rather than compulsory, and defendant may file separate suit rather than pursuing cause of action raised in counterclaim in same proceeding). Defendant relies on *Benckini v. Lichtenwalner,* Nos. 1554 MDA 2012, 1555 MDA 2012, 2013 Pa. Super. Unpub. LEXIS 2033 (Pa Super. Sept. 26, 2013) (ECF 336, p. 38), but *Benckini* addressed Rule 233.1, which applies to bar frivolous claims brought by pro se plaintiffs. Moreover, res judicata bars a party from initiating a second suit against the same adversary based on the same "cause of action" as the first suit. *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 391 (3d Cir. 2002) (explaining there is a close connection between Rule 13(a) and the doctrine of claim

preclusion (res judicata) because the definition of a compulsory counterclaim mirrors the conditions that trigger a defense of claim preclusion); *See also, In re Mullarkey,* 536 F.3d 215, 225 (3d Cir.2008); *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). Here, the breach of contract counterclaims are permissive counterclaims under both Pennsylvania and Federal law. Thus, res judicata issues have no bearing on this notice case or on M&T's potential breach of contract claims for deficiency balances.

As to potential set-offs, after being compelled to provide discovery on that issue (ECF 147, p. 14), for the 588 sampled accounts, M&T produced a <u>single</u> <u>state court</u> complaint (and no actual final judgment). Speculative problems with case management are wholly insufficient to prevent class certification. *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 356 (E.D. Pa. 1976)(Denial of class certification based on speculative manageability problems runs counter to the policy behind Rule 23, and "unduly discounts the Court's power and creativity in dealing with a class action flexibly as difficulties arise.").

Moreover, subject matter jurisdiction to enforce any <u>state court</u> judgements against class members would be lacking per *Ambromovage, supra*, 726 F.2d at 988-9, which rejected the "defensive set-off exception" to independent federal jurisdiction; *see also, LaChapelle v. Torres*, 37 F. Supp. 3d 672, 681–82 (S.D.N.Y. 2014)(" [T]he Court must dismiss all claims that do not share a common nucleus of operative fact with Plaintiffs' federal claims, regardless of whether they are pled as a claim, counterclaim, crossclaim, cross-counterclaim or setoff.")

Lastly, if this Court is of the opinion that it has jurisdiction over M&T's hypothetical breach of contract counterclaims or set-offs, either as compulsory counterclaims or based on supplemental jurisdiction pursuant to 28 U.S.C. §1367, this should still not defeat class certification. Given unnamed class members' uniquely passive role in class actions, many courts have held that Rule 13 has no application to unnamed class members because they cannot be

considered "parties" until, at the very least, after the unnamed class members present a claim for damages – after class certification and after a finding of liability. *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440, 450 (E.D. Pa. 1975) c*iting Donson Stores, Inc. v. American Bakeries Company,* 58 F.R.D. 485, 489 (S.D.N.Y.1973); *In re Sugar Indus. Antitrust Litig.*, 73 F.R.D. 322, 349 (E.D. Pa. 1976)("This Court is convinced that *Donson* states the correct rule and, therefore, all counterclaims that purport to state a cause of action against unnamed class members must be dismissed. In accordance with the procedures outlined in *Donson and Weit*, *supra*, counterclaims may be brought against unnamed class members only if and when these class members intervene or file claims in these actions."). Potential counterclaims and set-offs do not pose manageability problems that would warrant a denial of class certification. The debts are for amounts that are either liquidated or capable of being liquidated, which can be determined based on M&T's records. Determining the amount of any set-off would be a simple function of subtracting the amount of the debt and the statutory damages, and the time to consider any claim of set-off, if considered at all, is during the claims administration process.

### IV.  A CLASS ACTION IS THE SUPERIOR<br>METHOD OF ADJUDICATING THESE CLAIMS

A class action in this case is far superior to several thousand individual lawsuits, especially when potential statutory damages are limited (the average statutory damages in the sampled class members is only $8,330.00, which do not justify the time or expense of bringing a lawsuit against a sophisticated financial entity such as M&T, who has shown by the time and money spent defending this case that it would aggressively defend any such case. This is especially true for the putative class members, who had their vehicles repossessed, and thus are unlikely to be in the financial position to afford such a lawsuit.  M&T argues that these class members could also pursue extinguishment deficiencies and return of post-repossession payments under *Savoy* in an individual

lawsuit but (1) based upon the review of the sample discovery, the vast majority of the putative class has not made post-repossession payments, and (2) any such additional claims would cause further expense for individual consumers to pursue in court.

One of the elements in determining superiority is the extent and nature of any litigation already commenced by members of the class (Fed.R.Civ.P. 23(b)(3)(B)), obviously because a class action would not be superior if many class members were already involved other individual or class action litigation dealing with the same claims.   M&T, apparently misunderstanding this requirement, admits that sample discovery has not revealed any similar actions by putative class members, as if that somehow supports its case that individual actions are superior. (Memorandum, p. 45).   Further, there will be no difficulties in the management of this class action, because as stated above, Plaintiffs' and the putative class members' claims will not require individualized analysis.

M&T argues that there will be manageability problems because some class members have an arbitration provision or waiver or release in their file.   M&T failed to provide any documentary evidence of arbitration provisions. Plaintiffs have not seen any arbitration provisions or class action waivers in the RISC templates that M&T have produced. (**Exhibit 1**), so any purported provisions would be separate from the RISC, and therefore invalid.   The "Single Document Rule" of the MVSFA requires that all RISCS "contain *all* the agreements between a buyer and an installment seller relating to the installment sale of the motor vehicle sold." 12 Pa. C.S. §6221(a)(2) (emphasis added). A debtor's retail installment sales contract must include a mandatory arbitration and class action waiver provision to be enforceable in a subsequent action relating to the installment sale of the motor vehicle.  *Knight v. Springfield Hyundai*, 81 A.3d 940, 948 (Pa.Super. 2013). *See also Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302 (E.D. Pa. 2016). The Honorable Judge Beetlestone held in *Mount v. Peruzzi of Langhorne, LLC.*, 2021 WL 3708714

(2021) that "where a Pennsylvania motor vehicle is sold under a RISC, an arbitration clause contained solely in a document separate from the RISC – like a Buyer's Order – is <u>not</u> enforceable unless the RISC incorporates it by reference."

As part of the sample, M&T provided several alleged documents which several of M&T repossessors *required* unwitting borrowers to sign and agree to a very broad waiver of their rights to sue, after they paid unconscionable fees to recover their personal possessions left in the repossessed vehicle. If M&T is referencing those documents as a release and waiver, there are several points worth noting. First, there is only a relatively small number of accounts in the sample who M&T has produced these documents for. Secondly, personal property fees required to retrieve personal property from a repossessed vehicle have been found to cause "substantial injury" to consumer borrowers and an unfair act and practice in violation of the Consumer Financial protection Act. See October 13, 2020 Consent Order entered against Nissan Motor Acceptance Corporation. (**<u>Exhibit 9</u>**; See also, SAC ¶¶82-85 challenging application of this fee). Third, these release and waivers are unconscionable adhesion contracts, requiring general waivers and illegal fees in order to retrieve the putative class members' own personal property.

## V.  PLAINTIFFS SATISFY THE<br>COMMONALITY REQUIREMENT

As stated above, Plaintiffs are only bringing claims under Pennsylvania law, which moots M&T's argument regarding different state laws.  Further, M&T again misstates the nature of Plaintiffs' claims, arguing that the Court will have to look at individualized facts such as whether a vehicle was redeemed or sold, the amount a vehicle was sold for, the fees incurred, etc.  This is untrue.  As detailed above by Plaintiffs, this is a simple notice claim case.  Once the defective NOR was mailed to a class member, M&T had violated the UCC and the MVSFA and was subject to liability. See *Coy, supra* ("The term "to notify," under the UCC, does not include the notion that

the person to whom notice is sent must receive it." As stated by the Eastern District of

Pennsylvania:

> Generally, courts have held that the commonality requirement is satisfied when "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Saunders v. Berks Credit & Collections, Inc.,* No. 00–3477, 2002 WL 1497374, at *6 (E.D.Pa. July 11, 2002) (citing *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998)).
> *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267, at *2 (E.D. Pa. May 9, 2003)

Also see *Orloff v. Syndicated Off. Sys., Inc.*, 2004 WL 870691, at *3 (E.D. Pa. Apr. 22, 2004)

## VI. PLAINTIFFS SATISFY THE TYPICALITY AND ADEQUACY REQUIREMENTS OF RULE 23(A)(3) AND (4)

### A. Plaintiffs are not inadequate because they have opted not to pursue certain relief

M&T alleges that Plaintiffs are engaging in "claim splitting" by dropping their claims for

actual damages and injunctive relief.  Plaintiffs cite to *Nafar v. Hollywood Tanning Sys.*, 330 Fed.

Appx. 216, 223 (3d Cir. 2009) and *Pearl v. Allied Corp.*, 102 F.R.D. 921, 923-924 (E.D. Pa. 1984).

However, as recently explained by the Western District Court of Pennsylvania, the Third Circuit

has not decided how to address claim splitting in class actions, and any potential application of

claim splitting has been limited to where a class action pursues claims for economic harm, while

abandoning claims for harm resulting from physical injury or property (expressly using *Nafar* and

*Pearl* as examples):

> The court rejects Owens Corning's contention that plaintiffs and class counsel are inadequate representatives of the proposed four-state class under the claim-splitting doctrine.
> i. The Court of Appeals for the Third Circuit has not decided how the issue of claim splitting applies in the context of class action proceedings. *In re Paulsboro Derailment Cases*, No. 13–784, 2014 WL 4162790, at *15 (D.N.J. Aug. 20, 2014). The appellate court's only statement on the issue concerned a class representative's pursuit of separate claims for economic harm, while abandoning claims for harm resulting from physical injuries. *Nafar v. Hollywood Tanning Sys., Inc.,* 339 Fed.Appx. 216, 224 (3d Cir.2009).
> ii. The decisions relied upon by Owens Corning apply the doctrine of claim splitting to class action proceedings in precisely this same context of pursuing claims for economic harm, while abandoning claims for harm resulting from physical injuries. (ECF No.

164 at 60-61 & n.61) (citing *Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa., 1984); *[other cases outside the Third Circuit].*
iii. Owens Corning does not accuse the named plaintiffs or class counsel of engaging in claim splitting by abandoning relief for physical injury or property damage.
iv. There is no evidence in the record that the named plaintiffs or class counsel are engaging in claim splitting by abandoning relief for physical injury or property damage. (Emphasis added)
*Gonzalez v. Corning*, 317 F.R.D. 443, 501 (W.D. Pa. 2016), *aff'd,* 885 F.3d 186 (3d Cir. 2018), *as amended* (Apr. 4, 2018)

Thus, the numerous out-of-circuit cases cited to by M&T are irrelevant.

Plaintiffs are not abandoning relief for physical injury or property damage, which *Gonzalez* holds is required to apply claim splitting to a class action. Note that none of the injunctive requests in Section D of the requested relief in the operative Second Amended Complaint (ECF 59, SAC pp. 32-33) (to enjoin collection of invalid and disputed deficiency balances, and to enjoin the use of unlawful notices, fees, and expenses) were for physical injury or property damage, as *Gonzalez* requires.

Plaintiffs' proposed Class Notice (Exhibit 20 to ECF 323) explains to recipients that Plaintiff is not pursuing certain additional relief, and that putative class members might receive "more, less, or the same amount of" money if they pursue actual damages in an individual lawsuit, and that they may opt out of the class if they wish to pursue this additional relief. (Id., Section 11, ¶3). This is more than adequate to provide putative class members with notice that they should opt out if they wish to pursue actual damages or an injunction.[14]

**B. Plaintiffs Daisey and Abbotts' claims are typical and they do not have unique defenses**

---

[14] However, it is extremely unlikely that any putative class member would receive more in actual damages (e.g., for improper fees/expenses) than the minimum statutory damages, which as stated are approximately $8,330.00 per account.

M&T argues Plaintiffs' Daisey and Abbott's claims are atypical, and thus cannot represent the class.  M&T argues Plaintiff Daisey redeemed his vehicle before receiving the NOR, thus could not have been misled by any error in the NOR, and thus is atypical.  However, as stated, the sending of a statutorily non-compliant NOR is sufficient to establish liability, and whether any particular plaintiff or putative class member was misled by or took action based upon the NOR is irrelevant to Plaintiffs' claims.

Further, as also stated above, the relevant statutes apply to voluntary surrender, so the fact that Plaintiff Abbott surrendered his vehicle is also irrelevant.

M&T claims Plaintiffs Flynn and Abbott did not disclose any claims against M&T on their bankruptcy schedules.  Plaintiff Flynn testified that he was not aware that he had a claim against M&T at the time of his bankruptcy. (**Exhibit 10**, Flynn Dep., p. 243-244).  Plaintiff Abbott testified that he was not aware of his claim against M&T until he talked with Plaintiffs' counsel (**Exhibit 11**, Abbott Dep., p. 91-92), which was after Abbott filed for bankruptcy in 2016. Abbott also alerted the Bankruptcy Court to the existence of this case in 2018 when moving to employ special counsel. (**Exhibit 12**). Further, Abbott and Flynn have amended their bankruptcy petitions to reflect their claim against M&T. (**Exhibit 13**). None of the three elements for judicial estoppel is met in this case.  First, neither plaintiff asserted a position in his bankruptcy case that he did not have a claim against M&T – rather, they did not know about the claim at the time they filed their respective bankruptcies, and they were unaware they had to revise their bankruptcy filing once they did become aware of the claim. Because they were not aware they had to revise their bankruptcy filing, neither was acting in bad faith.  Further, estoppel would not be well tailored to this situation, as neither plaintiff had the intent to affront either court's authority or integrity.  These were inadvertent omissions, and as stated by the Third Circuit in *Danise, supra*, the case M&T relies upon, "[judicial estoppel] is not intended to eliminate all inconsistencies, however slight or

inadvertent; rather, it is designed to prevent litigants from "playing 'fast and loose with the courts.'" And "does not apply 'when the prior position was taken because of a good faith mistake…". *Id.* at 51.  Neither Plaintiff was playing fast and loose with the courts here.  This is unlike the situation in *Danise*, where the plaintiff waited until just after her bankruptcy was discharged to bring a claim.

### C.  The Chapmans are adequate representatives

M&T claims because Plaintiffs did not amend the complaint to include allegations on behalf of the Chapmans as part of their substitution, the Chapmans are inadequate. This Court specifically precluded such amendment. Plaintiffs unsuccessfully attempted to negotiate with M&T for stipulation of the substation of the plaintiffs, due to M&T's insistence on the onerous and unnecessary requirement that Plaintiffs waive any further right to amend their complaint, which would have precluded Plaintiffs from offering the recent proposed revised class definitions. Plaintiffs then moved for a substitution of the Plaintiffs (ECF 250), which this Court granted (ECF 259), specifically precluding any amendments other than the simple substitution (Id, ¶4).[15]

### VII.  THE PROPOSED CLASSES MEET THE ASCERTAINABILITY REQUIREMENT

M&T has provided very specific answers to Plaintiffs' interrogatory asking the total number of people who comprise each class, thus has apparently had no difficulties ascertaining the class. (Answer to Interrogatory 9, M&T's Amended Responses to Plaintiffs' First Set of Post-Removal Discovery, **Exhibit 14**). To identify the NORs at issue, M&T only has to review its NORs sent to addresses in Pennsylvania during the class period and determine whether they have

---

[15] It is Plaintiff Counsel's recollection that at the March 11, 2021 conference (not transcribed) on the motion for substitution, Your Honor noted that if, as M&T proposed, the complaint was amended to include allegations by the Chapmans, it would essentially become a new complaint subject to a new motion to dismiss, thus Your Honor would not permit any such amendments.

a $200 prepare/repair expense and/or an expense of storing the vehicle with a per diem storage rate greater than $0.   The proposed class definitions have objective criteria that M&T can determine from its records.   M&T has provided retail installment sales contracts and invoices and other documents related to the actual repossession of the vehicles for the sample accounts, thus it follows that M&T, as the secured lender, would know from its records which of its borrowers entered into a RISC for the financing of a motor vehicle.   Despite M&T's protestations, M&T can determine from its records whether each vehicle is "primarily for personal, family, or household use"[16] [17] (as opposed to a commercial use), and whether M&T repossessed their vehicle or ordered it to be repossessed.   M&T also knows to whom it sent NORs during the class period, as it has produced NORs and other evidence of NORs being sent for sample accounts.

M&T argues that Plaintiffs have expanded their class definition beyond Pennsylvania thus M&T would have to review tens of thousands of NORs, and that Plaintiffs have no standing to bring claims for laws of other states, but as stated above, Plaintiffs' classes and claims are limited to Pennsylvania.

Richard Shenkan's Supplemental Declaration is incorporated herein.

---

[16] Plaintiffs requested and M&T produced "exemplars of each [RISC] that was assigned to [M&T] at any time during the CLASS PERIOD" (Amended Response to RFP 9 in First Set of Post-Removal Discovery and the produced exemplars attached as **Exhibit 1**) and these templates all have either (1) a check box for whether the vehicle is being purchased for business, agricultural, or "personal, family, or household" use, or (2) have a FTC holder rule notice identifying the RISC as a "consumer credit contract" (denoting that the purchase is not for a business use – The UCC defines "consumer goods" as "used or bought for use primarily for personal, family, or household purposes". 13 Pa.C.S. §9102).   Also, the templates of the relevant NORs (see **Exhibit 2)**, and all of the NORs produced for the sample accounts, state that they are from M&T's "Consumer Lending Department", thus they are repossessions of vehicles purchased for consumer use (i.e., for personal, family, or household use).

[17] Plaintiffs' current proposed class definitions (Brief, pp. 19-20) use the phrase "primarily used for personal, family, or household use".   Plaintiffs are willing to revise this to "primarily purchased for personal, family, or household use" to ensure that this part of the class definition is ascertainable, as this is ascertainable from the face of the RISCs and the NORs.

## VIII.  **CONCLUSION**

Plaintiffs have met all requirements for certification under Fed.R.Civ.P. 23, and request

that this Honorable Court grant Plaintiffs' Motion for Class Certification.

Respectfully submitted,
Shenkan Injury Lawyers, LLC.
*/s/ Richard Shenkan*
Richard Shenkan PA ID 79800
6550 Lakeshore St.
West Bloomfield, MI  48323
P: (412) 716-5800
F: (888) 769-1774
*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been sent, as filed, to all counsel of record through
the Court's ECF system, which all counsel of record subscribes to.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan
*Attorney for Plaintiffs*