IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, | ) | |
| DOUGLAS J. ABBOTT, PERCY CHAPMAN, | ) | CIVIL ACTION |
| and JANENE CHAPMAN, individually and on | ) | |
| behalf of all others similarly situated, | ) | CLASS ACTION |
| | ) | |
| Plaintiffs, | ) | Case No. 2:17-cv-04806-WB |
| | ) | |
| v. | ) | |
| | ) | |
| MANUFACTURERS AND TRADERS TRUST | ) | |
| COMPANY a/k/a M&T BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## APPENDIX IN SUPPORT OF AMENDED MOTION FOR CERTIFICATION (ECF 371)

To the Clerk:

Please file the attached exhibits to Plaintiffs' Amended Motion for Class Certification: Exhibits 1, 2, 3, 10, 26, 27, 29, and 33. The other exhibits referenced in the Amended Declaration of Richard Shenkan (ECF 372) and Brief in Support of Class Certification (ECF 373) are filed under seal.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been sent, as filed, to all counsel of record through the Court's ECF system, which all counsel of record subscribes to.

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, et al | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | NO. 17-cv-04806-WB |
| MANUFACTURERS AND TRADES | : | |
| TRUST COMPANY | : | |
| Defendant. | : | |

### MEMORANDUM AND ORDER REGARDING DISCOVERY DISPUTES

The Plaintiffs filed a Motion to Compel Discovery Responses. Doc. No. 103 (motion); Doc. No. 105 ("Pl. Mem."). The Defendant responded (Doc. No. 110 ("Def. Resp.")) and the Plaintiffs have filed a reply. Doc. No. 111. I filed a Memorandum providing my tentative rulings on pending discovery disputes. Doc. No. 121. I held a hearing on October 26, 2018, and a transcript has been filed. Doc. No. 131. The parties have filed suggested language changes to the tentative rulings. Doc. No. 125 (Plaintiffs') and Doc. No. 126 (Defendant's). The parties have also filed post-hearing memoranda of law. Doc. No. 135 (Plaintiffs') and Doc. No. 136 (Defendant's). Plaintiffs also filed a "Declaration of J. Stott Matthews" and a "Declaration of Richard Shenkan." Doc. No. 137 (Matthews) and Doc. No. 138 (Shenkan). Plaintiffs filed a second memorandum, and a "Supplemental Report" by Mr. Matthews. Doc. No. 139 and Doc. No. 140. The Defendant filed a second memorandum. Doc. No. 145.

This memorandum and order proceeds through the various discovery requests. The "Findings of Fact," below, are new. My rulings largely adhere to my tentative rulings, but where there are differences, the language of this Order controls.

### FINDINGS OF FACT

A. Based on my review of the motions and supporting documents, and on the testimony that I heard on October 26, 2018, I find that the Defendant has unreasonably delayed and obstructed discovery in this case.

EXHIBIT

1

B. I find that Richard Kaminski, the Defendant's e-discovery liaison, did not make the decision to convert native files, including emails and Excel spreadsheets, to text or TIFF format. Doc. No. 131, at 26-33. This conversion meant that the documents produced were not electronically searchable. *Id.*

C. The stated reason for not supplying Excel spreadsheets in native format was that to do so would alter the original document. *Id.* at 31. I find that this explanation is meritless. Mr. Kaminski testified that he told counsel for the Defendant that the Excel spreadsheets should be produced in native format under the Court's previous Order. *Id.* at 34. Mr. Kaminski explained that the Excel spreadsheets could have been produced by excising material to be redacted and producing a redacted Excel worksheet, and identifying it as redacted. *Id.* at 40. The original Excel spreadsheets would still retain the original data and metadata. I find that this method of producing the spreadsheets would have been far more efficient than the one adopted by counsel for the Defendant. It also would have complied with Judge Beetlestone's e-discovery protocol.

D. I find that the production in text and TIFF format was largely a waste of time and money. Mr. Kaminski testified that the TIFF documents took three or four people two or three days to produce. *Id.* at 41. There is no readily discernible purpose for converting the Excel spreadsheets into TIFF, other than to make them less useful to the recipient. The Excel production would have been far more time efficient. The uselessness of the TIFF production was compounded by the decision to redact almost all substantive information. The effect was to produce page after page of completely black documents. In addition, copying the Excel documents to TIFF broke apart the Excel spreadsheets into multiple pages, which had to be pieced together manually by the

2

recipients. *Id.* at 54-55. The effect was to dump a pile of fragmented, highly redacted spreadsheets on the recipient. This was an unfair and abusive discovery practice.

E. I find it was not Mr. Kaminski, but counsel, who made the decision to produce via text and TIFF, rather than in native format, and that it was counsel who applied all the redactions. *Id.* at 33. I find that one of the known consequences of producing via text and TIFF is that none of the metadata in the Excel spreadsheets (or emails) was produced. *Id.* at 43-44. Mr. Kaminski explained that Excel metadata would be automatically included if Excel spreadsheets were produced, and that it would have to be removed (by a "scrubbing program") if it were not to be produced. *Id.* at 48-49. Counsel for the Defendant objected that the production of metadata would be unduly burdensome and very costly. *Id.* at 45. Defendant produced no evidence establishing the burdensomeness or cost of producing Excel metadata, and Mr. Kaminski's testimony contradicts counsel's objection. Whether the objection was interposed in good faith I will leave for another day.

F. I find that "Mr. Kaminski, while quite expert at his role, is not the person . . . who's going to have primary knowledge of how documents are stored, kept, and so forth at the bank." *Id.* at 83.

G. Mr. Matthews was Plaintiffs' e-discovery expert. *Id.* at 89. I accept him as an expert in the field, based on his training and experience. *Id.* at 89-90. Mr. Matthews testified that 90% of the 57 documents produced in text and TIFF format were blacked out for redaction purposes. *Id.* at 91. He testified that the production excluded all metadata. *Id.* at 92. He testified that the metadata would have provided useful information "so that the person on the other receiving side understands what they're looking at. That is the purpose of model orders such as the one that the Judge originally

3

entered in this case, is to facilitate the exchange of information so the parties can make their arguments based on the data that's provided." *Id.*

   H.  Mr. Matthews testified that producing the documents in native format would have been quite simple and cost effective. *Id.* at 93-94. The production in non-native format was "on the extreme side of . . . unhelpful." *Id.* at 94. Mr. Matthews responded "absolutely" to the question "is this one of the most extreme discovery abuse instances that you've seen?" *Id.* at 94-95. Mr. Matthews testified that a modern bank has people in the organization who "have the expertise to query the systems, generate those special queries . . . select this information from this table, from this database, and give me the dump of what . . . are in those systems." *Id.* at 96. Mr. Matthews estimated that the cost of e-discovery would be $100 to $200 a gigabyte. *Id.* at 99. Because no metadata had been produced, he could not say with certainty how many gigabytes of information had been produced so far, but he estimated between five and ten gigabytes, and the cost of producing that information electronically would have been $1,000 to $2,000. *Id.* at 100.

   I. Mr. Matthews could not understand why the headers of Excel files in this case would (generally) be part of attorney-client communication. *Id.* at 105. Neither can I.

   J. Mr. Wilshaw is a digital forensics investigator for Defendant. *Id.* at 113. He helped to construct email queries as part of the process of responding to discovery propounded by Plaintiffs. *Id.* at 116. He was unable to say how much time he spent constructing and executing email queries. *Id.* at 117, 123. He did not recall how many gigabytes of information were produced as part of email discovery. He did not participate in culling the emails for privilege. *Id.* at 120-21.

   K.  Kenneth Fries is a vice-president and process improvement manager for Defendant. *Id.* at 127. When asked in discovery to identify the class size, he sent a

4

request to "analytics," who developed a report. *Id.* at 128. He sent the report to legal. *Id.*

It would be easy to redact the names of the customers from the report and provide it to

opposing counsel. *Id.* at 129. Part of the data on the report are deficiency balances for

the customers. *Id.* at 130. Minimum statutory damages were also calculated in the

report. *Id.* at 131.

L. Mr. Fries testified that a significant part of the burdensomeness of gathering

discovery was taking screen shots of information pertaining to Plaintiffs from the

various software systems in which information is kept. *Id.* at 135. Additional burden was

imposed by having to print out statements of collection history from the "On-Demand"

system. *Id.* at 136. He testified that the Defendant collected certain information from the

"CACS" system (one of several the Defendant uses) by taking screenshots and importing

the information into Word. *Id.* at 138.

M.  Mr. Fries testified that current bank policies were maintained on SharePoint,

a Microsoft product that can be accessed by Mr. Fries from his computer. *Id* at 143.

Archived policies may be accessible only to the manager of the SharePoint site. *Id.*

N.  Mr. Fries was knowledgeable about what type of information was accessible

on several different software programs used by the Defendant. *Id.* 143-47.

O.  Counsel for Defendant produced four boxes of documents consisting of

spreadsheets "stitched together" for my *in camera* review. *Id.* at 151. Defendant claims

the documents are subject to the attorney-client privilege, or to the attorney work-

product doctrine. *Id.* at 149-51. Plaintiffs have objected that the privilege claims have

not been the subject of a proper privilege log.

5

Good cause appearing, it is on this 30th day of January, 2019, **ORDERED**, as follows:

**General Rulings**

1)   Generally, Plaintiffs' requests and interrogatories are clear, directed toward obviously relevant information, and should be answered. The parties' main dispute seems to be over whether discovery before class certification should be done by sampling or class-wide. Many of the subordinate disputes take on their significance because of this issue.

2)   Defendant's objections are otherwise non-specific, boiler-plate responses with very little substance. Particularly when it comes to a showing of disproportionality or burdensomeness, Defendant's objections are lacking. The objections are in most instances overruled. In some instances, Defendant contends it has already responded to interrogatories or demands for production. If it has provided answers or documents, and has nothing further to add after its objections have been overruled, it will say so under oath. If it needs to supplement its responses, in light of the objections being overruled, it will do so under oath.

3)   The Defendant's general objections to interrogatories are overruled. Objections must be noted with specificity. Fed. R. Civ. Pro. 33(b)(4); *see Covington v. Sailormen Inc.*, 274 F.R.D. 692, 693–94 (N.D.Fla. 2011) ("Common sense should have been enough for Defendant to know that boilerplate, shotgun-style 'General Objections,' incorporated without discrimination into every answer, were not consistent with Fed.R.Civ.P. 33(b)(4)'s directive that '[t]he grounds for objecting to an interrogatory must be stated with specificity.'"). The same holds for requests for production. *See* Fed. R. Civ. Pro. 34(b)(2)(B).

6

4)    An objecting party must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. Pro. 34(b)(2)(C). In large measure the Defendant has not complied with this rule. It will do so.

5)    If the Defendant has been notified in writing of purported deficiencies in its responses to discovery, and its response is that it has nothing, or nothing further to disclose, it shall respond by affidavit under oath that it has made careful search of records and information under its control in response to the notice of deficiencies and has nothing, or nothing further, to disclose. Such an affidavit may be the basis of precluding evidence submitted by the Defendant at a later stage of the proceeding, if the discovery request covered the evidence and the evidence was not produced in discovery.

6)    If the Defendant indicates in a discovery response ordered below that all information responsive to the request or interrogatory has been previously supplied, Defendant shall make such an assertion under oath and shall supply the Bates-stamp numbers of all responsive documents and refer to the interrogatory answer by number and date of response.

**Sampling Protocol**

7)    Plaintiffs want extensive class-wide discovery. Defendant claims undue burden, and seeks discovery limited to only 150 individuals, which would represent 50 persons in each of the three classes identified in the Amended Complaint, and approximately 3.8% of the 3,956 people identified by Defendant as the total number of people who are potential class members. *See* response to Plaintiffs' interrogatory 9. Plaintiffs want complete discovery as to 20% of the potential class members, and class-wide discovery as to a number of other issues.

8) To resolve this impasse, on or before February 7, 2019, the Defendant shall file under seal separate lists of the account numbers of each potential class member in the "FORM 1 NOR CLASS," the "FORM 2 NOR CLASS," the "NOR ALTERNATIVE CLASS" and the "POST-SALE NOTICE CLASS." Defendant shall order the lists by date of transaction, oldest to most recent. The date of transaction shall appear in a column next to each account number. The parties shall agree on a means of randomly selecting 10% of each class for sampled discovery. If there is agreement, the parties shall promptly file a stipulation indicating their agreement and I will enter an order confirming the parties' protocol.

9) If the parties cannot agree, on or before February 14, 2019 the parties shall each file a memorandum of no more than 5 pages, exclusive of exhibits, explaining why discovery should not proceed by selecting every tenth name, with a random starting point on each list selected by me. If Defendant claims undue burden, Defendant shall supply an estimate of the number of documents and pages of records to be supplied for a 10% sample group, and explain how Defendant arrived at the figure. Defendant shall also supply a thorough accounting of the hours spent on the 19,000 pages produced so far (Def. Mem. 16-17) concerning Representative Parties, detailing the persons who spent time on producing the documents, their job title and function, the hours spent on production of documents, an explanation of the nature of work done, the annual salary and hourly salary rate attributable to that person (for attorneys and paralegals employed by its outside counsel, Defendant need only supply hourly billing rate), and an itemization of other costs associated with the production. The estimate and accounting shall be submitted under oath. The purpose of the submission is to provide me with

reliable information on the projected burdensomeness of the sampling procedure outlined above.

10)    If Defendant contends a smaller sample size will produce statistically reliable results fairly representative of the complete class, it shall file an affidavit under oath from a qualified statistician supporting their contention and providing concrete suggestions on how to overcome the statistical concerns.

11)    If Plaintiffs contend the sample group is too small, or otherwise will not produce statistically reliable results fairly representative of the complete class, they shall file an affidavit under oath from a qualified statistician supporting their contention and providing concrete suggestions on how to overcome the statistical concerns. Upon review of the parties' submissions I will issue an order fixing the discovery sampling protocol.

12)    There shall be no class-wide discovery until further court order. Full class-wide discovery at this time would be overly burdensome and disproportionate to the issues and monetary amounts involved in this case. Sampled discovery should enable the parties to make reliable extrapolations about what full scale class-wide discovery would reveal. This should be enough to address the legal and factual issues that must be resolved prior to class certification.

**Resolution of Specific Objections to Interrogatories and Requests for Production**

13)    Individual discovery disputes are tentatively resolved below. The discovery ordered below shall be limited to the sample class members selected for discovery in accordance with paragraphs 7-9, above (the "Sampled Customers"). All discovery

9

ordered below is limited to the alleged class period, September 22, 2011 through the present.

14) **Interrogatories**

No. 1 (Pl. Mem. 12; Def. Mem. 7). Plaintiffs ask for identification of the persons who were involved in answering the interrogatories. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

No. 2 (Pl. Mem. 13; Def. Mem. 8). Plaintiffs ask for an account of the deficiencies for all class members. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer. The answer shall also identify "the number of deficiencies M&T has marked as discharged in [its] systems," *see* Doc. 126 at 6, by designating them "zero (bankruptcy)." The Defendant shall state, according to the Bank's latest records, how many class members in each class had any deficiency balance discharged in bankruptcy. The Defendant shall also state, for each class, the aggregate total of the deficiencies, based on its records.

No. 3 (Pl. Mem. 3; Def. Mem. 9). Plaintiffs ask for auto loan deficiency actions against any putative Class Member during the Class Period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath, based on its records.

No. 4 (Pl. Mem. 17; Def. Mem. 10). Plaintiffs ask for persons having knowledge of the facts alleged in the Complaint. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

No. 5 (Pl. Mem. 18; Def. Mem. 11). Plaintiffs ask for a calculation of minimum statutory damages. All of Defendant's objections are denied, except its claim that the results of its damages calculation, as described during the testimony of Mr. Fries, are attorney work-product. To avoid trenching on attorney work-product, I will direct that the parties engage in additional discovery, as follows:

    A. By February 7, 2019, Plaintiffs shall serve a Notice on the Defendant containing a description of the information and calculations Plaintiffs need to compute statutory damages as to the Sampled Customers.

    B. Within 21 days of the date the sampling protocol is fixed, as contemplated under paragraphs 7, 8, and 9, above, Defendant shall produce, via electronic response in easily comprehensible and searchable form, all the information requested by Plaintiff.[2]

    C. Within 14 days of the date that all the information mentioned in sub-paragraph B is supplied to the Plaintiffs, Plaintiffs shall provide the Defendant with a computation of statutory damages for the Sampled Customers.

    D. Within 14 days of service of Plaintiffs' computation of statutory damages for the Sampled Customers, Defendant shall admit or

---

[2] Defendant has already performed all these computations but claims that the work was done at the direction of its attorneys in anticipation of litigation. The claim is plausible. Nevertheless, given the Defendant's history of unreasonable objection, and the reality that the information-gathering and computation has already been done, I will not look favorably on a claim that providing the information necessary to perform the damage calculations is unduly burdensome, costly, or irrelevant. Defendant could obviate any cost or burden by simply turning over the data and calculations that it already has collected and performed. Any burden or cost is M&T's choice. Nor will a request for extension of the time to comply with this Order be granted, absent extraordinary circumstances.

deny the accuracy of each computation for each Sampled

Customer. For any calculation the accuracy of which it denies,

Defendant shall supply a counter-computation, which includes

all necessary sub-calculations, and produce all documents upon

which it relies in its counter-computation.

**No. 6** (Pl. Mem. 19; Def. Mem. 11). Plaintiffs ask for an explanation of the

difference in meaning between two phrases appearing on Defendant's forms. All

of Defendant's objections are overruled. Defendant shall supply an unequivocal

answer under oath.

**No. 7** (Pl. Mem. 20; Def. Mem. 7). Plaintiffs ask for the aggregate amount

Defendant paid all third parties for storage expenses. All of Defendant's

objections are overruled. Defendant shall supply an unequivocal answer under

oath. In addition, Defendant shall identify by Bates stamp numbers all

documents upon which it based its answer.

**No. 8** (Pl. Mem. 21; Def. Mem. 12). Plaintiffs ask for the aggregate  sum

for each of three classes for the "Expense of Storing the Vehicle" as listed in the

Notice of Repossession for all putative class members' repossessed vehicles. All of

Defendant's objections are overruled. Defendant shall supply an unequivocal

answer under oath.

**No. 9** (Pl. Mem. 22; Def. Mem. 12-13). Plaintiffs ask for the total number

of people who comprise the various classes defined in the Complaint. Defendant

has supplied figures, subject to non-specific objections. All of Defendant's

objections are overruled. If the overruling of the objections means that the

answer must be supplemented, Defendant shall supplement its answer under oath.

**No. 10** (Pl. Mem. 23; Def. Mem. 10). Plaintiffs ask for the process by which Defendant answered its interrogatories. The question as phrased is unduly vague and focuses on the process of answering interrogatories rather than on the substance of the litigation. The Plaintiffs' motion as to this interrogatory is DENIED. The Defendant will supply a description of the process it used to respond to Interrogatories 7, 8, and 9, as ordered above.

**No. 11** (Pl. Mem. 24; Def. Mem. 13-14). Plaintiffs ask for specific information about Gene Daisey's loan. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall **also** provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**No. 12** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for specific information regarding a post-sale notice send to Abbott. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath. Defendant shall **also** provide the Bates stamp number of each document that it contends supplies the answer to the interrogatory.

**No. 13** (Pl. Mem. 25; Def. Mem. 14). Plaintiffs ask for the criteria Defendant used to calculate the $200 expense for preparing/repairing the repossessed vehicle. The fact that the figure was an "estimate," as Defendant contends, does not obviate the responsibility to answer the question. If there were no criteria used, and the figure was selected arbitrarily, Defendant shall so

state. All of Defendant's objections are overruled. Defendant shall supply an unequivocal answer under oath.

15)   **Requests for Production**

    **Nos. 1-5** (Pl. Mem. 26-28; Def. Mem. 15). Plaintiffs ask for documents supporting specific charges for storing and repairing repossessed vehicles of the representative plaintiffs. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

    **No. 6** (Pl. Mem. 29; Def. Mem. 15-16). Plaintiffs seek sample discovery of all classes. All of Defendant's objections are overruled. Within 30 days of the date the sampling protocol is fixed, as contemplated under paragraphs 7, 8, and 9, above, Defendant shall supply an unequivocal response under oath with responsive documents as to each of the Sampled Customers.

    **No. 7** (Pl. Mem. 30; Def. Mem. 17). Plaintiffs seek complaints filed against Defendant based on notices of repossession and post-sale notices that are the same or similar to the notices at issue in this case, that were filed against Defendant regarding its repossession policy, practice and procedure. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

    **No. 8** (Pl. Mem. 31; Def. Mem. 18). Plaintiffs seek exemplars of every notice of repossession and post-sale notice form sent by Defendant during the class period. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

    **No. 9** (Pl. Mem. 31; Def. Mem. 18). Plaintiffs seek exemplars of each retail installment sale contract assigned to Defendant during the class period. All of

Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

**No. 10** (Pl. Mem. 32; Def. Mem. 18). Plaintiffs ask for all documents that tend to substantiate Defendant's interrogatories. Plaintiffs' request is DENIED as phrased because the question is unduly vague. Defendant shall supply all documents upon which it relied, or which it consulted, in responding to Interrogatories.

**No. 11** (Pl. Mem. 32; Def. Mem. 11). Plaintiffs ask for insurance policies that may cover Defendant for the claims asserted by Plaintiffs. Defendant responds that it has already stated in its Rule 26 initial disclosures that it has no such insurance. Plaintiffs acknowledge that this answer was provided in Defendant's initial disclosures. Plaintiffs' motion is DENIED.

**No. 12** (Pl. Mem. 33-38; Def. Mem. 19-22). Plaintiffs ask for all documents concerning the representative plaintiffs or their repossessed vehicles. Defendant responds that it has already supplied all such documents. Plaintiffs have identified a number of deficiencies. Defendant has responded to the deficiencies. Defendant shall supply its answer, provided at Def. Mem. 20-22, as a supplemental response, under oath. In addition, the objections identified at Def. Mem. 20-22, (iii), (iv), (v), (x), (xi) and (xii) are overruled. The deficiencies identified by Plaintiffs seem reasonably clear and are drawn from language in documents already produced by Defendant.

**No. 13** (Pl. Mem. 38; Def. Mem. 22). Plaintiffs seek documents that concern Defendant's repossession policies, procedures and practices. All of

Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

No. 14 (Pl. Mem. 39; Def. Mem. 23). Plaintiffs seek Defendant's contracts with third party vendors concerning repossession. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

No. 15 (Pl. Mem. 39; Def. Mem. 23). Plaintiffs demand an organizational chart. All of Defendant's objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

No. 16 (Pl. Mem. 40).[3] Plaintiffs demand "all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer in YOUR answer to Interrogatory 13, above." Pl. Mem. 40. Defendant contends it did not provide any criteria in its answer to Interrogatory 13. Defendant's objections to Interrogatory 13 have been overruled, and it has been directed to answer. Accordingly, all of Defendant's objections are overruled, for the same reasons. Defendant shall supply an unequivocal response under oath with responsive documents.

No. 17 (Pl. Mem. 41; Def. Mem. 24). Plaintiffs demand "all DOCUMENTS that YOU referenced or relied upon in YOUR answer to the above interrogatories." Defendant objects that the request is overbroad and improper. Def. Mem. at 24. I do not see why. Defendant has not explained why. Defendant's

---

[3] I note that Plaintiffs addressed Request No. 16 in their post-hearing "Suggested Language Changes," while the Defendant did not. Doc. No. 125 at 13; Doc. No. 126 at 14. My tentative rulings did not address Request No. 16. This Order controls.

objections are overruled. Defendant shall supply an unequivocal response under oath with responsive documents.

16)     **Privilege Log** (Pl. Mem. 41; Def. Mem. 24). I will resolve privilege log issues after examining the most recent privilege log, hearing argument from counsel, and if necessary, examining documents subject to a privilege claim *in camera*.

17)     **Sanctions** (Pl. Mem. 44-50; Def. Mem. 29-30). The sanctions motion is DENIED, without prejudice to its being renewed once the discovery outlined in this Memorandum has been completed and privilege issues resolved.

18)     Unless otherwise noted in this Order, the due date for responses and other action required under this Order is February 14, 2019.


BY THE COURT:


_s/Richard A. Lloret_
RICHARD A. LLORET
U.S. Magistrate Judge

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDWARD R. FLYNN, GENE DAISEY,          :
DOUGLAS J. ABBOTT, and CATHERINE       :     Case No:  2:17-cv-4806-WB
HOSICK, individually and on behalf of all :
others similarly situated,             :
                                       :
                                       :
                  Plaintiffs,          :
                                       :
         v.                            :
                                       :
MANUFACTURERS AND TRADERS              :
TRUST COMPANY a/k/a M&T BANK,          :
                                       :
                  Defendant.           :

## AMENDED RESPONSES OF DEFENDANT MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK TO INTERROGATORY NOS. 2, 3, 5, 7, AND 8 FROM PLAINTIFFS' FIRST SET OF POST-REMOVAL CLASS DISCOVERY AND INTERROGATORY NOS. 2 AND 3 FROM PLAINTIFFS' SECOND SET OF POST-REMOVAL CLASS DISCOVERY

Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"), by and

through its undersigned counsel, hereby provides its amended responses to Interrogatory Nos. 2,

3, 5, 7, 8 and 9 from Plaintiffs' First Set of Post-Removal Class Discovery and Interrogatory Nos.

2 and 3 from Plaintiffs' Second Set of Post-Removal Class Discovery Directed to Manufacturers

and Traders Trust Company a/k/a M&T Bank in accordance with the Court's Orders and

Memoranda dated January 31, 2019 (the "January 31st Order") (D.I. 148)  and April 1, 2019 (the

"April 1st Order") (D.I. 163) as follows[1]:

---

[1]      In accordance with the January 31st Order and April 1st Order, all responses (except for M&T's amended response to Interrogatory No. 9) have been limited to the named Plaintiffs and the Sampled Accounts.  The "Sampled Accounts" means those 588 accounts that were randomly selected to be part of the sample on February 4, 2021.

1


EXHIBIT
2

information) and that the burden of deriving or ascertaining the answer to this Interrogatory will be substantially the same for either party.  Specifically, M&T states that it the answer to this Interrogatory can be derived by reviewing the Notice of Repossession produced for each Sampled Account and aggregating the storage expenses as listed on the notice.  *See* M&TSAMPLE1(B)-M&TSAMPLE588(B).

**Interrogatory No. 9:**

Please IDENTIFY the total number of people who comprise the (putative):

  a. FORM 1 NOR CLASS, and state how YOU computed it;
  b. FORM 2 NOR CLASS, and state how YOU computed it;
  c. NOR ALTERNATIVE CLASS, and state how YOU computed it;
  d. POST-SALE NOTICE CLASS, and state how YOU computed it;

**Response to Interrogatory No. 9:**

   M&T has identified 5,863 unique accounts, totaling 7,324 putative class members when including co-borrowers, combined for all putative classes, broken down as follows[2]:

  a. FORM 1 NOR:  1,878 people (including 407 co-borrowers)
  b. FORM 2 NOR:  3,871 people (including 754 co-borrowers)
  c. NOR ALTERNATIVE:  1,575 people (including 300 co-borrowers)
  d. POST-SALE NOTICE:  5,130 accounts (including 977 co-borrowers)

M&T further states that all members of the putative Post-Sale Notice Class are also members of one of the other three putative classes.  M&T's response is not an admission that a valid class or classes exist.

---

[2] Some accounts may have been repossessed more than once and therefore could fall into more than once class.  For purposes of providing the total number of accounts and borrowers in the putative class, M&T has only included each unique account once.

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2021, I caused a true and correct copy of the foregoing to

be served upon the following counsel of record by electronic mail:

Richard Shenkan, Esq.
Shenkan Injury Lawyers, LLC
6550 Lakeshore St.
West Bloomfield, MI 48323

**PARKER IBRAHIM & BERG LLP**

*/s/ Scott W. Parker*
James P. Berg, Esq.
Scott W. Parker, Esq.
Fred W. Hoensch, Esq.
Marissa Edwards, Esq.
1635 Market Street, 11th Floor
Philadelphia, PA 19103
Telephone: (267) 908-9800
Fax: (267) 908-9888
scott.parker@piblaw.com

*Attorneys for Defendant,*
Manufacturers and Traders Trust
Company a/k/a M&T Bank

Dated:  March 1, 2021

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

EDWARD R. FLYNN, GENE DAISEY,       :
DOUGLAS J. ABBOTT, and CATHERINE    :   CIVIL ACTION
HOSICK, individually and on behalf of all    :
others similarly situated,          :   CLASS ACTION
                                    :
                 Plaintiffs,        :   Case No:  2:17-cv-4806-WB
          v.                        :
                                    :
MANUFACTURERS AND TRADERS           :
TRUST COMPANY a/k/a M&T BANK,       :
                                    :
                 Defendant.         :
                                    :

## DECLARATION OF FREDERICK RANDOLPH SURFACE JR. IN SUPPORT OF M&T BANK'S RESPONSE TO THE ORDER DATED APRIL 1, 2019

I, Frederick Randolph Surface Jr, declare and state as follows:

1.      I am a CAM Program Manager II at Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T").  I am over the age of 18 and am competent to testify as to the matters contained in this Declaration.

2.      I have been employed at M&T for a total of 5 years.  In my capacity as a CAM Program Manager II, I am responsible for the oversight of M&T's analytics department.  As such, I have firsthand knowledge of and direct access to M&T's electronic databases and record retention systems, including the ability to search for and extract data from these systems.

3.      I was personally involved in the process of generating the list of accounts which could fall within Plaintiffs' proposed class definitions in this action and I have firsthand knowledge as to the methodology used to assemble the same.  I make this declaration based on this personal knowledge and my knowledge of M&T's electronic databases and record retention systems.  The searches, data, and documents described below were all created at the instruction

1



of M&T's in-house counsel or outside counsel, Parker Ibrahim & Berg LLP ("PIB"), for the purposes of evaluating and defending this litigation. This declaration is being provided pursuant to the Court's April 1, 2019 Order [D.I. 163]. By providing this declaration, M&T does not waive, and expressly reserves, it's right to assert any applicable privilege and/or work product defenses relating to the searches, data, and documents described below.

4.      As part of my involvement in this case, I conducted a number of searches of M&T's electronic records and prepared a spreadsheet of all accounts that could fall within one or more of Plaintiffs' proposed class definitions as pled in Plaintiffs' Second Amended Class Action Complaint.

5.      In doing so, I created a SQL query for the Locus application (*i.e.*, M&T's system of record for repossession and remarking), that would identify all accounts that met the following criteria:

      a.      Repossession occurred between September 22, 2011 and January 31, 2019;

            i.      <u>Programming language</u>: "`where Account_RepossessedDate between '9/22/2011' and '1/31/2019'`".

            ii.      <u>Plain English</u>: This means all accounts where collateral was repossessed between September 22, 2011 and January 31, 2019.

            iii.      <u>Problematic Results</u>: None.

      b.      The repossession occurred in the Commonwealth of Pennsylvania;

            i.      <u>Programming language</u>: "`and [RecoveryAddress_State] = 'PA'`".

            ii.      <u>Plain English</u>: This means all accounts where the repossession took place in Pennsylvania.

            iii.      <u>Problematic Results and Corrections</u>:  This search did not return any accounts with a repossession date prior to May 2012. This is

because Rapids (the system M&T used for repossessions prior to Locus) did not have a database field for the location of repossession. As a result, when the data from Rapids was ported into Locus, the "RecoveryAddress_State" database field was left blank. M&T then ran a supplemental search of a related Locus field that contains this data but pulls from a different data table (`[AutoIMS_RecoveryAddress]`). For those pre-May 2012 repossession accounts that did not have any data in either recovery address data field, M&T used the customer's primary address (`[Account_PrimaryCustomerState]`) as a proxy in order to approximate the limitation of Plaintiffs' proposed classes to those persons whose vehicles were repossessed in Pennsylvania. This data point was chosen as a proxy because over 97% of accounts that had Pennsylvania in the "RecoveryAddress_State" or "AutoIMS_RecoveryAddress" database field also had Pennsylvania as their primary address.

c.    The repossession was of a vehicle; and

    i.    <u>Programming language</u>: "`and   VIN_CollCode   not   in ('6500','6630') --Boat, Mobile Home`"".

    ii.    <u>Plain English</u>: This means all accounts secured by collateral except those where the collateral is a boat or a mobile home[1].

    iii.    <u>Problematic Results</u>: None.

---

[1] "Mobile home" is a separate and distinct code from a recreational vehicle (RV).

     d.     The retail instalment sales contract ("RISC") assigned to M&T was entered into in Pennsylvania.

         i.    <u>Programming language</u>: "`and Dealer_State = 'PA'`".

         ii.    <u>Plain English</u>: This means that the collateral was purchased from a dealer in Pennsylvania.

         iii.    <u>Problematic Results and Corrections</u>:  This search did not return any accounts with a repossession date prior to May 2012.  This is because Rapids (the system M&T used for repossessions prior to Locus) did not have a database field for the dealer state.  As a result, when the data from Rapids was ported into Locus, the "Dealer_State" database field was left blank.  M&T was not able to locate an electronic database field that could be used as a reliable proxy for this criterion.  For those accounts missing the "Dealer_State" database field, M&T conducted one of two supplemental searches.  It either: (1) manually reviewed each individual RISC to determine whether the RISC was entered into in Pennsylvania, or (2) for accounts with a "DealerNumber" database field filled in, M&T manually looked up the name of the dealership that corresponds with the dealer number and confirmed whether that dealership's address was in Pennsylvania.

6.     For any account that met the above criteria, and as relevant to the methodology used to assemble the list of accounts that could fall within one or more of Plaintiffs' proposed class definitions, the SQL queries returned the following data points (or blanks if no data exists) for each account:

a. Account number (`FullAccountNumber = [Account_LoanNo]`);

    i. <u>Problematic Results</u>: None.

b. Primary customer's name (`[Account_PrimaryCustomerName]`);

    i. <u>Problematic Results</u>: None.

c. Secondary customer's name (`[Account_SecondaryCustomerName]`);

    i. <u>Problematic Results and Corrections</u>:  This search did not return co-borrowers for those accounts with a repossession date prior to May 2012.  This is because Rapids (the system M&T used for repossessions prior to Locus) did not use this specific database field.  As a result, when the data from Rapids was ported into Locus, the "Account_SecondaryCustomerName" database field was left blank.  To determine if any of the pre-May 2012 accounts had co-borrowers, M&T ran a separate query of its ACAPS system for any secondary customers associated with those specific accounts (`[SEC-FIRST-NAME]`, `[SEC-LAST-NAME]`).

d. Account guarantor (`[Account_GuarantorCustomerName]`);

    i. <u>Problematic Results</u>: None.

e. Account co-maker (`[Account_ComakerCustomerName]`);

    i. <u>Problematic Results</u>: None.

f. Date that the NOR <u>and</u>, where applicable, the post-sale notice was created to be mailed to the consumer (`[AccountLetter_PrintedDate]`);

    i. <u>Problematic Results and Corrections</u>:  None.

g. Date the collateral was sold (`[Account_SoldDate]`);

    i. <u>Problematic Results</u>: None.

7.      In order to ensure that the SQL queries described herein were capturing all accounts that could fall within one or more of Plaintiffs' proposed class definitions, and in preparing M&T's Response to the Order Dated April 1, 2019, M&T engaged in quality control measures.   For this, I created a master spreadsheet limited only by <u>one</u> criterion: That the account had a repossession date falling on or between September 22, 2011 and January 31, 2019 (`where Account_RepossessedDate between '9/22/2011' and '1/31/2019'`).   This means that the search returned every account, bank-wide, in which there was a repossession that occurred between September 22, 2011 and January 31, 2019.   This broader search of all repossessions was used to test whether the more discerning database fields corresponding to Plaintiffs' proposed class criteria (e.g.- "Dealer_State", "RecoveryAddress_State", "VIN_CollCode", etc.) were reliably populating for all accounts and, if not, to determine alternate methods to research that information.   The results of these quality control measures are set forth in ¶¶ 5 and 7, *supra* at <u>Problematic Results [and Corrections]</u>.

8.      M&T also conducted spot checks as part of its quality control review to confirm that the extracted data used to determine whether a customer could fall within one or more of Plaintiffs' proposed class definitions actually matched a particular customer's file (e.g.- to confirm that `[Account_SecondaryCustomerName]` was populating reliably, M&T randomly selected accounts with this field blank and then manually reviewed the customer's RISC to confirm that this result was accurate).

9.      I provided the results of these queries and supplemental searches to PIB in excel spreadsheets for further filtering and/or sorting as necessary.

10.     In addition to the above, I was also consulted regarding the feasibility of several of the data extraction requests made by M. Elizabeth Karns in her "Proposed Data Queries and Instruments" exhibit attached to her Report.

11.     Based on my personal knowledge of the data extraction capabilities of M&T's systems, I can attest to the fact that M&T is incapable of electronically querying many of the "data elements" requested by Karns, including, *but not limited to*, "Was RISC legible", "RISC Executed with Borrower", "Storage Cost", "Cost paid by Borrower to Repo Agent, Broker, or Auction", "Was borrower notified of statutory redemption location options", and "Return to County where repossession Occurred", among several others.    M&T systems do not electronically store this information and I am unaware of any query or method of extraction that would allow M&T to electronically pull these data.

12.     Other "data elements" requested by Karns may appear on their face to correspond to extractable database fields (e.g.- "Total Expenses listed in the NOR", "Itemized cost of repossession", etc.) but would actually require a manual review of the customer's file.  This is because some of the data in Locus (including data relating to expenses) is imported directly from AutoIMS and therefore reflects the categorization given to the data by AutoIMS and not M&T (e.g.- whether a specific expense is categorized as a "repo expense", "auction expense" or "other expense", etc.).  These categorizations do not necessarily provide a one-to-one match for how M&T categorizes and breaks out the expenses it lists on its notices.

13.     Additionally, while M&T is able to electronically query whether a repossessed vehicle was returned to the borrower, M&T's electronic database fields do not distinguish between whether that vehicle was returned via "Redemption" or "Reinstatement".  For example, the database field "Account_RedeemDate" would be populated for customers who made a full balance redemption <u>and</u> for customers who reinstated their loan.

14.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

MANUFACTURERS AND TRADERS TRUST
COMPANY a/k/a M&T BANK


Frederick Randolph Surface Jr.
CAM Program Manager II

Date:  April 29, 2019

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, and CATHERINE HOSICK, individually and on behalf of all others similarly situated, | : : : : : | CIVIL ACTION  CLASS ACTION |
| Plaintiffs, | : : | Case No: 2:17-cv-4806-WB |
| v. | : : : | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | : : : | |
| Defendant. | : : | |

### AMENDED RESPONSES AND OBJECTIONS OF DEFENDANT
### MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK
### TO PLAINTIFFS' FIRST SET OF POST-REMOVAL CLASS DISCOVERY

Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("M&T"), by and through its undersigned counsel, hereby provides the following amended responses and objections to Plaintiffs' First Set of Post-Removal Class Discovery Directed to Manufacturers and Traders Trust Company a/k/a M&T Bank (the "Discovery Requests") in accordance with the Court's Order and Memorandum dated January 31, 2019 (the "Order"). (D.I. 147-148)

As expressly ordered therein, M&T's responses are limited to the Class Period and named Plaintiffs. Where noted, M&T will supplement its responses for the Sampled Class Members at such time as they, and the scope of class sampling discovery, have been determined.

### RESPONSES AND OBJECTIONS TO INTERROGATORY REQUESTS

#### Interrogatory No. 1:

Please state the name, address, and employer of each person who was involved in answering any discovery request and stating which discovery request(s) that person was

1

5170466.2


EXHIBIT
10

M&T further states that the Auction Expense as listed was calculated by subtracting the repossession fee as listed on the Repo Tab in Locus ($195.00) from the total charges billed to M&T by the third-party vendor ($1,566.78) for an Auction Expense of $1,371.78.  $195.00 of the repossession fee was invoiced pre-auction and therefore listed separately from the Auction Expense on the Post-Sale Notice.

M&T further states that the total charges billed to M&T for Plaintiff Abbott's vehicle are calculated by the third party vendor and can be further broken down as follows:

| Charges | | | | | | Customize Layout |
|---|---|---|---|---|---|---|
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Recon: Labor | BATTERY | 0 | - | $90.00 | - | $90.00 |
| Recon: Gasoline | FLUID SERVICE | 0 | - | $12.00 | - | $12.00 |
| Admin: Sale Fee | SALE FEE | 0 | - | $125.00 | - | $125.00 |
| Admin: Administration Fee | TITLE FEE | 0 | - | $65.00 | - | $65.00 |
| Charge Type | Description | Labor Hours | Labor Rate | Labor Cost | Parts Cost | Total Cost |
| Admin: Repossession Fee | AMERICAN RECOVERY | 0 | - | $325.00 | - | $325.00 |
| Recon: Appearance/Reconditioning | RECONDITIONING | 0 | - | $95.00 | - | $95.00 |
| Other: Miscellaneous | Miscellaneous | 0 | - | $20.00 | - | $20.00 |
| Transport: Transportation Fee | - | 0 | - | $210.00 | - | $210.00 |
| Recon: Mechanical Work | INOP | 0 | - | $585.78 | - | $585.78 |
| Admin: Administration Fee | IMS FEE | 0 | - | $14.00 | - | $14.00 |
| Admin: Inspection Fee | FRAME CHECK | 0 | - | $25.00 | - | $25.00 |
| | | 0 (total) | - | $1,566.78 (total) | - | $1,566.78 (total) |

M&T019950-M&T019958; *see also* M&T000528-M&T00529 and M&T001286.

**Interrogatory No. 13:**

In the NOTICE OF REPOSSESSION which the BANK SENT to each of the Representative Plaintiffs, the BANK included an itemization for:

**Expense of preparing/repairing the Vehicle for sale: $200.00**

13

Please state the criteria for how YOU determined this "expense." Please provide all DOCUMENTS which CONCERN or tend to substantiate the criteria to which YOU refer.

**Response to Interrogatory No. 13:**

M&T states that the $200.00 "expense" is an estimate of the actual charges that the borrower may be assessed. M&T further states that the estimate is provided as a placeholder to place the borrower on notice that an additional fee for preparing/repairing the vehicle for sale may be assessed to them as the actual fees incurred are not known at the time the notice is sent. M&T further states that this estimate was determined by reviewing a sampling of accounts with repossessed vehicles and comparing the actual expenses incurred for preparing/repairing those vehicles for sale. M&T then used this information to create an estimate of the potential charge. A borrower, however, is only responsible for paying those expenses actually incurred for their vehicle.

## OBJECTIONS AND REPSONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION OF DOCUMENTS

**Request No. 1**

In the NOTICE OF REPOSSESSION which the BANK SENT to Daisey (Exhibit 5), the Bank included itemizations as follows:

**Expense of storing the Vehicle: $175 (5 days, at $35.00 per day]**
**Expense of preparing/repairing the Vehicle for sale: $200.00**

Please provide a copy of all receipts, invoices, or other DOCUMENTS which support (or tends to support) either of these purported expenses, fees, or amounts. If these itemizations cannot be substantiated with any receipts, invoices, or other documentation, please so state in your response to this discovery request.

**Response to Request No. 1**

14

## AFFIDAVIT

Affiant affirm, subject to 28 U.S.C. 1746 and 18 Pa. C.S. §4904, as follows:

1. ___Carin M. Trice_____ ("Affiant") is a competent adult who, as the sole owner and active manager of Commonwealth Recovery ("CR"), has first-hand knowledge of the policies, procedures, and practices which Commonwealth Recovery has employed between May 20, 2007 through the present ("Relevant Period") with respect to the work it rendered for M & T Bank ("M & T").

2. During the Relevant Period, Commonwealth Recovery did not charge a storage fee to M & T for any vehicle CR repossessed for M & T while the repossessed vehicle was stored at its lot during the first 10 days after the date of repossession. After 10 days, Commonwealth Recovery would charge M & T a storage fee of approximately $10.00 per day.

3. If the owner of the repossessed vehicle came to Commonwealth's lot to redeem the vehicle, Commonwealth would customarily charge the vehicle owner (not M & T) a daily storage fee (i.e., approximately $25.00) for the storage of the repossessed vehicle at its lot and a redemption fee (i.e., approximately $35.00) and a personal property fee (i.e., approximately $35.00) for storing and inventorying the personal possessions.

4. If the owner of the repossessed vehicle came to Commonwealth's lot to pick-up their personal property which was in the repossessed vehicle, CR would charge the vehicle owner (not M & T) the personal property fee (i.e., approximately $35.00) for storing and inventorying the personal possessions.

5. After repossession, all repossessed vehicles stored in CR's lot are then moved by a third party (i.e., typically an auction) or driven away by the owner who would redeem. CR is not involved in transporting any redeemed repossessed vehicle.

6. While the fees and the number of storage days may have been modified over the years, the payor of these respective fees and the basis for the assessment of these fees has not changed. Any fees charged by CR were assessed with the approval and direction of M & T.

_Signature of Affiant_

SWORN AND SUBSCRIBED this 23 ..... day of __January__ , 2018.

_Notary Public's Signature_                        SEAL

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Lori L. Moyer, Notary Public
Lower Paxton Twp., Dauphin County
My Commission Expires Sept. 28, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Commonwealth of Pennsylvania
County of _CUMBERLAND_

**EXHIBIT**
26

## AFFIDAVIT

Affiant affirm, subject to 28 U.S.C. §1746 and 18 Pa. C.S. §4904, as follows:

1. I am Donald Dayton ("Affiant"), a competent adult. I and my sister Jennifer Versuk own and actively manage Don's Auto. I have first-hand knowledge of the policies, procedures, and practices which Don's Auto has employed in the last 10 years ("Relevant Period") with respect to the repossession of vehicles.

2. Don's Auto has never contracted to perform any repossession work directly with M & T Bank ("M & T"). Rather, Don's Auto performed M & T's vehicle repossession work pursuant to a written contract between Don's Auto and Millenium Capital and Recovery Corporation ("Millenium") and/or instructions directed by Millenium.

3. During the Relevant Period, Don's Auto did not charge a storage fee to Millenium for any vehicle it repossessed while the repossessed vehicle was stored at its lot during the first 15 days after the date of repossession. After this 15 day time period, Don's Auto would typically charge Millenium a storage fee of approximately $8 per day.

4. During the Relevant Period, if the owner of a repossessed vehicle came to Don's Auto's lot to redeem the repossessed vehicle or to reinstate their loan, Don's Auto would charge the vehicle owner: (i) a daily storage fee for the storage of the repossessed vehicle at its lot (approximately $30 per day); (ii) a Redemption Fee for the redemption of the vehicle or reinstatement of the account (approximately $40); and, (iii) a Personal Property Fee for storing and inventorying the personal possessions left in the repossessed vehicle (approximately $25-40).

5. During the Relevant Period, if the owner of the repossessed vehicle came to Don's Auto's lot to pick-up just their personal property which was in the repossessed vehicle, Don's Auto would charge the vehicle owner only a Personal Property Fee.

6. During the Relevant Period, depending upon the instructions of Millenium and/or the contract between Don's Auto and Millenium, Don's Auto would receive none, some, or all of the respective fees described in Paragraphs 4 and 5 above (forwarding, as may be necessary, a portion of the fee to Millenium).

Signature of Affiant

EXHIBIT

27

**M&T Bank**

December 23, 2015

Doug J Abbott
2821 St Rt 18
Hookstown, PA 15050

RE:  Account # 11051400970001

Dear Doug J Abbott:

We are writing you with ***GOOD NEWS*** about the above referenced account.

To assist you in paying the outstanding amount on this account M&T Bank is offering to
modify and reduce your monthly payments. The below payment reduction may provide
you with the payment relief needed to meet your monthly financial obligations. To
qualify for this program, you will need to provide the reason for your financial hardship,
type of income source and commitment to pay the account in full. M&T will base your
new monthly payment amount on your outstanding principal balance.  We agree to waive
any accrued interest and late fees to date. The remaining term of your account may
change as a result of your lowered monthly payment. Your interest rate may also be
reduced.

| | |
|---|---|
| **Current Balance:** | **$3,927.84** |
| **Term:** | **48 Months** |
| **Interest Rate:** | **7.09%** |
| **Monthly Payment (could be as low as)** | **$ 94.22** |

Please Contact our office within **fifteen (15)** days from the date of this letter at 1-800-
724-8644 to obtain more information about how you can take advantage of this program.
The office hours associated with our phone number 1-800-724-8644 are Monday through
Thursday from 8:00am – 9:00pm, EST and Friday 8:00am – 5:00pm, EST.

Nothing herein shall constitute a waiver of any rights or remedies of the Bank under applicable
account documents or at law, all of which rights and remedies are specifically reserved. If you
are in bankruptcy or received a bankruptcy discharge of debt, this communication is not an
attempt to collect the debt against you personally, but strictly for informational purposes only. If
you have not filed bankruptcy, this is an attempt to collect a debt and any information may be
used for that purpose.

M&T Bank, Understanding what's important.

Sincerely,

Diane Stevenson
Prevention Department



EXHIBIT
29

**THIS IS NOT A SOLICIATION.**
**IT IS A COURT NOTICE WHICH MAY AFFECT YOUR LEGAL RIGHTS.**

*United States District Court for the Eastern District of Pennsylvania*
*Flynn, et al., v. M&T Bank, 2 :17-cv-04806-WB (E.D. Pa).*

## If You Were Sent a Repossession Notice From M&T Bank
## this class action lawsuit may affect your rights.

**The Honorable Wendy Beetlestone of the United States District Court for the Eastern District of Pennsylvania has authorized this notice. This is not a solicitation from a lawyer and you are not being sued.**

❖ **Consumers have sued M&T Bank claiming that the its repossession-related practices violated Pennsylvania law.**

❖ **The Court has allowed the lawsuit to be a class action on behalf of consumers who were sent a repossession notice anytime between 9/23/2011 through 5/13/19.**

❖ **The Court has not decided that M&T Bank did anything wrong. There is no money available now, and no guarantee that there will be. However, your legal rights are affected, and you have a choice to make now.**

| Your Legal Rights And Options In This Lawsuit | |
|---|---|
| **Do Nothing** | Stay in this lawsuit. Await the outcome. Give up certain rights.<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement of this lawsuit. But you give up any rights to sue M&T Bank separately about the same legal claims in this lawsuit.<br><br>[*If applicable*] M&T Bank contends that it has a claim to recover money from you. The Court has yet to decide your or M&T's rights. |

EXHIBIT

33

| | |
|---|---|
| **Ask To Be Excluded** | **Get out of this lawsuit. Get no benefits from it. Keep rights**.<br>If you ask to be excluded and money or benefits are later awarded, you won't share in those. But, you keep any rights to sue M&T Bank separately about the same legal claims in this lawsuit. Time is of the essence so, if you decide to do so, you should seek the advice of an attorney of your choosing. |

❖ Your options are explained in this Notice. To ask to be excluded, you must act before **Month, Date, Year**.

❖ Lawyers must prove their respective claims in Court.

❖ **Any questions? Read on.**

## Basic Information

### 1. Why did I get this Notice?

A class action lawsuit has been brought against M&T Bank. A copy of this lawsuit can be accessed at [website]. This lawsuit involves the way in which M&T Bank informed car loan borrowers like you of your legal rights after your car was repossessed.

You received this Notice because M&T Bank's records show that you were sent a post-repossession consumer disclosure notice that is alleged not to include adequate disclosures required by Pennsylvania law.

### 2. What is this lawsuit about?

After a lender such as M&T Bank repossesses your vehicle, Pennsylvania law requires that the lender send a post-repossession consumer disclosure notice which adequately describe the consumer's legal rights. A lender's failure to provide the required disclosure gives rise to automatic statutory damages, and in some cases prevents a claim for a deficiency. The plaintiffs in this lawsuit claim that the M&T Bank did not send a notice and violated Pennsylvania law.

### 3. What is a class action and who is involved?

In a class action one or more people called "Class Representatives" (in this case Edward Flynn, Douglas Abbott, Gene Daisy, Janene Chapman, and Percy Chapman) sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." These Class Members are the Plaintiffs (the ones suing). M&T Bank is the Defendant (the one being sued). One court resolves the issues for everyone in the Class – except for those people who choose to exclude themselves from the Class.

## The Claims in The Lawsuit

### 4. What are the Plaintiffs asking for?

If M&T Bank's post-repossession consumer disclosure notices do not comply with Pennsylvania law, the consumers are entitled to recover money based on a formula contained in the law. The amount of money each consumer is entitled to recover is based upon the amount of the loan and the amount of interest the loan calls for. The amount that the law affords you to recover for these formulaic damages is $_____. If Plaintiffs are successful, the Court may also order that the Bank issue a refund in the amount of $_____ which you either have paid towards a (disputed) deficiency balance or paid towards a loan which financed the (disputed) deficiency balance and prevent M&T Bank from recovering the amount still owed on the loan after your repossessed vehicle has been sold. The Court may also order the Court to remove any negative references the Bank has submitted to Credit Reporting Agencies regarding the disputed deficiency balance M&T Bank claims. The Plaintiffs are asking for these and other remedies.

### 5. What do the Lenders say about this lawsuit?

M&T Bank denies that it engaged in any unlawful practices, and deny any and all liability with respect to any and all facts and claims alleged in the lawsuit. [*If applicable*] The Bank contends that it has the right to collect $_____ from you. Plaintiffs' Counsel denies this claim and, unless you opt-out, will continue to litigate this case on your behalf.

### 6. Has the Court decided who is right?

The Court hasn't decided whether the Plaintiffs or M&T Bank is correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiffs will win

3

or lose this case. [*If applicable*] Each party / Plaintiffs must prove their respective claims.

**8. Is there any money available now?**

No money or benefits are available now because the Court hasn't decided whether M&T Bank did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits will ever be obtained. If they are, you will be notified about how to obtain your share.

## Who Is in The Class?

**9. Am I part of the Class?**

Judge Beetlestone decided that there are ___ classes. You are in the Class 1 / Alternative Class 1 and/or Class 2 / Alternative Class 2.

[Class definition(s) to be listed here].

## Your Rights and Options

**10. What happens if I do nothing at all?**

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this lawsuit. By doing nothing you are staying in the Class. If you stay in and the Plaintiffs obtain money or benefits, either as a result of the trial or settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose this case, you will not be able to sue, or continue to sue, M&T Bank – as part of any other lawsuit – about the same legal claims presently plead. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.

**11. Why would I ask to be excluded?**

If you already have your own lawsuit against M&T Bank with claims similar to this class action and want to continue with it, or wish to bring your own lawsuit against M&T Bank with claims similar to this class action, you need to ask to be excluded from the Class. If you exclude yourself from the Class – which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't get any money or

benefits from this lawsuit even if the Plaintiffs obtain as a result of the trial or from any settlement (that may be reached) between Defendant and the Plaintiffs. However, you may then be able to sue or to continue to sue M&T Bank for repossession claims. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against M&T Bank after you exclude yourself, you will have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against M&T Bank, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Note that you may be entitled to more, less, or the same amount of money being sought in this lawsuit if you wish to pursue actual damages for any monetary injuries you believe that you suffered by filing an individual lawsuit. The law enables you to come forward to prove your loss with receipts or other documents unique to your claim. However, this class action is only seeking minimum statutory damages which is determined by a mathematical calculation of 10% of the finance charge plus amount financed as reflected in your loan document. Other additional relief which Class Counsel is pursuing on your behalf if you choose to stay in this class action include the elimination any deficiency balance M&T Bank claims you owe and the removal of the loan information (and repossession) on your credit report, the return of monies you paid on any deficiency balance, and the vacating of any judgement that M&T Bank may have against you.

The amount of the statutory minimum damages which Class Counsel is attempting to obtain on your behalf is $_____ plus a refund in the amount of $_____ which you either have paid towards a (disputed) deficiency balance or paid towards a loan which financed the (disputed) deficiency balance. [*If applicable*] The amount of the deficiency balance which M&T Bank claims you owe (which Class Counsel is attempting to eliminate and/or denies that you owe) is $_____.

## 12. How do I ask the Court to exclude me from the Class?

To ask to be excluded you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *Flynn v. M&T Bank*. Be sure to include your name and address, and sign the letter. You must mail your exclusion request, postmarked by **Month, Date, Year**, to:

Richard Shenkan
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St. West Bloomfield, MI 48323
rshenkan@shenkanlaw.com
1-800-601-0808

## The Law Firm Representing You

### 13. Do I have a lawyer in this case?

Yes. Judge Beetlestone has decided that Richard Shenkan, James Haggerty, and their respective law firms (called "Class Counsel.") are qualified to represent you and all Class Members who do not opt out. These firms are experienced in handling similar class actions. You may contact Class Counsel:

Richard Shenkan
6550 Lakeshore St.  West Bloomfield, MI 48323
rshenkan@shenkanlaw.com
1-800-601-0808

### 14. Should I get my own lawyer?

If you do not opt out, you do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want to your own lawyer, you will have to pay that lawyer. For example, you can ask him or her appear in Court for you if you want someone other than Class Counsel to speak for you.

### 15. How will the lawyers be paid?

If Class Counsel obtains money or benefits for the Class, they may ask the Court for fees and expenses. You will not have to pay these fees and expenses. If the Court grants Class Counsel's request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by M&T Bank.

## Will There Be a Trial?

The Court has not yet scheduled a trial to decide who is right in this case. There is a chance that the Court may not have a trial in this matter because Plaintiffs and/or the Defendant may ask the Court to decide this case based on information already obtained.

6

### 16. How and when will the Court decide who is right?

Unless the case is resolved by settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims at trial. The Court will set a trial date if the parties cannot settle the case and if the Plaintiffs cannot prove that they are right by legal negotiations. There is no guarantee that the Plaintiffs will win, or that they will get any money for the class.

### 17. If there is a trial do I have to come?

If there is a trial you do not need to attend. Class Counsel will present the case for the Plaintiffs, and M&T Bank will present its defenses *[if applicable]* (and its case for a deficiency balance.)

### 18. Will I get money if the Plaintiffs win?

If the Plaintiffs obtain benefits as a result of the Court decision or a settlement, you will be notified about how to claim your share of the benefits. We do not know how long this will take.

## GETTING MORE INFORMATION

### 19. Additional Information.

This notice does not fully describe this lawsuit.  You may inspect the Court files (excluding any documents filed under seal) at the Office of the Clerk, United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106 during the hours of 9:00 a.m. to 4:00 p.m., Monday through Friday. You can also access relevant documents at www._____.com.

If you have any questions, contact either your own attorney, or Class Counsel listed above.  However, you do not need to contact the above-named attorneys to remain a member of the class.

The Honorable Wendy Beetlestone

District Judge, United States District Court for the Eastern District of Pennsylvania

Dated:  [_____]