IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, PERCY CHAPMAN, and JANENE CHAPMAN, individually and on behalf of all others similarly situated | ) ) ) ) | CIVIL ACTION |
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | Case No. 2:17-cv-04806-WB |
| v. | ) ) | |
| MANUFACTURERS AND TRADERS TRUST COMPANY a/k/a M&T BANK, | ) ) ) | |
| Defendant. | ) ) ) | |

**SUPPLEMENT TO MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF ATTORNEY FEES AND COSTS, ENTRY OF FINAL JUDGMENT, AND DISMISSAL WITH PREJUDICE**

AND NOW COMES Plaintiffs, Edward R Flynn, Gene Daisey,[1] Douglas J. Abbott, Percy Chapman, and Janene Chapman (together, "Plaintiffs"), by and through their undersigned counsel, submit this Supplement to Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice, stating as follows:

1.   Plaintiffs filed their Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice and supporting Memorandum of Law on October 24, 2022 (ECF 409, 409-1), prior to the November 16, 2022 deadline for objections and opt-outs.

2.   Neither the Settlement Administrator nor Class Counsel have received any objections or

---

[1] Gene Daisey died on September 29, 2022. An estate will be opened.

opt-out requests.

3. The affidavit of the Settlement Administrator is attached as **Exhibit 1**.

4.  Class Counsel, advanced expenses in the amount of $213,358.42.

5. Class Counsel respectfully submits the following expert reports in support of Plaintiffs'

Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval

of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice:

> a. Expert Report of Thomas Tartar, a credit and banking expert who opines, *inter alia*, that the credit trade line expungement will more likely than not, result in an increase of Class Members' credit scores by approximately 50 - 125 points. **Exhibit 2**.

> b. Expert Report of Robert Rossi regarding attorney fee request. **Exhibit 3**.

6. The Settlement Agreement referenced three potential *cy pres* recipients: the National

Consumer Law Center, the Public Justice Foundation, and the National Association of Consumer

Advocates.

7. Class Counsel respectfully submits that these third parties would use the *cy pres* funds for

charitable purposes reasonably approximating the interests pursued by the Class.[2]

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for

Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney

Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice. A revised proposed order

---

[2] "In the usual *cy pres* case, money from a class settlement fund remains after distributions to class members, perhaps because "class members cannot be located, decline to file claims, have died, or the parties have overestimated the amount projected for distribution." *Baby Prods.*, 708 F.3d at 169. In those cases, parties may seek to 'distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class.' *Id.*" *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326–27 (3d Cir. 2019).

is attached.

Respectfully submitted,
SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan
Richard E. Shenkan                          James Haggerty
SHENKAN INJURY LAWYERS, LLC.                HAGGERTY GOLDSMITH SCHLEIFER
P.O. Box 7255                               AND KUPERSMITH, P.C.
New Castle, PA  16107                       1801 Market St., Suite 1100
P: (800) 601-0808                           Philadelphia, PA 19103
F: (888) 769-1774                           P: (267) 350-6600
rshenkan@shenkanlaw.com                     jhaggerty@hgsklawyers.com
**Counsel for Plaintiffs**                  **Counsel for Plaintiffs**


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent to all counsel on the date of filing via the Court's electronic court filing system (ECF).

SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan                         11/21/2022
By: Richard Shenkan                         Date
*Attorney for Plaintiffs*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDWARD R. FLYNN, ET AL, | ) |
| | ) |
| Plaintiffs, | )   CIVIL ACTION |
| | ) |
| v. | ) |
| | ) |
| MANUFACTURERS AND TRADERS | ) |
| TRUST COMPANY a/k/a M&T BANK, | ) |
| | )   No. 2:17-cv-04806-WB |
| Defendant. | ) |
| | ) |

### SUPPLEMENTAL[1] DECLARATION OF DOROTHY SUE MERRYMAN

I, Dorothy Sue Merryman, pursuant to 28 U.S.C. § 1746, declare under penalty of
perjury that the foregoing is true and correct:

1.      I have personal knowledge of the facts stated in this declaration and can
competently testify to the same. I am a Senior Project Manager for Class-Settlement.com
("Settlement Administrator").

2.      On October 7, 2022, I caused Exhibit 1 to be sent by U.S. Mail to the
8,001 Settlement Class Members on the Class List, after first comparing the list against
the USPS National Change of Address (NCOA) Database.

3.      To date, 731 Class Notices were returned as undeliverable. 363 returned
Class Notices were forwarded to updated addresses provided by the Postal Service. For
the remaining 368 Class Notices, the Settlement Administrator performed a skip trace

---

[1] My initial declaration was filed of record on October 24, 2022 as Exhibit 2 to *Plaintiff's
Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Settlement
Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, and Entry of
Final Judgement and Dismissal with Prejudice* (ECF 409-1). For the Court's easy reference, a
copy of that affidavit and the Class Notice sent by Class-Settlement.com is attached hereto as
**Exhibit 1**.

**EXHIBIT**

1

and obtained forwarding addresses for an additional 71 Class Members. Therefore,

297 Class Members (3.7% of the Class) have yet to be located (e.g., name change

due to marriage or divorce, deceased, etc.) The Settlement Administrator will continue

research efforts to attempt to locate a valid mailing address for the remaining 58 Class

Members.

      4.     As the class period commenced in 2011, a 3.7% non-deliverable rate is

expected and reasonable.

      5.     To date, no Class Member has submitted any objection to the settlement.

      6.     To date, no Class Member has submitted any opt-out request.

      7.     I am available to participate by telephone in tomorrow's Fairness Hearing

if requested by the Court.


      Executed on:  November 21, 2022

Dorothy Sue Merryman

**M & T BANK REPO CLASS ACTION**
P.O. Box 9009
Hicksville, NY 11802-9009

https://mtbankrepoclassaction.com

You may access the Settlement Website by using the camera on your mobile device to scan this QR code:



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

RE:     *Case No. 2:17-cv-04806-WB; Edward R. Flynn, et. al., individually and on behalf of all others similarly situated v. Manufacturers and Traders Trust Company a/k/a M&T Bank*

**A Court has authorized this Notice. This is not a solicitation from a lawyer. You are receiving this Notice because you may be a class member for purposes of a proposed Settlement. Your rights may be affected whether or not you act in response to this Notice. Please read this Notice carefully.**

### WHY HAVE YOU BEEN SENT THIS NOTICE

The parties have reached a proposed settlement (the "Settlement") in the above referenced matter. This Settlement, if approved by the Court, will resolve a class action lawsuit against Manufacturers and Traders Trust Company, also known as M&T Bank ("M&T Bank"), over whether M&T Bank complied with the Pennsylvania Uniform Commercial Code (UCC), independently, and in conjunction with the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA) relating to notices that must be sent to car loan borrowers after their vehicle was repossessed ("Post-Repossession Consumer Disclosure Notices") and after the repossessed vehicle was sold ("Post-Sale Notices"). The relevant time period for the Settlement is from September 22, 2011 through the Preliminary Approval Date (the date the Judge entered a Preliminary Approval Order), inclusive. According to M&T Bank's records, you are a member of the Class.

The class action lawsuit, *Edward R. Flynn, et. al., individually and on behalf of all others similarly situated v. Manufacturers and Traders Trust Company a/k/a M&T Bank*, Case No. 2:17-cv-04806-WB (the "Lawsuit"), is pending before the Honorable Wendy Beetlestone in the United States District Court for the Eastern District of Pennsylvania. M&T Bank denies and disputes the claims asserted in the Lawsuit. The parties disagree about whether any money (and if so, how much) could have been awarded to you if the Plaintiffs were to prevail at trial. The Settlement avoids the costs and risks to the parties associated with proceeding with the Lawsuit.

Under the Settlement, M&T Bank will provide a gross settlement payment of $7.0 million to a Settlement Fund to be used to pay (i) a settlement payment to Class Members, (ii) administrative costs, (iii) class counsel's legal fees and costs, and (iv) an incentive payment to the representative Plaintiffs and one former representative Plaintiff.

M&T Bank will also compromise the Disputed Deficiency Balances[1] that it claims are presently owed on the Class Members' Auto Loans (subject to the exclusions below). As of July 18, 2022, the total amount of the deficiency balances of all Class Members (excluding only the loan balances for those Class Members whose vehicles have not been sold as of July 18, 2022) is $42,228,253.43. M&T Bank will also request that the credit reporting agencies Experian, TransUnion, and Equifax delete the credit reporting trade lines associated with the Class Members' Auto Loans with M&T Bank (except those Class Members who redeemed their vehicle and/or reinstated their account after repossession and whose vehicle was not subsequently repossessed and sold again prior to the Effective Date.) In exchange, M&T Bank and each Class Member will release each other from liability (or potential liability), in connection with the Class Member's Auto Loan, as more fully set forth in the Settlement Agreement. The Settlement Agreement can be reviewed at mtbankrepoclassaction.com, by reviewing the pleadings at www.pacer.com, or by requesting a copy from Class Counsel Richard Shenkan and Shenkan Injury Lawyers, LLC (contact information below).

---

[1] The Capitalized Terms refer to terminology that is defined in the Settlement Agreement.

**1**

## SUMMARY OF SETTLEMENT BENEFITS & YOUR OPTIONS

The Settlement will provide several benefits to the Class Members.

### Settlement Payments

All Class Members will receive a net settlement payment in an equal proportionate share according to the number of unique accounts after payment of attorney fees, incentive awards, reimbursement of expenses, and payment of administrative fees. Settlement payments on accounts with more than one borrower will be split evenly among the coborrowers, unless requested otherwise as set forth below.

### Compromise of Disputed Deficiency Balances

The balance remaining on an Auto Loan after the financed vehicle is repossessed and sold by a bank or financing company is called a "deficiency balance." The parties are in a good faith dispute as to the validity of this debt. In connection with the Settlement Agreement, M&T Bank has agreed to compromise the Disputed Deficiency Balances it claims are presently due and owing by the Class Members relating to their subject Auto Loans. Because of this, if you do not exclude yourself from the Class and the settlement is granted final approval, any payments you make afterwards towards the Disputed Deficiency Balance will be returned by M&T Bank.

### IMPORTANT INFORMATION REGARDING YOUR AUTO LOAN DEBT

Your deficiency balance is not a "Disputed Deficiency Balance" under the Settlement Agreement and will **not** be compromised if:

1- After your vehicle was sold, your deficiency balance was reduced to judgment as of the Preliminary Approval Date as a result of a lawsuit filed against you by M&T Bank or its agents;

2- After your vehicle was sold, you entered into an agreement with M&T Bank as of the Preliminary Approval Date to settle your deficiency balance; and/or

3- Your Auto Loan Account was sold to a third party prior to the Preliminary Approval Date.

Additionally, a "deficiency balance" only arises after a vehicle has been sold. As such, if you got your vehicle back after it was repossessed (*i.e.*, if you redeemed your vehicle or reinstated your account with M&T Bank) and your vehicle was not subsequently repossessed and sold prior to the Effective Date, you do not have a "deficiency balance" and your loan balance will not be compromised as a result of this Settlement.  Any balance remaining on your Auto Loan Account will continue to be due and owing to M&T Bank.

---

**Will I Receive a Compromise of My Deficiency Balance?**
**If you are unsure whether any of these exclusions apply to you, contact the Settlement Administrator or Class Counsel immediately.  Your failure to obtain this information in a timely fashion may impair your ability to make an informed decision as to the impact of this Settlement on your legal rights.**

---

### Request to Delete Credit Reporting

M&T Bank has agreed to submit requests to the three major credit reporting agencies – Experian, Equifax, and TransUnion – to delete the credit reporting related to all Class Members' Auto Loans except for those Class Members who redeemed their vehicle and/or reinstated their account and whose vehicle was not subsequently repossessed again and sold prior to the Effective Date.

### Your Options

At this time, you are assumed to be a Class Member who is participating in the Settlement. Therefore, your rights will be affected even if you do nothing. Please read this Notice carefully. The following is a general summary of the actions you can take and the results of those actions. If you want to have a detailed discussion regarding your specific situation or have other questions or concerns, you may contact Class Counsel at 1-800-411-1770.

| YOUR ACTION | RESULT OF THAT ACTION |
|---|---|
| **DO NOTHING** | You remain in the Settlement. If the Settlement is approved, you **will receive the benefits** summarized above **unless you fall into one of the exclusions listed above**. In exchange, you give up the right to sue M&T Bank for matters concerning your Auto Loan and the repossession and sale of your vehicle as set forth in the Settlement Agreement. |
| **ASK TO BE EXCLUDED** | You are removed from the Settlement. You will not receive the benefits summarized above. However, this is the only option that allows you to pursue your own lawsuit or to participate in any other lawsuit against M&T Bank concerning your Auto Loan or the repossession and sale of your vehicle. The deadline for you to submit your signed request to be excluded is **November 16, 2022,** forty (40) days after the date of this Notice, so you must act promptly. |
| **OBJECT TO SETTLEMENT** | If you object to the Settlement, you are still in the Settlement, but you have notified the Court in writing that you don't like the Settlement and the reason for your objection. The deadline for you to submit a signed objection is **November 16, 2022,** forty (40) days after the date of this Notice, so you must act promptly. See Paragraph 23 below. |
| **OBJECT TO ALLOCATION OF SETTLEMENT PAYMENTS (CO-BORROWERS ONLY)** | If you are a co-borrower, you may also object to the equal allocation between co-borrowers on an Auto Loan of the settlement payment. This is not the same as objecting to the Settlement and you will still be a part of the Settlement. The deadline for you to submit an objection to the equal payment allocation is **November 16, 2022,** forty (40) days after the date of this Notice, so you must act promptly. See Paragraph 24 below. |
| **GO TO THE HEARING WHERE THE COURT CONSIDERS WHETHER TO APPROVE THE SETTLEMENT** | You are still in the Settlement and get the benefits of the Settlement, if approved by the Court. You do not need to attend the hearing to get the benefits of the Settlement, but you are invited to attend and will be afforded an opportunity to speak in Court about the fairness of the Settlement (should you choose to do so) or, if applicable, why any belatedly submitted objection or request for exclusion should be considered. If you object to the settlement, you need to state in your objection your intention to appear at the fairness hearing. See Paragraph 24 below. |

## WHAT THIS NOTICE CONTAINS

### BASIC INFORMATION

1. Why is there a Notice?................................................ 3
2. What is this Lawsuit About? ..................................... 3
3. Why is this a Class Action? ...................................... 3
4. Why is there a Settlement? ....................................... 3

### WHO IS IN THE SETTLEMENT?

5. How do I know if I am part of the Settlement? .................... 4
6. What if I am not sure whether I am included in the Settlement? ............................................................ 4

### THE SETTLEMENT BENEFITS

7. What does the Settlement provide? ....................................... 4
8. What is the Settlement payment? ....................................... 4
9. What is the benefit of the compromise regarding the contested liability of the disputed deficiency balances.......... 4
10. What is the credit reporting benefit? ................................... 4
11. When will I receive my benefits?......................................... 4
12. What am I giving up and what claims might I still have to pursue if I remain in the Settlement? ..................... 5
13. Will this affect my taxes? ................................................. 5
14. What happens if this notice is addressed to a class member that has passed away? ........................................ 5
15. What happens if this debt was discharged in or is presently included in a bankruptcy? ............................... 5
16. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my account? ................ 5

### HOW TO GET BENEFITS

17. Do I need to do anything to get the settlement payment, credit reporting benefit or to have my alleged but disputed deficiency balance compromised? .......................................... 5

### EXCLUDING YOURSELF FROM THE SETTLEMENT

18. How do I exclude myself from the Settlement? .................... 5
19. If I do not exclude myself, can I sue M&T Bank for the same thing later? ........................................................... 5
20. If I exclude myself, can I still benefit from this Settlement?  5

### THE LAWYERS REPRESENTING YOU

21. Do I have a lawyer in the case?........................................... 5
22. How will the lawyers be paid? ........................................... 5

### OBJECTING TO THE SETTLEMENT, REQUESTING EXCLUSION, OR OBJECTING TO THE EQUAL DISTRIBUTION OF THE SETTLEMENT PAYMENT FOR CO-BORROWERS

23. How do I tell the Court if I do not like the Settlement? ........6
24. If I am a co-borrower, can I object to the equal division of the settlement payment as between both co borrowers? .......6
25. What is the difference between objecting and asking to be excluded? ........................................................................6

### THE COURT'S FAIRNESS HEARING

26. When, where, and how will the Court decide whether to approve the Settlement? .................................................6
27. Do I have to attend the fairness hearing?...............................6
28. May I speak at the hearing? ...............................................6

### GETTING MORE INFORMATION

29. How do I get more information? ...........................................6

## BASIC INFORMATION

### 1.  Why is there a Notice?

A Court has authorized this Notice because you have a right to know about the proposed Settlement of the Lawsuit and about all of your options before the Court decides whether to give final approval to the Settlement. This Notice explains the Lawsuit, the key terms of the proposed Settlement in summary fashion, and your legal rights. If the Court approves the Settlement, after any appeals are resolved, the Settlement Administrator will make the payments and M&T Bank will provide the relief as described in the Settlement.

### 2.  What is this Lawsuit About?

The individuals who sued M&T Bank (the "Plaintiffs") have claimed that M&T Bank violated the Pennsylvania Uniform Commercial Code (UCC) and the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA) by failing to send its borrowers proper notices after repossession of a financed vehicle. Plaintiffs, on their own behalf and on behalf of the Class Members, seek to recover statutory damages and certain declaratory, injunctive, and equitable relief, including the compromise of Disputed Deficiency Balances on the Class Members' Auto Loan accounts which M&T Bank contends is presently due and owing, the expungement of all references to the loan and repossession on Class Members' credit reports, the return of monies paid towards the Disputed Deficiency Balances, and the cessation of collection efforts for all Class Members relating to their Auto Loans. M&T Bank, on the other hand, contends that the notices it sent to Plaintiffs and the Class Members complied in all respects with its statutory obligations and denies all liability. M&T Bank further contends that it is entitled to pursue collection of the Disputed Deficiency Balances and asserts other defenses, including setoff of any amounts claimed due after repossession. These issues have not yet been decided by the Court, and, if this Settlement is approved, these issues will not be resolved on the merits. The settlement of these claims will not differentiate as to whether or not the Bank sent (or failed to send) a Notice of Repossession and/or Post-Sale Notice or the respective strengths, weaknesses, or amounts of each respective claim. Instead, all Class Members, on a per auto loan basis, will be accorded the same pro rata amount after attorney fees, reimbursement of expenses, payment of incentive awards, and administrative costs are made.

### 3.  Why is this a Class Action?

In a class action, one or more people called "representative plaintiffs" sue on behalf of themselves and other people with similar claims. All of these people together are the "class" or "class members." In this Lawsuit, the Plaintiffs, Edward Flynn, Gene Daisey, Douglas Abbott, Percy Chapman, and Janene Chapman, are the Representative Plaintiffs. If this Settlement is approved, the Settlement will resolve the claims of all of the Class Members except for those individuals who exclude themselves from the class or pursue a claim that is expressly preserved by the Settlement Agreement. For purposes of this Settlement, you are a Class Member.

### 4.  Why is there a Settlement?

The Court has not decided in favor of the Plaintiffs or the Defendant M&T Bank. Instead, both sides have agreed to a Settlement. By agreeing to this Settlement, both sides avoid the cost and risk of a

trial, and the individuals affected may decide whether to participate in the Settlement. Class Counsel recommends the Settlement. Without a settlement, there would continue to be a dispute concerning class certification and disputes concerning liability and damages that would need to be determined at trial. A trial could result in a greater benefit to Class Members, a smaller benefit to Class Members, or no benefit to Class Members, and potentially could result in Class Members being held liable for the Disputed Deficiency Balances which, though disputed, M&T Bank claims are owed. This Settlement provides very substantial benefits, including monetary settlement payments, the compromise of all Disputed Deficiency Balances (as that term is defined in the Settlement Agreement), and requests to the credit reporting agencies to delete the Class Members' trade lines related to their auto loans with M&T Bank (except for the tradelines of those Class Members whose vehicle was redeemed and/or reinstated after it was repossessed and whose vehicle was not subsequently repossessed and sold before the Effective Date). The Settlement does not mean that M&T Bank did anything wrong.

### WHO IS IN THE SETTLEMENT?

If you received this Notice in the mail, M&T Bank's records indicate you are a Class Member and are included in this Settlement. Even if you did not receive a mailed notice, you may still be a Class Member and included in this Settlement, as described below.

**5. How do I know if I am part of the Settlement?**

You are included in the Settlement if you fall within the definition of "Class Member" in the Settlement Agreement (see below for where this agreement can be reviewed).

**6. What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement, you may call Class Counsel at 1-800-411-1770, or write Class Counsel at the following address/email address, with questions.

Richard Shenkan
Shenkan Injury Lawyers, LLC.
6550 Lakeshore St. West Bloomfield, MI 48323
rshenkan@shenkanlaw.com
1-800-411-1770

### THE SETTLEMENT BENEFITS

**7. What does the Settlement provide?**

If the Settlement is approved and becomes final, it will provide, among other things, the following benefits to Class Members who have not excluded themselves from the Settlement:

- Settlement payments (see Question 8);
- The compromise of the Class Members' Disputed Deficiency Balances (as that term is defined in the Settlement Agreement) (see Question 10); and
- Requests to the credit reporting agencies to delete the credit trade lines associated with the Class Members' Auto Loans with M&T Bank except for the tradelines of those Class Members whose vehicle was redeemed and/or reinstated after it was repossessed and whose vehicle was not subsequently repossessed and sold before the Effective Date (see Question 11).

More details are in the Settlement Agreement, which is available to be reviewed at mtbankrepoclassaction.com or by accessing the record for this lawsuit at www.pacer.com.

**8. What is the Settlement payment?**

A cash payment will be sent to each borrower and coborrower who are Class Members and have not excluded themselves. The settlement payment will be distributed in equal payments to all Class Members, on a pro rata, per auto loan basis, after attorney fees, reimbursement of expenses, payment of incentive awards, and administrative costs. If there are coborrowers on an account, the payment will be split between the coborrowers, unless requested otherwise.

**9. What is the benefit of the compromise regarding the contested liability of the Disputed Deficiency Balances?**

If M&T Bank sold your repossessed vehicle and the amount of the sale did not cover the amount that you purportedly owed on the loan, then you may owe M&T Bank a deficiency balance. Plaintiffs dispute that any deficiency balance is owed by any Class Member. M&T Bank claims that the deficiency balances are owed. As part of the Settlement, M&T Bank agrees to compromise the class members' Disputed Deficiency Balances (as that term is defined in the Settlement Agreement). Compromise of any Disputed Deficiency Balance claimed due in an amount of $600.00 or more may result in the issuance of IRS Form 1099C.

Example: At the time M&T Bank sold Amanda's repossessed vehicle, she owed $10,000 on her loan. M&T Bank incurred $250 to repossess her vehicle and $250 to sell the vehicle. Amanda's vehicle sold for $6,000 at auction. Amanda's deficiency balance would be $4,500.

|  | Calculation | | |
|---|---|---|---|
| [($10,000 + $250 + $250) | - | ($6,000)] | = | $4,500 |
| Total amount owed by Amanda | | Amount from vehicle sale | | Deficiency Balance |

Your deficiency balance is not a "Disputed Deficiency Balance" under the Settlement Agreement and will **not** be compromised if:

1- After your vehicle was sold, your deficiency balance was reduced to judgment as of the Preliminary Approval Date as a result of a lawsuit filed against you by M&T Bank or its agents;

2- After your vehicle was sold, you entered into an agreement with M&T Bank as of the Preliminary Approval Date to settle your deficiency balance; and/or

3- Your Auto Loan Account was sold to a third party prior to the Preliminary Approval Date

Additionally, a "deficiency balance" only arises after a vehicle has been sold. As such, if you got your vehicle back after it was repossessed (i.e., if you redeemed your vehicle or reinstated your account with M&T) and your vehicle was not subsequently repossessed and sold prior to the Effective Date, you do not have a "deficiency balance" and your loan balance will not be compromised as a result of this Settlement. Any balance remaining on your Auto Loan Account will continue to be due and owing to M&T Bank.

---

**Will I Receive a Compromise of My Deficiency Balance?**
**If you are unsure whether any of these exclusions apply to you, contact the Settlement Administrator or Class Counsel immediately. Your failure to obtain this information in a timely fashion may impair your ability to make an informed decision as to the impact of this Settlement on your legal rights.**

---

**10. What is the credit reporting benefit?**

As part of the Settlement, M&T Bank will ask Experian, Equifax, and TransUnion to delete the credit trade line associated with your Auto Loan with M&T Bank (except for those Class Members who redeemed their vehicle and/or reinstated their account and whose vehicle was not subsequently repossessed and sold again prior to the Effective Date). It is likely that your credit score will increase as a result of this benefit; however, there is no guarantee as to this positive effect.

**11. When will I receive my benefits?**

Class Members will receive their benefits after the Court grants final approval of the Settlement (see Question 26) and after any

appeals are resolved. If there are appeals, resolving them can take time. Please be patient.

### 12. What am I giving up and what claims might I still have to pursue if I remain in the Settlement?

Unless you exclude yourself from the Settlement, you will remain in the Settlement and you will give up your right to sue (or continue a lawsuit against) M&T Bank for alleged defects pertaining to your Auto Loan, including repossession-related matters. The claims which are released are set forth in the Settlement Agreement. The full Settlement Agreement is available at mtbankrepoclassaction.com.

### 13. Will this affect my taxes?

**We cannot give you a definitive answer in this Notice.** The compromise of any Disputed Deficiency Balance claimed due in an amount of $600.00 or more may result in the issuance of IRS Form 1099C. You should consult a tax professional to provide you with this answer because all situations are unique. It is most prudent to consult your tax professional about your unique tax situation. *You are urged to contact a tax professional regarding the benefits of this Settlement for your particular circumstances.*

### 14. What happens if this notice is addressed to a Class Member that has passed away?

If proper documentation of the death of the Class Member is promptly sent to Class Counsel, a check will be issued (or re-issued) to the Class Member's estate or next of kin, or as otherwise may be applicable. If the Class Member is deceased, please send a copy of the death certificate to Class Counsel at the address listed in Question 6 and/or contact Class Counsel at 1-800-411-1770.

### 15. What happens if this debt was discharged in or is presently included in a bankruptcy?

If the loan obligation was discharged in bankruptcy (yours and/or your co-borrower's bankruptcy) or is presently part of a bankruptcy proceeding, then you should consult a bankruptcy attorney regarding this matter. You may have an obligation to notify the bankruptcy trustee regarding the cash payment and other benefits you are expected to receive. The law (13 Pa. C.S. § 9625 footnote 4) permits you to obtain minimum statutory damages regardless of whether or not you suffered an injury. Furthermore, the equitable benefits such as the credit reparation relating to the expungement of the credit tradeline constitute permissible equitable relief pursuant to 13 Pa. C.S. §1103 and §9625(a).

### 16. What happens if I voluntarily surrendered my vehicle, redeemed my vehicle, or reinstated my account?

Because the lawsuit challenges the content of the Post-Repossession Consumer Disclosure Notices and is not based on actual harm you may have suffered, you will still have the right to share in all of the relief as may be applicable to you.

### HOW TO GET BENEFITS

### 17. Do I need to do anything to get the settlement payment, credit reporting benefit or to have my alleged but disputed deficiency balance compromised?

No. Assuming that the Court approves the Settlement, you do not need to do anything further in order to remain a part of the Settlement and receive your portion of the settlement payment, the credit reporting benefit, and the compromise of the Disputed Deficiency Balance unless you fall into one of the exclusions listed above.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

IF YOU DO NOT WANT THE CASH PAYMENT AND OTHER BENEFITS FROM THIS SETTLEMENT, AND YOU INSTEAD WANT TO KEEP THE RIGHT TO SUE OR CONTINUE TO SUE M&T BANK ON YOUR OWN ABOUT THE ISSUES IN THIS CASE, THEN YOU MUST TAKE STEPS TO EXCLUDE YOURSELF FROM (OR "OPT OUT" OF) THE SETTLEMENT.

### 18. How do I exclude myself from the Settlement?

In order to exclude yourself, send a letter that clearly states that you want to be excluded from the Settlement. Be sure to include your full name, current address, email (if available), telephone number, and signature. If your Auto Loan has more than one Borrower, a request for exclusion by any one Borrower will be deemed to be a request for exclusion by all Borrowers of that Auto Loan. You must send a written exclusion request to Class Counsel by e-mail or to the mailing address set forth in Question 6 above. The exclusion request must be postmarked or sent with a transmittal date no later than **November 16, 2022**, forty (40) days after the date of this Notice.

### 19. If I do not exclude myself, can I sue M&T Bank for the same thing later?

No. Unless you exclude yourself, you give up any right to sue M&T Bank for the claims that this Settlement resolves on your behalf. If you have a pending lawsuit, speak to your lawyer in that case immediately because your legal rights may be adversely affected by this Settlement. You must exclude yourself from this Settlement in order to start or to continue your own lawsuit for the same or similar claims. Your rights may be affected by this Settlement. The full Settlement Agreement is available at mtbankrepoclassaction.com.

### 20. If I exclude myself, can I still benefit from this Settlement?

No. If you exclude yourself, you will not receive any money from this lawsuit or Settlement, the compromise of your Disputed Deficiency Balance, or any other benefit in connection with the Settlement.

### THE LAWYERS REPRESENTING YOU

### 21. Do I have a lawyer in the case?

Yes. The Court has approved Richard Shenkan and the law firm of Shenkan Injury Lawyers, LLC. and James Haggerty and the law firm of Haggerty, Goldberg, Schleifer, and Kupersmith, P.C., to represent you and other Class Members. These lawyers and law firms are called "Class Counsel." You will not be charged individually for this legal service; rather, Class Counsel's fees will be paid from the Settlement Fund with the approval of the Court. If you want to be represented by your own lawyer, you may hire one at your own expense. Class Counsel's phone number is 1-800-411-1770. You can speak with Class Counsel at no charge about this case.

### 22. How will the lawyers be paid?

Class Counsel has asked the Court to award attorneys' fees of $2,800,000.00 and reimbursement of expenses of up to $350,000.00 respectively. An attorneys' fee in this amount represents less than 25% of the value of the aggregate benefit conferred including the compromise of the Disputed Deficiency Balances. The value of the requests for credit tradeline removal will vary based upon each Class Member; however, these are significant additional benefits. The attorney fees and expenses awarded by the Court, including payment to the Settlement Administrator, will be paid out of the $7 Million Dollar Settlement Fund. Class Counsel will also request incentive awards of no more than $10,000 for each Representative Plaintiffs (and $4,500 for prior Representative Plaintiff Catherine Hosick) for their respective services as class representative for the Class which will also be paid from the Settlement Fund. The Court could decide to award less than the amounts requested for fees, costs, and service payment.

### OBJECTING TO THE SETTLEMENT, OR OBJECTING TO THE EQUAL DISTRIBUTION OF THE SETTLEMENT PAYMENT FOR CO-BORROWERS

### 23. How do I tell the Court if I do not like the Settlement?

If you are a Class Member, you can object to the Settlement if you do not like any part of it. You should state why you object and why you think the Court should not approve the Settlement. The Court will consider your views. To do so, you must timely send a written

communication request to Class Counsel by e-mail or to the mailing address set forth in Question 6 above. The objection must be postmarked or sent with a transmittal date no later than **November 16, 2022**, forty (40) days after the date of this Notice. The letter must include the following:

- A statement that you object to the Settlement;
- Your full name, address, email address (if available), and telephone number;
- The specific reasons why you object to the Settlement;
- Your signature; and,
- A statement whether or not you intend to appear at the fairness hearing.

### 24. If I am a co-borrower, can I request an alternate division to the equal division of the settlement payment as between both co-borrowers?

Yes. To do so, you (and your co-borrower, if they are in agreement) must timely send a written communication request to Class Counsel by e-mail or to the mailing address set forth in Question 6 above. The objection must be postmarked or sent with a transmittal date no later than **November 16, 2022**, forty (40) days after the date of this Notice. The letter must include the following:

- A statement that you are a co-borrower and that you (and your co-borrower on the account, if they are in agreement) request an alternative to the equal division of the settlement payment;
- A description of how you want the payment to be made and the reason;
- The full name, address, email address (if available), and telephone number of each co-borrower;
- The signature of at least one co-borrower.

### 25. What is the difference between objecting and asking to be excluded?

Objecting to the Settlement is informing the Court that you do not like something about the Settlement, and that you, for a clearly stated reason, do not want the Settlement to be approved or that you object to a particular part of the Settlement. You can object only if you do not exclude yourself from the Settlement. Excluding yourself is informing the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object, because the Settlement no longer affects you.

<u>**THE COURT'S FAIRNESS HEARING**</u>

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to do so. If you object to this settlement, however, you need to include in your objection your intention to appear at this hearing. See, Paragraph 23 above.

### 26. When, where, and how will the Court decide whether to approve the Settlement?

The Court will hold a fairness hearing on **November 22, 2022**, at **10:00 A.M.** in Courtroom 10-A, at the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA 19106. The hearing may be moved to a different date or time, or be held via videoconference or telephone conference, without additional notice (including a sooner date), so if you intend to attend the hearing, it is a good idea to confirm in advance that the date and time of the hearing has not changed. Additionally, in light of the restrictions necessitated by the COVID-19 pandemic, the Court, in its discretion, may change the mode or manner of the hearing. You may confirm this information by checking <u>mtbankrepoclassaction.com</u> or calling 877-268-2976. At this fairness hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them and will listen to Class Members who ask to speak at the hearing. The Court may also decide several other aspects of the Settlement including how much to pay the Representative Plaintiffs for their incentive award and Class Counsel for their services and expenses. Following the hearing, the Court will decide whether to approve the Settlement. We do not know how long the Court's decision will take. Please be patient.

### 27. Do I have to attend the fairness hearing?

No. Class Counsel will answer questions the Court may have, but you are welcome to come at your expense. If you file an objection, you do not have to come to Court to talk about it, but you may. As long as you timely filed your written objection the Court will consider it. You may also pay your own lawyer to attend, but it is not required.

### 28. May I speak at the hearing?

Yes. Any Class Member that has not excluded himself/herself from the Settlement may speak at the fairness hearing.

<u>**GETTING MORE INFORMATION**</u>

### 29. How do I get more information?

This notice briefly summarizes the key aspects of the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement and other important case documents at <u>mtbankrepoclassaction.com</u>. You may also examine these documents in person during regular office hours at the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, Pennsylvania 19106. You may contact Class Counsel with questions at 1-800-411-1770 or rshenkan@shenkanlaw.com or the Settlement Administrator at (877) 268-2976 at info@MTBankClassAction.com. You should **not** contact M&T Bank or the Court.

You may access the Settlement Website by using the camera on your mobile device to scan this QR code:



# EXHIBIT 2

**The Andela Consulting Group, Inc.**
**18783 Tribune Street**
**Northridge, CA 91326**

Thomas A. Tarter
Managing Director
Expert Witness – Banking
Consulting – Financial and Management

Phone: (818) 488-9101
Cell: (818) 414-6685
E-Mail: ttarter@earthlink.net
Web: www.andelaconsulting.com

## EXPERT REPORT

**Edward R. Flynn, Gene Daisey, Douglas J. Abbott, Percy Chapman, and Janene Chapman, individually and on behalf of others similarly situated (Plaintiffs)**

**vs**

**Manufacturers and Traders Trust Company aka M&T Bank (Defendant)**

**Case No: 2:17-cv-04806-WB**
**United States District Court**
**Eastern District of Pennsylvania**

**Credit Industry Customs, Standards and Practices; Credit Repair; Credit Furnishing and Reporting; Credit Scoring; Credit Origination; the Credit Process; and, Damages Resulting from Auto Loan Repossession, Charge Offs, Unpaid Deficiency Balances and/or Judgments**

**November 18, 2022**

**Prepared By:**

**Thomas A. Tarter**

*Thomas A. Tarter*

EXHIBIT
2

1

## EXPERT REPORT OF THOMAS A. TARTER

### INTRODUCTION

I have been retained by Class Counsel, Richard E. Shenkan of Shenkan Injury Lawyers, LLC, to provide consulting, and if necessary, expert witness testimony in the form of a report and/or verbal testimony pertaining to the credit reparation benefit in the Settlement Agreement.

The observations and opinions expressed in this Report are based upon my knowledge and experience developed throughout my more than 50-year career in banking, business, credit unions and credit industries lending and consulting, as well as information provided by Class Counsel.

### QUALIFICATIONS

I am the Managing Director of The Andela Consulting Group, Inc. ("ACG") and I have significant experience in banking[1], business, and consulting inclusive of experience in connection with vehicle repossession, consumer credit, credit repair, credit scoring, loan modification, loan servicing and credit damages. My experience, as expressed in this Report, in the business, consulting and financial institutions industry spans more than 50-years inclusive of my direct experience in connection with the matters set forth in this Report.

Following the completion of my military service in 1968, which included duties as a US Army Finance and Accounting officer and service as an *ex officio* member of the Fort Ord Credit Union board, I started my professional career at Lloyds Bank California, where I was a Vice President in the Corporate and California Divisions. I also have held executive level management positions at several other financial institutions, including The Sanwa Bank of California, where I was Vice President and Senior Credit Officer for Southern California; at Bank of Los Angeles, where I was one of the founding directors as well as President and Chief Executive Officer; at Center National Bank, where I was a Director, President and Chief Executive Officer; and at First Los Angeles Bank, where I was an Executive Vice President. I have served on the boards of non-profit corporations

---

[1] Including: Banks, Consumer Finance Companies, Thrifts and Credit Unions. I have been retained by CUMIS (Credit Union Mutual Insurance) and other insurance companies on numerous occasions.

that have included the L.A. Free Net, Hope Foundation, and Los Angeles Bankruptcy Forum.

I have served as a court approved expert and financial advisor, business advisor and on the boards of directors of public, financially troubled and closely held corporations (large and small) including SEC reporting corporations such as Bank of Los Angeles, United Mortgage, First Alliance Mortgage Company ("FAMCO") to whose board I was appointed to serve as a court approved "independent outside" director subsequent to its bankruptcy filing. As a prior financial institution officer, senior executive and board of directors' member[2], I have considerable experience in consumer credit related issues such as those discussed in this Report. Since 1993, I have advised ACG's clients and served as a litigation consultant regarding the above subject matters.

I have testified in state and federal court proceedings including but not limited to Arizona, California, Connecticut, Florida, Illinois, Maryland, Massachusetts, New Jersey, New Mexico, New York, Nevada, Ohio, Oregon, Pennsylvania, Rhode Island, Texas, Utah, Virginia, Washington, West Virginia and the US territories of Guam and Saipan. I have also prepared reports involving credit damages and credit repair in state and federal courts including: Arizona, California, Nevada, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Texas, Washington and have been retained in more than 500 consumer related cases.

I was appointed to and served on the mediation panel (1995 to 2022) for the Bankruptcy Mediation Program of the United States Bankruptcy Court for the Central District of California including mediating commercial and consumer credit disputes. In addition, I served as a multi-term member of the Board of the Los Angeles Bankruptcy Forum.

I have a Master of Business Administration degree from the University of Santa Clara and a Bachelor of Science degree in business from the University of California at Los Angeles. A copy of my resume and an overview of The Andela Consulting Group, Inc. are attached as Exhibit A. Also, attached as Exhibit B is a case log involving testimony in arbitration, deposition, mediation, and trial.

---

2 I have served as the president of two banks and a public, SEC reporting consumer mortgage company and as a consultant to the FDIC, as receiver.

**DOCUMENTS CONSIDERED**

In preparing this Report, I considered documents, publications, and information (sometimes the "Documents") listed below:

- Plaintiffs' Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgement and Dismissal with Prejudice (ECF 409, ECF 409-1);
- Proposed Final Approval Order; (ECF 409, Exhibit 1);
- Settlement Agreement (ECF 404);
- Notice of Proposed Settlement of Class Action;
- Office of the Comptroller of the Currency's website;
- OCC Manual, Retail Lending, ("Retail Lending Manual");
- Federal Deposit Insurance Corporation website;
- Federal Reserve Bank Website'
- Fair Isaac (FICO) website;
- Websites of Equifax, Experian and TransUnion;
- San Francisco Federal Reserve Bank's website;
- FDIC, Risk Management Manual of Examination Policies;
- Union Bank of California, Lender Liability Guidelines;
- Risk Management Association Code of Ethics;
- Debt Collectors Code of Ethics;
- Consumer Financial Protection Bureau, Supervisory Bulletin No. 17, Winter 2017;
- Fair Credit Reporting Manual, National Consumer Law Center;
- The Cost of Credit Manual, National Consumer Law Center;
- Credit Scores and Credit Reports, Evan Hendricks;
- Economic/Hedonic Damages, The Practice Book for Plaintiffs and Defense Attorneys, Michael L, Brookshire, PhD and Stan V. Smith, PhD, 6th Printing ("Economic/Hedonic Damages");
- Analyzing Financial Statements, American Institute of Banking and American Bankers Association; and,
- Your Credit Score, Your Money & What's at Stake, How to Improve the 3-Digit That Shapes Your Financial Future, Liz Pulliam Weston, FT Press; and
- Footnotes and textual references contained in this Report.

During my banking, business, financial institution and consulting career, in addition to what I have learned from my professional work experience, I have attended numerous seminars, conferences and courses and read professional and trade publications relating to business conditions, commercial and consumer credit, credit reporting, vehicle financing, residential mortgage loan origination, loan servicing and interest rates.

## DISCUSSION, OBSERVATIONS AND OPINIONS

In the context of this Report, I am not discussing or opining from a legal perspective, but rather from a business perspective and the use of terms and/or words are as they are commonly used in the ordinary course of business by business and credit industry professionals.

### Credit Origination Process

In today's business and financial world, negative trade line information[3] directly affects both business[4] and consumer credit and is communicated in the form of credit scores. The same is true with respect to employment, government, insurance, apartment rental and military risk assessment models. There are many different scoring models that are tailored to industry specific user needs.[5] The information contained in CRA databases is important because it impacts people's daily lives. It is easily accessible – literally just a click away.

### Credit Damage Overview

Damages created by negative credit trade line information can cause a large and diverse variety of adverse consequences for consumers (like the Class Members in this case) that may go far beyond the ability to obtain credit and lower FICO credit scores. For instance, the impact on the cost, terms, and conditions of loans and/or may include: missed investment opportunities; negative effect on business[6]; loss of job offers[7] or

---

3 "Trade line" is a credit industry term of art: "A trade line is a record of activity for any type of credit extended to a borrower and reported to a credit reporting agency. A trade line is established on a borrower's credit report when a borrower is approved for credit. The trade line records all of the activity associated with an account." And, "Comprehensively, trade lines are used by credit reporting agencies to calculate a borrower's credit score. Different credit reporting agencies give differing weights to the activities of trade lines when establishing a credit score for borrowers." Google Search – Investopedia.
4 Personal guarantees.
5 For example, there are multiple different FICO versions including FICO Auto 8 and 9.
6 Personal guarantees are normally required for business related loans including SBA guaranteed loans. Negative information may result in loans rejections that may impact the individual as well as others who may be employed in a business enterprise. Another example is that landlords typically require personal guarantees for commercial property leases which may also adversely impact the ability to start and/or expand a small business enterprise, or to rent an apartment.
7 Many employers including law firms, financial service industry and supermarkets, like Albertson and Kroger, frequently obtain credit reports and search public records because employees may be engaged in handling cash and/or merchandise. While other employers may require credit reports and public record searches for security clearances such as government contractors, TSA and police departments.

business expansion opportunities; higher and more stringent borrowing costs on credit cards, mortgages and automobile loans; higher premiums on life, medical, home, and business insurance premiums; as well as reduced credit availability.[8]

Other factors and adverse consequences, which may be particularly relevant to persons categorized as having "bad credit/risk" are (i) the perception of a person by employers, government agencies, investors, and others who use credit and risk investigative reports in their decision-making process; as well as, (ii) prolonging the time negative credit information remains on their credit records for employers, government agencies and others to evaluate.

Consequently, it is my opinion, that the deletion of negative credit information reported by M&T, relative to charge off, adverse payment history, a repossession, and/or a (disputed) credit deficiency will very significantly benefit all Class Members irrespective whether the Class Members presently has a "good" or "bad" credit ratings.

**Credit/Risk Management is not an Exact Science and Tier Based Risk Management**

It has been my direct experience that, in the ordinary course of business, many creditors use automated systems to determine eligibility and the terms and conditions creditors are willing to extend (for example: Desk Top Underwriting Systems). Besides determining eligibility, these systems identify negative events, so even if a consumer's credit score has risen, the negative event (such as a charge off and repossession) may shift them from one tier to a lower tier that may have a higher rate, require a higher down payment, and/or lower loan-to-value ratio ("LTV"). Consequently, there is far more to a credit report than a score.

Consumers with low credit scores and "bad credit" are often (i) required to make larger down payments (30% vs 20% or less); (ii) are given higher rates; and, (iii) more stringent terms by lenders, so consumers with credit scores of 700 qualify for the top mortgage rate, conditions and terms, 661 for the next level, etc.[9] Simply put, the cost of

---

8 For instance, traveling normally requires credit cards for reservation and often for paying for tickets. Thus, without a credit card, the ability to travel is practically eliminated.
9 Lenders often have credit score related risk approval/pricing tiers such as Tier 1 (700+); Tier2 (661- 699); Tier 3 (600-659); Tier 4 (550-599); Tier 5 (below 550). However, there are also algorithms to automatically down-grade applicants if a significant negative event such as a charge off, delinquency, repo, foreclosure, or judgement is on record or revealed in a public record search.

credit for mortgages is not just higher interest rates but also higher points and fees as well as larger down payments that drain savings accounts and liquidity that could be used for discretionary purchases and/or purposes.

Additionally, business and governmental risk management also typically includes CRA data for employment, fidelity coverage, investments, investors, and security clearances. Therefore, charge-offs a repossession, an unfavorable payment history, and/or (disputed) a deficiency balance negatively impact and, often, will deprive Class Members to obtain credit opportunities in a highly competitive and risk adverse environment. Due to this trade line credit reparation benefit, Class Members will likely not be deprived of such opportunities. The most favorable credit terms and conditions go to borrowers with the best scores and no significant negative information.  As a result, individuals with "bad" credit – risk characteristics may be negatively impacted even *more* than those individuals with "good" credit – risk characteristics.

A similar type of evaluative process, credit opportunity is often used in apartment/home renting, business, employment, insurance, and government security to identify potential credit/risk anomalies pertinent to the relevant circumstances. Further, it has been my direct experience that consumers with "bad" credit – risk characteristics are impacted even more than a person with "good" credit because their ability to rebuild/repair their credit may be negatively impacted and delayed (potentially for years) because negative information can remain on a consumer's credit for up to 7 ½ years.

**There is Far More to Consider than just a Credit Score**

Credit score computations are heavily weighted to consider payment histories and delinquent accounts as illustrated below:
- Factor 1: Payment History (35%)
- Factor 2: Amount Owed – Extent of Indebtedness (30%)
- Factor 3: Length of Credit History (15%)
- Factor 4: How Much New Credit Are You Assuming? (10%)
- Factor 5: Inquiries (10%)

It has been my experience, as well as being reported in numerous studies, that, if a consumer's credit score is lowered by even 5 points that the cost of credit often increases. In the ordinary course of business, a 5-point difference may not be significant if a consumer's credit report score decreases from 670-665.  However, if a consumer's credit

report score decreases from 662-657 (being mindful that the FDIC's subprime threshold[10] risk FICO Score is 660) or causes a consumer to fall below lender prescribed credit score guidelines, then this is a significant factor that may result in an increase in insurance, mortgage, credit card and automobile financing costs as well as affect executive employment opportunities.

Also, it has been my direct experience that the higher a consumer's credit score and credit risk tier, the lower the consumer's interest rate. As credit gets stronger with no negative information, consumers present a lower level of risk for the lender, and therefore, the lender (credit grantor) asks for lower interest rates and less stringent terms as compensation for letting the consumer use its money. In essence a brighter picture is presented as a result of the very substantial credit expungement benefit.

It also has been my direct experience that businesspersons and consumers that have material negative credit events like an unpaid deficiency balance, charge off, unfavorable payment history, a repossession, and/or a (disputed) deficiency balance contained in their credit reports may also be adversely impacted by not being able to obtain credit cards or loans at any rate.[11] Consequently, upon approval of the Settlement Agreement, Class Members will have improved opportunities to make major (usually financed) purchases such as autos and homes, and more easily qualify for credit cards.

**Chilling**

"Chilling" is a term used in the credit industry that pertains to individuals who are afraid of applying for credit because they are afraid that they will be embarrassed by being turned down and/or because they believe they will be turned down, therefore, they just do not apply.  Simply put, they become credit damaged victims who are frozen out of credit markets because of a significant negative credit event (such as repossession, charge off, deficiency balance and/or judgment) furnished by a credit furnisher (like M&T) that is contained in CRA and/or public databases.  Consequently, the repossession, charge off, an unfavorable payment history, and/or a (disputed) deficiency balance create a commercially reasonable basis for their borrowers' perception that their credit application

---

10 FDIC: Risk Management Manual of Examination Policies, Section 3.2 page 78.
11 Hard money unsecured loans are normally not available to low-income individuals.

would be rejected; which then becomes a reality because they stop applying for credit. Those same credit damaged individuals may also be "forced" to pay cash for many purchases and lose the convenience of being able to purchase things including online purchases that require the use of a credit card.[12]

## CONCLUSIONS

Based on the information that I have reviewed, at this point in time, I have concluded:

1. All Class Members (with "good credit" or "bad credit") will significantly benefit from credit repair by the deletion of the negative M&T trade line including any information pertaining to repossession, an unfavorable payment history, a charge off; and/or a (disputed) deficiency balance..

2. With a "high degree of commercial certainty," credit repair benefits will include but not be just limited to:
   - lower interest rates;
   - better credit terms and conditions;
   - elimination of all M&T negative information that may adversely impact:
     - security clearances;
     - improve job or employment opportunities;
     - insurance rates;
     - housing opportunities;
     - greater access to credit;
     - create a better public image; and
     - better and more productive use of their time.

3. While each CRAs' credit computation algorithm is proprietary and specifics (other than the generalities discussed in this Report) are considered to be confidential, in my opinion, this tradeline deletion benefit will, more likely than not, increase Class Members' credit scores by approximately 50 - 125 points.

4. It is further my opinion that Class Members will benefit in multiple other ways including but not limited to the elimination of the adverse effects of the negative M&T trade line's impact has on the following categories:

---

12 Credit Card issuers routinely review cardholder credit histories and may reduce and/or cancel credit limits based on significant negative credit events such as repossessions and/or deficiency balances,

| | |
|---|---|
| Credit - Financial Stigma | Impact on Employment |
| Cost of Credit | Insurance Costs |
| Loss of Credit Expectancy | Medical |
| Loss of Quality of Life | Impact of Sleeplessness and Stress |
| Lost Income | Mental Anguish, frustration |

I state these opinions within a reasonable degree of professional certainty as a credit expert. This Report is subject to amendment, modification and supplementation upon any information, facts, documents, or testimony that may be provided to me in the future. I am available to answers any questions or concerns that the Court may have, by telephone, at the final approval hearing, or will submit a supplemental report as requested.

heightening the level of risk associated with a cardholder.

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

EDWARD FLYNN, DOUGLAS ABBOTT,          )
GENE DAISEY, PERCY CHAPMAN, and        )
JANENE CHAPMAN, individually and on    )
behalf of all others similarly situated )
Plaintiffs,                            )
                                       )        CIVIL ACTION
                                       )
        Plaintiffs,                    )        No.  2:17-cv-4806-WB
                                       )
        v.                             )
                                       )
MANUFACTURERS AND TRADERS              )
TRUST COMPANY a/k/a M&T BANK,          )
Defendant.                             )
                                       )
        Defendant                      )

**DECLARATION OF ROBERT L. ROSSI IN SUPPORT OF
REQUEST FOR AN AWARD OF ATTORNEYS' FEES**

I, Robert L. Rossi, do hereby state as follows:

I have been asked by Attorney Richard Shenkan, counsel for plaintiffs in *Flynn v.*

*Manufacturers and Traders Trust Co.,* United States District Court, Eastern District of

Pennsylvania, to express an opinion regarding the amount of attorneys' fees to be awarded to

class counsel in the instant case, particularly with respect to the reasonableness of the amount

sought by class counsel in light of the relief obtained by virtue of the settlement. This Declaration

comprises that opinion, and I state all my opinions herein to a reasonable degree of professional

certainty.

-1-



## QUALIFICATIONS

I graduated from Dartmouth College in 1973, received my J.D. degree from Boston College Law School in 1976, and was admitted to practice law in January 1977.

I am presently a member of the Maine bar, and have been admitted to practice before the First, Second, Fourth, Sixth, and District of Columbia Circuit Courts of Appeal.

I am a resident of Portland, Maine, with a principal office in that city.

I am the author of the two-volume treatise, *Attorneys' Fees (2d edition)*, which was published by Lawyers Cooperative Publishing in 1995, as well as the updated edition of that treatise, *Attorneys' Fees (3d edition)*, published by West Group in 2001. From 1991 through 1994 I authored the yearly supplements to the First Edition of *Attorneys' Fees*. After the publication of the second edition and third editions, respectively, I continued to author the yearly supplements to the treatise, as well as yearly updated chapters, which I continue to do today.

During the course of my preparation of each yearly supplement, I reviewed the headnotes for several hundred new cases, read all or part of approximately 200 cases, and included excerpts from approximately 100-150 cases in each supplement.

My preparation of the manuscript for the second edition of the treatise took approximately three years. During the course of preparing the manuscript, I personally reviewed and/or read several thousand cases concerning the subject of attorneys' fees. The preparation of the manuscript for the third edition also resulted in an extensive review of cases beyond those that had been included in the prior supplements. In addition, for each of the last 13 years I have revised and updated chapters of the third edition of the book, which has also involved an extensive review of cases beyond those included in the intervening supplements. All of the above-described work

-2-

was personally done by me without any assistance.

I have consulted and provided expert testimony in state and federal court cases on the subject of attorneys' fees for attorneys in several jurisdictions, including Louisiana, Massachusetts, Missouri, Texas, Vermont, Pennsylvania, and Multidistrict Litigation in the District of Nevada. This has involved attorney-client fee disputes as well as applications for court-awarded fees in class actions.

I have over 40 years of experience as an attorney, principally as a legal researcher and writer, and have briefed and orally argued over 50 appellate cases in state and federal courts.

I have reviewed the following documents filed in this case which are pertinent to the matter on which I have been asked to give an opinion: Plaintiffs' Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice; Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice; Proposed Final Approval Order; Notice of Proposed Class Action Settlement; and Order of Final Judgment and Dismissal with Prejudice in *Maszgay v. First Commonwealth Bank*, Court of Common Pleas of Jefferson County, Pennsylvania. In addition, I have discussed the matter on several occasions with Attorney Richard Shenkan, and have consulted with Attorney Shenkan on fee matters in other cases in Pennsylvania courts, including *Langer v. Capital One Auto Finance*, a settled case in the Eastern District of Pennsylvania that bears some similarity to the present case.

## OPINION

1. The instant case is a common fund case, and the Third Circuit has made it clear that the

-3-

percentage-of-the-fund method is generally favored in common fund cases. *E.g.*, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3ʳᵈ Cir. 2011); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294 (3d Cir. 2005). I have been advised that class counsel has not submitted time sheets to enable a lodestar calculation. However, while courts frequently employ a lodestar cross-check to determine the reasonableness of a fee award under the percentage method, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3ʳᵈ Cir. 2011), courts have not explicitly required it. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629 (7ᵗʰ Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *Cook v. Niedert*, 142 F.3d 1004 (7ᵗʰ Cir. 1998) ("we have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach"); *Laffitte v. Robert Half International Inc.*, 1 Cal. 5th 480, 205 Cal. Rptr. 3d 555, 376 P.3d 672 (2016) (trial courts "retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee").

2. Settlements in common-fund cases often include benefits to the class other than cash. When that is the case, questions may arise as to whether such non-cash benefits can be quantified, and whether they should be included in the gross recovery for purposes of calculating a percentage-of-the fund attorneys' fee.

3. In the present case, there are several items of recovery that provide benefits to the class: (a) A $7.0 million fund allocated to the borrowers on each of the approximately 6,000 auto loans, as well as for payment of fees and costs; (b) the return by defendant M&T Bank of all payments made by class members toward their Disputed Deficiency Balances on or after the Effective Date, as defined by the settlement; (c) the full compromise of the Disputed Deficiency Balances, as defined by the settlement agreement, for all class members, estimated by defendant's records to

total approximately $42.3 million; (d) a request by the defendant to the three major credit reporting agencies to delete the tradelines for the subject loans from each class member's credit report (with a few exceptions).

4. Further, I have been advised by class counsel that on May 14, 2019, M&T discontinued its business practice, which was challenged by this lawsuit, to include an itemization for an "Expense of preparing/repairing the Vehicle for sale" in the uniform amount of $200 in its Notices of Repossession used in Pennsylvania (hereafter "prepare/repair fee"). This discontinuation of this business practice provides a benefit to M&T's Pennsylvania consumers to whom M&T Bank sent a Notice of Repossession after May 14, 2019. Further, I have been advised by class counsel that on May 14, 2019, M&T discontinued its practice of including a prepare/repair expense in its Notices of Repossession. The inclusion of the prepare/repair expense in the notices was a basis for Plaintiffs' primary claim in this case. This is also a benefit to M&T customers who were sent a Notice of Repossession by M&T on or after May 14, 2019.

5. Incidental and non-monetary benefits of a lawsuit, such as a change in policy, "highlight the work Class Counsel has performed in [a] case" and are relevant to determining whether his fee is reasonable. *Leverage v. Traeger Pellet Grills, LLC,* 2017 WL 6405619, at *6 (N.D. Cal. Dec. 15, 2017); *See also, Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002). In *Lonardo v. Travelers Indem. Co.,* 706 F. Supp. 2d 766 (N.D. Ohio 2010), the court made the following statements with respect to evaluating the benefits conferred: (1) "the Settlement Agreement benefits the Settlement Class and the public generally by enjoining the practice at issue for at least three years." and (2) "as a result of this litigation, Travelers eliminated their practice of selling identical policies for different prices and the Settlement Agreement enjoins

Travelers from reinstating that practice for at least three years."

6. The first three items set forth above - the $7.0 million cash payment and the cash payments plus compromise of all deficiency balances - are easily quantifiable, and total approximately $49 million. Case law in this district has approved of including the value of such debt forgiveness in calculating the total settlement value for purposes of applying the percentage-of-recovery method in making a fee award. *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000).

7. If this $49 million figure is taken as the settlement value, the fee sought by class counsel ($2.8 million) is 5.7% of the total settlement value. Given that the majority of fee awards in common fund cases range between 20-30% of the fund, *see* 1 Rossi, Attorneys' Fees (3d ed.) § 7:9, this percentage figure is certainly reasonable, especially considering the additional benefit of M&T's discontinuation of a challenged practice, as set forth above.

8. In addition, while the credit repair relief set forth as item (d) above is less easy to quantify, courts have recognized that this type of relief provides a tangible benefit and adds value to a settlement, and in one case in this district the court estimated that the value of the credit repair relief was equal to the cash component of the settlement. *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004). *See also Ryan v. Tidewater Finance Co.*, 2020 WL 12706005 (Pa. Com. Pl. 2020) (noting that courts have found that credit repair through expungement is a settlement feature that can have substantial value equal to or even more than the cash portion of a settlement). In this case, that would add an additional $7 million to the settlement value, for a total of approximately $56 million. Utilizing this figure, the fee requested is only 5% of the settlement value.

9. Therefore, in my opinion, whether or not the value of the credit repair relief is included in the total settlement value, the fee requested is well withing the parameters of a "reasonable fee."

10. Thus, under any reasonable calculation of the total settlement value, it is my opinion that the $2.8 million fee requested by class counsel is reasonable.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11/21/2022

Robert L. Rossi

-7-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD R. FLYNN, GENE DAISEY, | ) | |
| DOUGLAS J. ABBOTT, PERCY CHAPMAN, | ) | CIVIL ACTION |
| and JANENE CHAPMAN, individually and on | ) | |
| behalf of all others similarly situated | ) | CLASS ACTION |
| | ) | |
| Plaintiffs, | ) | Case No. 2:17-cv-04806-WB |
| | ) | |
| v. | ) | |
| | ) | |
| MANUFACTURERS AND TRADERS TRUST | ) | |
| COMPANY a/k/a M&T BANK, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## <u>FINAL APPROVAL ORDER</u>

This matter coming before the Court on the request for final approval of the class action settlement by Plaintiffs, Edward Flynn, Gene Daisey, Douglas Abbott, Percy Chapman, and Janene Chapman ("Plaintiffs"), and defendant Manufacturers and Traders Trust Company a/k/a M&T Bank ("Defendant"), due notice given, the parties appearing through counsel, and the Court being fully advised in the premises, **IT IS HEREBY ORDERED:**

l.      This Court has jurisdiction over the Parties[1], the Class, and the claims asserted in this lawsuit.

2.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement, is hereby finally approved as a fair, reasonable, and adequate settlement, in the best interests of the Class, in light of the

---

[1] Capitalized terms in this Order have the same meaning as defined in the Settlement Agreement.

factual, legal, practical and procedural considerations raised by this case.

3.     The Class is defined in paragraph 2.08 of the Settlement Agreement.

4.     Upon the Affidavit of Dorothy Merryman of Class-Settlement.com, the Settlement Administrator, the Court finds that the notice provided to the Class Members was the best notice practicable under the circumstances and it satisfied the requirements of due process and Federal Rule 23(e)(l).

5.     Defendant has served the CAFA Notice of Proposed Settlement and complied in all respects with its obligations under 28 U.S.C. §1715.

6.     According to Class Counsel and the Settlement Administrator, no objections nor any opt-out requests were made by Class Members.

7.     The Court hereby finds that the Settlement Agreement is the result of good faith, arm's-length negotiations by the parties thereto, and that it will further the interests of justice. The Settlement Agreement is hereby incorporated into and adopted as part of this Order.

8.     After due consideration of, among other things, the uncertainty about the likelihood of: (A) the Class's ultimate success on the merits; (B) the range of the Class's possible  recovery; (C) the complexity, expense and duration of the litigation; (D) the substance and amount of opposition to the settlement; (E) the state of proceedings at which the settlement was achieved; (F) all written submissions, declarations and arguments of counsel; and, (G) after notice and hearing, this Court finds that (a) the class representatives and Class Counsel have adequately represented the Class; (b) the settlement was negotiated at arm's length, (c) the relief provided for the Class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Member claims, (iii) the terms of the proposed award of Class

Counsel Fees, including timing of payment, (iv) any agreement required to be identified under Rule 23(e)(3); and, (v) the settlement treats class members equitably relative to each other, and is fair, adequate  and reasonable. This Court also finds that the financial settlement terms fall within the range of settlement terms that would be considered fair, adequate and reasonable. Accordingly, the Settlement Agreement should be and is APPROVED and shall govern all issues regarding the settlement and all rights of the Parties, including the Class Members. Each Class Member (including any person or entity claiming by or through him or her) shall be bound by the Settlement Agreement, including being subject to the Releases set forth in the Settlement Agreement, if applicable to them.

9.       A Settlement Fund has been created consisting of the $7,000,000 Settlement Amount. The Settlement Fund shall be used to pay Class Members, the Settlement Administration Costs, Class Counsel Fees, Class Counsel Costs, and Incentive Awards as set forth in the Settlement Agreement. All unclaimed and excess monies in the Settlement Fund shall be distributed, in equal shares, to *Cy Pres* recipients: the Public Justice Foundation, the National Consumer Law Center, and the National Association of Consumer Advocates no later than 180 days after the Distribution Date.

10.       The Court approves Class Counsel Fees in the total amount of $2,800,000 plus Class Counsel Costs incurred to date in the amount of $213,358.42.  Those amounts shall be paid from the Settlement Fund as directed by the Settlement Agreement or otherwise by direction of Richard Shenkan. In light of the tax related matters pertaining to the class members and as additional costs are anticipated for the execution of the terms of the settlement, Plaintiffs' counsel may make subsequent requests for additional reimbursement of costs.

11.       The Court approves Incentive Awards of $10,000 each for Edward Flynn, Gene

Daisey, Douglas Abbott, Percy Chapman, Janene Chapman, and $4,500 for Catherine Hosick for having served as the Class Representatives. This amount shall be paid from the Settlement Fund as directed by the Settlement Agreement. By consent of M&T Bank and for good cause, the funds escrowed in Douglas Abbott's bankruptcy proceeding in the amount of $4,376.25 are hereby released and directed to be returned to Douglas Abbott, subject only to order of the Bankruptcy Court.

12.     The Court expressly adopts and incorporates herein all the terms of the Settlement Agreement. The Parties shall carry out their respective obligations under that Agreement.

13.     The Released Claims of the Class Releasors and of the M&T Bank Releasors, as set forth in paragraphs 2.15, 2.29, 2.41, 9.01, and 9.02 of the Settlement Agreement, are hereby dismissed with prejudice.

14.     The terms of the Settlement Agreement and of this Order shall be forever binding on the Class Releasors and M&T Bank Releasors, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve Released Claims.

15.     If (a) the Settlement Agreement is terminated pursuant to its terms, or (b) the Settlement Agreement, this Order, or the Judgment do not for any reason become effective, or (c) the Settlement Agreement, this Order, or the Judgment are reversed, vacated or modified in any material or substantive respect, then any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated. If the settlement does not become final in accordance with the terms of the Settlement Agreement, this Order and the Judgment shall be

void and be deemed vacated.

16.    The Court finds that Class Counsel have adequately represented the Class in this matter.

17.    After the Effective Date, the Court shall only retain jurisdiction to address any issues associated with the distribution(s) to any *Cy Pres* recipients.

18.    In any action or proceeding to enforce the terms of this Agreement or the Final Approval Order and final judgment, the prevailing party shall be entitled to any award of reasonable attorneys' fees, costs and expenses.

19.    Final judgment is entered as provided herein.

20.    All claims against the Defendant are hereby dismissed with prejudice. This case shall remain open for administrative matters only.

**BY THE COURT:**

**Dated _____, 202\_\_\_\_**

_____
**WENDY BEETLESTONE, J.**
**United States District Judge**