IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD R. FLYNN, GENE DAISEY, DOUGLAS J. ABBOTT, PERCY CHAPMAN, and JANENE CHAPMAN, individually and on behalf of all others similarly situated,<br>　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>MANUFACTURERS AND TRADERS TRUST )COMPANY a/k/a M&T BANK,<br>　　　　　　　Defendants. | CIVIL ACTION<br><br><br><br><br>NO.  17-4806 |

## FINAL APPROVAL ORDER

**AND NOW**, this 2nd day of December, 2022, upon consideration of Plaintiffs' Motion for Final Approval of Settlement Agreement, Certification of Settlement Class, Approval of Attorney Fees and Costs, Entry of Final Judgment, and Dismissal with Prejudice (ECF No. 409) (the "Motion"), Defendant's Statement of No Opposition (ECF No. 410), and Plaintiffs' supplemental pleadings (ECF Nos. 413, 415, 416), it is **HEREBY ORDERED** that the Motion is **GRANTED**.  It is further **ORDERED** as follows:

1. This Court has jurisdiction over the Parties[1], the Class, and the claims asserted in this lawsuit.

2. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the settlement of this action, as embodied in the terms of the Settlement Agreement, is hereby finally approved as a fair, reasonable, and adequate settlement, in the best interests of the Class, in light of the factual, legal, practical, and procedural considerations raised by this case.

3. The Class is defined in paragraph 2.08 of the Settlement Agreement.

---

[1] Capitalized terms in this Order have the same meaning as defined in the Settlement Agreement.

4. Upon the Affidavit of Dorothy Merryman of Class–Settlement.com, the Settlement Administrator, the Court finds that the notice provided to the Class Members was the best notice practicable under the circumstances and it satisfied the requirements of due process and Federal Rule 23(e)(l).

5. Defendant has served the CAFA Notice of Proposed Settlement and complied in all respects with its obligations under 28 U.S.C. §1715.

6. According to Class Counsel and the Settlement Administrator, no objections nor any no opt–out requests were made by Class Members.

7. The Court hereby finds that the Settlement Agreement is the result of good faith, arm's length negotiations by the Parties, and that it will further the interests of justice.

8. After due consideration of, among other things, the uncertainty about the likelihood of: (A) the Class's ultimate success on the merits; (B) the range of the Class's possible recovery; (C) the complexity, expense, and duration of the litigation; (D) the substance and amount of opposition to the settlement; (E) the state of proceedings at which the settlement was achieved; (F) all written submissions, declarations, and arguments of counsel; and, (G) after notice and hearing, this Court finds that: (a) the class representatives and Class Counsel have adequately represented the Class; (b) the settlement was negotiated at arm's length; and, (c) the relief provided for the Class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the Class, including the method of processing Class Member claims; (iii) the terms of the proposed award of Class Counsel Fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3); and, (v) the settlement treats Class Members equitably

relative to each other, and is fair, adequate, and reasonable.  This Court also finds that the financial settlement terms fall within the range of settlement terms that would be considered fair, adequate, and reasonable.  Accordingly, the Settlement Agreement should be and is **APPROVED** and shall govern all issues regarding the settlement and all rights of the Parties, including the Class Members.  Each Class Member (including any person or entity claiming by or through him or her) shall be bound by the Settlement Agreement, including being subject to the Releases set forth in the Settlement Agreement, if applicable to them.

9. The Settlement Agreement is the sole agreement by or between the Parties.[2]

10. A Settlement Fund has been created consisting of the $7,000,000 Settlement Amount. The Settlement Fund shall be used to pay Class Members, the Settlement Administration Costs, Class Counsel Fees, Class Counsel Costs, and Incentive Awards as set forth in the Settlement Agreement.  All unclaimed and excess monies in the Settlement Fund shall be distributed, in equal shares, to *Cy Pres* recipients, the Philadelphia Bar Foundation and the Pennsylvania Legal Aid Network, Inc., no later than 180 days after the Distribution Date.

11. The Court approves Class Counsel Fees in the total amount of $2,800,000[i] plus Class Counsel Costs incurred to date in the amount of $213,358.42.  Those amounts shall be paid from the Settlement Fund as directed by the Settlement Agreement.

12. The Court approves Incentive Awards of $10,000 each for Edward Flynn, Gene Daisey, Douglas Abbott, Percy Chapman, Janene Chapman, and $4,500 for Catherine Hosick for

---

[2] Not including an agreement resolving a discovery dispute that involves neither deductions of the fund nor the amount or value paid to Class Members.

having served as the Class Representatives. This amount shall be paid from the Settlement Fund as directed by the Settlement Agreement. By consent of M&T Bank and for good cause, the funds escrowed in Douglas Abbott's bankruptcy proceeding in the amount of $4,376.25 are hereby released and directed to be returned to Douglas Abbott, subject only to an order of the Bankruptcy Court.

13. The Released Claims of the Class Releasors and of the M&T Bank Releasors, as set forth in paragraphs 2.15, 2.29, 2.41, 9.01, and 9.02 of the Settlement Agreement, are hereby dismissed with prejudice.

14. The terms of the Settlement Agreement and of this Order shall be forever binding on the Class Releasors and M&T Bank Releasors, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits, or other proceedings involve Released Claims.

15. If (a) the Settlement Agreement is terminated pursuant to its terms, (b) the Settlement Agreement, this Order, or the Judgment do not for any reason become effective, or (c) the Settlement Agreement, this Order, or the Judgment are reversed, vacated, or modified in any material or substantive respect, then any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated. If the settlement does not become final in accordance with the terms of the Settlement Agreement, this Order and the Judgment shall be void and be deemed vacated.

16. The Court finds that Class Counsel have adequately represented the Class in this matter.

17. In any action or proceeding to enforce the terms of the Agreement or the Final Approval Order and Final Judgment, the prevailing party shall be entitled to any award of

reasonable attorneys' fees, costs, and expenses.

18. Final judgment is entered as provided herein.

19. All claims against the Defendant are hereby dismissed with prejudice.

20. The Clerk of Court shall terminate this matter.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**

---

[i] Under Federal Rule of Civil Procedure 23(h), "[t]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Plaintiffs' attorneys' request and will be awarded $2,800,000 or approximately 33.3% of the common fund or 5.7% of the aggregate gross benefit conferred, *i.e.* the common fund $7 million plus the disputed debt compromise at approximately $42 million. These attorneys' fees are reasonable under the percentage–of–recovery method and the lodestar cross–check.

The reasonableness of requested fees is generally evaluated based on ten factors identified in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) and *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998) ("*Prudential*"): (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) awards in similar cases; (8) the value of benefits generated by class counsel compared to those generated by outside groups; (9) the fee that would have been generated by a privately negotiated contingent–fee agreement; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009). This "percentage–of–recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (internal quotations and citations omitted) ("*Rite Aid*"). Yet at the same time, the "varying ranges of attorneys' fees confirm that a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001).

The "percentage–of–recovery" analysis leans in favor of awarding the requested attorneys' fees because: (1) the common fund will be approximately $7 million and will result in an average individual payment of $605 per loan, amounting to a good result for Class Members; (2) no Class Member objected to or opted–out of the settlement; (3) the attorneys have provided adequate representation; (4) the litigation involved complex issues; (5) attorneys took the case on a contingency–fee basis, assuming the risk of nonpayment while investing time and incurring expenses; (6) Shenkan has submitted an affidavit stating that he spent at least 2,000 hours on the case and other lawyers from his firm have collectively spent 3,250 hours. Co-counsel James Haggerty has spent "dozens" of hours on the case; (7) Courts have accepted attorney compensation in class actions "ranging from 19 to 45% of the settlement fund created[,]" *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990), and a number of decisions have approved similar attorney award percentages with similarly sized settlement amounts. *See e.g.*, *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp.2d 484, 496-97 (E.D. Pa. 2003) (approving attorneys fees of one–third of the $7 million settlement plus interest); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp.2d 423, 428-29, 431 (E.D. Pa. 2001) (approving a 33% attorney's fee of a $48 million common fund with 24,700 notices sent noting that "[s]imilar

5

percentage awards have been approved in this Circuit, even in cases with a larger settlement fund."); *Grier v. Chase Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *8 (E.D. Pa. Feb. 16, 2000) (awarding one–third of a common fund just over $250,000 with 961 class members, noting that "because the common fund is relatively small in this case, it is appropriate to award a higher percentage than that awarded in cases which have resulted in substantially larger funds."); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (approving 30% of an $11 million common fund but finding "[t]he median [attorney's fee award] in class actions is approximately twenty–five percent[.]"); *Sala v. Nat'l R.R. Passenger Corp.*, 128 F.R.D. 210, 215-16 (E.D. Pa. 1989) (granting 33% attorney's fees on "the first million dollars in settlement" and 30% on the remainder which amounts to "slightly less than 32% of the total fund of $1,790,000.").  Plaintiffs' counsel also argue that when viewed in light of the non–monetary benefits under the settlement, the attorneys' fee award is even more reasonable and amounts to only 5.7% of the aggregate gross benefit conferred, *i.e.*, the common fund $7 million plus the disputed debt compromise which is approximately $42 million, totaling approximately $49 million.  Awards in other instances, particularly those settlements where Defendants agreed to compromise disputed loan balances, have, as here, considered the percentage recovery separately, in the context of the common fund alone and in conjunction with non–monetary benefits conferred.  *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 218 (E.D. Pa. 2011) (granting an attorneys' fee award of $1,075,000 which amounted to 11% of the settlement common fund, $12.9 million, or 8.3% of value received in services and changes made by the defendant.); *Cosgrove v. Citizens Auto. Fin., Inc.*, 2011 WL 3740809, at *2, 8-9 (E.D. Pa. Aug. 25, 2011) (granting attorneys' fees of $1.25 million or 11.7% of the $10.65 million aggregate gross benefit conferred, the sum of a $2.9 million settlement fund and Defendant's compromise of $7.75 million of post–repossession deficiency balances); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 143, 146 (E.D. Pa. 2000) (granting a 33% attorney's fees award of the net settlement which includes the common fund, loan forgiveness of delinquent payments owed, but not considering other non–monetary relief); (8) Plaintiffs' Counsel do not compare the value generated by the Settlement Agreement to those generated by outside groups, but this factor is not relevant here because it is not an instance "where government prosecutions frequently lay the groundwork for private litigation[.]" *In re Diet Drugs*, 582 F.3d at 545 (noting that even where outside and governmental groups valuations where available, relevant, and the lower court undervalued or failed to consider those valuations, the Third Circuit "would not, on that basis alone, vacate [an attorneys'] fee award."); (9) the Court finds that the attorneys' fee that is 33.3% of the settlement common fund is in the range of privately negotiated contingency fee agreements; and, (10) the settlement includes several non–monetary terms that benefit the class, including compromise of disputed deficiency payments and credit repair through Defendant's request for deletion of trade lines.  Altogether, the factors support the proposed attorneys' fee award under the "percentage–of–recovery" analysis.

"In addition to the percentage–of–recovery approach . . . it is 'sensible' for district courts to 'cross–check' the percentage fee award against the 'lodestar' method." *Rite Aid*, 396 F.3d at 305.  Shenkan explains in a declaration that he and two attorneys from his firm, Shenkan Injury Lawyers, performed approximately 5,250 total hours of work to prosecute the claims and, later, settle the suit (Shenkan spending at least 2,000 hours, Jenna Townsend 550, and Christopher Hogg 2,700). (ECF No. 416 at 2-3).  This does not include the inexact "dozens" of hours contributed by co-counsel Haggerty.  *Id.* at 3.  Class counsel "calculated [this figure] through a detailed reconstruction of Shenkan's time [and it is] based on [Shenkan's] firm's contemporaneously maintained business records and electronic data, including *inter alia*, phone bills, emails, and the electronic date save records of documents." *Id*. at 2 n.3.  To determine the accurate billing rate for a lodestar cross–check, "district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter [by] taking into account the approximate hourly billing rates of the partners and associates who worked on the case[.]" *Rite Aid*, 396 F.3d at 306.  Counsel provided standard billing rates via Shenkan's declaration ($725 an hour for Shenkan, $360 for Townsend, and $495 for Hogg) based on a 2018 Community Legal Services of Philadelphia rate that tiers billing rates based on attorney work experience.  *Id*. at 2, 2 n.4, 3, 7.  Adjustments yielding a lodestar multiplier "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied[,]" but lodestar multipliers less than one can also be appropriate.  *In re Diet Drugs*, 582 F.3d at 545 n.42; *see e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (approving a multiplier less than one as it "reveals that Class Counsel's fee request constitutes only a fraction of their work billed" and was appropriate, even assuming inflation or duplicative work) ("*Brokerage*").  The lodestar multiplier here is approximately 0.94 (2,800,000 divided by 2,984,500 (Shenkan: 1,450,000 (2,000 X 725), Townsend: 198,000 (550 X 360), and Hogg: 1,336,500 (2,700 X 495) = 1,450,000 + 198,000 + 1,336,500 = 2,984,500)).

In evaluating the reasonability of attorneys' fees, the Court is somewhat concerned about the lack of evidence supporting the amount of hours spent on this case and settlement. For example, Class Counsel submitted a summary of their total hours, rather than the records themselves. Nevertheless, "[t]he lodestar cross–check calculation need entail neither mathematical precision nor bean–counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Rite Aid*, 396 F.3d at 306-07; s*ee also Prudential*, 148 F.3d at 342 (relying on fee summaries was not an abuse of discretion where "the lodestar calculation . . . was solely intended as a cross–check of the court's primary fee calculation using the percentage–of–recovery methodology[.]"); *Brokerage*, 579 F.3d at 284 (finding no error when a "District Court [] rel[ied] on time summaries instead of reviewing actual time records."). Further, Shenkan makes these assertions subject to 28 U.S.C. § 1746, under penalty of perjury. As such, Plaintiffs' counsel's lodestar analysis also supports the fee award.